## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **CHAPLAIN GORDON JAMES KLINGENSCHMITT** ) | |
| **1788 Regulus Avenue** ) | |
| **Virginia Beach, Virginia   23454** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | |
| ) | |
| **DONALD C. WINTER** ) | **JURY TRIAL DEMANDED** |
| **In his Official Capacity as Secretary** ) | |
| **DEPARTMENT OF THE NAVY** ) | |
| **The Pentagon** ) | |
| **Washington, D.C. 20350** ) | |
| ) | |
| **Serve:** ) | |
| ) | |
| **JEFFREY A. TAYLOR** ) | |
| **UNITED STATES ATTORNEY** ) | |
| **DISTRICT OF COLUMBIA** ) | |
| **555 Fourth Street, N.W.** ) | |
| **Washington, D.C. 20001** ) | |
| ) | |
| **And** ) | |
| ) | |
| **ALBERTO R. GONZALES** ) | |
| **U.S. ATTORNEY GENERAL** ) | |
| **10th Street and Constitution Ave., N.W.** ) | |
| **Washington, D.C. 20530** ) | |
| ) | |
| **Defendant,** ) | |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF ARISING FROM VIOLATIONS OF NAVY REGULATIONS, THE FIRST AMENDMENT AND THE <u>RELIGIOUS FREEDOM RESTORATION ACT</u>

1.     This is an individual action for declaratory and injunctive relief, compensatory

damages, and reasonable attorneys' fees and costs arising out of the Defendant's violations of Plaintiff's rights, discrimination against the Plaintiff on the basis of religion (Trinitarianism Christian), deprivation of Plaintiff's employment opportunities, retaliation and unlawful classification.

2.      The Plaintiff, Chaplain Gordon James Klingenschmitt, is a Trinitarian Christian lieutenant in the United States Navy with more than 15 years of active duty in the United States Military.

3.      Plaintiff contends that Defendant systematically and continuously violated his constitutional and statutory rights during the relevant time period while Plaintiff was serving as a Chaplain in the United States Department of the Navy ("defendant" or "Navy"), and pressured him to practice a "non-sectarian" civic religion suppressing plaintiff's Christian faith. Additionally, the Defendant is presently undertaking to involuntarily separate the Plaintiff from the Navy under the pretext that the Plaintiff has lost his ecclesiastical endorsement.   In fact, the Defendant has refused to recognize a valid ecclesiastical endorsement obtained by the Plaintiff in violation of Navy rules and regulations and such proceedings are being pursued contrary to the Navy's own rules and regulations, justifying immediate injunctive and mandamus relief against the Defendant.


## II.      JURISDICTION AND VENUE

4.      This Court has jurisdiction over this action under 28 U.S.C. §§ 1331, 1343(b)(4) and 1361, as it is an action arising under the laws and Constitution of the United States seeking relief under an Act of Congress providing protection for civil rights and seeks to compel an

officer of the United States government to perform a duty required by law.

5.      Venue is proper in the District of Columbia under 28 U.S.C. § 1391(e), as this is an action against an officer of the United States or an agency of the United States and the Secretary of the Navy, and the Department of the Navy resides within the District of Columbia.


## GROUNDS FOR EQUITABLE RELIEF

6.      The Plaintiff is currently on active duty in the Navy's Chaplain Corps at Norfolk Naval Station.  The Plaintiff has been on active duty in the United State Military since July 1, 1986, and has served as a Chaplain in the United States Navy since September 3, 2002.  On September 2, 2002, Chaplain Klingenschmitt volunteered for demotion in rank and pay cut to switch from Air Force Major O 4 (missile officer) to Navy Lieutenant O 3 (chaplain) so he could share his faith with others and serve Jesus Christ as a Navy Chaplain. Chaplain Klingenschmitt's programs as a Navy Chaplain have been the recipient of six Naval awards for community service.

7.      Under instructions issued by the Department of Defense, DODI 1304.28, in order to be considered for appointment as a Chaplain in the Military Departments, a Religious Ministry Professional (RMP) "shall receive an endorsement from a qualified Religious Organization" verifying that the RMP is fully qualified according to the Religious Organization. *Id.* at para. 6.   This "Ecclesiastical Endorsement" is confirmed by the filing of a "Statement of Ecclesiastical Endorsement" by the Religious Organization.

8.      Upon entering the Navy's Chaplain Corps in September 2002, the Plaintiff received the Ecclesiastical Endorsement of the Evangelical Episcopal Church.

3

9.      On September 25, 2006, the Plaintiff tendered his voluntary resignation from the Evangelical Episcopal Church, which became effective October 1, 2006.  In connection with this resignation, the Chief of Naval Personnel (CHNAVPERS) was informed of the Plaintiff's loss of the ecclesiastical endorsement of the Evangelical Episcopal Church on or about September 27, 2006.

10.     On September 28, 2006, the authorized representative of the Chaplaincy of Full Gospel Church, a fully qualified and recognized Religious Organization that has and continues to endorse numerous chaplains in the U.S. Navy and other military branches, signed a Statement of Ecclesiastical Endorsement for the Plaintiff attesting that the Plaintiff is professionally qualified as a religious ministry professional for the military chaplaincy.   This Statement of Ecclesiastical Endorsement was sent by telefacsimile to the Chief of Navy Chaplains on September 29, 2006.

11.     On September 29, 2006, CHNAVPERS Vice Admiral J. C. Harvey, Jr., U.S. Navy, sent a letter to the Plaintiff informing him that "the loss of your ecclesiastical endorsement from the Evangelical Episcopal Church, effective October 1 2006, has rendered you professionally unqualified to serve as a Navy Chaplain."   The letter directed the Plaintiff not to perform any duties of a Navy Chaplain.

12.     Vice Admiral Harvey's September 29, 2006, letter further acknowledged the Plaintiff's receipt of the ecclesiastical endorsement of the Chaplaincy of the Full Gospel Churches, but wrote that this endorsement "does not, standing alone, make you qualified to serve as a Navy Chaplain."

13.     The refusal of the Navy's Chief of Chaplains and the Chief of Naval Personnel to recognize the ecclesiastical endorsement of the Plaintiff by the Chaplaincy of the Full Gospel

Churches is in violation of the operative and controlling instructions of the U.S. Navy, OPNAVINST 1120.9, para. 5, dated December 20, 2005, which provides as follows:

b. Chief of Chaplains shall:

(3) Notify Chief of Naval Personnel (CHNAVPERS) when an ecclesiastical endorsing agency withdraws its endorsement of a chaplain or when the Chief of Chaplains withdraws its designation of a chaplain.

(a) Recertify a chaplain's professional qualification upon receipt of a new ecclesiastical endorsement.

14.    On September 30, 2006, the Plaintiff responded to Vice Admiral Harvey's letter with a letter to the Chief of Chaplains, pointing out that the Plaintiff had no lapse in his ecclesiastical endorsement because of his endorsement by the Chaplaincy of Full Gospel Churches on September 28, 2006.  The Plaintiff also pointed to the controlling provisions of OPNAVINST 1120.9, para. 5.b.3.a, and respectfully requested that the Chief of Chaplains comply with the provisions of that instruction and notify the Chief of Naval Personnel that the Plaintiff has a qualifying ecclesiastical endorsement and is certified to perform the services of a Navy Chaplain.

15.    In a letter dated October 4, 2006, the Commander, Navy Personnel Command, responded to the Plaintiff's letter of September 29, 2006, and informed the Plaintiff that the loss of his ecclesiastical endorsement from the Evangelical Episcopal Church rendered the Plaintiff "professionally unqualified to serve as a Navy Chaplain, notwithstanding receipt of" the ecclesiastical endorsement of the Chaplaincy of Full Gospel Churches.  The letter further informed the Plaintiff that he may "request the Secretary of the Navy approve recertification of a

5

new ecclesiastical endorsement."

16.    The letter of October 4, 2006, further informed the Plaintiff that due to the "revocation" of his ecclesiastical endorsement, "you are hereby notified of the initiation of administrative action to separate you from the naval service."    The letter offered the Plaintiff the option of requesting a recertification of his professional qualifications based upon a new ecclesiastical endorsement, in which case the Chief of Chaplains would convene a board to make a recommendation whether the Plaintiff should be recertified.    According to the letter, the Chief of Chaplains would then make a recommendation to the Secretary of the Navy whether to recertify the Plaintiff as a Navy Chaplain, and the Secretary of the Navy will make the final decision on recertification.

17.    The convening of a "board . . . to determine whether [the Plaintiff] should be recertified" as ordered in the October 4, 2006 letter from Navy Personnel Command, is wholly unsupported by and contrary to controlling instructions and regulations of the U.S. Navy and the Department of Defense.    Under Chief of Chaplains Instruction (COCINST) 1110.1G, a Chaplain Appointment and Recall Eligibility (CARE) Advisory Group is authorized only to assist the Chief of Chaplains in validating "the professional qualifications of all applicants for appointment in the Chaplain Corps, the Chaplain Candidate Program Officer (CCPO) program, and transfers between active and inactive duty."    COCINST 1110.1G, para. 5 makes CARE Advisory Groups responsible for examining "each direct, superseding, recall or interservice transfer application and each Regular chaplain officer discharged from active duty who requests a Naval Reserve appointment."

18.    The Plaintiff does not fall into any of the categories set forth in COCINST

1110.1G, and the convening of a CARE Advisory Board to review or recommend whether the Plaintiff is authorized or qualified to continue to serve as a Navy Chaplain is illegal, contrary to established Navy instructions and regulation, and an arbitrary and capricious exercise of authority by the Chief of Chaplains and by Navy Personnel Command.

19.    Notwithstanding the illegal and arbitrary procedure that the Navy ordained in this case in order to effect the separation of the Plaintiff from his service with the Navy, the Plaintiff on October 14, 2006, submitted a second formal request that his ecclesiastical endorsement be immediately recertified in accordance with the requirements of OPNAV Instruction 1120.9, para. 5.b.3.a.  The Plaintiff did so in order to preserve any available remedy for defending himself against the Navy's improper attempts to decertify him as a chaplain and separate him from the Navy.

20.    The Navy's refusal to accept the Plaintiff's September 28, 2006 ecclesiastical endorsement, its decision to seek the separation of the Plaintiff from the Navy, and attempts to secure that separation through the convening of a CARE Advisory Board are contrary to established regulations, instructions, and policies of the Department of the Navy and the Department of Defense and are in violation of the law.

21.    The Plaintiff is entitled to immediate relief, by way of a temporary restraining order, preliminary injunction, and/or mandamus, forbidding the Chief of Chaplains, the Commander, Navy Personnel Command, and the Secretary of the Navy from continuing with such separation proceedings and refusing to recognize the Plaintiff's ecclesiastical endorsement from the Chaplaincy of Full Gospel Churches, and the Plaintiff is fully certified and qualified to serve as a Chaplain in the United States Navy in accordance with that ecclesiastical

endorsement.

22.    The present situation giving rise to the need for immediate relief on behalf of the Plaintiff is the most recent step in a recurring and continuing violation of Plaintiff's constitutional rights because of his objection to Navy policies that seek to establish a civic religion for the Navy in violation of the Establishment Clause of the First Amendment to the United States Constitution and in contravention of the provisions of 10 U.S.C. § 6031, which provides that "an officer in the Chaplain Corps may conduct public worship according to the manner and forms of the church of which he is a member."

23.    The Navy's ongoing practice of promoting the one non-sectarian, Unitarian, Pluralistic religion and discouraging public expression of diverse faiths and religions violates the Establishment Clause of the First Amendment to the United States Constitution because, among other things, the only purpose or the primary purpose is to promote the one non-sectarian, Unitarian, Pluralistic religion over all other religions and it constitutes a government preference for certain specific religious tenets and modes of worship over other religious tenets and modes of worship. The Establishment Clause applies with full force and effect to the acts of Navy officials.

24.    The Navy controls the content of their Chaplains' religious speech.

25.    The Navy favors the "non-sectarian" civic religion over the Trinitarianism Christian religion.

26.    The Navy has advised Chaplains that their prayers should be non-sectarian.

27.    The Navy directs and controls the content of prayers that military members may say by requiring their Chaplains to pray in a Unitarian fashion.

8

28.     The Navy promotes Unitarianism over all other religions.

29.     Unitarianism believes in the oneness of God and not the Christian doctrine of the Trinity (Father, Son (Jesus), and Holy Spirit in one God).

30.     No Naval Chaplain who values his or her continued reputation and effectiveness in the military community would incur the Navy's displeasure by praying in Jesus' name.

31.     A part of the Navy's business has been to compose official prayers for Chaplains to recite as part of a religious program carried on by the Navy's official policy, instead of allowing them to compose their own prayers.

32.     The Navy permits its "non-sectarian" and Unitarian Chaplains to express themselves fully and does not place limits on how they pray.

33.     Chaplain Klingenschmitt does not subscribe to the religious tenets of Unitarian Pluralism.

34.     The Navy places limits on how their Christian Chaplains can publicly pray and forbids them from saying "in Jesus' name."

35.     In September 2002, Captain Bertram Moore taught mandatory lectures at the Naval Chaplain School, pressuring Chaplain Klingenschmitt to censor the content of his public prayers if offered outside of Sunday chapel, and distributed a 1998 prayer memo signed by the former Chief of Navy Chaplains defaming chaplains who pray publicly "in Jesus' name" as insensitive or incompetent.   These lectures are still being taught today.

36.     During July 2004, James Carr, the Commander of the USS ANZIO, punished Chaplain Klingenschmitt for quoting "exclusive" Bible verses, including John 3:36, during an optionally-attended sermon in a Protestant chapel at an event advertised as "Christian Memorial

Service" to honor the Christian faith of the deceased sailor, a member of Klingenschmitt's flock.

37.    In July 2004, James Carr also denied Chaplain Klingenschmitt's proposal to share "the evening prayer" with members of diverse faiths and instead pressured Chaplain Klingenschmitt to censor the content of his public prayers.

38.    Captain Carr refused to permit Chaplain Klingenschmitt to practice his religion and claimed that he (and others whom he declined to identify) was offended by Chaplain Klingenschmitt's religious belief, expressed during the sermon, that going through Jesus is the exclusive way to heaven.

39.    On February 18, 2005, Captain Carr gave a downgraded performance evaluation of Chaplain Klingenschmitt because of the chaplain's content in his prayers and sermons, based on his religious beliefs.

40.    On March 11, 2005, Captain Carr also recommended a Navy board not renew Chaplain Klingenschmitt's contract.

41.    Captain Carr claimed he was relying partly upon comments of Chaplain Bertram Moore, who noted Chaplain Klingenschmitt's academic resistance to the chaplain school lectures that discourage praying in Jesus' name.

42.    On April 1, 2005, Chaplain Klingenschmitt was transferred ashore without honors or medals for wartime service routinely conferred upon his peers.

43.    On June 18, 2005, Chaplain Klingenschmitt filed a formal grievance against Captain James Carr pursuant to Article 138, Uniform Code of Military Justice, for religious discrimination and improper punishment based upon his exercise of his religion.

44.    On July 22, 2005, Chaplain Klingenschmitt filed a formal grievance pursuant to

Navy Regulations Article 1150 against Chaplain Steve Gragg, who provided false statements about Chaplain Klingenschmitt and conspired with Captain Carr to punish Chaplain Klingenschmitt for providing Christian sermons.

45.     On August 19, 2005, Chaplain Klingenschmitt filed a formal grievance pursuant to Navy Regulations Article 1150 against Chaplain Bertram Moore.

46.     The Navy refused to process that grievance.

47.     The Naval Chaplain School Lectures order the establishment of one "non-sectarian" faith for all Chaplains and all Sailors within the Navy and ridicule Chaplain Klingenschmitt's bona fide religious beliefs.

48.     On August 23, 2005, the Chief of Navy Chaplains, Rear Admiral Lou Iasiello, declined to rescind his predecessor's 1998 prayer memorandum, which instructed Navy Chaplains that if they pray "in Jesus' name," the "chaplain ought not to participate in the secular event as a prayer giver" yet encouraged participation by Chaplains who pray non-sectarian, Unitarian, Pluralistic prayers. Iasiello told Chaplain Klingenschmitt that praying publicly in Jesus' name was improper because ending public prayers "in Jesus' name" in all situations, without using discretion or regards to the venue or audience, was claimed by the Navy to reasonably tend to denigrate those with different forms of faith.

49.     On September 14, 2005, Chaplain Klingenschmitt filed a formal grievance pursuant to Navy Regulations, Article 1150, against the Chief of Chaplains, Rear Admiral Louis Iasiello, for religious discrimination about the Navy's restriction of the religious content of prayers and pressuring chaplains to pray "non-sectarian" prayers.

50.     The Navy's restriction on the religious content of prayers is contrary to 10 U.S.C.

§ 6031, which allows Chaplains to conduct "public worship" according to each Chaplain's own faith.

51.    The Navy delayed acting on Chaplain Klingenschmitt's complaint for more than one year, which permitted Chaplain Iasiello to retire without facing the charges.

52.    On December 16, 2005 and January 6, 2006, the commanding officer of Naval Station Norfolk, Captain Loyd Pyle, suppressed Chaplain Klingenschmitt's First Amendment speech in an over-broad manner by forbidding Chaplain Klingenschmitt from praying in uniform whenever the media may be present.

53.    When Chaplain Klingenschmitt tried to appeal the unlawful nature of this removal of his rights to the President, members of his chain of command did not forward this appeal as was required.

54.    When Chaplain Klingenschmitt asked if he was being punished because he was a whistleblower, Naval officer Captain Holcomb stated that he did not know about the whistleblower laws, did not care what they said, and that he "was not intimidated by your [Chaplain Klingenschmitt's] threats to file an IG complaint" because he had hired a lawyer and would "come after you."

55.    On January 6, 2006, Captain Pyle gave Chaplain Klingenschmitt written permission to wear his uniform when participating in a "religious observance."

56.    On January 7, 2006, Chaplain Klingenschmitt participated in a religious observance in front of the White House and said a short prayer while in uniform.

57.    The media covered that January 7, 2006, religious observance prayer.

58.    After the religious observance, Chaplain Klingenschmitt changed out of his

uniform into civilian clothing by walking away from the area where the observance had been held and removing his uniform jacket and tie and replacing them with a clerical collar before making any statements about his personal views and without representing Navy views or policy in any way.

59.     On January 11, 2006, Rear Admiral F. R. Ruehe ruled during an administrative procedure that Chaplain Klingenschmitt should not preach and pray as his faith dictated.

60.     On January 11, 2006, Rear Admiral F. R. Ruehe ruled Captain Carr had properly punished Chaplain Klingenschmitt for his prayers and sermon content.

61.     On February 3, 2006, Captain Pyle downgraded Chaplain Klingenschmitt's evaluation because he appealed the December 16, 2005 "overbroad" and "unlawful" order to the President.

62.     Chaplain Klingenschmitt was specifically told by Captain Pyle that his on-duty performance was fine, that he added great value to the command in performing his duties, and that the negative comments only related to Chaplain Klingenschmitt's off-duty speeches and protests.

63.     Captain Pyle stated that Chaplain Klingenschmitt showed disrespect for the uniform by removing his uniform on January 7, 2006, prior to answering questions in his personal capacity.

64.     The Defendant's agents and officers placed restraints upon Chaplain Klingenschmitt's communications and arbitrary censorship on his prayers while in uniform.

65.     On February 21, 2006, the Navy instituted a regulation requiring Chaplains to pray using "non-sectarian" prayer content outside of "Divine Services."

66.    The regulation impermissibly interfered with Chaplain Klingenschmitt's First Amendment rights to practice his religion.

67.    On February 21, 2006, the Navy changed the 1998 prayer memo into a formal policy, SECNAVINST 1730.7C, which required "non-sectarian" prayers and barred Chaplains from praying in accordance with their religion except at "public worship," which the Navy narrowly defined as a term of art protected only during divine services at Sunday Chapel and not elsewhere.   This policy also re-defined "religious observance" as a term of art only protected on particular holy days.

68.    On March 22, 2006, Chaplain Klingenschmitt filed a formal whistleblower complaint with several Congressmen against Donald C. Winter and Louis Iasiello, based upon SECNAVINST 1730.7C which re-defined "public worship" and "religious observance" and required "non-sectarian" prayers.

69.    On March 22,  2006, just four hours after his lawyer learned that Chaplain Klingenschmitt's whistleblower complaint would be reported in the *Washington Times*, CHNAVPERS Vice Admiral John Harvey recommended that Chaplain Klingenschmitt be involuntarily released from active duty because he had challenged Navy prayer policies by writing to his Congressman and the President and talking to the newspapers.

70.    On March 30, 2006, Chaplain Klingenschmitt, while not on duty, wore his Navy uniform at a prayer and scripture reading event in front of the White House.

71.    At the March 30, 2006, religious event, Chaplain Klingenschmitt read passages from the New Testament of the Bible, Acts 4: 18-21.   He also led two Christian prayers, one of which was from the Episcopal Book of Common Prayer, the other from the New Testament.

14

72.    At the March 30, 2006 religious event, Chaplain Klingenschmitt made no speeches or statements and declined to speak to the media in any public forum while he was in uniform.

73.    At the March 30, 2006, religious event, Chaplain Klingenschmitt declined to make political speeches or answer media questions until he had later changed into civilian clothes.

74.    Navy spokesman William Marks repeatedly made false statements to the public media and defamed Chaplain Klingenschmitt in the press, injuring his reputation and his Navy career.

75.    Lt. William Marks stated that there never were restrictions against Chaplain Klingenschmitt.

76.    Lt. Marks also said that Chaplain Klingenschmitt was reprimanded for the 2004 sermon because the sermon's content was inappropriate for a funeral, not because the Chaplain mentioned Jesus.

77.    Lt. Marks said there are almost 1,000 chaplains, and the Navy could not find one with the same problems in praying their religious prayers without mentioning Jesus.

78.    Navy officials also said Chaplain Klingenschmitt has not been formally punished, and there are no plans to take him off active duty.

79.    Lt. Marks said that Chaplain Klingenschmitt had been tilting at windmills all along. The Navy has no regulation against praying to Jesus and has always encouraged every Chaplain to pray according to his own individual faith during worship services.

80.    On March 30, 2006, the Navy issued a statement to the press that military

Chaplains must be willing to function in a pluralistic society.

81.    On March 30, 2006, the Navy issued a statement to the press that it was "unclear whether Chaplain Klingenschmitt had violated regulations by appearing at the event in uniform."

82.    On March 30, 2006, the Navy issued a statement to the press that "Klingenschmitt was free to pray there because it was not an official event and he was on leave."

83.    On March 31, 2006, the Executive Officer from the Office of the Chief of Navy Chaplains sent an email to Captain Holcomb, complaining that Chaplain Klingenschmitt had worn his uniform to pray "in Jesus' name" in front of the White House.

84.    On March 31, 2006, after receiving the above email, Captain Holcomb threatened to transfer Chaplain Klingenschmitt to Iraq.

85.    On April 3, 2006, Chaplain Klingenschmitt stated that he believed Captain Pyle intended to convene a special court-martial to punish him for the events of March 30, 2006, for allegedly disobeying "lawful" orders by wearing his uniform at an event supporting partisan religious views (because he read prayers outside of a "divine service" or "religious observance" which were narrowly re-defined by SECNAVINST 1730.7C).

86.    On May 17, 2006, a single charge and specification of a violation of Article 92 by disobeying Captain Pyle's order was preferred against Chaplain Klingenschmitt, and this was referred to a special court-martial on May 18, 2006, by Admiral Ruehe.

87.    On June 6, 2006, Anita Blair ruled that Chaplain Klingenschmitt was properly punished by Captain Carr (as advised by Chaplain Gragg) in July 2004 for quoting the Bible in the Chapel, during an optionally-attended sermon at a "Christian Memorial Service" honoring the faith of a deceased Christian Sailor, a member of Klingenschmitt's flock.

16

88.     The Navy also said that Chaplain Klingenschmitt's complaint of religious harassment is "without merit" because the optionally attended Christian Memorial Service inside the Chapel was "not public worship" (according to new SECNAVINST 1730.7 – since it was held on Saturday.)

89.     On July 11, 2006, Chaplain Klingenschmitt was informed that his request for augmentation to the Regular Navy has been held in abeyance pending further review.

90.     The decision to deny Chaplain Klingenschmitt's augmentation request violated his statutory entitlement to receive a Regular commission, which Congress had directed the Navy to grant all active duty officers by April 30, 2006.

91.     The Navy failed to provide an explanation of why the augmentation was not approved and/or being held in abeyance, and Chaplain Klingenschmitt's Regular commission still has not been granted today.

92.     On August 31, 2006, the Navy Court-Martial Judge ruled that Chaplain Klingenschmitt's prayer in Jesus' name on March 30, 2006, was improper and violated the Navy's policy against making political speeches in uniform.

93.     The Court-Martial Judge enforced SECNAVINST 1730.7C against Chaplain Klingenschmitt's uniformed prayers, stating that "public worship" in 10 U.S.C. § 6031 is a term of art describing a combination of setting, teaching, and interpretation that constitutes a "divine service."

94.     The Navy claims to have found that Chaplain Klingenschmitt violated supposedly "lawful" orders (based on SECNAVINST 1730.7C) by "worshiping in public" in uniform.

95.     A Navy Court-Martial Judge ruled that "one who reads a biblical verse or who

recites a prayer at The Speaker's Corner in Hyde Park is not engaged in 'public worship,' although he may be 'worshiping in public.'"

96.     On September 13, 2006, the Navy found Chaplain Klingenschmitt guilty of disobeying a "lawful" order, and his uniformed prayers in Jesus' name required a misdemeanor reprimand and suspended fine of $3,000.

97.     On September 25, 2006, partly in response to public outrage against the Navy's maltreatment of Chaplain Klingenschmitt, Congress directed the Navy to rescind their policies that required "non-sectarian" prayer content (including SECNAVINST 1730.7C) by attaching "conference report" to the 2007 Defense Authorization Act, restoring the definition of "public worship" and "religious observance" to their original meaning from 1860, again protecting all public prayers everywhere.

98.     On October 17, 2006, President Bush signed the 2007 Defense Authorization Act with the conference report directing the Air Force and Navy to rescind their recent "non-sectarian" prayer policies.

99.     The President's signing and Congressional passage of the 2007 Defense Authorization Act rescinds the policy of SECNAVINST 1730.7C.

100.     In spite of the Commander–in-Chief's signature, SECNAVINST 1730.7C is still being enforced against Chaplain Klingenschmitt.

101.     The Navy is using the rescinded SECNAVINST 1730.7C as the basis for the pending proceedings to separate Chaplain Klingenschmitt from the Navy.

102.     The Navy is using the rescinded SECNAVINST 1730.7C in violation of their own court-martial manual, which states that a special court-martial does not have the power to

dismiss an officer from the Navy.

103.    Carr, Gragg, Moore, Iasiello, Pyle, Ruehe, Holcomb, and Blair acted    and conspired to prevent, by force, intimidation, or threat, Chaplain Klingenschmitt from discharging his religious duties as Naval Chaplain and to injure him in his person or property on account of his lawful discharge of the duties of his office.

104.    The Navy's violation of its own regulations denied Chaplain Klingenschmitt of his livelihood immediately after he exercised his constitutional rights.

## COUNT I (INJUNCTIVE RELIEF)

105.    Plaintiff repeats and incorporates by reference the allegations set forth in proceeding paragraphs above.

106.    The Navy has informed Chaplain Klingenschmitt that he will be separated from the Navy because he does not have an Ecclesiastical Endorsement.

107.    The Navy's intent to separate Chaplain Klingenschmitt is contrary to the operative and controlling regulations and instructions of the Department of the Navy and Department of Defense, in that Chaplain Klingenschmitt has obtained an ecclesiastical endorsement that the Navy's Chief of Chaplains is required to accept and recognize.

108.    The Navy's intent to separate Chaplain Klingenschmitt by means of the convening of a CARE Advisory Board is contrary to the operative and controlling regulations and instructions of the Department of the Navy and Department of Defense, in that a CARE Advisory Board does not have the authority, power, or jurisdiction to consider whether a serving, active duty Chaplain's new ecclesiastical endorsement should be accepted.

109.    Chaplain Klingenschmitt has a vested property right and protected contractual and statutory right to continue serving in the Navy and may not be deprived of those rights in a manner or on bases that violate the controlling statutes, regulation, or instructions that govern the Navy and Department of Defense personnel.

110.    Chaplain Klingenschmitt is entitled to injunctive relief to prevent the loss of his property, contract, and statutory rights in a manner that is contrary to the controlling laws, regulations, and instructions, such loss being immediate and irreparable.

111.    Chaplain Klingenschmitt's separation from the Navy also is being sought because of his religious beliefs and his rejection of illegal and improper Navy directives requiring that he change the content of his prayer and that he conform to a nonsectarian religion established and approved by the Navy.

112.    The Navy's acts have the ostensible and predominant purpose of advancing one non-sectarian, Unitarian, Pluralistic religion and discourage the public expression of diverse faiths.

113.    By favoring one religion over another, the Navy is violating the central Establishment Clause value of official religious neutrality.

114.    The Navy's attempt and intent to effect the separation of Chaplain Klingenschmitt on the basis of his beliefs is a violation of the Establishment Clause and the Free Exercise Clause, and it imposes a religious test for office.

115.    Chaplain Klingenschmitt's separation from the Navy also is being sought because of his speech on matters of public concern, being his expression of beliefs and opinions in opposition to the illegal and improper Navy directives requiring that he and other Navy chaplains

20

change the content of their prayers and conform to a non-sectarian religion established and approved by the Navy.   Such speech is protected by the First Amendment to the United States Constitution.

116.    The Navy's action in this respect constitutes retaliation against Chaplain Klingenschmitt in violation of the First Amendment to the United States Constitution.

An injunction is necessary to prevent great and immediate irreparable injury to Chaplain Klingenschmitt and his rights to free speech and free exercise of religion under the First Amendment to the United States Constitution.


## COUNT II (FIRST AMENDMENT VIOLATION)

118.    Plaintiff repeats and incorporates by reference the allegations set forth in proceeding paragraphs above.

117.    The defendants restrained Chaplain Klingenschmitt's communications with illegal procedures that infringed upon his protected expression and consisted of arbitrary censorship.

118.    Chaplain Klingenschmitt has been punished and retaliated against because of his expression on matters of public concern, which expression is protected by the First Amendment to the United States Constitution.

119.    Chaplain Klingenschmitt has been and continues to be deprived of his rights under the First Amendment and is entitled to appropriate relief to remedy and prevent further and future violations of his fundamental constitutional rights.


## COUNT III (RELIGIOUS DISCRIMINATION)
## (FREE EXERCISE CLAUSE OF THE FIRST AMENDMENT )

120.    Plaintiff repeats and incorporates by reference the allegations set forth in proceeding paragraphs above.

121.    The defendant has restrained and continues to restrain Chaplain Klingenschmitt's communications on matters within his pastoral duties as a Chaplain in the United States Navy and thereby has deprived and continues to deprive him of his ability to freely exercise his religious beliefs guaranteed by the First Amendment to the United States Constitution.

122.    Chaplain Klingenschmitt has been punished and retaliated against because of conduct that is based upon and an expression of his sincerely held religious beliefs and thereby has been deprived of his rights to freely exercise his religion guaranteed by the First Amendment to the United States Constitution.

123.    Chaplain Klingenschmitt has been and continues to be deprived of his rights under the First Amendment and is entitled to appropriate relief to remedy and prevent further and future violations of his fundamental constitutional rights.

### COUNT IV (VIOLATIONS OF RELIGIOUS FREEDOM RESTORATION ACT)

124.    Plaintiff repeats and incorporates by reference the allegations set forth in proceeding paragraphs above.

125.    The Religious Freedom Restoration Act requires that before the Navy imposes a substantial burden on a person's exercise of religion, there must be a compelling government interest to place such a burden and the Navy is required to use the least restrictive means of furthering interest.

126.    There is no government interest in imposing punishments on Navy Chaplains who refuse, because of religious beliefs, to pray to a non-sectarian, Unitarian Pluralistic God.

127.    The Navy substantially burdened and continues to burden Chaplain Klingenschmitt's exercise of religion by ordering him <u>not</u> to say "in Jesus' name."

128.    The Navy's regulations burden Chaplain Klingenschmitt's exercise of his religion.

129.    The Navy does not have a compelling interest in limiting Chaplain Klingenschmitt's exercise of his religion, based solely on the Trinitarian content of his prayers and sermons, when other Chaplains who pray Unitarian prayers are encouraged to participate.

130.    Even if the Navy does have an interest, there are less restrictive means of furthering any compelling governmental interest than the restrictions the Navy placed on Chaplain Klingenschmitt's exercise of his religion.

131.    Chaplain Klingenschmitt asks for relief from the Navy's violation of the Religious Freedom Restoration Act.


**RELIEF REQUESTED**

Plaintiff, on the basis of the factual allegations summarized above and the legal principles that govern this controversy, respectfully asks for the following relief:

A.    A declaratory judgment that the practices challenged in this case violate the First and Fourteenth Amendments to the United States Constitution;

B.    Declare the Defendant's policies and practices of censoring Chaplains' prayers violate the United States Constitution;

C.    Enjoin the Defendant from engaging in unconstitutional practices and procedures that operate to discriminate on the basis of religion;

D.    A ruling that the Navy's actions violated, and continue to violate, the Establishment Clause of the First Amendment to the United States Constitution;

E.    An injunction to stop the Navy from separating Chaplain Klingenschmitt by wrongfully treating him as a new applicant because of his change in Ecclesiastical Endorsement;

F.    An injunction to restore Chaplain Klingenschmitt's personnel record to its pre-discrimination state, with a Regular commission and appropriate medals for his award-winning chaplain programs.

G.    An injunction to stop the Navy from promoting the one non-sectarian, Unitarian, Pluralistic religion over all other religions;

H.    An award of compensatory damages, attorneys' fees, costs, and expenses generated by the prosecution of this case, pursuant to 28 U.S.C. § 2412; and

I.    Grant Plaintiff such other and further relief as the Court may consider just and proper.

Respectfully submitted,

_____/s/ William P. Farley_____
William P. Farley 466280
Law Office of William Farley
900 17th Street, N.W.
Suite 1250
Washington, D.C. 20006
(202) 293-3200
Counsel for Plaintiff

PARTICIPATING ATTORNEY FOR
THE RUTHERFORD INSTITUTE

**JURY DEMAND**

24

Plaintiff respectfully requests a trial by jury on all issues.


   /s/ William P. Farley
William P. Farley

06-1832
HHK

# CIVIL COVER SHEET

JS-44
(Rev.1/05 DC)

**I (a) PLAINTIFFS**

CHAPLAIN GORDON JAMES KLINGENSCHMITT
1788 Regulus Avenue
Virginia Beach, 23454

8888

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF      Virginia Beach
(EXCEPT IN U.S. PLAINTIFF CASES)

**DEFENDANTS**

DONALD C. WINTER
in his Official Capacity as Secretary - DEPARTMENT OF THE NAVY
The Pentagon - Washington, D.C. 20350

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF
LAND INVOLVED

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

William P. Farley - Law Office of William Farley
900 17th Street, N.W., Suite 1250
Washington, D.C. 20006
(202) 293-3200

ATTORNEYS (IF KNOWN)

CASE NUMBER   1:06CV01832

JUDGE: Henry H. Kennedy

DECK TYPE: TRO/Preliminary Injunction

DATE STAMP: 10/25/2006

**JURY ACTION**

---

**II. BASIS OF JURISDICTION**
(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government
Plaintiff

○ 3 Federal Question
(U.S. Government Not a Party)

⊙ 2 U.S. Government
Defendant

○ 4 Diversity
(Indicate Citizenship of
Parties in item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES**
FOR PLAINTIFF AND ONE BOX FOR DEFENDANT

| | PLF | DFT | | PLF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ⊙ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ⊙ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

---

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and **one** in a corresponding Nature of Suit)

○ **A. Antitrust**

☐ 410 Antitrust

○ **B. Personal Injury/ Malpractice**

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

○ **C. Administrative Agency Review**

☐ 151 Medicare Act

Social Security:
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)

Other Statutes
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

⊙ **D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

---

○ **E. General Civil (Other)**      OR      ○ **F. Pro Se General Civil**

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ○ **G. Habeas Corpus/ 2255** | ○ **H. Employment Discrimination** | ○ **I. FOIA/PRIVACY ACT** | ○ **J. Student Loan** |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ○ **K. Labor/ERISA (non-employment)** | ○ **L. Other Civil Rights (non-employment)** | ○ **M. Contract** | ○ **N. Three-Judge Court** |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☒ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

◉ 1 Original Proceeding  ○ 2 Removed from State Court  ○ 3 Remanded from Appellate Court  ○ 4 Reinstated or Reopened  ○ 5 Transferred from another district (specify)  ○ 6 Multi district Litigation  ○ 7 Appeal to District Judge from Mag. Judge

Y2450 798-3

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)
THE FIRST AMENDMENT AND THE RELIGIOUS FREEDOM RESTORATION ACT - Navy Orders Chaplain not to say "in the name of Jesus."

**VII. REQUESTED IN COMPLAINT**   ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23   DEMAND $ _____   Check YES only if demanded in complaint   JURY DEMAND:   YES ☒   NO ☐

**VIII. RELATED CASE(S) IF ANY**   (See instruction)   YES ☐   NO ☒   If yes, please complete related case form.

DATE 10/25/2006   SIGNATURE OF ATTORNEY OF RECORD   *William P. Farley*

---

### INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.    COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.   CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed *only* if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.   CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the *primary* cause of action found in your complaint. You may select only *one* category. You *must* also select *one* corresponding nature of suit found under the category of case.

VI.   CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.  RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.