## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| CHAPLAIN GORDON JAMES KLINGENSCHMITT | ) ) ) ) |
| Plaintiff, | ) Civil No.: 06CV 1832 (HHK) |
| v. | ) ) |
| DONALD C. WINTER | ) ) |
| Defendant, | ) ) |

## PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER AND/OR PRELIMINARY INJUNCTION AND FOR AN EMERGENCY HEARING

Plaintiff, Chaplain Klingenschmitt, respectfully moves this Court pursuant to Fed. R. Civ. P. 65 to hold an immediate hearing and issue a temporary restraining order and/or preliminary injunction enjoining Defendant, the United States Navy ("Navy") employees, agents, assigns and others acting in concert with them from the following: (1) separating Chaplain Klingenschmitt from the Navy; and (2) instructing Chaplain Klingenschmitt how to pray in a way that is offensive to his religion; and (3) creating one non sectarian, Unitarian, Pluralistic religion and discouraging public expression of diverse faiths and religions in violation of the Establishment Clause of the First Amendment to the United States Constitution and pressuring or forcing all Chaplains in the Navy to pray in the same way.[1]

1.     Plaintiffs hereby incorporate by reference the allegations contained in the Verified Complaint.

_____

[1]  A complaint in this action has been served upon the United States Attorney.

2.      Plaintiffs hereby incorporate by reference the arguments contained in the Memorandum in Support of the Motion For a Temporary Restraining Order and/or Preliminary Injunction.

As explained more fully in the Memorandum, Plaintiff is likely to prevail on the merits of their Establishment Clause challenge to both the instructions and creation of a Naval religion.

3.      Unless this Court preliminarily enjoins official-sanctioned religion establishment and termination of Chaplain Klingenschmitt who has exercised his First Amendment rights, Plaintiff will be subjected to an Establishment Clause violation for which there is no adequate remedy at law.

4.      The issuance of a temporary restraining order and/or preliminary injunction will not harm Defendants, since it cannot be in a Navy's interest to violate sailors' and Naval Officers' constitutional rights.

5.      The issuance of the requested injunction is in the public interest because respect for our precious First Amendment freedoms is of paramount importance.

6.      Since the Navy has informed Chaplain Klingenschmitt that they plan to violate their own regulations and separate him from Naval service, Plaintiff respectfully request that this Court rule on the motion and grant the TRO to stop the separation proceedings.

7.      Plaintiff has informed the Navy that their abrogation of his rights have been, and continue to be, violations of the First Amendment and requested that they agree to immediately comply with the Constitution, the law, and their own regulations.

8.      Subsequently, however, the Navy refuses to grant Chaplain Klingenschmitt his rights.

**WHEREFORE**, Plaintiff respectfully requests that this Court hold an immediate hearing, consider the proposed consent decree, and then sign the order enjoining Defendant, the Navy's

officials, employees, agents, assigns and anyone acting in concert with them from the following: (1) separating Chaplain Klingenschmitt from Naval service; (2) instructing Chaplain Klingenschmitt how to pray in a way that is offensive to his religion; and (3) creating one non-sectarian, Unitarian, Pluralistic religion and discouraging public expression of diverse faiths and religions in violation of the Establishment Clause of the First Amendment to the United States Constitution and pressuring or forcing all Chaplains in the Navy to pray in the same way.  A draft order is attached.

Respectfully submitted,

   /s/ William P. Farley
William P. Farley 466280
Law Office of William P. Farley
900 17th Street, N.W.
Suite 1250
Washington, D.C. 20006
(202) 293-3200
Counsel for Chaplain Klingenschmitt

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| CHAPLAIN GORDON JAMES KLINGENSCHMITT | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| DONALD C. WINTER | ) ) |
| Defendant, | ) ) ) |

## PLAINTIFF'S POINTS AND AUTHORITIES IN SUPPORT OF
## HIS MOTION FOR A TEMPORARY RESTRAINING ORDER
## AND PRELIMINARY INJUNCTION

Plaintiff, Chaplain Klingenschmitt, submits this Memorandum of Law in Support of His Motion for a Temporary Restraining Order and Preliminary Injunction to stop the Defendant United States Navy ("Navy"), from separating him from Naval service in a manner that violates Navy regulations and because of his religious beliefs and practices.[2]

## PRELIMINARY STATEMENT

The Navy Defendants systematically and continuously violated Chaplain Klingenschmitt's constitutional and statutory rights during the relevant time period while Plaintiff was serving as a Chaplain in the United States Department of Navy ("defendant" or "Navy"), and pressured him to practice a "non-sectarian" civic religion suppressing plaintiff's Christian faith. Additionally, the

---

[2] *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 303 (D.C.Cir. 2006) ("when an Establishment Clause violation is alleged, infringement occurs the moment the government action takes place-without any corresponding individual conduct-then to the extent that the government action violates the Establishment Clause, First Amendment interests are "threatened or in fact being impaired.")

Defendants are presently undertaking to involuntarily separate Chaplain Klingenschmitt from the Navy under the pretext that Chaplain Klingenschmitt has lost his ecclesiastical endorsement. The Defendant refuses to recognize a valid ecclesiastical endorsement obtained by Chaplain Klingenschmitt, which is a violation of the Navy's own rules and regulations. The Navy's separation proceedings are being pursued contrary to the Navy's own rules and regulations, justifying immediate injunctive and mandamus relief against the Defendants.

The Navy has deprived, and continues to deprive, Chaplain Klingenschmitt of his rights, privileges and immunities under the Constitution, the laws of the United States and Navy regulations. Defendant has violated Chaplain Klingenschmitt's First Amendment rights, his Equal Protection rights, and his right to due process.

The Navy's ongoing practice of promoting the one non sectarian, Unitarian, Pluralistic religion and discouraging public expression of diverse faiths and religions violates the Establishment Clause of the First Amendment to the United States Constitution. The only purpose, or the primary purpose, of the Navy's promotion of the one non sectarian, Unitarian, Pluralistic religion over all other religions is to show a government preference for certain specific religious tenets and modes of worship over other religious tenets and modes of worship. The Establishment Clause applies with full force and effect to the acts of Navy officials.

## I. PARTIES

Chaplain Klingenschmitt is a lieutenant in the United States Navy. The Navy is a military service organization under the Department of Defense, one of the Executive Departments within the executive branch of the U.S. Government.

## II.  JURISDICTION AND VENUE

Plaintiff is authorized to invoke the jurisdiction of this Court under the provisions of 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."), § 1343 and § 1361 ("The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to Chaplain Klingenschmitt").

The claims in this action arise under the Constitution and laws of the United States and the district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States including Article Six of the United States Constitution ("No religious Test shall ever be required as a Qualification to any Office or public Trust under the United States."), 42 U.S.C. §2000bb (The Religious Freedom Restoration Act) and the Free Exercise and Establishment Clauses of the U.S. Constitution.

Venue is proper in the District of Columbia because the Secretary of Navy performs significant amount of his official duties in District of Columbia to support venue for action against him in this jurisdiction; the Secretary maintains offices in District of Columbia and is actively involved in dealings with Congressional committees and District of Columbia agencies in Washington, D.C.

## III.  STATEMENT OF THE FACTS

Chaplain Klingenschmitt, is a longtime military officer with more than 15 years of active military service.  Chaplain Klingenschmitt first served in the Air Force and then he became a Navy Chaplain upon completion of his divinity degree. Chaplain Klingenschmitt has been on active duty

in the United State Military since July 1, 1986, and has served as a Chaplain in the United States Navy since September 3, 2002.  On September 2, 2002, Chaplain Klingenschmitt volunteered for demotion in rank and pay cut to switch from Air Force Major O 4 (missile officer) to Navy Lieutenant O 3 (chaplain) so he could share his faith with others and serve Jesus Christ as a Navy Chaplain. Chaplain Klingenschmitt's programs as a Navy Chaplain have been the recipient of six Naval awards for community service.  Chaplain Klingenschmitt is currently serving in the Navy's Chaplain Corps at Norfolk Naval Station.

During his entire time in the Navy Chaplain Klingenschmitt has served as a chaplain with an "ecclesiastical endorsement" from a religious organization recognized by the Navy.  Chaplain Klingenschmitt is fully certified and qualified to serve as a Chaplain in the United States Navy in accordance with that ecclesiastical endorsement.

In spite his having a valid ecclesiastical endorsement, on October 4, 2006, the Navy informed Chaplain Klingenschmitt that due to the "revocation" of his ecclesiastical endorsement, "you are hereby notified of the initiation of administrative action to separate you from the naval service."  The letter offered Chaplain Klingenschmitt the option of requesting a recertification of his professional qualifications based upon a new ecclesiastical endorsement, in which case the Chief of Chaplains would convene a board to make a recommendation whether Chaplain Klingenschmitt should be recertified.  According to the letter, the Chief of Chaplains would then make a recommendation to the Secretary of the Navy whether to recertify Chaplain Klingenschmitt as a Navy Chaplain, and the Secretary of the Navy will make the final decision on recertification.

Under instructions issued by the Department of Defense, DODI 1304.28, in order to be considered for appointment as a Chaplain in the Military Departments, a Religious Ministry

-4-

Professional (RMP) "shall receive an endorsement from a qualified Religious Organization" verifying that the RMP is fully qualified according to the Religious Organization. This "Ecclesiastical Endorsement" is confirmed by the filing of a "Statement of Ecclesiastical Endorsement" by the Religious Organization.

Upon entering the Navy's Chaplain Corps in September 2002, Chaplain Klingenschmitt received the Ecclesiastical Endorsement of the Evangelical Episcopal Church. On September 25, 2006, Chaplain Klingenschmitt tendered his voluntary resignation from the Evangelical Episcopal Church, which became effective October 1, 2006. In connection with this resignation, the Chief of Naval Personnel (CHNAVPERS) was informed of Chaplain Klingenschmitt's loss of the ecclesiastical endorsement of the Evangelical Episcopal Church on or about September 27, 2006.

On September 28, 2006 the authorized representative of the Chaplaincy of Full Gospel Church, a fully qualified and recognized Religious Organization that has and continues to endorse numerous chaplains in the U.S. Navy and other military branches, signed a Statement of Ecclesiastical Endorsement for Chaplain Klingenschmitt attesting that Chaplain Klingenschmitt is professionally qualified as a religious ministry professional for the military chaplaincy. This Statement of Ecclesiastical Endorsement was sent by telefacsimile to the Chief of Navy Chaplains on September 29, 2006.

On September 29, 2006 CHNAVPERS Vice Admiral J. C. Harvey, Jr., U.S. Navy, sent a letter to Chaplain Klingenschmitt informing him that "the loss of your ecclesiastical endorsement from the Evangelical Episcopal Church, effective October 1, 2006, has rendered you professionally unqualified to serve as a Navy Chaplain." The letter directed Chaplain Klingenschmitt not to perform any duties of a Navy Chaplain.

Vice Admiral Harvey's September 29, 2006 letter further acknowledged Chaplain Klingenschmitt's receipt of the ecclesiastical endorsement of the Chaplaincy of the Full Gospel Churches, but wrote that this endorsement "does not, standing alone, make you qualified to serve as a Navy Chaplain."

The Navy refuses to conform with their own regulations to recognize the ecclesiastical endorsement of Chaplain Klingenschmitt by the Chaplaincy of the Full Gospel Churches.[3]

On September 30, 2006, Chaplain Klingenschmitt informed the Chief of Chaplains that there was no lapse in his ecclesiastical endorsement because of his endorsement by the Chaplaincy of Full Gospel Churches on September 28, 2006. Chaplain Klingenschmitt relied upon the controlling provisions of OPNAVINST 1120.9, para. 5.b.3.a, and respectfully requested that the Chief of Chaplains comply with the provisions of that instruction and notify the Chief of Naval Personnel that Chaplain Klingenschmitt has a qualifying ecclesiastical endorsement and is certified to perform the services of a Navy Chaplain.

In spite of the clear Navy regulations, in a letter dated October 4, 2006, the Commander, Navy Personnel Command informed Chaplain Klingenschmitt that the loss of his ecclesiastical endorsement from the Evangelical Episcopal Church rendered Chaplain Klingenschmitt "professionally unqualified to serve as a Navy Chaplain, notwithstanding receipt of" the ecclesiastical endorsement of the Chaplaincy of Full Gospel Churches.

The convening of a "board . . . to determine whether [Chaplain Klingenschmitt] should be

---

[3] U.S. Navy, OPNAVINST 1120.9, para. 5, dated December 20, 2005, which provides as follows: b. Chief of Chaplains shall: . . . (3) Notify Chief of Naval Personnel (CHNAVPERS) when an ecclesiastical endorsing agency withdraws its endorsement of a chaplain or when the Chief of Chaplains withdraws its designation of a chaplain. . . . (a) Recertify a chaplain's professional qualification upon receipt of a new ecclesiastical endorsement

recertified" as ordered in the October 4, 2006 letter from Navy Personnel Command, is wholly unsupported by and contrary to controlling instructions and regulations of the U.S. Navy and the Department of Defense.  Under Chief of Chaplains Instruction (COCINST) 1110.1G, a Chaplain Appointment and Recall Eligibility (CARE) Advisory Group is authorized only to assist the Chief of Chaplains in validating "the professional qualifications of all applicants for appointment in the Chaplain Corps, the Chaplain Candidate Program Officer (CCPO) program, and transfers between active and inactive duty."  COCINST 1110.1G, para. 5 makes CARE Advisory Groups responsible for examining "each direct, superseding, recall or interservice transfer application and each Regular chaplain officer discharged from active duty who requests a Naval Reserve appointment."

Chaplain Klingenschmitt does not fall into any of the categories set forth in COCINST 1110.1G, and the convening of a CARE Advisory Board to review or recommend whether Chaplain Klingenschmitt is authorized or qualified to continue to serve as a Navy Chaplain is illegal, contrary to established Navy instructions and regulation, and an arbitrary and capricious exercise of authority by the Chief of Chaplains and by Navy Personnel Command.

Notwithstanding the illegal and arbitrary procedure that the Navy ordained in this case in order to effect the separation of Chaplain Klingenschmitt from his service with the Navy, Chaplain Klingenschmitt, on October 14, 2006, submitted a second formal request that his ecclesiastical endorsement be immediately recertified in accordance with the requirements of OPNAV Instruction 1120.9, para. 5.b.3.a.  Chaplain Klingenschmitt did so in order to preserve any available remedy for defending himself against the Navy's improper attempts to decertify him as a chaplain and separate him from the Navy.

The Navy's refusal to accept Chaplain Klingenschmitt's September 28, 2006 ecclesiastical

endorsement, its decision to seek the separation of Chaplain Klingenschmitt from the Navy, and attempts to secure that separation through the convening of a CARE Advisory Board are contrary to established regulations, instructions, and policies of the Department of the Navy and the Department of Defense and are in violation of the law.

Chaplain Klingenschmitt seeks immediate relief, by way of a temporary restraining order, preliminary injunction, and/or mandamus, forbidding the Chief of Chaplains, the Commander, Navy Personnel Command, and the Secretary of the Navy from continuing with such separation proceedings and refusing to recognize Chaplain Klingenschmitt's ecclesiastical endorsement from the Chaplaincy of Full Gospel Churches.

The present situation giving rise to the need for immediate relief on behalf of Chaplain Klingenschmitt is the most recent step in a recurring and continuing violation of Plaintiff's constitutional rights. Chaplain Klingenschmitt's objection to Navy's unconstitutional policies that seek to establish a civic religion for the Navy in violation of the Establishment Clause of the First Amendment to the United States Constitution and in contravention of the provisions of 10 U.S.C. § 6031, which provides that "an officer in the Chaplain Corps may conduct public worship according to the manner and forms of the church of which he is a member" is an unconstitutional reason to separate him.

## ARGUMENT

### PLAINTIFF IS ENTITLED TO PRELIMINARY INJUNCTION

Chaplain Klingenschmitt seeks this temporary restraining order to preserve the status quo for a limited period of time until the Court has the opportunity to pass on the merits of the demand for a preliminary injunction. *Barrow v. Graham,* 124 F.Supp.2d 714, 715-716 (D.D.C. 2000); *citing*

-8-

*Warner Bros. Inc. v. Dae Rim Trading, Inc.,* 877 F.2d 1120, 1125 (2d Cir.1989); *Fernandez-Roque v. Smith,* 671 F.2d 426, 429 (11th Cir.1982). In the absence of facts that would enable a court fully to assess the merits of the parties' respective positions, a TRO may issue to preserve the status quo and to prevent imminent harm until a hearing on the request for a preliminary injunction may be held. *See Warner Bros. Inc. v. Dae Rim Trading, Inc.,* 877 F.2d at 1124. While the Court must still consider the traditional four-part test for injunctive relief even at the TRO stage, the short duration of a TRO, the imminence of the harm and the failure of a respondent to provide any facts to counter a petitioner's claims, taken together, may justify the grant of a TRO to preserve the status quo.

A temporary restraining order may be granted when "the plaintiff demonstrates (1) a substantial likelihood of success on the merits; (2) that irreparable harm will result in the absence of the requested relief; (3) that no other parties will be harmed if temporary relief is granted; and (4) that the public interest favors entry into a temporary restraining order." *S.E.C. v. Stratton Oakmont, Inc.*, 1994 WL 721502, Fed. Sec. L. Rep. P 98,489 (D.D.C. 1994), *citing Washington Metropolitan Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 843 (D.C. Cir. 1977).

**A. <u>Substantial Likelihood of Success on the Merits</u>**

## <u>VIOLATION OF NAVY REGULATIONS</u>

As described above, the Navy's pending attempt to separate Chaplain Klingenschmitt from the service is contrary to the Navy's standing regulations and instructions. Although the Navy has asserted Chaplain Klingenschmitt lost the necessary ecclesiastical endorsement, this ignores the fact that there was no lapse in Chaplain Klingenschmitt's endorsement, only a change. Moreover, the Navy' refusal to accept the endorsement given Chaplain Klingenschmitt is contrary to the mandatory provisions of OPNAVINST 1120.9, para. 5, that the "Chief of Chaplains ***shall***," upon being advised

of the withdrawal of an ecclesiastical endorsement "(a) Recertify a chaplain's professional qualification upon receipt of a new ecclesiastical endorsement[.]" Furthermore, the convening of a CARE Advisory Board to make a decision respecting Chaplain's Klingenschmitt's endorsement is wholly unprecedented and unsupported by the provisions empowering CARE Advisory Boards in Chief of Chaplains Instruction 1110.1G.

Because of these procedural irregularities, Chaplain Klingenschmitt is entitled to relief to prevent discharge the Navy intends to effect. As stated in *Dilley v. Alexander*, 603 F.2d 914, 920 (D.C. Cir. 1979), notwithstanding the reluctance of to interfere with the personnel decisions of the military,

> courts have shown no hesitation to review cases in which a violation of the Constitution, statutes, or regulations is alleged. *See, e.g., Harmon v. Brucker*, 355 U.S. 579, 582, 1958); *Huff v. Secretary of the Navy*, 575 F.2d 907, 911-14 (D.C. Cir. 1978); *Mindes v. Seaman*, 453 F.2d 197, 200 (5th Cir. 1971). It is a basic tenet of our legal system that a government agency is not at liberty to ignore its own laws and that agency action in contravention of applicable statutes and regulations is unlawful. *See Vitarelli v. Seaton*, 359 U.S. 535, 539 (1959); *Service v. Dulles*, 354 U.S. 363, 379,(1957). The military departments enjoy no immunity from this proscription. *See Harmon v. Brucker, supra*; *Geiger v. Brown*, 419 F.2d 714, 717-19 (D.C. Cir. 1969); *Roberts v. Vance*, 343 F.2d 236, 240 (D.C. Cir. 1964). It is the duty of the federal courts to inquire whether an action of a military agency conforms to the law, or is instead arbitrary, capricious, or contrary to the statutes and regulations governing that agency. *See, e.g., VanderMolen v. Stetson*, 571 F.2d 617, 624 (D.C. Cir. 1977); *Powell v. Zuckert*, 366 F.2d 634, 640-41 (D.C. Cir. 1966); *Dunmar v. Ailes*, 348 F.2d 51, 53 (D.C. Cir. 1965). The logic of these cases derives from the self-evident proposition that the Government must obey its own laws.

The separation of Chaplain Klingenschmitt is being sought in manner that is outside the law and he is entitled to a remedy to prevent the Navy from pursuing this illegal course of conduct.

## **LIBERTY INTEREST**

The Navy's termination of Chaplain Klingenschmitt will violate his liberty interests because

Defendants seek to terminate Chaplain Klingenschmitt in a manner that will stigmatize him for the rest of his life by impugning his reputation and foreclosing his future employment opportunities. *See Board of Regents v. Roth*, 408 U.S. at 572-73, 92 S.Ct. at 2706-07; *see also United States Info. Agency v. Krc,* 905 F.2d 389, 397 (D.C.Cir.1990); *Doe v. DOJ,* 753 F.2d 1092, 1105 (D.C.Cir.1985). The Constitution protects an individual's "right to follow a chosen trade or profession" without governmental interference. *Kartseva v. Department of State*, 37 F.3d 1524, 1529 (D.C.Cir.1994).

To terminate an officer and Chaplain for questioning the failure of the Navy to abide by the Establishment Clause of the U.S. Constitution, and to further associate him with former Navy Officers that have been discharged for being incompetent, will irreparably harm Chaplain Klingenschmitt's reputation. *Fowler v. Curtis Publishing Co.,* 182 F.2d 377 (D.C.Cir 1950) (defamatory publication directed at a class, even without identifying a specific individual, is cause for libel if wording of the statement is such as to make it apply to each member of a small group without exception). If the Navy is allowed to associate Chaplain Klingenschmitt with their incompetent officers, Chaplain Klingenschmitt will never be able to disassociate himself.

Public disclosure of the separation of Chaplain Klingenschmitt will be immediate, and because of the Navy's false statements concerning Chaplain Klingenschmitt's conduct within the Navy, it is plain that Chaplain Klingenschmitt's reputation will be ruined without the temporary restraining order. *See, e.g., Doe v. DOJ*, 753 F.2d at 1111-12 (stigma results when charges of unprofessional conduct and dishonesty are disseminated to prospective employers, public and private); *Doe v. Cheney,* 885 F.2d 898, 910 (D.C.Cir.1989) (agency's action would be stigmatizing if agency made a public accusation to damage plaintiff's standing.); *Mosrie v. Barry*, 718 F.2d 1151, 1157 (D.C.Cir.1983) ("public stigma").

-11-

## SPEECH

As the Ninth Circuit noted, "For nearly half-a-century, it has been axiomatic in constitutional law that government employees do not simply forfeit their First Amendment rights upon entering the public workplace." *Yniguez v. Arizona For Official English*, 69 F.3d 920, 938 (9th Cir.1995) (en banc). Public employees do not relinquish their First Amendment rights to comment on matters of public interest. *See Connick v. Myers,* 461 U.S. 138, 140 (1983). Indeed, public employees are not subject to a watered down version of the First Amendment. *Garrity v. New Jersey,* 385 U.S. 493 (1967). The Supreme Court has made it abundantly clear that prohibitions on speech may not be justified because the government is the employee's employer. *Yniguez v. Arizona For Official English*, 69 F.3d at 938.

A government employer may not deny a benefit to an employee when such denial infringes on that employees constitutionally protected interest, especially when the interest is freedom of speech. *See Perry v. Sindermann*, 408 U.S. 593, 597(1972); *Rankin v. McPherson,* 483 U.S. 378, 383-84 (1987); *Rutan v. Republican Party of Illinois*, 497 U.S. 62 (1990). When there is conflict between the interests in the employee speaking and the interest of the government in controlling that speech the court must determine which speech is controlling. *Pickering v. Board of Education,* 391 U.S. 563 (1968).

When reviewing a public employee's First Amendment claim, the D.C. Circuit employs a balancing test gleaned from Supreme Court precedence. *See Fire Fighters Assn. V. Barry,* 742 F.Supp. 1182, 1189 (D.C.C. 1990). First, whether the speech at issue is a matter of public concern. *Connick v. Myers,* 461 U.S. 138, 146 (1983); *Rankin v. McPhearson,* 483 U.S. 378, 389 (1987). Once that is positively determined, the interest of the employee in providing that information is

balanced against the interest of the governmental employer in promoting the efficiency of public services. *Pickering v. Board of Education,* 391 U.S. at 568.

When it is shown that the speech is constitutionally protected as a matter of public concern, the employee must show it was a motivating factor in his discharge. *Hall v. Ford,* 856 F.2d 255, 258 (D.C.Cir. 1988). Finally, the government employer has the opportunity to escape liability if it can show that the employee's conduct interfered with the "effective and efficient fulfillment of its responsibilities to the public," and that interference outweighs the employee's First Amendment rights. *Connick v. Myers,* 461 U.S. at 150.

The government's burden in justifying Chaplain Klingenschmitt's discharge is a high burden due to the overwhelming public interest in protecting First Amendment speech. *See Connick v. Myers*, 461 U.S. at 150 ("the [government's] burden in justifying a particular discharge varies depending upon the nature of the expression.") If the employee's speech substantially involved matters of public concern, as it did here, the government has a much harder burden to prove that the speech interfered with the operations of the office.

Chaplain Klingenschmitt caused no injury to the government or to the people he was charged with serving. Like any citizen, he had a strong, legitimate interest in speaking out on the public matters that he was aware of, such as Establishment Clause violations. In such situations the government is required to make a substantial showing that the speech is, in fact, likely to be disruptive before it may be punished. Here, there was no disruption. Thus, the Navy's planned punishment is a violation of Chaplain Klingenschmitt's constitutional rights.

-13-

## PROCEDURAL DUE PROCESS

The Navy put Chaplain Klingenschmitt on administrative duties and are seeking to separate him from the Navy immediately. At the same time, the Navy has been making defamatory statements against Chaplain Klingenschmitt that he is untruthful. That situation gives rise to the reputation-plus claim, which provides a right for procedural due process. *See Paul v. Davis,* 424 U.S. 693, 710 (1976). Defamation in the course of employment termination gives rise to a right to procedural due process. *See O'Donnell v. Barry,* 148 F.3d 1126, 1140 (defamation in the course of termination is actionable).

The "fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (*quoting Armstrong v. Manzo*, 380 U.S. 545, 552(1965)). The *Mathews* test is used to determine whether due process is satisfied in a particular case. *Kropat v. F.A.A.*, 162 F.3d 129 (D.C.Cir. 1998). That test balances "the nature of the benefit or status of which the individual is being deprived; the need for the government to act efficiently and expeditiously in terminating this type of benefit or status; and the extent to which the decision making process would be aided by the presence of the procedural safeguard that the individual seeks." *Johnson v. United States*, 628 F.2d 187, 194 (D.C.Cir.1980); *Kropat v. F.A.A.*, 162 F.3d 129.

In determining what process is due under Due Process Clause, court must consider private interest that will be affected by official action; risk of erroneous deprivation of such interest through procedures used, and probable value, if any, of additional or substitute procedural safeguards; and Government's interest, including function involved and fiscal and administrative burdens that additional or substitute procedural requirement would entail. *Lepelletier v. FDIC,* 164 F.3d 37, 43

-14-

(D.C.Cir.1999).

Chaplain Klingenschmitt is an officer in the Navy, and has been on active duty in the military for fifteen years. In this case, Chaplain Klingenschmitt merely asks for due process that would provide him with the rights and procedures established by Navy regulations. The Navy is required to follow its own rules and regulations in proceeding against Chaplain Klingenschmitt, but it refuses to do so. By failing to follow their own regulations, the Navy fails to provide for due process as is required. This is a violation of Chaplain Klingenschmitt's rights and he will prevail on this cause of action.

## SUBSTANTIATIVE DUE PROCESS

It is well settled that the Navy may not separate a Chaplain like Chaplain Klingenschmitt, without providing an appropriate hearing to ensure that there is no violation of that employee's due process rights. The Navy violated plaintiff's constitutional rights by failing to provide proper due process for Chaplain Klingenschmitt. They never let him meet the review board to explain his position and determine why Defendants are seeking to railroad him. By violating the expectation of due process that Chaplain Klingenschmitt enjoyed as a result of the Constitution, the Navy violated Chaplain Klingenschmitt's right to due process of law.

## EQUAL PROTECTION

It is long settled that the purpose of the equal protection clause of the Fourteenth Amendment to the United States Constitution "is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." *Sunday Lake Iron Co. v. Township of Wakefield,* 247 U.S. 350, 352 (1918). The Supreme Court has also held that when a state action is

motivated by a "spiteful effort" to get someone for reasons unrelated to any legitimate state objective, that is an equal protection violation. *See Village of Willowbrook v. Olech,* 528 U.S. 562, 120 S.Ct. 1073, 1074 (2000). In the *Village of Willowbrook* case the Supreme Court found that there can be a successful equal protection claim brought by a class of one. *Id.*

In the instant case the Defendants have made a spiteful effort to get Chaplain Klingenschmitt because he poses a threat to their goal of establishing a government sanctioned non sectarian, Unitarian, Pluralistic religion. He has uncovered numerous violations of the Navy's First Amendment violations. His credibility is untarnished, which is the reason they are making the spiteful effort to get him – to ensure that if the investigations continues he will not be able to point out the gross constitutional violations made by the Navy in this action. Thus, it is clear that Chaplain Klingenschmitt will prevail on the merits under the equal protection clause.

## B. **Irreparable Harm**

### **Establishment Clause and Constitutional Violations**

Chaplain Klingenschmitt is being deprived of his First Amendment Freedoms because the Navy will not permit him to say "in the name of Jesus." Chaplain Klingenschmitt is the victim of the Navy's violation of the Establishment Clause by their preference of the non sectarian, Unitarian, Pluralistic religion over all other religions. "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 299 (D.C.Cir. 2006); *citing Elrod v. Burns*, 427 U.S. 347, 373 (1976); *Nat'l People's Action v. Village of Wilmette*, 914 F. 2d 1008, 1013 (7th Cir. 1990) (even temporary deprivation of First Amendment rights is sufficient proof of irreparable harm). "This harm . . . occurs merely by virtue of the government's purportedly unconstitutional policy or practice

establishing a religion, without any concomitant protected conduct on the movants' part." *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d at 302.

Terminating Chaplain Klingenschmitt will chill other Chaplains from exercising their First Amendment freedoms as no Naval Chaplain who values his or her continued reputation and effectiveness in the military community would incur the Navy's displeasure by praying in Jesus' name. *See Lee v. Weisman*, 505 U.S. 577, 587, 591-92, 112 S.Ct. 2649, 120 L.Ed.2d 467 (1992) (Establishment Clause prohibits government from coercing anyone to participate in religion or its exercise); *see also Kerr v. Farrey,* 95 F.3d 472, 479-80 (7th Cir.1996) (prison violated Establishment Clause by requiring attendance at Narcotics Anonymous meetings, which used "God" in its treatment approach, where refusal to attend could negatively impact inmate's security-risk rating and consideration for parole); *Munson v. Norris,* 435 F.3d 877 (8th Cir. 2006) (requirement to say serenity prayer raised Establishment Clause).

In September 2002, Navy official Captain Bertram Moore taught mandatory lectures at the Naval Chaplain School pressuring Chaplain Klingenschmitt to censor the content of his public prayers if offered outside of Sunday chapel, and distributed a 1998 prayer memo signed by the former Chief of Navy Chaplains defaming chaplains who pray publicly "in Jesus name" as insensitive or incompetent. These lectures are still being taught today.

During July 2004, Navy official James Carr, the Commander of the USS ANZIO punished Chaplain Klingenschmitt for quoting "exclusive" Bible verses, including John 3:36, during an optionally-attended sermon, in Protestant chapel, at an event advertised as "Christian Memorial Service," to honor Christian faith of the deceased Sailor, a member of Klingenschmitt's flock.

Here, the deprivation of plaintiffs' First Amendment rights results directly from a policy of

-17-

the defendant that censors and restrains the religious prayers of chaplains.  On August 23, 2005, the Chief of Navy Chaplains, Rear Admiral Lou Iasiello, declined to rescind his predecessor's 1998 prayer memorandum, which instructed Navy Chaplains that if the pray  "in Jesus name" the "the chaplain ought not to participate in the secular event as a prayer giver." Iasiello told Chaplain Klingenschmitt that  praying publicly in Jesus' name was improper because ending public prayers "in Jesus name" in all situations, without using discretion or regards to the venue or audience, was claimed by the Navy to reasonably tend to denigrate those with different forms of faith.  Placing such limits on plaintiffs' speech constitutes irreparable harm for purposes of obtaining preliminary relief.

Because the Plaintiffs' allegations give rise to a presumption of irreparable harm.  Other Circuits have recognized that an exclusion from a forum for expression constitutes irreparable harm to constitutional rights that justifies the grant of a preliminary injunction. *Child Evangelism Fellowship v. Montgomery County Public Schools*, 373 F.3d 589, 593 (4th Cir. 2004).  The harm that Chaplain Klingenschmitt is threatened with here is no different. He has been denied the right to say "in Jesus' name."  He has been denied the right to practice his religion.  And the Navy is separating him from the service because he exercised his First Amendment rights to conduct worship services and to say public prayers in uniform and to engage in activities that are at the core of the First Amendment's protection of free speech and free exercise of religion.

Unless this Court grants immediate injunctive relief, Chaplain Klingenschmitt will be terminated from his position from the Navy. This termination will cause Chaplain Klingenschmitt irreparable harm, including loss of his rights as a Navy Chaplain, and a deprivation of his constitutional rights under the First Amendment.  Without this Court's intervention, Chaplain Klingenschmitt will lose his job, income, pension and other benefits. *See Elzie v. Aspin*, 841 F. Supp.

-18-

439, 443 (D.D.C. 1993) (loss of benefits constitute irreparable harm). The discharge will deprive him of the career to which he has devoted his entire working life -- the only career he has ever known. He will lose his professional reputation, opportunity for advancement, professional standing and self-esteem, and the professional interaction his career demands. In such circumstances, courts have found irreparable harm and granted injunctive relief. *May v. Gray*, 708 F. Supp. 716, 719 (E.D.N.C. 1988)(damage to a discharged service member's reputation constitutes irreparable harm); *see also Saunders v. George Washington University*, 768 F. Supp. 843, 845 (D.D.C. 1991); *Huynh v. Carlucci,* 679 F. Supp. 61, 67 (D.D.C. 1988); *Golden v. Lutheran Family Servs.*, 601 F. Supp. 383, 384 (W.D.N.C. 1984).

Chaplain Klingenschmitt's termination under the cloud that he failed in his Naval duties will also cause him irreparable harm.  Chaplain Klingenschmitt has performed his duties with care and professionalism.  He is in a "helping" field and has done just that over his entire career.  He will thus suffer irreparably the stigma of being adjudged unworthy to protect those whose needs are the greatest and he will bear the brunt of public disapprobation for being labeled as an incompetent Navy Chaplain. *See Huynh*, 679 F. Supp. at 67 (stigma of being declared unfit for government service for invidiously discriminatory reasons constitutes irreparable harm).

Fundamentally, irreparable harm must be presumed because the government has denied Chaplain Klingenschmitt his constitutional rights to due process and equal protection. The means used by the Navy to investigate and prosecute this matter amount to nothing less than a deprivation of Chaplain Klingenschmitt's Constitutional rights to his property without due process.  Even the temporary denial of these constitutional rights constitute irreparable and incompensable injury. *See, e.g., Amalgamated Transit Union Local 1277 v. Sunline Transit Agency*, 663 F. Supp. 1560, 1564

-19-

(C.D. Cal. 1987) (finding an irreparable harm and granting injunction to prevent violation of employees' Constitutional rights); *Elzie*, 841 F. Supp. at 443. *See also* 11 Wright, Miller & Kane, *Federal Practice and Procedure* §§ 2948.1 (1995).

For these reasons, *Sampson v. Murray,* 415 U.S. 61 (1974) is distinguishable. As this Court recently made clear, "Equitable relief is by no means foreclosed to plaintiffs seeking injunctions against the government" upon a showing of "extraordinary" injury, or upon a showing that an adverse personnel action is likely to have an "adverse chilling effect" on fellow employees. *Bonds v. Heyman*, 950 F. Supp. 1202, 1214-15 (D.D.C. 1997). Here, the constitutional deprivation clearly establishes extraordinary injury placing it outside the scope of *Sampson*. Moreover, as the court held in *Bonds*, an employee whose life is fundamentally "tie[d] into [his or her] career," as plaintiff's here, meets the extraordinary standard. *See also Saunders*, 768 F. Supp. at 845 ("damages would not compensate [plaintiff] for lost career opportunities. [...] [I]f her ... employment and career ... were interrupted [plaintiff] would lose the ability to gain the satisfaction that cannot be adequately compensated by a damage award."). *Samson* is also distinguished on the facts, it was a case brought by a probationary federal employee, not a fifteen-year military man.

As *Bonds v. Heyman* establishes, adverse personnel actions which have a chilling effect on other employees by encouraging employees not to engage in the same behavior as plaintiff would also vault *Sampson's* barrier. *Bonds v. Heyman*, 950 F. Supp. 1202, 1214-15 (D.D.C. 1997). This is just such a case. Permitting Chaplain Klingenschmitt's termination in this instance could not but have a chilling effect on Navy employees causing them to refrain from engaging in communications protected by the First Amendment for fear that they will, by virtue of their communications, be subject to termination.

Even if Chaplain Klingenschmitt's termination is only temporary, he will still suffer an irreparable setback to his career. The break in public service would require explanation for the duration of his career, and it could be used against him in the calculation of his entitlement to future benefits and promotions. *See Saunders*, 768 F. Supp. at 845; *Huynh,* 679 F. Supp. at 67.

## C. <u>Prospect of Harm to Enjoined Party</u>

In contrast to the clear and irreparable harm that an immediate discharge would cause Chaplain Klingenschmitt, a brief delay in the discharge will cause no appreciable harm to the Navy. Throughout his fifteen years in the employ of the military, Chaplain Klingenschmitt has performed his duties with dedication and professionalism. The continuation of his service for the brief period necessary to permit the Court to hear his expedited motion for a preliminary injunction will cause the Navy no harm. Further, because they have placed him on administrative duties, he will not disrupt any part of their operations.

## D. <u>Public Interest</u>

Finally, the public interest would also be served by the issuance of a temporary restraining order. The public has a strong interest in the preservation of the Establishment Clause and the enforcement of constitutional and statutory rights to speech and due process, such as those advanced by Chaplain Klingenschmitt in this case. The public also has a strong interest in ensuring the publication of information that can protect its citizens from the harm that an Establishment Clause violation creates. The only way these issues can be resolved in a full and effective manner is through a status quo injunction pending resolution of an expedited motion for a preliminary injunction.

## <u>CONCLUSION</u>

This case challenges Defendant's unconstitutional and illegal acts toward Plaintiff. The Navy

has violated Chaplain Klingenschmitt's rights under Navy regulations and various provisions of the

United States Constitution. Plaintiff asks the Court to enter a temporary restraining order before

October 27, 2006, enjoining defendant, and their agents and representatives, from terminating him

from his position as a Chaplain in the United States Navy.  Before filing this suit, the Defendants

have informed Plaintiff that he is being processed for separation from Naval service.  The decision

to separate him is made in violation of his rights pursuant to the First Amendment of the United

States Constitution. For the reasons stated above, Chaplain Klingenschmitt respectfully requests the

issuance of a Temporary Restraining Order in the form submitted with this motion.


Respectfully submitted,

 /s/ William P. Farley
William P. Farley 466280
Law Office of William P. Farley
900 17th Street, N.W.
Suite 1250
Washington, D.C. 20006
(202) 293-3200

PARTICIPATING ATTORNEY FOR
THE RUTHERFORD INSTITUTE


Counsel for Chaplain Klingenschmitt

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CHAPLAIN GORDON JAMES KLINGENSCHMITT | ) ) ) |
| Plaintiff, | ) Civil No.: 06CV 1832 (HHK) |
| v. | ) ) |
| DONALD C. WINTER | ) ) |
| Defendant, | ) ) |

## ORDER GRANTING PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER AND/OR PRELIMINARY INJUNCTION

Upon consideration of Plaintiff's Motion for a Temporary Restraining Order and/or Preliminary Injunction, Defendant's opposition, oral argument, and the record herein, it is the ___ day of October 2006 hereby:

**ORDERED** that the Plaintiff's Motion for a Temporary Restraining Order and/or Preliminary Injunction should be, and hereby is **GRANTED**; and it is

**FURTHER ORDERED** Defendant shall not separate Chaplain Klingenschmitt from Naval service until such time as the Court shall expressly permit; and it is

**FURTHER ORDERED** Defendant shall not instruct Chaplain Klingenschmitt how to pray and shall not instruct him to refrain from praying "in Jesus's name."; and it is

**FURTHER ORDERED** Defendant shall not instruct plaintiff or any other Naval member to pray consistently with a one non sectarian, Unitarian, Pluralistic religion and discourage public expression of diverse faiths and religions in violation of the Establishment Clause of the First Amendment to the United States Constitution and: and it is

**FURTHER ORDERED** Defendant shall not pressure or force all members of the Navy to pray in the same way.

_____
The Honorable Henry H. Kennedy
United States District Court Judge

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing Plaintiff's Motion for a Temporary Restraining Order

and/or Preliminary Injunction and for an Emergency Hearing, was sent to all parties via email and

served on all parties via First Class U.S. Mail, postage prepaid and pursuant to the court's rules via

electronic transmission, on this 26th day of October 2006 to:


DONALD C. WINTER
In his Official Capacity as Secretary
DEPARTMENT OF THE NAVY
The Pentagon
Washington, D.C. 20350
ogc@ogc.law.navy.mil

JEFFREY A. TAYLOR
UNITED STATES ATTORNEY
DISTRICT OF COLUMBIA
555 Fourth Street, N.W.
Washington, D.C. 20001
dc.outreach@usdoj.gov

And

ALBERTO R. GONZALES
U.S. ATTORNEY GENERAL
10th Street and Constitution Ave., N.W.
Washington, D.C. 20530
askDOJ@usdoj.gov


_____/s/___William P. Farley_____
William P. Farley 466280
Law Office of William P. Farley
900 17th Street, N.W.
Suite 1250
Washington, D.C. 20006
(202) 293-3200
Counsel for Plaintiff