**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **CHAPLAIN GORDON JAMES KLINGENSCHMITT** ) | |
| ) | |
| ) | |
| **Plaintiff,** ) | **Civil No.: 06CV 1832 (HHK)** |
| **v.** ) | |
| ) | |
| **DONALD C. WINTER** ) | |
| ) | |
| **Defendant,** ) | |

**PLAINTIFF'S REPLY IN SUPPORT OF HIS MOTION FOR AN EXPEDITED DISCOVERY SCHEDULE**

Chaplain Klingenschmitt seeks to keep the status quo. The Navy is seeking to discharge him after he has served in the military honorably for more than 15 years. In his complaint Chaplain Klingenschmitt seeks equitable and compensatory damages alleging, among other things, that as a chaplain in the armed services he was required to endorse "pluralism" in his religious practice.

Chaplain Klingenschmitt moved for expedited discovery in order to gather the necessary information for this Court to make a ruling on whether his injunction should be granted. The Navy argues that Chaplain Klingenschmitt "improperly seeks to use his pending request for a preliminary injunction to speed up the normal process of litigation."

**ARGUMENT**

Plaintiff seeks limited discovery to permit this Court to make a reasoned decision pursuant to the standards governing preliminary injunctive relief generally, whether plaintiff has a likelihood

1

of success on the merits and will he suffer irreparable injury in the absence of an injunction. *See Doran v. Salem Inn, Inc.*, 422 U.S. 922, 931, 95 S.Ct. 2561, 45 L.Ed.2d 648 (1975).

The Navy's whole argument is based on an erroneous assumption that "Navy regulations required the Secretary to begin these separation proceedings after Plaintiff voluntarily resigned his ecclesiastical endorsement." Def. Opp., pg. 2-3. Instead, SECNAVINST 1900-10A(2)(d)(1)[1] appropriately titled "Administrative Separation of Chaplains Upon Removal of Professional Qualifications" provides that: "Processing under this instruction is authorized <u>only when removal of ecclesiastical endorsement is the sole cause for consideration for separation,</u>" (underline added) which is clearly not true in this case, since many causes for consideration are present. The regulation further states: "If the chaplain obtains a new endorsement, the Chief of Chaplains will consider the needs of the Department of the Navy before recommending the chaplain's continuance to the Chief of Naval Personnel."

The Navy's refusal to accept Chaplain Klingenschmitt's new endorsement marked the first time in Navy history that a Chaplain has changed his eccesiastical endorsement and the Navy denied recognition of that new endorsement. Contrary to the Defendant claims that there "no urgency," the Navy has ordered Chaplain Klingenschmitt to separate from the Navy by January 31st 2007. Such a separation would cast a pall over every Chaplain that seeks to pray to their God as their respective religion dictates.

## A. The Navy's Arguments are Inconsistent

The noted expert in Chaplain Litigation, Doctor Harald R. Leuba, PhD, analyzed the Navy's arguments by studying nearly 2000 pages of decision memoranda and work sheets prepared by, or

---

[1] A copy of SECNAVINST 1900-10A is attached here as Exhibit "A."

developed for, the Chaplain Appointment and Recall Eligibility (C/A/R/E) Advisory Group. This group is charged with advising the Chief of Chaplains as he meets his obligations under OPNAVINST 1120.9. December 1, 2006 Declaration of Doctor Harald R. Leuba, PhD ("Leuba Dec."), ¶ 2. A copy of the Leuba Dec. is attached here as Exhibit "B."

After examining the 2000 pages of C/A/R/E records, Dr. Leuba concluded that those records dealt with roughly 97% of all the candidates and chaplains who applied to the C/A/R/E Advisory Group between 1985 and 2005. *Id.,* ¶ 5. As a statistician he was struck by two facts: First that the C/A/R/E Board seems to have done exactly what it was required to do: Upon receipt of a new ecclesiastical endorsement for all other chaplain, the Group recommended to the Chief of Chaplains that he "Recertify a chaplain's professional qualification."

Second, in contrast to Ms. Berto's declaration (Def. Opp., Exhibit 4) which states that there were 45 chaplains in her records who requested a change of endorser, the Navy's C/A/R/E database prepared for *Larsen* only shows half that number, 22. *Id.* ¶ 7.

Dr. Leuba concluded that the C/A/R/E Advisory Group is limited by its official charter to certify (yes or no) whether a candidate's credentials meet <u>minimum</u> requirements (see paragraph 4 of the OPNAVINST 1120.9.). A copy of OPNAVINST 1120.9 is attached here as Exhibit "C." OPNAVINST 1120.9 provides that the C/A/R/E group has to *validate* the credentials (i.e. make a "determination that the candidate is qualified"); C/A/R/E is not required or directed to *rank* the candidates, nor judge them relative to other candidates, although that is certainly an inference re their duties, which they seem to have adopted. *Id.*, ¶ 8.

Dr. Leuba found that the Group "approved", *i.e.* recommended that the Chief of Chaplains "recertify" every applicant, signals that if, now after 20 years, a particular petition to change

endorsers is rejected, this is a statistical outlier, in the fullest sense of that word.  It is Dr. Leuba's opinion that Chaplain Klingenschmitt's rejection is statistically significantly "out of range" because it could not have occurred by random chance.  One rejection in 23 "tosses" of a random coin is statistically significant beyond two standard deviations even if the coin is 50/50.  One new rejection after 22 successful applications is beyond reasonable doubt in any statistical sense; one may assume that the rejection was motivated by something other than the stated reasons.  *Id.*, ¶ 9.

Dr. Leuba states that the "escape clause" in (b) "Recommend to CHNAVPERS a chaplain's continuance based on needs of the Navy."  The "needs of the Navy" cannot <u>change</u> if a Chaplain changes endorser - unless the Navy can demonstrate that it has a need for some denominations and no need for others - which would be a clear demonstration of proscribed denominational preference.  Nor, can the "needs of the Navy" suddenly "require" one fewer chaplain while simultaneously lamenting a shortage of qualified applicants.  *Id.*, ¶ 10.  In fact, the Navy admits that "The Chaplain Corps is the most difficult program to recruit into," according to Navy Commander Gary Carr, Navy Recruiting Chaplain program manager.

Dr. Lueba concluded that from the second fact here, that Ms. Berto swears that the C/A/R/E records back to 1983 contain 45 instances of a requested change of endorser is that, as usual with the Navy's data, something is missing, or misunderstood.  Either there were almost as may requests for a  change in ecclesiastical endorsement in the two years 1983 and 1984 as in the 20 years since then, or only half of the requests were taken up "formally" in a C/A/R/E decision memorandum [e.g. before 1995 maybe the C/A/R/E Advisory Group dealt with the matter "internally", perhaps as a "matter of course".] In any case there is almost certainly some sort of definitional variable at work "between the lines".  It is possible that Ms. Berto counted wrong, or it is possible that the Navy has

not produced nearly as many records as it could have. Neither of those two options would signal conscientious care (good faith). *Id.*, ¶ 11.

The Defendant (Defendant or "Navy") has stated that they have initiated separation proceedings against Chaplain Klingenschmitt based solely upon his lack of ecclesiastical endorsement. Def. Opp., pg. 3. However, the Navy must admit that Chaplain Klingenschmitt was never without an ecclesiastical endorsement. *Id.,* pg. 2. Indeed, for two days Chaplain Klingenschmitt had two eccesiastical endorsers during his transition between churches.

As the Navy has made this the key part of their defense, expedited discovery is required for this Court to make a determination on a consistent record.

### B. Motions to Expedite are Often Granted Prior to Injunctive Hearings

It is not uncommon for Courts in this Circuit to grant motions to expedite. *See, e.g. U.S. ex rel. Ortega v. Columbia Healthcare, Inc.*, 240 F.Supp.2d 8 (D.D.C. 2003); *Alexander v. F.B.I.*, 1998 WL 1048982 (D.D.C. 1998); *Rothenberg v. Ralph D. Kaiser Co., Inc.*, 200 B.R. 461 (D.D.C. 1996); *Resolution Trust Corp. v. Burke*, 874 F.Supp. 23 (D.D.C. 1995). Limited discovery is required before the Navy should be permitted to upset the status quo because: (1) it was only after Chaplain Klingenschmitt demanded that the Constitution be upheld that the Navy determined to separate him; (2) the only discipline that Chaplain Klingenschmitt faced has arisen strictly from his exercising his constitutional rights; (3) the Navy has no grounds to dismiss Chaplain Klingenschmitt other than he prayed in the name of Jesus and he removed his uniform when the Navy ordered him not to pray in the name of Jesus in uniform; (4) in its more than 200 year history the Navy has ever separated a chaplain who has an ecclesiastical endorsement (which Chaplain Klingenschmitt has from the Chaplaincy of Full Gospel Churches); (5) there needs to be discovery on whether any other chaplain

5

in the Navy has faced separation based upon praying in Jesus' name; (6) the Navy has gathered most of the written discovery already, including over 3,000 pages of emails and documents about Chaplain Klingenschmitt created in the last two years and now sitting in the Navy FOIA offices. The Navy would not face any administrative burden to collect that evidence or provide it to this court; and they would not face any hardship to turn over that evidence; and (7) the treatment of the other Navy Chaplains that are similarly situated to Chaplain Klingenschmitt and have not prayed in the name of Jesus are not being separated.

### C. The Reasonableness Test Requires Expedited Discovery

Pursuant to the reasonableness test, used for expedited discovery cases which are related to a motion for a preliminary injunction, Chaplain Klingenschmitt is entitled to discovery. *See, e.g., Ayyash v. Bank Al-Madina*, 233 F.R.D. 325 (S.D.N.Y.2005); *Qwest Communic'ns Int'l, Inc. v. Worldquest Networks, Inc.*, 213 F.R.D. 418, 419-20 (D.Colo.2003). Under the reasonableness test, courts consider the reasonableness of the request in light of the entire record to date and all of the surrounding circumstances. Factors commonly considered in determining the reasonableness of expedited discovery include, but are not limited to: "(1) whether a preliminary injunction is pending; (2) the breadth of the discovery requests; (3) the purpose for requesting the expedited discovery; (4) the burden on the defendants to comply with the requests; and (5) how far in advance of the typical discovery process the request was made." *Entm't Tech. Corp. v. Walt Disney Imagineering*, No. 03-3546, 2003 WL 22519440, at *3-5 (E.D.Pa. Oct.2, 2003)).

Prong 1, a preliminary injunction is pending. The second prong is also met, Plaintiff seeks to limit the breadth of the expedited discovery request is limited to evidence that the Defendant has already gathered and is limited to the evidence that would permit this Court to make a reasoned

decision concerning the injunctive relief.  The third prong is easily met as Chaplain Klingenschmitt is raising issues that concern all military chaplains and society in general, *i.e.*, whether the government may establish a secular religion.  The fourth prong is met because there would be little burden on the government to turn over the emails and documents that have already been gathered and identified as relating to Chaplain Klingenschmitt.  The other discovery would be limited as to not place an undue burden upon the Navy.

The fifth prong is particularly important because of the chilling effect Chaplain Klingenschmitt's separation would have on other military Chaplains' seeking to exercise their Constitutional rights.  Chaplain Klingenschmitt requires an expedited discovery schedule because he believes the Navy is separating him to chill opposition to their establishment of a secular religion.  Thus, Chaplain Klingenschmitt should be granted expedited discovery with sufficient time for presentation to this court prior to the Navy being permitted to separate him from military service.

**D. Defendant's Arguments Ignore the Facts and Relevant Law**

**1. The Administrative Procedures Act ("APA") Does Not Preclude Constitutional Challenges**

Chaplain Klingenschmitt brought this action pursuant to 28 U.S.C. §§ 1331, 1343(b)(4) and 1361, as it is an action arising under the laws and Constitution of the United States.  The APA does bar such an action because "[c]onstitutional questions obviously are unsuited to resolution in administrative hearing procedures and, therefore, access to the courts is essential to the decision of such questions."  *Califano v. Sanders*, 430 U.S. 99, 109 (1977).

In other cases interpreting these issues the Supreme Court has consistently permitted federal jurisdiction for constitutional challenges beyond just administrative review.  *Weinberger v. Salfi*, 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975) (since federal-question jurisdiction under 28 U.S.C.

s 1331 is precluded by s 205(h), a decision denying s 205(g) jurisdiction would effectively have illegally closed the federal forum to the adjudication of colorable constitutional claims.) and *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) (same).  Thus in these types of cases the well-established principle that when constitutional questions are in issue, the availability of judicial review is presumed, and the Supreme Court will not read a statutory scheme to take the "extraordinary" step of foreclosing jurisdiction unless Congress' intent to do so is manifested by "clear and convincing" evidence. *Weinberger v. Salfi*, 422 U.S. at 762; *Johnson v. Robison*, 415 U.S. 361, 366-67, 94 S.Ct. 1160, 1165-66, 39 L.Ed.2d 389 (1974).

The constitutionality of the Navy establishing a religion and terminating all those that oppose is not a matter that is barred under the APA. *Webster v. Doe*, 486 U.S. 592, 603, 108 S.Ct. 2047, 2053, 100 L.Ed.2d 632 (1988) (serious constitutional question would arise if federal statute were construed to deny any judicial forum for a colorable constitutional claim); *Community Action of Laramie County, Inc. v. Bowen*, 866 F.2d 347, 352-353 (10th Cir.1989) ("[J]udicial review of colorable constitutional claims remains available unless Congress has made its intent to preclude review crystal clear."); *see also WWHT, Inc. v. Federal Communications Comm'n*, 656 F.2d 807, 815 n. 15 (D.C.Cir.1981) ("In no event would a finding of nonreviewability on the ground that an action is committed to agency discretion preclude judicial review when constitutional violations have been alleged.").

The government may not establish a "religion of secularism" in a sense of affirmatively opposing or showing hostility to religion, thus preferring those who believe in no religion over those who do believe.  *School Dist. of Abington Tp., Pa. v. Schempp*, 374 U.S. 203 (1963).  The Establishment Clause, at the very least, prohibits the government from appearing to take a position

on questions of religious belief or from making adherence to a "non-sectarian" religion relevant in any way to a person's standing in the political community. *County of Allegheny v. American Civil Liberties Union Greater Pittsburgh Chapter*, 492 U.S. 573, 109 S. Ct. 3086, 106 L. Ed. 2d 472 (1989). Neither can the Navy create a religious test for office, designed to criminalize and remove chaplains who fail that religious test by praying publicly "in Jesus name" outside of Sunday chapel.

The First Amendment's prohibition of laws respecting an establishment of religion has been described as resting on the belief that a union of government and religion tends to destroy government and to degrade religion, and upon an awareness of the historical fact that governmentally established religions and religious persecutions go hand in hand. The First Amendment was added to the Federal Constitution to stand as a guarantee that neither the power nor the prestige of the Federal Government would be used to control, support, or influence the kinds of prayer the American people can say—that the people's religions must not be subjected to the pressures of government for change each time a new political administration is elected to office. *Engel v. Vitale*, 370 U.S. 421 285 (1962).

Defendant ignores the Constitutional aspects of this complaint in making an argument that the Administrative Procedure Act would somehow apply in this matter and make all of the alleged constitutional violations by the Navy fall under the Navy's own rule maker's purview. The state actor is not entitled to violate the constitution and then make a self-conducted determination of whether he violated the Constitution in an administrative proceeding. That is an argument already rejected by the Supreme Court. *Weinberger v. Salfi*, 422 U.S. at 762.

Plaintiff alleges violations of the Religious Freedom Restoration Act, Religious Discrimination, violations of the Free Exercise Clause of the First Amendment, and other violations

of the First Amendment. See, Complaint, pg. 19-24. Defendant ignores those allegations. That apparently is a concession that Plaintiff's allegations are not covered by the APA, which makes the rest of Defendant's arguments irrelevant and inapplicable.

If, as Chaplain Klingenschmitt alleges, the Navy has never in its history separated a Chaplain who had a valid ecclesiastical endorsement, as Chaplain Klingenschmitt did at all times, on the grounds that he has "lost" his endorsement, which he never did,  then the Navy is not being forthcoming in the reasons that it is seeking to separate Chaplain Klingenschmitt. There are numerous emails that are in the Navy's possession and are already gathered that will shine light on this matter.

Expedited discovery will permit this Court to make a reasoned decision if the Navy is separating a validly endorsed Chaplain for the first time in its history for reasons other than those that violate the Constitution. Plaintiff requests that his motion be granted.

## 2. Expedited Discovery is "Appropriate" for Constitutional Litigants being Terminated

Defendant alleges Plaintiff's discovery request is inappropriate.[2] First, expedited discovery is often granted in cases where injunctions are pending. *See e.g. Investment Co. Institute v. Federal Deposit Ins. Corp.*, 728 F.2d 518, 521 (D.C.Cir. 1984) ("The district court denied FDIC's ensuing request for a protective order, and granted all ICI's requests for expedited discovery."); *Central Freight Lines Inc. v. APA Transport Corp.*, 322 F.3d 376, 380 (5th Cir. 2003) (District Court granted motion for expedited discovery); *TKR Cable Co. v. Cable City Corp.*, 267 F.3d 196, 198 (3rd Cir.2001) (same).

Chaplain Klingenschmitt alleges that the Navy passed a regulation to suppress protected

---

[2]  Def. Opp., pg. 2.

10

religious speech.  Discovery is required because "[i]n determining whether the purpose of a law is to suppress protected speech, a court may examine a wide variety of [objective] materials, including the text of the statute [or regulations], any preamble or express legislative findings associated with it, legislative history, and studies and information of which legislators [or Naval officers] were clearly aware."  *Zibtluda, LLC v. Gwinnett County, Ga. ex rel. Bd. of Com'rs of Gwinnett County*, 411 F.3d 1278, 1288 (11th Cir. 2005); *citing Colacurico v. City of Kent*, 163 F.3d 545, 552 (9th Cir.1998).

The Navy's emails and documents relating to Chaplain Klingenschmitt indicate Navy actions to restrict his public religious speech[3] and force their secular religion upon him to stop him from praying in uniform and seeking to stop the Navy's establishment of their religion.  The Navy sought to separate Chaplain Klingenschmitt because of these actions "concerning DOD and Navy Religious Ministry policies [to establish a pluralistic religion].  *See e.g.*, Mary 22, 2006 Email from VADM Harvey to ADM Michael Mullen "Possible Involuntary Release of Reserve Chaplain from Active Duty," pg. 2 ("This officer is the individual who conducted a hunger strike in front of the White House several months ago and has engaged in other actions concerning DOD and Navy Religious Ministry policies.")  A copy is attached here as Exhibit "E."

The email reveals a Navy policy to punished Chaplain Klingenschmitt after he blew the whistle on the Navy's establishment of a religion and its orders on how he should say his prayers and sermons.  The email also reveals that the Navy was aware that SECNAVINST 1730.7C contradicted the spirit of the Supreme Court's ruling in *Lee vs. Weisman*, but enforced it against Chaplain

---

[3]  The Navy sought to separate Chaplain Klingenschmitt involuntarily on March 22, 2006, just after he prayed in the name of Jesus in public.  A copy of the Involuntary Release from Active Duty ICO Lt. Gordon J. Klingenschmitt is attached here as Exhibit "D."

Klingenschmitt when prosecuting him at the court-martial they later relied upon to seek separation here.

Congress later ordered SECNAVINST 1730.7C rescinded by the Navy. A copy of the Congressional order is attached here as Exhibit "F."

### 3. The Government Should Not be Permitted to Hide Their Constitutional Violations

The Navy argues that "[t]he Secretary [of the Navy] intends to file a dispositive motion that could resolve the entire case without any discovery."[4] There is a real and substantial threat to all Navy Chaplains under current Navy regulations including the 1998 prayer regulation that they could also be prosecuted for praying the name of Jesus. *Presbytery of N.J. v. Florio*, 40 F.3d 1454, 1468 (3d Cir.1994) (finding real and substantial threat of prosecution where a state statute arguably could be applied to plaintiff's religiously-motivated speech, and the state pointedly refused to forswear prosecution of religiously motivated speakers). A copy of the 1998 Prayer Regulation is attached here as Exhibit "G." This Admiral's Order is still in effect and the Navy has not disavowed it in any way.

For cases where there are constitutional violations, a dispositive motion would be premature without discovery. *Paquin v. Federal Nat. Mortg. Ass'n*, 119 F.3d 23, 28 (D.C.Cir. 1997) ("Because we believe the district court erred in not granting Paquin's Rule 56(f) motion, we reverse the district court's grant of summary judgment and remand for further discovery")

Thus, discovery is required prior to any dispositive motion being considered.

### 4. The Navy Fails to Provide the Court with The Proper Scope of Discovery

The Navy claims that the Plaintiff's request for discovery is overbroad. However, the Navy

---

[4] Def. Opp., pg. 3.

does not inform the Court of what discovery is unnecessary for this Court to make a decision of whether Chaplain Klingenschmitt is facing persecution for exercising his Constitutional rights. The scope of discovery should be limited to the factors necessary for a determination of whether an injunction is necessary. Chaplain Klingenschmitt seeks only expedited discovery concerning his likelihood of success on the merits and irreparable injury in the absence of an injunction. *See Doran v. Salem Inn, Inc.*, 422 U.S. at 931.

Discovery is required because the Secretary of the Navy is only permitted to separate Chaplains in very limited circumstances.

Expedited discovery is required because there seems to be contradictions in the way Chaplain Klingenschmitt's challenges are being handled by the Navy. First the Navy claims Chaplain Klingenschmitt is being separated pursuant to DoDI 1304.28 para 6.5. However, the Navy's action would violate their regulation SECNAVINST 1900.10a, which specifically forbids separation due to loss of ecclesiastical endorsement when other factors are additionally considered: "The Chief of Naval Personnel shall initiate processing under this instruction when notified by the Chief of Chaplains that an ecclesiastical endorsing agency has withdrawn its endorsement. *Processing under this instruction is authorized only when removal of ecclesiastical endorsement is the **sole cause** for consideration for separation*. When separation is appropriate for reasons other than the removal of ecclesiastical endorsement, processing under this instruction is not authorized except under unusual circumstances when recommended by the Chief of Naval Personnel and authorized by the Secretary of the Navy." (Underline added). Exh. A, SECNAV 1900.10A.

SECNAVINST 1900-10A(4) provides:

4. Action by the Secretary of the Navy [concerning ecclesiastical

13

endorsements].

The Secretary of the Navy may take action as follows:

*a. Continue the chaplain's service upon receipt of a new ecclesiastical endorsement, certification of professional qualifications by the Chief of Chaplains and upon recommendation by the Chief of Naval Personnel*;

b. Approve voluntary retirement, if requested;

c. Accept a voluntary resignation, if tendered, and separate the officer with an honorable discharge;

d. Reappoint an officer in a competitive category other than the Chaplain Corps upon recommendation by the Chief of Naval Personnel;

e. Involuntarily separate the officer with an honorable discharge by reason of removal of ecclesiastical endorsement if the actions in subsections 4.a., 4.b., 4.c. or 4.d. are not requested or approved.

The Navy has stated that they plan to separate Chaplain Klingenschmitt for more than just the loss of his ecclesiastical endorsement. They allege that there are three causes: (1) the 2006 fitness report, (2) the special-court martial conviction, and (3) the loss of support from his chain of command. Thus there is tension between the Navy's position and their attorneys' arguments because separation is specifically barred pursuant to SECNAVINST 1900.10a, since other "causes for consideration" have been cited by the Navy.

In addition, there has been no determination communicated that there are "unusual circumstances" in this case - **other than Chaplain Klingenschmitt demanded his constitutional rights.** The Navy's argument that this separation is routine business which is "consistently enforced" and "automatically triggered" and claims 45 other chaplains have endured the same routine process (yet none of the Chaplains were ever denied recertification or separated) does not sound in "unusual circumstances." Indeed, the Chief of Naval Personnel has rejected requests to adjudicate whether this is an "unusual circumstance." October 16, 2006 Letter from Chaplain Klingenschmitt to the Chief of Naval Personnel. A copy is attached here as Exhibit "H."

14

Thus, the Navy's argument that they were required to separate Chaplain Klingenschmitt when he switched ecclesiastical endorsers has no support in their regulations, Navy policies or past Navy practices. The Navy appears to desire to keep relevant and necessary evidence from the Court until after they separate Chaplain Klingenschmitt. If Chaplain Klingenschmitt's allegations are correct, the Navy is separating him in violation of the Constitution, which will chill others from exercising their rights. Thus, expedited discovery is required for this Court to make a reasoned decision concerning Chaplain Klingenschmitt's motion for an injunction.

The Navy admits it has already gathered several thousand documents that they could turn over. A copy of the July 24, 2006 letter from F.T. Katz to Gordon J. Klingenschmitt is attached here as Exhibit "I."

**WHEREFORE**, Klingenschmitt respectfully requests that the motion be granted and the Court issue an expedited scheduling order. In addition, Klingenschmitt requests the Defendant be ordered to comply with initial disclosures immediately, and reasonably delay his separation until at least 60 days after the discovered evidence can be presented to this court for due consideration.

Respectfully submitted,


  /s/ William P. Farley
Law Office of William P. Farley, P.C.
1350 Connecticut Avenue, N.W.
Suite 200
Washington, D.C. 20036
(202) 775-1550
(202) 775-0008 (fax)
farley@dccounselor.com
Counsel for Plaintiff

15

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing Plaintiff's Reply in Support of his Motion For Expedited

Discovery was served on all parties by delivering a copy thereof via the Court's electronic filing, on

this 1st day of December 2006 to:


Michael P. Abate
Trial Attorney
United States Department of Justice
Federal Programs Branch
PO Box 883
Washington, DC 20530
Tel: (202) 616-8209
Fax: (202) 616-8470
michael.abate@usdoj.gov



  /s/ William P. Farley
Law Office of William P. Farley, P.C.
1350 Connecticut Avenue, N.W.
Suite 200
Washington, D.C. 20036
(202) 775-1550
(202) 775-0008 (fax)
farley@dccounselor.com
Counsel for Plaintiff

DEPARTMENT OF THE NAVY
Office of the Secretary
Washington, DC 20350–1000

SECNAVINST 1900.10A
N097
20 May 1993

SECNAV INSTRUCTION 1900.10A

From: Secretary of the Navy
To:   All Ships and Stations

Subj: ADMINISTRATIVE SEPARATION OF CHAPLAINS UPON REMOVAL OF PROFESSIONAL QUALIFICATIONS

Ref:  (a) DoD Directive 1332.31 of 16 Oct 81 (NOTAL)
      (b) DoD Directive 1304.19 of 22 Nov 88 (NOTAL)
      (c) SECNAV 1920.6A
      (d) SECNAVINST 1210.5A
      (e) SECNAVINST 1811.3M
      (f) SECNAVINST 1820.2

Encl: (1) Procedures for the Administrative Separation of Chaplains Upon Removal of Professional Qualifications

1. **Purpose.** To implement the provisions of reference (a), and establish policy and procedures for the administrative separation of chaplains upon loss of professional qualific-ations through the removal of ecclesiastical endorsement.

2. **Cancellation.** SECNAVINST 1900.10.

3. **Applicability.** This instruction applies to all persons appointed as regular or reserve chaplains in the Navy.

4. **Policy.** According to reference (b), an applicant for the chaplaincy must receive endorsement from an ecclesiastical endorsing agency as a prerequisite to appointment as a chaplain. An endorsement by an ecclesiastical endorsing agency validates a chaplain's professional qualifications. A chaplain whose endorsement is withdrawn is no longer professionally qualified to serve as a chaplain; and must reestablish professional qualification to serve as a chaplain, seek redesignation in another competitive category or be separated from the Department of the Navy.

5. **Responsibilities**

a. The Chief of Naval Personnel shall process a chaplain who loses ecclesiastical endorsement under the procedures set forth in enclosure (1).

b. The Chief of Chaplains shall:    (R

(1) Notify the Chief of Naval personnel when an ecclesiastical endorsing agency with-draws its endorsement of a chaplain.

(2) Recertify the chaplain's professional qualification upon receipt of a new ecclesiastical endorsement.

(3) Recommend to the Chief of Naval Personnel, based on the needs of the Navy, the chaplain's continuance.

F. B. KELSO, II
(Acting)

Distribution:
SNDL Parts 1 and 2
MARCORDS Codes PCN 71000000000 and 71000000100

Chief of Naval Operations
(N09B34)
Navy Department
Washington DC 20374–5074 (165 copies)]

SECNAV/OPNAV Directives Control Office
Washington Navy Yard Building 200
901 M Street SE
Washington DC 20374–5074 (60 copies)

Stocked:
Naval Aviation Supply Office
Physical Distribution Division Code 103
5801 Tabor Avenue

SECNAVINST 1900.10A
20 MAY 1993

**PROCEDURES FOR THE ADMINISTRATIVE SEPARATION OF CHAPLAINS
UPON REMOVAL OF PROFESSIONAL QUALIFICATIONS**

1.   Initiation of Processing.  **The Chief of Naval Personnel
shall initiate processing under this instruction when
notified by the Chief of Chaplains that an ecclesiastical
endorsing agency has withdrawn its endorsement.  Processing
under this instruction is authorized only when removal of
ecclesiastical endorsement is the sole cause for
consideration for separation.  When separation is
appropriate for reasons other than the removal of
ecclesiastical endorsement, processing under this
instruction is not authorized except under unusual
circumstances when recommended by the Chief of Naval
Personnel and authorized by the Secretary of the Navy.
Separation for reasons other than removal of ecclesiastical
endorsement will be processed under reference (c).**

2.   **Notification.  When processing under this instruction is
initiated, the Chief of Naval Personnel shall notify the
chaplain in writing of the rights stated below:**

   a.  **To legal counsel**                                              (R

        (1) **Officers on the active-duty list have a right to
consult with military counsel or to retain civilian counsel
at their own expense, and to submit statements in response
to notice.**

        (2) **Reserve officers not on the active-duty list
have the same rights to counsel mentioned in subparagraph
2.a.(1), except that when Judge Advocate resources are not
available, the commanding officer of the unit to which the
officer is attached shall instead appoint a non-lawyer
counsel.  A non-lawyer counsel shall be a commissioned
officer with no prior involvement in the circumstances
leading to the basis of the proposed separation, and no
involvement in the separation procedures.  The non-lawyer
counsel shall be encouraged to seek advice by telephone or
other means from any Judge Advocate on any legal issue
relevant to the case whenever practicable.  When a non-
lawyer counsel is appointed, the appointing letter shall
state the reasons why qualified counsel is not available and
that the needs of the naval service warrant processing
before qualified counsel will be available.  A copy of the
appointing letter will be attached to each copy of the
written notice of separation processing.**

Enclosure (1)

SECNAVINST 1900.10A
20 MAY 1993

(3) An officer's use of civilian counsel does not eliminate the requirement to furnish military counsel. Consultation with civilian counsel shall not delay orderly processing in accordance with this instruction.

b.  To submit statements in response to the notification.

c.  To receive a copy of the ecclesiastical endorsing agent's statement withdrawing endorsement.

d.  To exercise the following:

(1) Seek another ecclesiastical endorsement under reference (b). The chaplain must submit a new ecclesiastical endorsement within 60 days of notification of withdrawal. The Chief of Naval Personnel may grant an extension upon reasonable justification. If the chaplain obtains a new endorsement, the Chief of Chaplains will consider the needs of the Department of the Navy before recommending the chaplain's continuance to the Chief of Naval Personnel.

(2) If on the active-duty list, apply for reappointment in a competitive category other than the Chaplain Corps under reference (d). If on inactive duty, Naval Reserve chaplains may apply for reappointment only in a competitive category in which they have served prior to appointment in the Chaplain Corps, or to a designator that they are fully qualified to hold. Such reappointments are based on the officer's understanding that the officer shall be discharged voluntarily as a chaplain on one day and appointed for non-chaplain duties on the next day.

(3) Apply for voluntary retirement, if eligible, under references (e) or (f).

(4) Tender a voluntary resignation under reference (c).

3.  _Response_.  The chaplain shall have 10 working days to respond in writing to the notification. The Chief of Naval Personnel may grant an extension to the officer if a request is submitted in a timely manner and demonstrates reasonable justification. If the chaplain states intent to pursue action under subsection 2.d., the Chief of Naval Personnel shall notify the chaplain promptly in writing of the date and manner by which such request must be submitted. Failure

Enclosure (1)                    2

SECNAVINST 1900.10A
20 MAY 1993

by the chaplain to respond to this notification is
sufficient reason to complete processing for separation
under the provisions of section 4.

4.  Action by the Secretary of the Navy.  The Secretary of
the Navy may take action as follows:

a.  Continue the chaplain's service upon receipt of
a new ecclesiastical endorsement, certification of
professional qualifications by the Chief of Chaplains and
upon recommendation by the Chief of Naval Personnel;

b.  Approve voluntary retirement, if requested;

c.  Accept a voluntary resignation, if tendered, and
separate the officer with an honorable discharge;

d.  Reappoint an officer in a competitive category other
than the Chaplain Corps upon recommendation by the Chief of
Naval Personnel;

e.  Involuntarily separate the officer with an honorable
discharge by reason of removal of ecclesiastical endorsement
if the actions in subsections 4.a., 4.b., 4.c. or 4.d. are
not requested or approved.

3                    Enclosure (1)

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

CHAPLAIN GORDON JAMES )
KLINGENSCHMITT )
                                                    )
              Plaintiff,                            )
                                                    )
       v.                                           )        Civil Action No. 06-01832 (HHK)
DONALD C. WINTER,                                   )
In his Official Capacity as Secretary              )
DEPARTMENT OF THE NAVY                              )
                                                    )
              Defendant.                            )
                                                    )

## Declaration of Harald R. Leuba, PhD

Pursuant to 28 U.S.C. § 1746, I, Harald R. Leuba, declare as follows:

1. For the past six years I have been designated as an expert in what has come to be called "the Navy Chaplain's litigation". This includes the presentation of statistical analysis in *Larsen v. United States Navy*, Case No.02cv02005, presently pending in the United States District Court for the District of Columbia, and *Adair v. England*, Case No. 00cv00566, presently pending in the United States District Court for the District of Columbia. My particular expertise lies at the interface of statistical analysis and industrial psychology. My c.v. is attached.

2. A few months ago I was provided with a copy of nearly 2000 pages of decision memoranda and work sheets prepared by, or developed for, the Chaplain Appointment and Recall Eligibility (C/A/R/E) Advisory Group. This group is charged with advising the Chief of Chaplains as he meets his obligations under OPNAVINST 1120.9.

3. Paragraph 5.b.(3) of OPNAVINST 1120.9. requires the Chief of Chaplains to "notify the Chief of Naval Personnel (CHNAVPERS) when an ecclesiastical endorsing agency withdraws its endorsement of a chaplain or when the Chief of Chaplains withdraws its designation of a chaplain."

4. Parts (a) and (b) of paragraph 5.b.(3) of OPNAVINST 1120.9 specify the Chief of Chaplains' duty to "(a) Recertify a chaplain's professional qualification upon receipt of a new ecclesiastical endorsement; and (b) Recommend to CHNAVPERS a chaplain's continuance based on needs of the Navy."

5. When I examined the 2000 pages of C/A/R/E records, I concluded (see Exhibit 28) that those records dealt with roughly 97% of all the candidates and chaplains who applied to the C/A/R/E Advisory Group between 1985 and 2005.

6. Table 1 is a listing of all the endorsement change requests contained in the database which the Navy prepared from this collection of records.

7. As a statistician I am struck by two facts.

(A) First, in this set of records, the C/A/R/E Board seems to have done exactly what it was required to do: Upon receipt of a new ecclesiastical endorsement for the affected chaplain, the Group recommended to the Chief of Chaplains that he "Recertify a chaplain's professional qualification."

(B) Second, in contrast to Ms. Berto's declaration (Exhibit 4) which states that there were 45 chaplains in her records who requested a change of endorser, the Navy's C/A/R/E database prepared for *Larsen* only shows half that number, 22.

8.. The conclusion I draw from the first fact here is that the C/A/R/E Advisory Group is limited by its official charter to certify (yes or no) whether a candidate's credentials meet minimum requirements (see paragraph 4 of the OPNAVINST 1120.9.); this Instruction says the C/A/R/E group has to *validate* the credentials (i.e. make a "determination that the candidate is qualified"); C/A/R/E is not required or directed to *rank* the candidates, nor judge them relative to other candidates, although that is certainly an inference re their duties, which they seem to have adopted.

9. The fact that the Group "approved", i.e. recommended that the Chief of Chaplains "recertify" every applicant, signals that if, now after 20 years, a particular petition to change endorsers is rejected, this is a statistical outlier, in the fullest sense of that word.   Chaplain Klingenschmitt's rejection is statistically significantly "out of range". It could not have occurred by random chance. One rejection in 23 "tosses" of a random coin is statistically significant beyond two standard deviations even if the coin is 50/50. One new rejection after 22 successful applications is beyond reasonable doubt in any statistical sense; one may assume that the rejection was motivated by something other than the stated reasons.

10. One may not assume that his rejection was based on the "escape clause" in (b) "Recommend to CHNAVPERS a chaplain's continuance based on needs of the Navy". The "needs of the Navy" cannot change if a Chaplain changes endorser - unless the Navy can demonstrate that it has a need for some denominations and no need for others - which would be a clear demonstration of proscribed denominational preference. Nor, can the "needs of the Navy" suddenly "require" one fewer chaplain while simultaneously lamenting a shortage of qualified applicants.

11. The conclusion I draw from the second fact here, that Ms. Berto swears that the C/A/R/E records back to 1983 contain 45 instances of a requested change of endorser is that, as usual with the Navy's data, something is missing, or misunderstood. Either there were almost as may requests for a change in ecclesiastical endorsement in the two years 1983 and 1984 as in the 20 years since then, or only half of the requests were taken up "formally" in a C/A/R/E decision memorandum [e.g. before 1995 maybe the C/A/R/E Advisory Group dealt with the matter "internally", perhaps as a "matter of course".] In any case there is almost certainly some sort of definitional variable at work "between the lines". It is possible that Ms. Berto counted wrong, or it is possible that the Navy has not produced nearly as many records as it could have. Neither of those two options would signal

2

conscientious care (good faith).

I declare and certify under the penalties of perjury, that the foregoing (a) is my work, (b) that I am competent to analyze this data, and (c) that the conclusions represented here are mine, true, complete, correct , accurate and scientifically certain to the best of my knowledge and belief.

Executed:      December 1, 2006
               Potomac, Maryland, USA

Harald R. Leuba, PhD

**CV**
**Relevant Education and Experience**
**Harald R. Leuba, PhD**

## Education:

| | | |
|---|---|---|
| 1958 | B.S. Mathematics and Physics | New Mexico State University, Las Cruces, NM |
| 1960 | Graduate Study - Mathematics | University of Washington, Seattle, WA |
| 1963 | M.S. Psychology and Statistics | George Washington University, Washington, D.C. |
| 1964 | M.A. Psychology | Johns Hopkins University, Baltimore, MD |
| 1965 | PhD Psychology and Operations Research | |
| | | Johns Hopkins University, Baltimore, MD |
| 1966 | Post Doctoral Research - Quantification of Human Performance | |
| | | National Science Foundation Fellowship |
| | | Johns Hopkins University, Baltimore, MD |
| 1971 | National Security Seminar | Industrial College of the Armed Forces, Fort McNair, Washington, DC |
| 1972 | Resident Executive Program | Federal Executive Institute, Charlottesville, VA |

## Experience:

| | | |
|---|---|---|
| 1954-1958 | Co-op Engineer | **White Sands Missile Test Facility**, White Sands NM |
| 1958-1960 | Junior Engineer | **Boeing Airplane Company**, Seattle, WA |
| 1958-1960 | Instructor, Statistics | **Seattle University**, Seattle, WA |
| 1960-1967 | Mathematician | **ARINC Research Corporation**, |
| | Human Factors Engineer | Washington, DC |
| | Operations Research Engr | etc |
| | Group Supervisor | |
| | Senior Scientist/OpsRes | ARINC Research Corporation, Annapolis, MD |
| 1964-1967 | Associate Professor | **Johns Hopkins University**, Baltimore, MD |
| | Human Engineering | |
| | Statistics & Experimental Design | |
| 1967-1975 | Operations Research Analyst | **Office of the Secretary of Defense**, |
| | Manpower Analyst | Arlington, VA |
| | NATO Analyst | **Office of the Secretary of Defense** |

|  | Director, Support Utilization Division |  |
|---|---|---|
|  | Director, Nuclear Weapons and Planning |  |
| 1970-71 | Congressionally Required Study |  |
|  | Leader,  Analysis of Navy |  |
|  | Training Activities in Culebra |  |
|  | and Vieques, PR |  |
| 1973-1974 | Presidential Executive Interagency Detail |  |
|  | Leader- Task Force on | **U.S. Civil Service Commission** |
|  | Performance Evaluation |  |
| 1975-1976 | Program Manager | **Enviro Control Incorporated,** Prime Contractor |
|  | Smoking & Health | to **National Cancer Institute**, Rockville, MD |
| 1976-1977 | Vice President | **Smithsonian Institution**, Washington, DC Science Information Exchange |
| 1977-1979 | Vice President, Energy | **Evaluation Research Corporation**, Falls Church, VA |
| 1979-1992 | Director, Resource Development | **Jack Faucett Associates**, Bethesda, MD |
| 1980-1981 | Senior Scientist | **Doty Associates**, Rockville, MD |
| 1980-Present | President/CoFounder | **CONTEXT**, Washington, DC |
|  | Consultant/Expert Witness on |  |
|  | Environmental Analysis |  |
|  | Data Validation and Statistical Analysis |  |
|  | for |  |
|  | **Superfund Response Management** |  |
|  | **The US Navy** |  |
|  | **The US General Accounting Office** |  |
|  | **The US Department of Commerce** |  |
|  | **Edison Electric Institute** |  |
|  | **Logistics Management Institute** |  |
|  | **Oak Ridge National Laboratory** |  |
|  | **Federal Mine Safety and Health Review Commission** |  |
|  | **Consumer Product Safety Commission** |  |
|  | **National Bureauy of Standards** |  |
|  | **National Paint and Coatings Association** |  |
|  | **National Bottled Water Association** |  |

and Licensed General Contractor        **The House Doctor**
                    Remodeling             Maryland,
                    Endless Pools          Virginia and the
                    Four Seasons Sunrooms  District of Columbia

## Minor Legal Experience

Plaintiff and Defendant in Civil Court        Montgomery County
Jury Duty                                     Alexandria City
                                              Montgomery County
Expert Witness re Navy Training Activities in Puerto Rico
Expert Witness re Superfund Activities at Acme Solvent Recovery
                                              Lowry Landfill (Denver, Colorado)
                                              Smith Farm (Louisville, Kentucky)
Indexer for Administrative Law Decisions of Federal Mine Safety and Heath Review
                                              Commission.
Member and Chair                              Montgomery County Animal Matters
                                              Hearing Board

## Major projects of relevance to this Litigation:

Manpower Requirements studies in the Pentagon (including Navy Manpower)
Special Project Officer - re Marine Chaplains in Vietnam
Headquarters and Command and Control studies in the Pentagon
        (Including a review for SECDEF of ALL headquarters world wide)
Data Validation studies for Department of Energy and Oak Ridge National
        Laboratories
of all Federal Data systems related to US Energy supply, use and conservation
Data Forensics (circumstance reconstruction) for Litigation Attorneys in Superfund
PRP groups
Performance Evaluation Task Force with US Civil Service Commission (one platform
        was a Navy facility)
Officer Efficiency Report review in the Pentagon - for DOC Cooke
Reviewing and Indexing the Decisions of the Federal Mine Safety and Health Review
Commission
Information Theory applications to data uncertainty, and reconstruction of
information sets based on data structure and number rules.
Regression and statistical analysis of aircraft reliability and maintainability (ARINC)

Statistical analysis of aircraft accidents (for Boieng Airplane Company)
Data collection and statistical analysis for all energy production, world wide (DOD)

**Expert Declarations in this matter:**

A. Declaration of Harald R. Leuba, in The United States District Court for the District of Columbia, Case Number 1:99CV002945(RMU), in the matter of Chaplaincy of Full Gospel Churches v The Honorable Richard J. Danzig, et. al., ~~10~~ 15 June 2000.

B. Declaration of Harald R. Leuba, in The United States District Court for the District of Columbia, Case Number 1:99CV002945(RMU), in the matter of Chaplaincy of Full Gospel Churches v The Honorable Gordon R. England, 12 May 2002.

C. Declaration of Harald R. Leuba, United States District Court, Southern District of California, Case No. 99cv2272-TW (LSP) in the matter of Lieutenant Patrick M. Sturm v The United States Navy, 18 May 2002.

D. Declaration of Harald R. Leuba, United States District Court, Southern District of California, Case No. 99cv1579 in the matter of Ronald Wilkins v United States of America, et. al., 29 April 2003.

E. Supplemental Expert Opinion of Harald R. Leuba, United States District Court, Southern District of California, Case No. 99cv1579 in the matter of Ronald Wilkins v United States of America, et. al., 12 October 2003.

F. Addendal Declaration of Harald R. Leuba, United States District Court, Southern District of California, Case No. 99cv1579 in the matter of Ronald Wilkins v United States of America, et. al., 17 February 2005.

G. Addendal Declaration of Harald R. Leuba, United States District Court for the District of Columbia,  Case No. 99cv0028945(RMU)  in the matter of Chaplaincy of Full Gospel Churches v The Honorable Gordon R. England, 31 March 2005.

H. Reclama of Harald R. Leuba, United States District Court, Southern District of California, Case No. 99cv1579 IEG (BLM) in the matter of Ronald Wilkins v United States of America, et. al., 7 April 2005.

I.    Compendium Declaration of United States District Court, Southern District of California, Case No. 99cv1579 IEG (BLM) in the matter of Ronald Wilkins v United States of America, et. al., 9 June 2005

J.    Predicting Board Decisions from the Navy's Board Assignments - an Information Theory Supplement to - the Compendium Declaration of Harald R. Leuba, PhD in the United States District Court for the District of Columbia, Case No. 99cv0028945(RMU) in the matter of Chaplaincy of Full Gospel Churches v The Honorable Gordon R. England, 5 August 2005

K.    Codicil Declaration, A Further Look at the Correlation between the Denomination of Promotion Board Members and the Promotion Probabilities of Candidates with "Matching" Denominations, in the United States District Court for the District of Columbia, Case No. 99cv0028945(RMU) in the matter of Chaplaincy of Full Gospel Churches v The Honorable Gordon R. England, 12 August 2005

L.    Leuba, Harald R., <u>Declaration: The Question of Denominational Preference in U.S.Navy Chaplain Corps' Accessions</u>, United States District Court for the District of Columbia, Case No. 02CV02005 in the matter of Rev. Charles E. Larsen, et al., v The United States Navy, et al. 3 October 2005. [Withdrawn, see ¶1 here.]

M.    Leuba, Harald R., <u>Appendage Declaration: The Question of Denominational Preference in U.S. Navy Chaplain Corps' Accessions: An Extension to a prior Statistical Examination</u> United States District Court for the District of Columbia, Case No. 02CV02005 in the matter of Rev. Charles E. Larsen, et al., v The United States Navy, et al. 24 November 2005.

N.    Rebuttal, Reproval and Reconciliation - Explicating the Apparent Conflicts Between Dr. Siskin's Data Presentations and Mine, Declaration of Harald R. Leuba, PhD in the United States District Court for the District of Columbia, Case No. 99cv0028945(RMU) in the matter of Chaplaincy of Full Gospel Churches v The Honorable Donald C. Winter, et al. 21 June 2006

O.    Declaration Withdrawal and Correction, Declaration of Harald R. Leuba, PhD in the United States District Court for the District of Columbia, Case No. 02CV02005 in the matter of Rev. Charles E. Larsen, et al., v The United States Navy, et al. 27 September 2006.

**TABLE 1**

**All Chaplains in the Navy's C/A/R/E Advisory Group database who requested a change of Endorser (1985-2005)**

| Record # | Bates # | Lineof | TI | Memo Date | Candidate | Request | | Recommendation | Decision |
|---|---|---|---|---|---|---|---|---|---|
| 144 | LAR01323 | 11 | 11 | 19-Jul-96 | Andraeas, Alan | CHANGE | from AG to Charismatic Epis. | change approved | CHY |
| 5030 | LAR01323 | 10 | 11 | 19-Jul-96 | Lewis, Kenneth | CHANGE | from UM to Charismatic Epis. | change approved | CHY |
| 4996 | LAR01330 | 10 | 10 | 31-May-96 | Han, Jefferey T. | CHANGE | from Evang Presby to Charismatic Epis | Change Approved | CHY |
| 1038 | LAR01383 | 5 | 5 | 13-Feb-97 | Cayangynag, Jerome | CHANGE | from Southern Baptist to Charismatic Episcopal | change approved | CHY |
| 5124 | LAR01383 | 4 | 5 | 13-Feb-97 | Pelikan, Philip | CHANGE | from Foursquare Gospel to Charismatic Episcopal | Change Approved | CHY |
| 5088 | LAR01390 | 7 | 7 | 16-Oct-96 | Hogg, Michael S. | CHANGE | from CGCT to PUSA | change approved | CHY |
| 5446 | LAR01392 | 5 | 5 | 17-Sep-98 | McGarthy, Charles | CHANGE | from Southern Baptist Convention to the Cooperative Baptist Fellowship | Change Approved | CHY |
| 5448 | LAR01392 | 4 | 5 | 17-Sep-98 | Pope, James J. | CHANGE | from SB to Co-operative Baptist Fellowship | Change Approved | CHY |
| 5396 | LAR01396 | 11 | 12 | 22-Jul-98 | Harwood, James | CHANGE | from SBC to Cooperative Baptist Fellowship | change approved | CHY |
| 5486 | LAR01421 | 2 | 3 | 16-Dec-98 | Williams, Randy | CHANGE | from SBC to PCA | Change Approved | CHY |
| 6190 | LAR01842 | 8 | 8 | 9-Jan-02 | Ortiz, Carlos | CHANGE | from SB to Reformed Epis | Approved | CHY |
| 6192 | LAR01842 | 7 | 8 | 9-Jan-02 | Pennell, Grady | CHANGE | from CMA to IFCA | Approved | CHY |
| 6196 | LAR01842 | 6 | 8 | 9-Jan-02 | Pope, Mylon D. | CHANGE | from W to CharEpis | Approved | CHY |
| 6352 | LAR01859 | 9 | 11 | 28-Aug-02 | Fornea, Stanley W. | CHANGE | from SB to EPIS | Approve Transfer | CHY |
| 6364 | LAR01859 | 10 | 11 | 28-Aug-02 | Spain, Mark | CHANGE | from SB to COOLBAPT | Approve Transfer | CHY |
| 6372 | LAR01861 | 4 | 4 | 9-Sep-02 | Jolly, William D. | CHANGE | from CMA to SDA | Approve Transfer | CHY |
| 6450 | LAR01877 | 5 | 5 | 30-Jan-03 | Taylor, Thomas | CHANGE | from RC to National Catholic Apostolic Church | Change Approved | CHY |
| 6526 | LAR01888 | 6 | 6 | 6-May-03 | McGuffin, Frederick | CHANGE | from SB to BGCT | Change Approved | CHY |
| 6528 | LAR01888 | 5 | 6 | 6-May-03 | McKay, Daniel | CHANGE | from SB to BGCT | Change Approved | CHY |
| 6896 | LAR01946 | 4 | 4 | 14-Mar-05 | Stallard, William | CHANGE | from SB to Cooperative Baptist | Change approved | CHY |
| 5648 | UNK doc 2 Navy data | | | 25-Aug-99 | McGaha, Robert K. | EFCA | from PUSA to EFCA | denom transfer approved | CHY |
| 5652 | UNK doc 2 Navy data | | | 25-Aug-99 | Unger, Steven | CB | from SB to Cooperative Baptist | denom transfer approved | CHY |



DEPARTMENT OF THE NAVY

OFFICE OF THE CHIEF OF NAVAL OPERATIONS
2000 NAVY PENTAGON
WASHINGTON, DC 20350-2000

OPNAVINST 1120.9
N097
20 Dec 2005

OPNAV INSTRUCTION 1120.9

From:  Chief of Naval Operations

Subj:  APPOINTMENT OF OFFICERS IN THE CHAPLAIN CORPS OF THE NAVY

Ref:   (a) DOD Instruction 1304.28 of 11 Jun 04
       (b) DOD Directive 1310.2 of 28 May 96
       (c) SECNAVINST 1000.7E
       (d) DOD Directive 1205.5 of 22 Apr 04
       (e) DOD Directive 1312.3 of 21 Oct 96
       (f) OPNAVINST 1210.5
       (g) DOD Directive 1304.19 of 11 June 04
       (h) SECNAVINST 1730.7B
       (i) SECNAVINST 1420.1 Series
       (j) SECNAVINST 5300.28C
       (k) NAVMED P-117, Manual of the Medical Department
       (l) 10 U.S.C.
       (m) OPNAVINST 1427.2
       (n) OPNAVINST 1427.1
       (o) SECNAVINST 1920.6B

Encl:  (1) Chaplain Candidate Program

1.  Purpose.  To delineate Department of the Navy (DON) policy,
responsibilities, and procedures for the appointment and recall
of chaplains under references (a) through (e).

2.  Cancellation.  SECNAVINST 1120.4A.

3.  Applicability.  This instruction applies to all persons
appointed as chaplains in the Regular or Reserve Component of
the Navy.  Processing initiated before the effective date of
this instruction will be continued pursuant to policy and
instructions in effect before that date.

    a.  Additional guidance on the transfer of Chaplain Corps
officers from other services into the Chaplain Corps of the Navy
is found in references (c) and (d).

OPNAVINST 1120.9
20 Dec 2005

b.  Additional guidance on the transfer of Chaplain Corps
officers into the Regular Component of the Chaplain Corps from
the Reserve Component and the transfer of Regular and Reserve
Component between the Line and the Chaplain Corps, or between
another Staff Corps, and the Chaplain Corps, is found in
reference (f).

4.  <u>Policy - Appointment of Chaplains</u>.  DON will ensure that
persons appointed as chaplains meet the minimum professional and
educational qualifications required by reference (g).
Authorized strength and grade levels in the Chaplain Corps shall
be maintained by recruiting Religious Ministry Professionals
(RMPs) of Religious Organizations (ROs) of the United States to
provide religious ministries under reference (h), to support the
annual 5-year promotion plan approved under reference (i), to
provide a base for an all-Regular career force, and to attain
authorized strength in the Reserve Component to meet approved
mobilization requirements.

a.  Requirements for newly-appointed officers on the Active
Duty List (ADL) sufficient to support an all Regular force will
be filled primarily through the Chaplain Candidate Program
authorized in enclosure (1).  Requirements, which cannot be
fully met by this source, will be met by direct appointment of
qualified religious ministry professionals.

b.  Requirements for officers on the ADL in career grades
that cannot be met by promotion will be supplemented by
voluntary recall to active duty of Chaplain Corps officers who
have not served previously on extended active duty.

c.  Requirements for officers on the ADL which cannot be met
by the preceding sources will be met by voluntary recall of
Chaplain Corps officers who have served previously on extended
active duty and by interservice transfer of chaplains from other
services.

d.  Requirements for Selected Reserve (SELRES) and
Individual Ready Reserve (IRR) officers will be filled primarily
by the transfer of officers from the ADL who have completed
their initial obligated service.  Requirements which cannot be
met from this source will be met by direct appointment of

OPNAVINST 1120.9
20 Dec 2005

qualified religious ministry professionals as Reserve officers of the Chaplain Corps on inactive duty or through the Chaplain Candidate Program.

5. <u>Action</u>

    a. Deputy Chief of Naval Operations (DCNO) (Manpower, Personnel, Training, and Education (N1/NT)) may approve entry grade credit and establish entry grades and dates of rank in compliance with this instruction.

    b. Chief of Chaplains shall:

        (1) Develop an annual accession plan to support authorized strength in the Chaplain Corps. There must be enough accessions to support the 5-year promotion plans for the ADL and Reserve Component and ensure that the promotion opportunity and flow necessary to meet authorized strength-in-grade requirements are maintained.

        (2) Certify professional qualifications and calculate entry grade credit based on these qualifications for DCNO (N1/NT).

        (3) Notify Chief of Naval Personnel (CHNAVPERS) when an ecclesiastical endorsing agency withdraws its endorsement of a chaplain or when the Chief of Chaplains withdraws its designation of a chaplain.

            (a) Recertify a chaplain's professional qualification upon receipt of a new ecclesiastical endorsement.

            (b) Recommend to CHNAVPERS a chaplain's continuance, based on needs of the Navy.

    c. Commander, Navy Recruiting Command (COMNAVCRUITCOM) shall determine a chaplain's grade and date of rank based on the criteria established in this instruction subject to the approval of DCNO (N1/NT).

6. <u>Policies and Procedures for Appointment of Regular and Reserve Officers in the Chaplain Corps</u>

    a. <u>Basic Qualifications for Appointment as a Chaplain</u>. To be eligible for appointment as a Chaplain Corps officer in either the ADL or Reserve Component, or for voluntary recall

OPNAVINST 1120.9
20 Dec 2005

from the Reserve Component to the ADL, the applicant must meet the following requirements:

(1) Citizenship. A Chaplain Corps appointee must be a citizen of the United States under reference (b).

(2) Age. Must be able to complete 20 years of active commissioned service by age 68. DCNO(N1/NT) may waive these restrictions for otherwise qualified applicants for appointment on the ADL or in the Reserve Component in the following instances:

(a) When there is a shortage against authorized strength in the ADL, which cannot be met through the Chaplain Candidate Program, direct appointments, voluntary recall from the Reserve Component, or by in-zone promotion under the annual 5-year plan.

(b) When there is a shortage against authorized strength in the Reserve Component which cannot be met by transfer of officers from the ADL, from the Chaplain Candidate Program, in-zone promotions under the annual 5-year promotion plan, or by direct procurement of qualified civilians who meet age requirements.

(c) When extraordinary circumstances cause such a waiver to be in the best interests of the Naval Service.

(d) When a gross inequity to the applicant would otherwise result. Before appointment, applicants who will be unable to complete 20 years of creditable service for retirement shall acknowledge the same in writing.

(3) Moral character. Must be of good moral character and of unquestioned loyalty to the United States as determined by interview and investigation. As prescribed under reference (j), no person who is alcohol and/or drug dependent, who currently abuses alcohol and/or drugs, whose pre-service abuse of alcohol and/or drugs indicates a proclivity to continue abuse in the service, or who has a record of any trafficking offenses shall be permitted to enter or be retained in the Chaplain Corps.

(4) Physical standards. Must meet the physical standards for service on active duty established by Chief, Bureau of Medicine and Surgery and approved by CNO. DCNO

OPNAVINST 1120.9
20 Dec 2005

(N1/NT) may grant waivers for physical defects that will not
interfere with the performance of active duty within the
guidelines of reference (k).

(5) Moral assent. Applicants shall affirm that, if
appointed, they shall abide by applicable laws, and all
applicable regulations, directives, and instructions of the
Department of Defense (DOD) and DON. This includes a
willingness to function in a pluralistic environment and to
support, both directly and indirectly, the free exercise of
religion by all members of the Naval service, their family
members, and other persons authorized to be served by the
chaplaincy.

(6) Ecclesiastical Endorsement. Applicants must have an
endorsement from a qualified Religious Organization (RO) as
specified in reference (a), enclosure (5) that verifies:

(a) The individual is a Religious Ministry
Professional (RMP) as defined in reference (a). An individual
endorsed to represent a RO and to conduct its religious
observances or ceremonies. An RMP is a fully qualified member
of the clergy for those Religious Organizations that have a
tradition of professional clergy or their equivalents. The RO's
endorsement verifies that an RMP is professionally qualified to
serve as a chaplain in the military and meets the graduate
education and religious leadership requirements of
reference (a).

(b) Two years of religious leadership experience for
an ADL appointment. Religious leadership experience shall be
compatible with the duties of RMPs in their respective RO and
relevant to the settings of military chaplaincy.

(c) An RMP's application shall include the
endorsement of the person's ecclesiastical credentials on
DD Form 2088, Statement of Ecclesiastical Endorsement as
provided in reference (a), enclosure (6).

(7) Education. The RMP will meet the requirements set
forth in reference (a), paragraph 6.1.5.

b. Examination of professional qualifications. The
professional qualifications of all applicants for appointment in
the Chaplain Corps, the Chaplain Candidate Program Officer
(CCPO) program, and transfers between active and inactive duty
shall be validated by the Chief of Chaplains with the assistance

OPNAVINST 1120.9
20 Dec 2005

of the Chaplain Appointment and Recall Eligibility (CARE)
Advisory Group.  This includes applicants for direct
appointments to active duty, direct appointment to inactive duty
in the Reserve Component, voluntary recall from the Reserve
Component to the ADL, interservice transfers, and superseding
applications from CCPOs to active or inactive duty.

(1) <u>Voluntary recall</u>.  To be eligible for voluntary
recall from the Reserve Component to the ADL, the applicant must
be a fully qualified RMP of a RO represented by a DOD-recognized
ecclesiastical endorsing agency under reference (g).  Recalled
officers will be recalled in the rank held in the Reserve
Component and will not have entry grade recomputed.

(2) <u>Examination procedure</u>.  The CARE Advisory Group
shall review an applicant's academic performance, graduate
theological education, professional experience, professional
reputation, interviews by a recruiting officer and a chaplain,
and letters of personal or professional recommendation; and
shall ensure that an ecclesiastical endorsement has been
submitted for each applicant.  This review must be completed
before recommending the applicant for appointment or recall and
prior to recommending the entry grade credit to be granted upon
appointment.  Once the examining body has examined and certified
the applicant's professional qualifications, DCNO (N1/NT) or
COMNAVCRUITCOM acting for DCNO (N1/NT) shall determine whether
the applicant is otherwise qualified for a commission as a
chaplain.  No applicant shall be appointed as a Chaplain Corps
officer without these determinations.

c.  <u>Entry grade credit</u>.  Entry grade and date of rank upon
appointment in the Chaplain Corps shall be based on the number
of years of entry grade credit awarded for prior active
commissioned service, advanced education, and professional
experience under reference (e).  Credit shall be granted subject
to the computation rules in paragraph 6d and as specified in the
following table:

**ENTRY GRADE CREDIT TABLE**

| Qualification | Credit |
|---|---|
| 1.  Commissioned service in any of the uniformed services on active duty or in an active status. | 1 year |
| 2.  Successful completion of graduate professional study validated by a Master of Divinity or equivalent degree under the criteria of paragraph 6a(7). | 3 years |

OPNAVINST 1120.9
20 Dec 2005

| | |
|---|---|
| 3.  Seven or more years of full-time practical experience in ministry following the completion of the educational requirements in paragraph 6a(7).  To be credited, the applicant must have accrued the experience as a fully qualified RMP of a RO.  The experience may include pastoral ministry, religious education, or other form of full-time religious vocation. | 1/2 year for each year not to exceed 1 year of credit |
| 4.  The DON will not normally grant entry grade credit for special experience or unique qualifications.  Assistant Secretary of the Navy (Manpower and Reserve Affairs) (ASN (M&RA)), considering the recommendations and supporting justification of DCNO (N1/NT), may waive this limitation on a case-by-case basis when there is a requirement that cannot be met within the guidelines of this instruction. | Maximum of 3 years of credit |

     d.  Limits and Computation of entry grade credit.  Entry grade credit shall be computed as follows:

          (1) A period of time or a qualification shall be counted only once.

          (2) Qualifying periods of less than one full year will be proportionally credited to the nearest day.

          (3) Credit will not be awarded for service as a warrant officer.

          (4) Graduates of the service academies will not be awarded credit for any service performed or education, training, or experience obtained before graduation from the academy concerned.

          (5) Entry grade credit will not be normally awarded for education, training, or experience obtained while on active duty or on inactive duty in an active status.  If the officer completes advanced education specified in reference (a) for initial appointment in less than the normal number of years, the officer may be given constructive credit for the difference between the normal number of years and the actual number of years taken.  Detailed guidance is furnished in reference (l), sections 533 and 12207.

OPNAVINST 1120.9
20 Dec 2005

(6) To obtain a high level of experience in the naval chaplaincy environment before entering the career force, total entry grade credit shall normally be limited to six years.  ASN (M&RA), considering the recommendations and supporting justification of DCNO (N1/NT), may waive this limit on a case-by-case basis when there is a requirement that cannot be met within the guidelines of this article.

(7) Because the recall of a Chaplain Corps officer from inactive duty is not an appointment, such officers are not entitled to additional entry grade credit.

(8) The total entry grade credit granted shall be no more than that required for the person to receive an entry grade of lieutenant commander.  This may be waived by Secretary of the Navy (SECNAV) in individual cases if there are significant reasons to appoint a person in a higher grade.  This is not applicable to the appointment of a Reserve commissioned officer as a Regular commissioned officer under reference (l).

   e.  Entry grade credit in a transition period.  This instruction provides credit to be awarded to individuals appointed in the Chaplain Corps from the effective date of this instruction.  There shall be no retroactive changes made as a result of this instruction to the number of years credit previously granted to officers in the Chaplain Corps before the effective date of this instruction.

   f.  Appointments.  A prospective Chaplain Corps officer will be appointed initially as a naval officer subject to the following guidance governing entry grade, date of rank, precedence, and application processing:

      (1) Entry grade.  A prospective Chaplain Corps officer shall be appointed in a grade based on total entry grade credit awarded.  The minimum entry grade credit required for each grade is equal to the promotion flow points prescribed in the approved annual 5-year promotion plan in effect at the time of the appointment.  Entry grade and date of rank of Chaplain Corps officers transferred from other services into the Chaplain Corps of the Navy shall be determined under references (c) and (d).

      (2) Date of rank.  When the minimum entry grade credit required for appointment in a given grade is granted, the date of rank shall be the date of appointment.  When entry grade credit is granted in excess of the minimum years required for

appointment in a given grade (but is less than the amount
necessary to justify the next higher grade), the excess credit
shall be used to adjust the date of rank within grade.  The
appointee's excess entry grade credit shall be compared with the
time-in-grade of Chaplain Corps officers on the ADL in the same
grade.  The date of rank upon appointment shall be the same as
that of the Chaplain Corps officers on the ADL in the same grade
with time-in-grade most equal to, but not less than, the
appointee's excess entry grade credit.

    (3) <u>Assignment of precedence</u>.  Each appointee will be
placed on the ADL or assigned precedence as follows:

        (a) Appointees ordered to active duty or retained on
active duty (other than active duty of Reserve officers as
described in reference (l), section 641), incident to
appointment shall be placed on the ADL under the provisions of
reference (m).  All appointees whose placement on the ADL would
render them eligible for consideration in zone or above zone for
promotion by an active duty promotion selection board shall be
counseled regarding the option to defer eligibility for
consideration for promotion under reference (h), and shall
acknowledge such counsel in writing.

        (b) Appointees not concurrently ordered to or
retained on active duty (other than active duty as described in
reference (l), section 641), shall be assigned a running mate on
the ADL and placed on the inactive duty precedence list in an
active status under reference (n).

    (4) <u>Failure to complete qualifications</u>.  Officers who
fail to complete the Chaplain Basic Course or any required
qualification in the Chaplain Candidate Program normally shall
be relieved of any statutory service obligation and active duty
obligation incurred as a result of accepting an appointment into
the Chaplain Corps or the Chaplain Candidate Program, and shall
be separated for cause per reference (o) under the following
guidelines:

        (a) Officers who do not have pre-existing service
obligations under prior appointments or enlistments shall
normally have their service obligation cancelled and be
discharged for cause.

        (b) Officers who have pre-existing service
obligations under prior appointments shall normally be

OPNAVINST 1120.9
20 Dec 2005

reappointed in their previous competitive category to complete their initial service obligation.

       (c) Officers who have pre-existing service obligations under prior enlistments shall normally be reverted to their previous enlisted status to complete their initial service obligation.

       (d) CHNAVPERS may recommend, with supporting justification, retention and transfer to another competitive category when that action would be in the best interest of the Naval Service.

   g. <u>Chaplain Candidate Program</u>. Selection and appointment for active duty in the Chaplain Corps through the Chaplain Candidate Program shall be made as required by enclosure (1) and paragraph 6f.

   h. <u>Application Processing</u>. All qualified applicants for appointment either on active duty or inactive duty shall be commissioned within 120 days following receipt of a complete application by Navy Recruiting Command. DCNO (N1/NT) may authorize delayed commissioning when a later time is requested by the applicant.

                 /s/
               J. C. HARVEY, JR.
               Vice Admiral, U.S. Navy
               Deputy Chief of Naval Operations
               (Manpower, Personnel, Training,
               and Education)

Distribution:
Electronic only, via Navy Directives Web site

OPNAVINST 1120.9
20 Dec 05

## CHAPLAIN CANDIDATE PROGRAM

1. <u>Purpose</u>.  To familiarize graduate students of religion with religious support activities in the military environment and to aid in meeting future year accession requirements for chaplains on the Active-Duty List and in the Reserve Component.  CNO (N1/NT) will conduct a Chaplain Candidate Program following reference (a).

2. <u>Eligibility</u>.  Chaplain Candidate Program Officers (CCPOs) must meet the basic qualifications in paragraph 6 above and must:

    a.  Receive a letter of approval from a Religious Organization (RO) recognized as able to provide ecclesiastical endorsements for chaplains under reference (a).

    b.  Possess a baccalaureate degree of not less than 120 semester hours from an accredited college or university.

    c.  Be a matriculated student in a graduate-level, degree-granting religious studies program in a qualifying educational institution as set forth in reference (a), paragraph 6.2 and subparagraph 6.7.3.2.

    d.  Be able to complete educational, ecclesiastical, and professional experience requirements for an original appointment as a chaplain prior to reaching the age limitation for such an appointment.

    e.  Meet all other appointment eligibility criteria of the Navy.

    f.  Maintain a satisfactory full-time standing under the standards of the graduate theological school in which enrolled and in any training program prescribed by the religious faith group.

3. <u>Appointment</u>.  Candidates selected for the program will be appointed as an Ensign in the Reserve Component, Staff Designator 1945, for inactive duty, inactive status, during the period of their professional studies, under the following conditions:

Enclosure (1)

OPNAVINST 1120.9
20 Dec 2005

a.  Serve without pay or allowances while in a student status except during periods of Active Duty for Training (ADT).

b.  Complete theological education and receive a qualifying degree.

c.  Obtain an ecclesiastical endorsement under paragraph 6a.

d.  Complete CCPO Orientation Program.

e.  Accept, if offered, a superseding appointment to lieutenant (junior grade) in the Chaplain Corps, USN, 4100, for Active Duty; or lieutenant (junior grade) in the Chaplain Corps, USNR, 4105, for inactive duty under reference (a).

f.  Complete total service obligation of 8 years upon superseding appointment in the Chaplain Corps.  Obligated service in the Chaplain Corps is either on Active Duty, in an active status in the Reserve Component, or a sequential combination of the two.  For officers appointed to the Active Duty List (ADL), the initial active duty obligation is 3 years.

4.  <u>Disenrollment</u>.  CCPOs may be separated from the Navy Reserve under paragraph 6f(4) above in the following circumstances:

a.  Withdrawal of the letter of approval by the CCPO's RO. If a letter of approval is withdrawn, the CCPO has 10 days from the date of notification by the Chief of Chaplains office to contact that office regarding their status.  Failure to respond or obtain another letter of approval in a timely fashion will result in disenrollment.

b.  Failure to maintain a grade point average of 3.0 on a 4.0 scale in the school listed in paragraph 2c above.

c.  Discontinuing professional training or withdrawal from school without prior assurance of resumption within 1 year.

d.  Failure to obtain a qualifying degree.

OPNAVINST 1120.9
20 Dec 2005

e.  Failure to obtain an ecclesiastical endorsement for superseding appointment before coming into zone for lieutenant commander.

f.  Failure to attend or successfully complete CCPO Orientation Program when ordered to that school.

g.  Violation of the Uniform Code of Military Justice or State or Federal criminal statutes.

h.  Failure to conform to prescribed standards of dress, weight, personal appearance, or military deportment.

5.  <u>Active Duty for Training</u>.  CCPOs, at the discretion of the Chief of Chaplains, and after the completion of the Chaplain Candidate Orientation Course, may voluntarily accept ADT orders for on-the-job-training under the supervision of a chaplain. Such assignments shall, to the extent possible, involve tasks in religious ministry programs consistent with the level of training of the CCPO.  CCPOs are not authorized to serve as or in place of chaplains.  The assignment will be performed at a command as near to the CCPO's school as possible, except as may be otherwise directed by the Chief of Chaplains.

6.  <u>Superseding Appointment in the Chaplain Corps</u>.  DCNO (N1/NT) may offer superseding appointments in the Chaplain Corps to CCPOs who successfully complete the necessary requirements.  The number of appointments per year is equal to the current year accession plan requirements for the ADL and the Reserve Component.

a.  Selection for appointment will be based on criteria established by DCNO (N1/NT) and the Chief of Chaplains.

b.  CCPOs that are not offered a superseding commission, and those who do not accept one when offered, will be honorably discharged from the Navy Reserve.

7.  <u>Wearing of Chaplain Corps Insignia</u>.  CCPOs may be authorized by the Chief of Navy Chaplains to wear Chaplain Corps insignia. When wearing Chaplain Corps insignia, CCPOs must also wear a nametag indicating their status as Chaplain Candidates.

# DEPARTMENT OF THE NAVY
### CHIEF OF NAVAL PERSONNEL
### WASHINGTON, D.C. 20370-5000

## ACTION MEMO

FOR: ASSISTANT SECRETARY OF THE NAVY (MANPOWER AND RESERVE AFFAIRS)

FROM: VADM J. C. HARVEY, JR., Chief of Naval Personnel  3/29/06

SUBJECT: INVOLUNTARY RELEASE FROM ACTIVE DUTY ICO LT GORDON J. KLINGENSCHMITT, CHC, USNR, ~~█████████~~

- Mr. Secretary, in accordance with 10 U.S.C. 12313 and SECNAVINST 1920.6C, request you approve the involuntary release of a Reserve Chaplain Corps officer from active duty. Specific justification is provided in TAB A (initial request) and TAB B (supplemental information).

- You last exercised the plenary authority under 10 U.S.C. 12313 in July 2005 to release 58 active Reserve Surface Warfare officers who had demonstrated a lack of career potential and, consequently, an inability to progress into greater positions of leadership and responsibility within their community.

- Per DEPSECDEF memo of 28 January 2005, Reserve officers on active duty who are qualified for a Regular commission are to be augmented by 1 May 06. Affording this officer a reasonable time to transition from active duty will result in him being on active duty past 1 May 2006. Therefore, if you approve this request, this officer will be removed from the augmentation list.

- This officer will be allowed to leave active duty on the date of his choosing, but no later than the end of the fiscal year.

RECOMMENDATION: Sign below approving involuntary release of LT Klingenschmitt.

<u>ASN(M&RA) Decision.</u>

Approved: _____  Disapproved: _____  Other: *Retured to CNO' per request BW 3/29/06*

COORDINATION: NONE

Attachments: As stated

Prepared by: LCDR A. Limani, (901) 874-3153

White, Edward S. CAPT CNRMA SJA

| From: | Bailey, Stuart D CAPT COMNAVREGMIDLANT |
|---|---|
| Sent: | Friday, March 24, 2006 8:56 AM |
| To: | Ruehe, Frederic R RADM CNRMA; White, Edward S. CAPT CNRMA SJA |
| Subject: | FW: Possible Involuntary Release of Reserve Chaplain from Active Duty |

| Importance: | High |
|---|---|
| Sensitivity: | Private |

| Follow Up Flag: | Follow up |
|---|---|
| Flag Status: | Red |

SIR,

Close hold.

After we have a chance to discuss, we may want to brief the base CO and his SJA. **We needed to** be prepared to inform the LT should his IRAD get approved.

I have more info from talking with Adm Harvey's EA.

VR

*Stuart D. Bailey*
Captain          USN
CNRMA Chief of Staff
Comm  757-322-2800
Cell     757-438-4174

-----Original Message-----
From:         Marquet, David CAPT N1NT/ CNP EA
Sent:         Friday, March 24, 2006 8:50
To:           Bailey, Stuart D CAPT COMNAVREGMIDLANT
Subject:      FW: Possible Involuntary Release of Reserve Chaplain from Active Duty
Importance:   High
Sensitivity:  Private


Captain L. David Marquet
EA to DCNO(N1NT)/CNP
W: 703-693-0911
C: 703-655-4475
C: 703-920-0909

-----Original Message-----
From:         Harvey, John C Jr VADM, N1-NT/CNP
Sent:         Wednesday, March 22, 2006 7:50 PM
To:           Mullen, Michael G ADM
Cc:           Willard, Bob F. ADM (VCNO); Rondeau, Ann E VADM (DNS); Ferguson, Mark RDML OLA; Mccreary, Terry RADML CHINFO
              WASHINGTON DC, CHINFO; Iasiello, Louis V RADM; Front Office (E-mail.)
Subject:      Possible Involuntary Release of Reserve Chaplain from Active Duty
Importance:   High
Sensitivity:  Private

CNO,                                                                    01867

Today I positively endorsed and forwarded to ASN (M&RA) the request from CO, NAVSTA Norfolk, endorsed by COMNAVREG Mid-Atlantic and CNPC, that ASN (M&RA) involuntarily release Chaplain Klingenschmitt from active duty due to lack of career potential. This officer is the individual who conducted a hunger strike in front of the white House several months ago and has engaged in other actions concerning DOD and Navy Religious Ministry policies.

Klingenschmitt's CO has documented a compelling case that this officer has little career potential.  10 USC 12313 gives SECNAV plenary authority to release an active Reserve at any time.  ASN (M&RA) used this authority in July 2005 to release 58 active Reserve SWOs who had failed to demonstrate future career potential by failing to meet career milestones or who had been de-screened for Department Head.  I may request involuntary release of additional active Reserve officers in FY-06 and FY-07 to meet end strength reductions if voluntary incentives fail to bring strength levels down to our target level.

This officer has some **Congressional** support and proven **major media access**; there is a distinct possibility that the groups that have supported him in the past may seek to enjoin his involuntary release in Federal court.

If ASN M&RA approves involuntary release, the officer involved should be immediately informed and there will very likely need to be briefings to several Congressional members and committee staff

I will keep you informed as this issue moves through the Secretariat. V/r John

01868

DW110-H590-MilitaryChaplains
Title: V
LPNA

SASC Majority:Walsh
SASC Minority:Leeling
HASC Majority:Coughln
HASC Minority:Wada
September 25, 2006    10:07AM

*Military chaplains*

The House bill contained a provision (sec. 590) that would amend sections 3547, 4337, 6031, 8547, and 9337 of title 10, United States Code, to prescribe that military chaplains shall have the prerogative to pray according to the dictates of their conscience, except as must be limited by military necessity, with any such limitation being imposed in the least restrictive manner feasible.

The Senate amendment contained no similar provision.

The House recedes.

The conferees direct that the Secretary of the Air Force rescind the policy and revised interim guidelines concerning the exercise of religion in the Air Force issued on February 9, 2006, and direct that the Secretary of the Air Force reinstate the policy that was set forth in Air Force Directive 52-1 dated 1 July 1999.  The conferees further direct that the Secretary of the Navy rescind Secretary of the Navy Instruction 1730.7C dated February 21, 2006, titled "Religious Ministry within the Department of the Navy" and direct that the Secretary of the Navy reinstate the policy that was set forth in Secretary of the Navy Instruction 1730.7B dated October 12, 2000.

2.27



**DEPARTMENT OF THE NAVY**
OFFICE OF THE CHIEF OF NAVAL OPERATIONS
2000 NAVY PENTAGON
WASHINGTON, D.C. 20350-2000

IN REPLY REFER TO

MAY 2 6 1998

Dear Chaplains,

From time to time the question is raised regarding exclusionary prayer in a public setting. That is, can Christians, for instance, end their public prayers in Jesus' name? This can be troubling for some because while there is a willingness to minister to a diverse group of people, there is also a desire to remain faithful to one's identity.

I cannot tell you what you must do, but offer this paper from the Executive Director of the Armed Forces Chaplains Board for your consideration. It is well written and thought provoking. I hope you find it useful. Thank you for your faithful service on behalf of your people.

Sincerely,

A. BYRON HOLDERBY, JR.
Chief of Chaplains, Acting

16 Oct 06

From: LT Gordon J. Klingenschmitt, CHC, USNR, xxx-xx-0240/4105
To:      Commander, Navy Personnel Command (CNP)
Via:    Commanding Officer, Naval Station Norfolk

Subj:  REQUEST TIME EXTENSION TO OBTAIN LEGAL REPRESENTATION

Ref:    (a) My request for recertification of ecclesiastical endorsement (14 Oct 06)
          (b) CNP notification to LT Klingenschmitt (1900 Ser PERS-48/039, 4 Oct 06)
          (c) My request for documents to CNP (6 Oct 06)

1. In a separate request, ref. (a), I've applied for recertification of my ecclesiastical endorsement.
While I await the Chief of Chaplains recertification, I have several other questions:

2. If Chief of Navy Chaplains doesn't recertify my endorsement as directed by OPNAV
Instruction 1120.9 para 5.b.3.a., I respectfully request a reasonable extention (60 days) to obtain
and consult civilian counsel, as you've stated in ref. (b) is my legal right. Would you please
notify me after Chief of Chaplains decides, and grant a reasonable extension, before continuing
my administrative separation process any further?

3. Upon research I've discovered SECNAVINST 1920.6C para 2 reads:

> 2. Removal of Ecclesiastical Endorsement. Officers on the
> active-duty list in the Chaplain Corps who can no longer
> continue professional service as a chaplain because an
> ecclesiastical endorsing agency has withdrawn its endorsement
> of the officer's continuation on active duty as a chaplain,
> shall be processed for separation in accordance with reference
> (h) and this instruction, using the Notification Procedures
> contained in reference (h). Processing solely under this
> paragraph is not authorized when there is reason to process
> for separation for cause under any other provision of this
> instruction, except when authorized by the Secretary in
> unusual circumstances based upon a recommendation by the Chief
> of Naval Personnel. (underline added)

I therefore respectfully request to know:
a) Are there any other reasons to process me for separation for cause?
b) Have "unusual circumstances" have been adjudicated in my case, and on what basis?

4. Respectfully request copies of any and all papers that will be (or were) forwarded to the
Secretary of the Navy to support a recommendation for separation, if one is made, as you've
stated is my legal right in ref (b), with reasonable time extension to respond.

5. Respectfully request CAPT Steve Gragg (Chief of Chaplains EA) recuse himself from
participation in any board considering my fate, due to my previous complaints against him.

6. Respectfully repeat my request that VADM Harvey recuse himself from any personal
involvement in my case, for reasons detailed in ref. (a) and (c).

G. J. KLINGENSCHMITT

cc: Chief of Navy Chaplains

14 Oct 06

From:  LT Gordon J. Klingenschmitt, CHC, USNR, xxx-xx-0240/4105
To:    Commander, Navy Personnel Command (CNP)
Via:   Commanding Officer, Naval Station Norfolk

Subj:  PERSONAL STATEMENT TO ACCOMPANY REQUEST FOR
RECERTIFICATION OF ECCLESIASTICAL ENDORSEMENT

1.  Respectfully repeat my original request for immediate recertification of ecclesiastical
endorsement, as required by law and policy, as I originally stated 30 Sep 06 (Atch 1).

2.  Respectfully request CNP direct Chief of Chaplains to comply with the automatic
(mandatory) recertification requirements of OPNAV Instruction 1120.9 para 5.b.3.a.
which directs: "Chief of Chaplains shall: Recertify a chaplain's professional
qualification upon receipt of a new ecclesiastical endorsement" (underline added).
Since CNP has acknowledged receipt of my new endorsement (Atch 2), any failure to
automatically recertify would constitute failure to comply with established rules and
procedures, and violate my Constitutional right to *due process*.

3.  Respectfully request CNP directs Chief of Chaplains to never convene a CARE board
to debate this question, since any such CARE board is specifically unauthorized to
consider ecclesiastical endorsement re-certifications, according to Chief of Chaplains
Instruction (COCINST) 1110.1G, which only authorizes CARE boards to convene for:
        a.  Direct appointment in the Chaplain Corps. (I'm already appointed a chaplain).
        b.  Superceding from the Chaplain Candidate Program Officer (CCPO) program.
            (I'm not a CCPO).
        c.  Transfers between active and inactive duty. (I'm not transferring).
Since COCINST 1110.1G has never before authorized CARE boards to consider
recertification of ecclesiastical endorsement, and these boards have not been convened to
recertify other chaplains who change endorsers, any "special board" convened to consider
my recertification would violate my Constitutional right to *equal treatment under the law*.

4.  Out of reverence and respect for our UCMJ system, I request Chief of Chaplains never
consider the results of trial of my special court-martial, for two reasons:
        a.  The manual for court-martial specifically states: "An officer accused in a
special court-martial cannot be dismissed from the service or confined." So enforcement
of the "results of trial" to involuntarily terminate my career (for a misdemeanor offense)
would constitute unlawfully severe punishment, expressly forbidden by law, and violate
my Constitutional right to avoid *double-jeopardy* and *cruel and unusual punishment*.  My
jury recommended a reprimand and suspended fine of $3,000, not permanent forfeiture of
my $1.8 million pension, or sudden termination of my 15+ year highly decorated career.
        b.  The alleged "lawfulness" of the order I stand convicted of disobeying was
based on SECNAVINST 1730.7C (Atch 3) which policy was directly overturned by an
Act of Congress (Atch 4), and declared unenforceable by direct verbal promise from
Secretary of Defense Donald Rumsfeld to SASC Chairman Senator John Warner (Atch 5).
Thus any further enforcement of the results of trial would re-apply *ex post facto* that very
same unlawful policy that was already permanently rescinded by Congress.

5. Considering my unresolved and highly publicized Congressional whistleblower complaints against Chief of Naval Personnel and Chief of Navy Chaplains, respectfully request they both recuse themselves from considering personal adverse action against me. Nobody wants these highly irregular proceedings (violating many policies) to give an appearance of unlawful reprisal and "pay-back" to punish me as "sour-grapes" over my victory on Capitol Hill in my quest to have SECNAVINST 1730.7C rescinded (Atch 6), which Congress effected largely in response to publicity about my complaints. Would CNP or Chief of Chaplains now enforce that same rescinded policy (which CNP directly cited in his 29 Sep 06 letter, declining to recognize my new endorser) and so end my career because I successfully challenged the lawfulness of their favorite policy, which Congress and SECDEF agreed with me was illegal and unenforceable? Honor and respect for their ruling requires we all set aside personal animus, and avoid even the appearance of impropriety, especially with Congressional hearings scheduled for January.

6. If my sincere pleas for justice cannot be received, please accept my sincere plea for mercy. Out of conscience I took a stand for religious liberty, and helped to restore the legal rights of all military chaplains to pray publicly according to the manner and forms of their church. I have always advocated for free public expression for members of all faiths, not just my own. I volunteered for a demotion in rank and cut in pay (from Air Force O-4 to Navy O-3) just to become a chaplain four years ago. I've served honorably overseas during combat operations. My community service programs won six awards, including the 2004 Good Neighbor Award (small ship category), selected by Chief of Chaplains as "best in Navy" for leading Sailors to feed the homeless every Friday. I've earned the Defense Meritorious Service Medal for changing national intelligence policy three times, and as a service academy graduate with M.Div and MBA degrees I'm currently enrolled in the PhD in Renewal Theology program at Regent University. My wife has special medical needs, my family and former church have already suffered public humiliation, but I've devoted my life to military ministry. Please mercifully allow me to complete that calling, and grant me recertification of ecclesiastical endorsement.

Very respectfully,

G. J. KLINGENSCHMITT

Atch:
1. 30 Sep 06 Original letter to Chief of Chaplains requesting recertification
2. 28 Sep 06 New DD Form 2088 and 13 Oct 06 letter from Endorser
3. 31 Aug 06 Judge's ruling basing "lawfulness" of order on SECNAVINST 1730.7C
4. 25 Sep 06 Congressional conference report rescinding SECNAVINST 1730.7C
5. 19 Sep 06 SECDEF Rumsfeld's promise to Senator Warner to "not enforce" 1730.7C
6. 30 Sep 06 WorldNetDaily article announcing victory for religious liberty



## DEPARTMENT OF THE NAVY
### NAVY PERSONNEL COMMAND
### 5720 INTEGRITY DRIVE
### MILLINGTON TN 38055-0000

1900
Ser PERS-48/047
18 Oct 06

From: Commander, Navy Personnel Command
To:   LT Gordon J. Klingenschmitt, CHC, USNR, XXX-XX-0240/4105
Via:  Commanding Officer, Naval Station Norfolk

Subj: RESPONSE TO YOUR LETTER DATED 16 OCTOBER 2006

Ref: (a) LT Klingenschmitt letter to Commander, Navy Personnel
         Command of 16 Oct 06
     (b) CNPC ltr 1900 Ser PERS-48/039 of 4 Oct 06
     (c) SECNAVINST 1920.6C
     (d) SECNAVINST 1920.6B
     (e) CNPC ltr 1900 Ser PERS-48/042 of 11 Oct 06
     (f) COCINST 1110.1G


1.  This is in response to reference (a).

2.  Your rights to legal counsel are set forth in reference (b).

3.  In regard to paragraph 3 of reference (a), the paragraph
that you have quoted is from reference (d) which was cancelled
by reference (c) and is no longer applicable.

4.  As previously stated in reference (e), information that will
be considered in this administrative process, which was
initiated as a result of the loss of your ecclesiastical
endorsement, is available to you.  All future documents will be
provided to you per paragraph g of reference (e) as you have
requested.

5.  Reference (f) lists the membership of the Chaplain
Appointment and Recall Eligibility (CARE) Advisory Group.  The
Chief of Chaplains will execute his duty in accordance with
reference (f).

6.   Your request to exclude the Chief of Naval Personnel from
involvement in your case is denied. The review and disposition
of your case will be handled in accordance with all applicable
instructions and guidance and normal administrative processes
within the Bureau of Naval Personnel.

7.   Your point of contact at Commander, Navy Personnel Command
is CDR S. Lepp; COM (901) 874-4453;  DSN 882-; FAX -2633.


G. S. PARKER
By direction



# DEPARTMENT OF THE NAVY
### NAVY PERSONNEL COMMAND
### 5720 INTEGRITY DRIVE
### MILLINGTON TN 38055-0000

```
                                           1900
                                           Ser PERS-48/046
                                           18 Oct 06
```

From: Commander, Navy Personnel Command
To:   LT Gordon J. Klingenschmitt, CHC, USNR, XXX-XX-0240/4105
Via:  Commanding Officer, Naval Station Norfolk

Subj: RESPONSE TO PERSONAL STATEMENT

Ref: (a) LT Klingenschmitt letter to Commander, Navy Personnel
         Command of 14 Oct 06
     (b) OPNAVINST 1120.9
     (c) CNPC ltr 1900 Ser PERS-48/039 of 4 Oct 06
     (d) CNPC ltr 1900 Ser PERS-48/042 of 11 Oct 06
     (e) SECNAVINST 1920.6C
     (f) DODINST 1304.28

1.  This is in response to reference (a).

2.  Your request for recertification has been forwarded to the
Chief of Navy Chaplains for action.

3.  You have misinterpreted reference (b) as there is no
provision for CNP to direct the Chief of Chaplains to comply
with "automatic (mandatory)" recertification.  Therefore, your
request for this is denied.

4.  In regard to your request that the Chaplain Appointment and
Recall Eligibility (CARE) Advisory Group not be convened to
review your case, the CARE's function is to advise the Chief of
Chaplains of the suitability of Chaplains for service.  Once a
Chaplain officer loses their ecclesiastical endorsement the CARE
Group is used for recertification recommendation.  Your request
for recertification without a CARE Group is denied.

5.  Your request to exclude the court martial information from
the CARE Group is denied.  Action being taken under references
(e) and (f) is administrative vice punitive and not a result of
the findings of the court martial.  Reference (d) informed you
that your entire service record, your court martial, and any
statements which you wished to include would be used in the
review of your professional qualification to serve as a chaplain
in the U.S. Navy.

6.  The CARE Group will have access to reference (a) when they review your suitability for professional requalification.  The Board will take into account your entire Navy career in making a recommendation to the Chief of Chaplains.

7.  Your point of contact at Commander, Navy Personnel Command is CDR S. Lepp; COM (901) 874-4453;  DSN 882-; FAX -2633.


G. S. PARKER
By direction



## DEPARTMENT OF THE NAVY
### COMMANDER
NAVY REGION, MID-ATLANTIC
1510 GILBERT ST.
NORFOLK, VA 23511-2737

IN REPLY REFER TO:

5720
Ser 00LA1/137B-06
July 24, 2006

LT Gordon J. Klingenschmitt
P.O. Box 9226
Norfolk, VA 23505

Dear Lieutenant Klingenschmitt:

This letter refers to your Freedom of Information Act (FOIA) request of June 11, 2006, addressed to Ms. Doris Lama of the Navy FOIA Office, seeking documents from Naval Station Norfolk, Commander, Navy Region, Mid-Atlantic, and Commander, Naval Surface Forces, U.S. Atlantic Fleet (COMNAVSURFLANT). As discussed with you in previous correspondence, your request has generated several thousand pages of responsive documents, and it was agreed that documents not exempt from disclosure would be turned over to you in a "piecemeal" fashion. We have completed the search, review, and duplication of documents held by COMNAVSURFLANT. This letter, though a partial response to your entire FOIA request, is considered a final determination with respect to COMNAVSURFLANT documents.

The COMNAVSURFLANT documents are numbered 00001 through 00655. Some of the documents, as described below, were withheld from disclosure, and others were redacted prior to disclosure. The Department of the Navy FOIA instruction, SECNAVINST 5720.42F, 5 U.S.C. 552 (b)(5) denies disclosure of documents considered privileged in litigation, primarily under the deliberative process privilege. Also exempt from disclosure, under exemption (b)(6), is personal information involving individuals other than yourself that, if released to you, would result in a clearly unwarranted invasion of their personal privacy. Accordingly, under these two exemptions, the following documents were withheld from disclosure: Pages 00059, 00064-00065, 00104, 00326-00351, 00359, 00373, 00377, and 00379-00380. Under the same two exemptions, the following pages were redacted: Pages 00001-00005, 00053-00056, 00060-00063, 00066-00067, 00069, 00072, 00074-00076, 00090-00091, 00096, 00098, 00100, 00105-00109, 00119-00120, 00130-00132, 00265-00272, 00282-00285, 00293-00307, 00309-00325, 00352-00362, and 00372-00378.

FOIA fees are dependent on the type of requester. Special fee assessments apply to commercial, educational, scientific, and news media requesters. All other requesters, including you, are permitted two free hours of search time before such fees are

5720
Ser 00LA1/137B-06
July 24, 2006

imposed.  Also, you are permitted 100 free pages of photocopied
documents before a fee of $.15 per page may be imposed.  You are
not charged for the administrative review of the requested
materials.  For the COMNAVSURFLANT documents, one hour of search
time was expended.  Also, although you received 620 pages of
documents, only ninety-five pages appear to be copies of
documents that you do not already possess.  Accordingly, only
those ninety-five pages have been counted against your allotment
of 100 free pages.  Although you have agreed to pay up to $200.00
to process this FOIA request, you have not yet incurred any fees.
We are continuing to process the remainder of your FOIA request,
and will keep you informed of any fees incurred.

     Because the COMNAVSURFLANT portion of your FOIA request has
been denied in part, you are advised of your right to appeal the
withholding and/or redacting of the documents numbered from pages
00001 to 00655.  Your appeal must be submitted in writing to the
Judge Advocate General Office, General Litigation (Code 14), 1322
Patterson Avenue, Suite 3000, Washington Navy Yard, Washington,
DC 20374-5066.  The appeal must be postmarked within 60 calendar
days from the date of this letter in order to be considered.  You
should enclose a copy of this letter with a statement regarding
why your appeal should be granted.  It is recommended that the
letter of appeal and the envelope both bear the notation,
"Freedom of Information Act Appeal."

     The official responsible for the denial of your request is
Lieutenant Commander Frank T. Katz, Judge Advocate General's
Corps, U.S. Navy, Staff Judge Advocate, pursuant to authority
delegated to him by Rear Admiral F. R. Ruehe, U.S. Navy,
Commander, Navy Region, Mid-Atlantic.

                     Sincerely,

                     F. T. KATZ
                     Staff Judge Advocate
                     By direction

Copy to:
COMNAVSURFLANT (N02L)