## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CHAPLAIN GORDON JAMES KLINGENSCHMITT ) | |
| ) | |
| ) | |
| Plaintiff, ) | Civil No.: 06CV 1832 (HHK) |
| v. ) | |
| ) | |
| DONALD C. WINTER ) | |
| ) | |
| Defendant, ) | |

## PLAINTIFF'S REPLY IN SUPPORT OF HIS MOTION FOR A TEMPORARY RESTRAINING ORDER AND/OR PRELIMINARY INJUNCTION

Chaplain Klingenschmitt alleges in his complaint that Defendant systematically and continuously violated his constitutional and statutory rights during the relevant time period while Plaintiff was serving as a Chaplain in the United States Department of the Navy ("defendant" or "Navy"). The Chaplain further alleges that the Navy pressured him to practice a pluralistic "non-sectarian" civic religion within their government created pluralistic religion and suppressing plaintiff's Christian faith. Chaplain Klingenschmitt alleges he is being persecuted for exercising his First Amendment rights.

Very serious constitutional violations have been alleged. Chaplain Klingenschmitt seeks to keep the status quo until discovery can be taken to shed some light on these constitutional challenges. An investigation of Defendant and the Navy's suppression of prayer may have a chilling effect on the exercise of First Amendment rights by other military Chaplains. *See, e.g., Thornhill v. Alabama,* 310 U.S. 88, 97 (1940) ("It is not merely the sporadic abuse of power by the censor but the pervasive threat inherent in its very existence that constitutes the danger to freedom of discussion.").

Other District of Columbia courts have characterized the Navy's respect for the First

Amendment as:

> What we have here is the government's attempt to override the
> Constitution and the laws of the land by a directive that clearly
> interferes with military chaplains' free exercise and free speech
> rights, as well as those of their congregants. On its face, this is a
> drastic act and can be sanctioned only by compelling circumstances.
> The government clearly has not met its burden. The "speech" that the
> plaintiffs intend to employ to inform their congregants of their
> religious obligations has nothing to do with their role in the military.
> They are neither being disrespectful to the Armed Forces nor in any
> way urging their congregants to defy military orders. *The chaplains
> in this case seek to preach only what they would tell their
> non-military congregants.* **There is no need for heavy-handed
> censorship, and any attempt to impinge on the plaintiffs'
> constitutional and legal rights is not acceptable.** (Emphasis added)

*Rigdon v. Perry*, 962 F.Supp. 150 (D.D.C. 1997).

Defendant has made many of the same arguments in this opposition as they did in their

November 22, 2006 opposition to the Chaplain's Motion for Expedited Discovery.  Plaintiff relies

upon, and incorporates his December 1, 2006 Reply herein.

## I. BRIEF FACTUAL SUMMARY[1]

In September 2006 Chaplain Klingenschmitt changed his ecclesiastical endorser.  At no time

did Chaplain Klingenschmitt perform his duties without having an endorser.  The Navy contends

they have initiated separation proceedings against Chaplain Klingenschmitt based solely upon his

lack of ecclesiastical endorsement.  However, Chaplain Klingenschmitt was never without an

ecclesiastical endorsement.  Indeed, for two days Chaplain Klingenschmitt had two ecclesiastical

endorsers during  his transition between churches.  This marks the first time in Navy history that a

---

[1]  The factual matters are provided in the December 8, 2006 Declaration of Chaplain
Gordon James Klingenschmitt (Klingenschmitt Dec.), ¶ 1-83  A copy of the Klingenschmitt Dec.
is attached here as Exhibit "A."

Chaplain that changed ecclesiastical endorsers is facing separation for making such a change.

Chaplain Klingenschmitt, a fifteen year veteran and United States Air Force Academy graduate, was a valued member of the military until one Navy Captain decided that he did not like the content of the Chaplain's religious speech during an optionally-attended sermon in the chapel. The Captain also pressured Chaplain Klingenschmitt to censor the content of his public prayers, and downgraded his evaluations solely for the content of his religious message.

The Chief of Navy Chaplains supported the Captain by defending his 1998 prayer policy requiring "non-sectarian" prayers, and informing Chaplain Klingenschmitt that praying in the name of Jesus was disrespectful. A Navy investigation confirmed this, and justified the Captain and senior chaplains as properly exercising some authority to edit the Chaplain's religious message.

When Chaplain Klingenschmitt appealed this to Congress and the President, another Navy commander silenced his religious speech by ordering him not to wear his uniform to pray publicly in the name of Jesus whenever news media might be present, even if he was only saying a prayer. That commander also downgraded the chaplain's 2006 evaluation for appealing religious harassment to the President, and for questioning the religious authority of senior officers.

After Chaplain Klingenschmitt prayed in uniform in front of the White House in March 2006, the Navy punished him for that religious speech at criminal court-martial, ruling the commander's order prohibiting any public religious expression in uniform was "lawful," ignoring Naval Uniform Regulations that permit chaplains to wear the uniform during public worship, instead enforcing a new, unconstitutional, and now rescinded SECNAVINST 1730.7C which limited a chaplains right to conduct "public worship" to the confines of "divine services" in Sunday chapel. Discredited by a federal conviction, Chaplain Klingenschmitt was unable to maintain his priestly covenant with the Evangelical Episcopal Church and resigned his ordination. Now, when Chaplain

Klingenschmitt changed his religious endorser, the Navy began proceedings to separate him.

## ARGUMENT

A temporary restraining order may be granted when "the plaintiff demonstrates (1) a substantial likelihood of success on the merits; (2) that irreparable harm will result in the absence of the requested relief; (3) that no other parties will be harmed if temporary relief is granted; and (4) that the public interest favors entry into a temporary restraining order." *S.E.C. v. Stratton Oakmont, Inc.*, 1994 WL 721502, Fed. Sec. L. Rep. P 98,489 (D.D.C. 1994), *citing Washington Metropolitan Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 843 (D.C. Cir. 1977).

## II. SUCCESS ON THE MERITS

The religion clauses of the first amendment provide that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . ." U.S. Const.amend. I. These clauses have been interpreted as providing full protection for religious beliefs but only limited protection for overt acts prompted by those beliefs. "Thus, the First Amendment obviously excludes all governmental regulation of religious beliefs as such." *Sherbert v. Verner*, 374 U.S. 398, 402, 83 S.Ct. 1790, 1793, 10 L.Ed.2d 965 (1963). Congress also may not discriminate against religion by banning acts "only when they are engaged in for religious reasons, or only because of the religious belief that they display." *Id.*

Chaplain Klingenschmitt will likely prevail on the merits because the only arguments the Navy provided are inconsistent with the law and their own regulations. First, the Navy was required to re-certify Chaplain Klingenschmitt pursuant to their own regulations, U.S. Navy, OPNAVINST 1120.9, which stated that the Navy **shall** re-certify a chaplain's professional qualification upon receipt of a new ecclesiastical endorsement. Shall is a mandatory term and the government's interpretation that it is permissive subverts the plain meaning of the regulation. *See Miller v.*

*French*, 530 U.S. 327, 337-338 (2000) (the government's interpretation that shall is permissive, however, would subvert the plain meaning of the statute, making its mandatory language merely permissive "not only does the statute employ the mandatory term 'shall,' but it also specifies the points."); *In re Medicare Reimbursement Litigation,* 414 F.3d 7, 10 (D.C. Cir. 2005) (The D.C. Circuit has determined that shall is a mandatory term.)

Second, the APA does not bar this action because it raises serious constitutional issues. Chaplain Klingenschmitt brought this action pursuant to 28 U.S.C. §§ 1331, 1343(b)(4) and 1361, as it is an action arising under the laws and Constitution of the United States.  The Constitution requires that the government is stopped from eroding the Establishment Clause.  *Santa Fe Indep. Sch. Dist. v. Doe*, 530 U.S. 290, 314, 120 S.Ct. 2266, 147 L.Ed.2d 295 (2000) ("the Constitution requires that we keep in mind the myriad, subtle ways in which the Establishment Clause can be eroded.") The APA does not bar this action because "[c]onstitutional questions obviously are unsuited to resolution in administrative hearing procedures and, therefore, access to the courts is essential to the decision of such questions." *Califano v. Sanders*, 430 U.S. 99, 109 (1977).

Third, the Navy's argument concerning punishments of Chaplain Klingenschmitt are red herrings because they claim that the Chaplain is being separated "solely" because he changed his ecclesiastical endorsement, while they simultaneously contend he was properly punished for the content of his religious expression on several other occasions.  Further, the Chaplain's separation is a punishment for his exercise of his First Amendment speech.

### A. Chaplain Klingenschmitt Was Punished for His Protected First Amendment Speech

Defendant has informed this honorable Court that Chaplain Klingenschmitt's separation is due solely to his changing his ecclesiastical endorser.  Defendant states: "Plaintiff's separation proceedings resulted from his decision to voluntarily resign his ecclesiastical endorsement and

pursue another one." Def. Opp., pg. 19. That is the **sole** reason the government has given for separating Chaplain Klingenschmitt after his fifteen years of military service.

However, the Navy was required to recertify Chaplain Klingenschmitt upon receipt of a new ecclesiastical endorsement. Navy's regulations, U.S. Navy, OPNAVINST 1120.9, para. 5, dated December 20, 2005, provides: b. Chief of Chaplains shall: . . . (3) Notify Chief of Naval Personnel (CHNAVPERS) when an ecclesiastical endorsing agency withdraws its endorsement of a chaplain or when the Chief of Chaplains withdraws its designation of a chaplain. . . . (a) *Recertify a chaplain's professional qualification upon receipt of a new ecclesiastical endorsement.*

The plain meaning of the words required the Navy to recertify Chaplain Klingenschmitt. Any arguments to the contrary seem to fly in the face of this clear regulation. Where, as here, such serious constitutional challenges have been raised, to permit the government to separate Chaplain Klingenschmitt without any discovery would cast a chill upon the whole military establishment due to the likely governmental violations of the constitution.

The Defendant attempts to avoid the mandatory language of OPNAVINST 1120.9 ¶ 5(b)(3)(a) urging that the "shall" language is limited by provisions of DODI 1304.28. Not only is the argument convoluted, it is unnecessary to refer to the DODI because that DODI also provides that a chaplain who loses his ecclesiastical endorsement may seek another ecclesiastical endorsement "[u]nder conditions established by the Secretary of the Military Department concerned[.]" DODI 1304.28 ¶ 6.5.1.3. In this case, the Navy has established that its Chief of Chaplains "shall . . . [r]ecertify a chaplain's professional qualifications upon receipt of a new ecclesiastical endorsement." The Navy is now bound to follow the conditions and rules it has established by recertifying Chaplain Klingenschmitt's endorsement.

The rest of the Navy's argument is based on an erroneous assumption that "Navy regulations

required the Secretary to begin these separation proceedings after Plaintiff voluntarily resigned his ecclesiastical endorsement." Def. Opp., pg.14. Instead, SECNAVINST 1900-10A(2)(d)(1)[2] appropriately titled "Administrative Separation of Chaplains Upon Removal of Professional Qualifications" provides that: "Processing under this instruction is authorized only when removal of ecclesiastical endorsement is the sole cause for consideration for separation," (underline added) which is clearly not true in this case, since many causes for consideration are present. The regulation further states: "If the chaplain obtains a new endorsement, the Chief of Chaplains will consider the needs of the Department of the Navy before recommending the chaplain's continuance to the Chief of Naval Personnel."

Looking at the facts so far, the Navy's refusal to accept Chaplain Klingenschmitt's new endorsement marked the first time in Navy history that a Chaplain has changed his ecclesiastical endorsement and the Navy denied recognition of that new endorsement. This fact alone negates the Navy's argument that there is no basis for Chaplain Klingenschmitt's claim that he is being singled out for separation because of his exercise of First Amendment rights. Additionally, the Navy's history of retribution against Chaplain Klingenschmitt because of his exercise of fundamental rights and the fact that the Navy is not following its regulations is evidence of an invidious motive to retaliate against Chaplain Klingenschmitt by seeking his separation. *See Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 266 (1977) (evidence of discriminatory motive may include the historical background of a decision and departures from normal procedures). Exh. A,

Contrary to the Defendant claims that there "no urgency," the Navy has ordered Chaplain Klingenschmitt to separate from the Navy by January 31st 2007. Such a separation would cast a pall

---

[2] A copy of SECNAVINST 1900-10A is attached here as Exhibit "B."

over every Chaplain that seeks to pray to their God as their respective religion dictates.

**B. The Navy's Arguments are Inconsistent**

The Navy claims that because Congress ordered them to rescind SECNAVINST 1730.7C, they have complied, and therefore they're "no longer" enforcing that or any policy that censors or pressures chaplains to change the content of their public prayers. This is untrue for several reasons.

First, they're directly enforcing it in this case, admitting that SECNAVINST 1730.7C is still the primary basis of the "lawfulness" of the order Chaplain Klingenschmitt was convicted of violating. The ruling by the military court-martial, military Judge Lewis Booker, was based on the illegal policy, and was the sole cause of Chaplain Klingenschmitt's changing ecclesiastical endorsers from the Evangelical Episcopal Church. A copy of Judge Booker's August 31, 2006 Decision is attached here as Exhibit "C."

Chaplain Klingenschmitt's conviction was based on that illegal policy. Exh. A, ¶ 9, 42, 52, and 58. The Navy relies heavily on that policy and cites the Booker decision as a cause for consideration when denying Chaplain Klingenschmitt's recertification with the Full Gospel Church. The Navy may not rely upon an unconstitutional policy and then argue that they have constitutional reasons for separating Chaplain Klingenschmitt from the military after a distinguished fifteen-year career. That the rescinded policy is still being enforced against Chaplain Klingenschmitt, despite a solemn promise by the Government, Senator John Warner and Secretary of Defense Donald Rumsfeld "not enforce" that unconstitutional policy. The Promise is attached here as Exhibit "D."

Second, the Navy admits they considered Chaplain Klingenschmitt's "entire service record" which includes his 2005 evaluation, which the Navy admitted they downgraded because the Chaplain quoted the Bible in the chapel during an optionally-attended Christian memorial service. Naval investigators confirmed the commanding officer punished Chaplain Klingenschmitt's sermons

and censored his prayers, but denied redress claiming the commander had proper authority over the religious content of his sermons and prayers.  *See* January 11, 2006 Ruling by Rear Admiral F.R. Ruehe ("Ruehe Ruling").  A copy of the Ruehe Ruling is attached here as Exhibit "E."
Rear Admiral Ruehe specifically found: (1) The downgraded evaluation will forseeably harm Chaplain Klingenschmitt (page 8); (2) That Captain Carr did punish the chaplain's optionally-attended chapel sermon (p. 11); and (3) That Captain Carr did censor the content of the chaplain's evening prayers (p. 16).

In addition, Defendant claims Chaplain Klingenschmitt was required to prove the obvious, that "To show a sufficiently concrete injury, Plaintiff must now demonstrate that his commander actually adopted a policy that operated in the same way as the now-rescinded SECNAVINST 1730.7C."  This is easily done, in fact it's already been stipulated by the Navy's own investigators. Exh. E, Ruehe Decision (articulating the Navy's policy by accepting the investigators' report).

Third, when Chaplain Klingenschmitt complained about the 1998 prayer policy, the Navy refused to rescind that policy, as the Chief of Navy Chaplains defends it still today, telling Chaplain Klingenschmitt in writing that praying "in Jesus name" denigrates other faiths.  *See* August 23, 2006 statement from Admiral Iasiello.  A copy is attached here as Exhibit "F."

Additionally, when Chaplain Klingenschmitt complained about the mandatory "prayer lectures" at the Naval Chaplain School, the Navy refused to process his complaint for 14 months, and the Navy is still instructing chaplains to change the content of their public prayers.  *See* Navy Chaplain Lecture Directives.  A copy of the Directives is attached here as Exhibit "G."

Finally, commanding officer Captain Lloyd Pyle downgraded Chaplain Klingenschmitt's 2006 evaluation because he appealed religious harassment to the President and questioned the religious authority of senior officers.  A copy of that evaluation is attached here as Exhibit "H."

To this day, the Navy still has a policy of censoring chaplains' prayers, and they're still teaching that policy, and now they're defending those policies as grounds to deny Chaplain Klingenschmitt's recertification and remove him from the Naval Service.

### C. The Constitution Bars the Navy's Establishment of a Pluralistic Religion

The Navy has established a religion for its chaplains that only permits them to pray in a pluralistic way.  The Navy charged, prosecuted, and is now seeking to separate Chaplain Klingenschmitt because he prayed in the name of Jesus.  The Navy has not provided any evidence that would permit Chaplain Klingenschmitt's separation, other than his religious speech and the Navy's reaction to that speech.

"It is axiomatic that the government may not regulate speech based on its substantive content or the message it conveys."*Rosenberger v. Rector and Visitors of University of Virginia*, 515 U.S. 819, 828-829 (1995) (citations omitted). The Supreme Court has identified certain principles that follow this precept:

> (1) In the realm of private speech or expression, government regulation may not favor one speaker over another.

> (2) Discrimination against speech because of its message is presumed to be unconstitutional.

> (3) These rules informed our determination that the government offends the First Amendment when it imposes financial burdens on certain speakers based on the content of their expression.

> (4) When the government targets not subject matter, but particular views taken by speakers on a subject, the violation of the First Amendment is all the more blatant;

> (5) Viewpoint discrimination is thus an egregious form of content discrimination. The government must abstain from regulating speech when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction.

*Id.* (citation omitted).

The Navy permits pluralistic chaplains to pray on military bases and at military gatherings while denying Christians such as Chaplain Klingenschmitt the same rights. The Navy opened this forum, now the Navy must respect the lawful boundaries it has itself set. The Navy may not exclude speech where its distinction is not "reasonable in light of the purpose served by the forum," *Cornelius v. NAACP Legal Defense & Ed. Fund, Inc.*, 473 U.S. 788, 804-806 (1985), nor may it discriminate against speech on the basis of its viewpoint. *Rosenberger*, 515 U.S. 829.

The defendant do not dispute that Chaplain Klingenschmitt's speech that put him in the position for the Navy to prosecute and separate him was religious speech. Religious speech is always protected speech. *See Widmar v. Vincent*, 454 U.S. 263, 270 n. 7, 102 S.Ct. 269, 274 n. 7, 70 L.Ed.2d 440 (1981) (refusing to hold that "religious worship" is unprotected speech while speech about religion is protected; "even if the distinction drew an arguably principled line, it is highly doubtful that it would lie within the judicial competence to administer").

## D. The Navy, was, and is, in Violation of the Constitution

The Navy began their campaign to separate Chaplain Klingenschmitt for his religious beliefs and prayers after he gave a Christian sermon in a chapel in July 2004. Navy Captain Carr, decided that the content and viewpoint of Chaplain Klingenschmitt's religious speech at that sermon was not what he wanted to hear. Due to the Navy's pluralistic religion, Captain Carr relied upon the Navy's requirement that their Chaplains practice that religion to provide the first less than stellar fitness report of Chaplain Klingenschmitt's career.

Captain Carr based his evaluation upon Chaplain Klingenschmitt's prayers at a memorial service, which was advertised as an optional Christian service in the Protestant Chapel. Pursuant to section 6031 of title 10, United States Code, Chaplain Klingenschmitt had exercised his rights to

conduct that service according to the manner and forms of the church of which he is a member and the Navy punished him for those prayers. Chaplain Klingenschmitt was following the directions of his bishop, who required he preach all the Gospels, not just those that non-believers find inoffensive.

Captain Carr summed up the Navy's position by stating: "Presumably, if his bishop requires him to preach all the Gospels, and he was not required to deliver that particular message on that particular occasion, he was free to choose to deliver a message at the memorial service that, while being true to his own beliefs, could also have commanded the assent of the vast majority of his audience. Nevertheless, Lieutenant Klingenschmitt chose to deliver a message he knew to be, by his own description, 'exclusive.' The impact Lieutenant Klingenschmitt's performance at the command memorial service had on command morale was a legitimate matter of concern to the Commanding Officer, and was a proper matter to consider in evaluating the officer's performance."

Even the defendant here stipulates, Chaplain Klingenschmitt was "properly punished" for quoting exclusive Bible verses like John 3:36 inside the base chapel during an optionally-attended "Christian Memorial Service" to honor the Christian faith of a deceased Sailor, a member of Klingenschmitt's flock. The Navy adopted Captain Carr's limiting the Chaplain's First Amendment rights by directly punishing the chaplain's religious expression with their acceptance of the negative fitness report. And that was the very fitness report the Navy used as the basis to seek the separation of Chaplain Klingenschmitt now and to deny recertification of the Chaplains ecclesiastical endorsement. January 11, 2006 Report. A copy is attached here as Exhibit "I."

Captain Carr also deliberately censored the chaplains' prayers at other times stating: "In delivering the evening prayer over the 1MC [ship's microphone], a command chaplain is assisting the commanding officer in carrying out an aspect of the command religious ministries program. As such, a command chaplain is appropriately subject to the commanding officer's [religious]

supervision in carrying out that duty.  In this case, Captain Carr legitimately sought to ensure evening prayer had the broadest possible appeal, in order to accomplish the official purpose for which he permitted access to the 1MC . . . the Navy must be sensitive to the requirements of the Constitution's Establishment Clause, which prohibits official government endorsement of sectarian religious beliefs [but does not preclude the Navy from establishing a pluralistic religion]."  Exh. I, January 11, 2006 Fitness Report of Chaplain Klingenschmitt, page 16.

The Navy disregarded the letter from Chaplain Klingenschmitt's Ecclesiastical Endorser from the Evangelical Episcopal Church which expressed outrage at the Navy's persecution of their chaplain's faith, prayers, and sermons.  A copy of the Grider letter is attached here as Exhibit "J." The Navy admitted at that time that they were subject to 10 U.S.C. 6031, which provided for the chaplain's right to conduct public worship according to the manner and forms of the Evangelical Episcopal Church.

That Navy investigative report was signed six weeks before the Navy instituted SECNAVINST 1730.7C, yet the report provides for a nearly identical policy, which mirrors the Navy's 1998 prayer policy proving that Chaplain Klingenschmitt's "commander actually adopted a policy that operated in the same way as the now-rescinded SECNAVINST 1730.7C."  Hence Chaplain Klingenschmitt can "show a sufficiently concrete injury" which defendant's own investigators stipulated for us, and cannot be denied as proven fact.

Chaplain Klingenschmitt proposed a prayer policy of permitting diverse lay-leader Sailors of the Jewish, Catholic, Muslim, and even Atheist faiths being given the right to pray.  A copy of the Appendix is attached here as Exhibit "K."  With no explanation or alternative, the Navy rejected the equal opportunity proposal and instead forced a "non-sectarian" faith upon the chaplain and the entire crew of Chaplain Klingenschmitt's ship.  This non-sectarian religion is the Navy policy  to

this day. *See,* Exh.E, Ruehe Decision.

There is sufficient evidence of irreparable harm for this Court to issue the injunctive relief requested. For these reasons, Plaintiff respectfully requests the Court to grant a preliminary injunction to order the Navy to abide by the Constitution and cease censoring chaplains' prayers, Chaplain Klingenschmitt also requests an injunction to stop the Navy from separating him because he exercised his constitutional rights and received a downgraded performance evaluation by Captain Carr, which forms the basis for Defendant's separation of his service. This very same evaluation was considered by the Chief of Navy Chaplains and Chief of Naval Personal and Assistant Secretary of the Navy in their decision to "not recertify" Chaplain Klingenschmitt's credentials, as was his "entire personnel record." A copy of the Holderby Memo is attached here as Exhibit "L."

### III. IRREPARABLE HARM

Defendant does not have a valid argue against Chaplain Klingenschmitt's irreparable harm and focuses solely on possible post-separation remedies that might be available to Chaplain Klingenschmitt. Defendant totally ignores the well-settled principle that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 299 (D.C. Cir. 2006); *citing Elrod v. Burns*, 427 U.S. 347, 373 (1976); *Nat'l People's Action v. Village of Wilmette*, 914 F. 2d 1008, 1013 (7th Cir. 1990) (even temporary deprivation of First Amendment rights is sufficient proof of irreparable harm). *Elrod*, the seminal case on this point, held that public employees who were threatened with termination because of their exercise of First Amendment rights had shown irreparable harm and that such harm was sufficiently imminent to justify preliminary relief. *Elrod*, 427 U.S. at 373.

Precisely the same situation is presented here; Chaplain Klingenschmitt has alleged that the

reason the Navy has decided to separate him, in contravention of its own regulations and under circumstances that are unprecedented, is his exercise of First Amendment rights. Compelling evidence has been presented supporting the claim that the true reason for the separation proceeding is Chaplain Klingenschmitt's exercise of fundamental constitutional rights. Under *Elrod*, this clearly constitutes irreparable harm supporting a preliminary injunction, a point the Navy's response wholly avoids. None of the cases cited by the Defendant involve separation or loss of employment related to the exercise of First Amendment rights.

Instead, the Navy argues that they will be harmed if the injunction is granted. However, as shown above, the Navy's own regulation makes it mandatory that the Chaplain's ecclesiastical endorsement be recertified "upon receipt" of a new endorsement. The Navy will suffer no harm if it follows its own regulations. Once they follow their regulation, their disingenuous reason for terminating the Chaplain is lost.

### IV. THE PUBLIC INTEREST WILL BE SERVED BY THE INJUNCTION

_____The Navy makes conclusory statements concerning the public interest. The Navy did not deny that the public has a strong interest in the preservation of the Establishment Clause and the enforcement of constitutional and statutory rights to speech and due process, such as those advanced by Chaplain Klingenschmitt in this case. There is a strong public interest in seeing that citizens have their First Amendment rights to pray protected. Thus, the public interest strongly favors upholding the Constitution.

### The Public Interest Will Be Served By A Complete Record

### The Court Should Grant the Injunction Until Discovery is Completed

Discovery is required because the noted expert in Chaplain Litigation, Doctor Harald R. Leuba, PhD, analyzed the Navy's arguments by studying nearly 2000 pages of decision memoranda

and work sheets prepared by, or developed for, the Chaplain Appointment and Recall Eligibility (C/A/R/E) Advisory Group. This group is charged with advising the Chief of Chaplains as he meets his obligations under OPNAVINST 1120.9. December 1, 2006 Declaration of Doctor Harald R. Leuba, PhD ("Leuba Dec."), ¶ 2. A copy of the Leuba Dec. is attached here as Exhibit "M."

After examining the 2000 pages of C/A/R/E records, Dr. Leuba concluded that those records dealt with roughly 97% of all the candidates and chaplains who applied to the C/A/R/E Advisory Group between 1985 and 2005. *Id.,* ¶ 5. As a statistician he was struck by two facts: First that the C/A/R/E Board seems to have done exactly what it was required to do: Upon receipt of a new ecclesiastical endorsement for all other chaplain, the Group recommended to the Chief of Chaplains that he "Recertify a chaplain's professional qualification."

Second, the Navy has stated that there were 45 chaplains in her records who requested a change of endorser, the Navy's C/A/R/E database prepared for *Larsen* only shows half that number, 22. *Id.* ¶ 7.

Dr. Leuba concluded that the C/A/R/E Advisory Group is limited by its official charter to certify (yes or no) whether a candidate's credentials meet <u>minimum</u> requirements (see paragraph 4 of the OPNAVINST 1120.9.). A copy of OPNAVINST 1120.9 is attached here as Exhibit "N." OPNAVINST 1120.9 provides that the C/A/R/E group has to *validate* the credentials (i.e. make a "determination that the candidate is qualified"); C/A/R/E is not required or directed to *rank* the candidates, nor judge them relative to other candidates, although that is certainly an inference re their duties, which they seem to have adopted. *Id.*, ¶ 8.

Dr. Leuba found that the Group "approved", *i.e.* recommended that the Chief of Chaplains "recertify" every applicant, signals that if, now after 20 years, a particular petition to change endorsers is rejected, this is a statistical outlier, in the fullest sense of that word. It is Dr. Leuba's

opinion that Chaplain Klingenschmitt's rejection is statistically significantly "out of range" because it could not have occurred by random chance. One rejection in 23 "tosses" of a random coin is statistically significant beyond two standard deviations even if the coin is 50/50. One new rejection after 22 successful applications is beyond reasonable doubt in any statistical sense; one may assume that the rejection was motivated by something other than the stated reasons. *Id.*, ¶ 9.

Dr. Leuba states that the "escape clause" in (b) "Recommend to CHNAVPERS a chaplain's continuance based on needs of the Navy." The "needs of the Navy" cannot <u>change</u> if a Chaplain changes endorser - unless the Navy can demonstrate that it has a need for some denominations and no need for others - which would be a clear demonstration of proscribed denominational preference. Nor, can the "needs of the Navy" suddenly "require" one fewer chaplain while simultaneously lamenting a shortage of qualified applicants. *Id.*, ¶ 10. In fact, the Navy admits that "The Chaplain Corps is the most difficult program to recruit into," according to Navy Commander Gary Carr, Navy Recruiting Chaplain program manager.

Dr. Lueba concluded that from the second fact here, that Ms. Berto swears that the C/A/R/E records back to 1983 contain 45 instances of a requested change of endorser is that, as usual with the Navy's data, something is missing, or misunderstood. Either there were almost as may requests for a change in ecclesiastical endorsement in the two years 1983 and 1984 as in the 20 years since then, or only half of the requests were taken up "formally" in a C/A/R/E decision memorandum [e.g. before 1995 maybe the C/A/R/E Advisory Group dealt with the matter "internally", perhaps as a "matter of course".] In any case there is almost certainly some sort of definitional variable at work "between the lines". It is possible that Ms. Berto counted wrong, or it is possible that the Navy has not produced nearly as many records as it could have. Neither of those two options would signal conscientious care (good faith). *Id.*, ¶ 11.

The Defendant (Defendant or "Navy") has stated that they have initiated separation proceedings against Chaplain Klingenschmitt based solely upon his lack of ecclesiastical endorsement. Def. Opp., pg. 3. However, the Navy must admit that Chaplain Klingenschmitt was never without an ecclesiastical endorsement. *Id.,* pg. 2. Indeed, for two days Chaplain Klingenschmitt had two ecclesiastical endorsers during his transition between churches.

As the Navy has admitted in their documents to the Court that made this the key part of their defense, expedited discovery is required for this Court to make an injunction determination.

## CONCLUSION

Defendant's arguments make clear that discovery should be permitted in this case prior to any separation of Chaplain Klingenshmitt after his more than 15 years of honorable service. Defendant characterizes the Chaplain's request as "a scattershot approach by alleging myriad violations of Plaintiff's constitutional rights." Def. Opp., pg. 1. However, it is the Navy's actions in trying to cover up their Constitutional violations that have muddied the water. The only actions that Chaplain Klingenschmitt has been punished for are Constitutionally protected religious speech. Exh. A, ¶ 1-83. Chaplain Klingenschmitt respectfully request this court to grant his motion for a preliminary injunction until discovery is complete and a hearing is held based on the facts.

Respectfully submitted,

   /s/ William P. Farley
Law Office of William P. Farley, P.C.
1350 Connecticut Avenue, N.W.
Suite 200
Washington, D.C. 20036
(202) 775-1550
(202) 775-0008 (fax)
farley@dccounselor.com
Counsel for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing Plaintiff's Reply in Support of his Motion for a Temporary Restraining Order and/or Preliminary Injunction and for an Emergency Hearing was served on all parties by delivering a copy thereof via the Court's electronic filing, on this 8th day of December 2006 to:

Michael P. Abate
Trial Attorney
United States Department of Justice
Federal Programs Branch
PO Box 883
Washington, DC 20530
Tel: (202) 616-8209
Fax: (202) 616-8470
michael.abate@usdoj.gov

   /s/ William P. Farley
Law Office of William P. Farley, P.C.
1350 Connecticut Avenue, N.W.
Suite 200
Washington, D.C. 20036
(202) 775-1550
(202) 775-0008 (fax)
farley@dccounselor.com
Counsel for Plaintiff