DEPARTMENT OF THE NAVY
NAVY AND MARINE CORPS TRIAL JUDICIARY
CENTRAL JUDICIAL CIRCUIT
SPECIAL COURT-MARTIAL

UNITED STATES V. LT GORDON J. KLINGENSCHMITT, CHC, USNR

RULING ON THE LAWFULNESS OF THE ORDER

   The Defense has moved to dismiss the Charge and its Specification because the order issued by CAPT Loyd Pyle, Commanding Officer, Naval Station Norfolk, was unlawful. The Court has considered the evidence presented and the arguments of the parties and concludes that CAPT Pyle's order of 15 December 2005 and supplemented by a memorandum of 6 January 2006 was lawful. This ruling sets out rationale with respect to each of the Defense's six arguments.

   At the outset, it is important to say what is not at stake in this opinion or, indeed, in the trial itself. The wisdom of the Navy's instruction governing Religious Ministries Professionals (the current edition of SECNAVINST 1730.7) and any implementing guidance is not at issue. In some respects, those are political questions that are wholly beyond the competence of the court-martial process. *See United States v. New*, 55 M.J. 95, 108-09 (2001). This is likewise not a case involving an establishment of religion or restricting its free exercise. *See, e.g., Wynne v. Town Council*, 376 F.3d 292 (4th Cir. 2004). The Department of the Navy is not mandating one set of beliefs to be embraced by all its personnel. LT Klingenschmitt is free to be an Evangelical Episcopalian and is free, in the setting of divine services, to conduct the worship according to the forms and traditions of that Church.

   It is also not the role of a court-martial to resolve administrative complaints made by any person. Appropriate and competent avenues exist through, for example, complaints of wrongs brought under Article 138, UCMJ, 10 U.S.C. § 938, or through resort to the Inspector General process, *see generally* DODDIR 7050.6 of 23 June 2000, or through applications to correct records, *see* 10 U.S.C. § 1552. Service members retain their first amendment right to petition Congress for the redress of grievances.

   The central issues in this case are whether LT Klingenschmitt was given a lawful order of sufficient clarity to enable him to understand and obey it, and then whether he failed to obey that order in some respect. "An order is presumed to be lawful, and the accused bears the burden of rebutting the presumption. The essential attributes of a lawful order include: (1) issuance by competent authority -- a person authorized by applicable law to give such an order; (2) communication of words that express a specific mandate to do or not do a specific act; and (3) relationship of the mandate to a military duty. [T]he accused may challenge an order on the grounds that it would require the recipient to perform an illegal act or that it conflicts with that person's statutory or constitutional rights." *United States v. Deisher*, 61 M.J. 313, 317 (2005)(citations omitted).

   LT Klingenschmitt has challenged this order on six bases. The sixth basis, that "this was and is a vindictive prosecution," has nothing to do with the substance of the order and it is summarily rejected. The remaining five bases will be discussed *seriatim*.

"It is not a clear, specific, narrowly drawn mandate."

Atch 2

Contrary to the argument advanced by LT Klingenschmitt, the mandate is quite clear, specific, and narrow. The order from CAPT Pyle addresses specifically an appearance on a national political program at which LT Klingenschmitt was scheduled to appear in uniform and then generally about "any other media appearance." In the context of the letter, the term "media appearance" is clear, namely, an appearance to allow LT Klingenschmitt to advance a "political, social, or religious issue" on what he hopes will be a well-witnessed stage.

LT Klingenschmitt sought clarification of the order about two weeks later, and in his memo seeking clarification he acknowledged, in the opening sentence, that he was engaged in a "cause." The Commanding Officer responded by reiterating that LT Klingenschmitt was prohibited from "engaging with the press to express personal views." The clarification also emphasized that LT Klingenschmitt was entitled to all constitutional and statutory protections (to be discussed below).

"The order cannot be enforced because it essentially did not more than to instruct Chaplain Klingenschmitt to comply with the Uniform Regulations."

As conceded at oral arguments, the "ultimate offense" doctrine is limited generally to punishment, not to the substance of an offense. At any rate, the court notes that the Uniform Regulations are not in all particulars a self-executing order and may indeed require further implementation, through a lawful order, to be enforceable. Whether the Uniform Regulations provide a safe harbor for LT Klingenschmitt in these specific circumstances is a question to be resolved by the trier of fact.

"The order was not in furtherance of a military need."

According to the testimony of CAPT Pyle, the Naval Station has a public affairs apparatus. This testimony was seconded by that of the Public Affairs Officer at the Naval Station, Terri Davis. An organization of the size and complexity of the United States Navy, or any of the elements of the shore establishment or the operating forces, properly assigns discrete tasks to experts in discrete areas. Thus, for example, the Commanding Officer of the Naval Station, while responsible under regulation and tradition for all that occurs within his command, nonetheless will assign tasks to experts in functional areas: the Public Works officer, for example, will take care of the physical plant; the Port Operations establishment will handle pierside and waterfront operations; the Public Affairs officer will speak to the public on behalf of the Commanding Officer.

Just as important as it is for the subject matter experts to operate within their respective areas of expertise, it is equally important that non-experts not hold themselves out as experts in particular areas. One would not want the station judge advocate, for example, to design and build a berm around the golf course.

Because of substantial attention that his "cause" had attracted, LT Klingenschmitt could have been viewed as a mouthpiece for the Navy. He was not such a representative, however, and his Commanding Officer was sensitive to the position that LT Klingenschmitt could have found himself in -- namely, being pressed by exterior forces for a statement that represented the views of the Navy. It is that possibility that led CAPT Pyle to issue his order: "I direct you not to wear your uniform for this appearance [on the Bill O'Reilly TV show in December 2005] or any other media appearance without my express prior permission." As CAPT Pyle testified, moreover, he was interested in ensuring that LT Klingenschmitt did not run afoul of other statutes or regulations governing his conduct as an officer, for example, the Department of Defense

prohibition on engaging in certain partisan political activities, DODDIR 1344.10 of 2 August 2004, or the Joint Ethics Regulation, DOD 5500.7-R of 30 August 1993. The order was therefore directed toward a military purpose, not toward a private end.

The Court is somewhat confused at the Defense's argument that, because LT Klingenschmitt was the only person addressed in the order, it was therefore unlawful. The very essence of a lawful order is that it be directed to a person (as opposed to a general order, which can instead be directed to a group). It was LT Klingenschmitt who was scheduled to appear on the political television show and who was engaged, as he puts it himself, in advancing a "cause," and it is therefore only logical that the order be directed to him personally.

"The order was contrary to established law."

In support of his position, LT Klingenschmitt cites to the Navy Uniform Regulations, a statute governing the conduct of Chaplains in the Naval Service, and various other provisions that address worship. Some of the arguments that LT Klingenschmitt makes are better suited for a complete airing before the finder of fact, but the Court will address some aspects of his argument.

[handwritten: "PUBLIC WORSHIP" IS ONLY SAFE INSIDE SUNDAY CHAPEL?]

Much of the weakness of LT Klingenschmitt's argument is his insistence on reading "public worship" as that term is used in Section 6031 of title 10, United States Code, and the current Religious Ministries instruction, to mean the same thing as "worship in public." It is clear, however, from testimony offered by two chaplains and from the Religious Ministries instruction (SECNAVINST 1730.7C), that "public worship" is a term of art: it describes a combination of setting, teaching, and interpretation that constitutes a "divine service." One who reads a biblical verse or who recites a prayer at The Speaker's Corner in Hyde Park is not engaged in "public worship," although he may be worshiping in public. It is possible that LT Klingenschmitt's ecclesiastical endorser sees things differently (for example, as an evangelical church it is always engaged in the work of the Great Commission), but it then becomes a question for the finder of fact, not for the military judge, to resolve.

This weakness carries over to the strained interpretation of "*bona fide* religious event" contained within the Uniform Regulations, and the strained interpretation of "conducting public worship" as set out in the U.S. Navy Regulations, 1990. The clear intent of these regulations is to accommodate the various trappings that clergymen wear in conducting their ceremonies -- the *tallit*, the biretta, the stole. The Uniform Regulations in particular recognize that service members need not hide their status when engaging in religious obligations (as, for example, a recruiter who wishes to answer the call of the *muezzin* without changing out of uniform).

"The Order was given as a reprisal against Chaplain Klingenschmitt for his otherwise lawful activities and in direct violation of federal and military directives providing whistleblowers protection from reprisals."

Employees of the government are in many respects like employees of any private employer. The employer establishes regulations for the workplace, and if employees wish to continue their service they abide by those regulations. Employers' own issuances are also subject to governing work-place statutes (*e.g.*, the Fair Labor Standards Act; the Age Discrimination in Employment Act).

Executive Branch employees (whether blue collar Wage Grade workers, white collar Senior Executive Service or political appointees, or uniformed members of the armed forces) are often reminded that public service is a public trust, and that undertaking the service of one's

nation places one on perhaps a different plane from the general public. All persons who accept the sovereign's coin are obliged to comply with the conditions of employment imposed by the sovereign and must recognize that certain of their activities (speech, for example; *see Parker v. Levy*, 417 U.S. 733 [1974]; or dress, *see Goldman v. Weinberger*, 475 U.S. 503 [1986], *modified by* 10 U.S.C. § 774) may be curtailed. The Supreme Court has recently reaffirmed doctrine of long standing that a public employee may be subject to discipline for his speech. *See generally Garcetti v. Ceballos*, 04-473, slip op. at 5-14 (30 May 2006).

As noted at the outset of this opinion, this trial is not about whistleblower protection, and it is beyond the competence of the court-martial to determine whether LT Klingenschmitt is entitled to that status. Whistleblower protection does not provide *carte blanche* to one who declares himself a whistleblower; one may still properly be held accountable for his actions.

In summary, the Commanding Officer of the Naval Station, faced with a junior officer who believed himself to be *sui juris*, properly outlined that officer's obligations and responsibilities for him and properly required that officer to act in accordance with governing law, regulation, and tradition of the Naval Service. The Commanding Officer did so with a professed, and credible, concern for the professional behavior and well-being of the junior officer. The order issued to LT Klingenschmitt was lawful.

LEWIS T. BOOKER, JR.
CDR, JAGC, USN
Military Judge
31 August 2006