## PRAYER IN THE ARMED FORCES -- (Senate - September 19, 2006)

[Page: S9714]   *GPO's PDF*

---

Mr. WARNER. Mr. President, at the present time, the members of the Armed Services Committee of the Senate and the members of the Armed Services Committee of the House are in a conference. A great deal of confidentiality is attached to that procedure. I do not in any way intend to violate that confidentiality.

But before the conference--and this is not a matter of confidentiality--is a provision in the bill of the House of Representatives which is related to military chaplains. I will read from the House bill.

Each Chaplain shall have the prerogative to pray according to the dictates of the Chaplain's own conscience, except as must be limited by military necessity, with any such limitation being imposed in the least restrictive manner feasible.

That is the end of the proposed bill language. That is what I would like to address at this time.

I first want to say that the Senate has no such provision, and therefore we have to resolve the difference between the two bodies. The House of Representatives put this provision in during markup, which is the time they go over their bill. Another amendment was offered in that markup and rejected. It is referred to as follows: ``Amendment to H.R. 5122, offered by Mr. Israel,'' Member of Congress, and it provides in section 590, which I just read, relating to military chaplains: at the end of the quoted matter inserted by each of the subsections (a), (b), (c), (d), and (e), insert the following: ``, except that chaplains shall demonstrate sensitivity, respect, and tolerance for all faiths present on each occasion at which prayers are offered''.

I personally have not decided on what version I personally feel should address this problem, so I remain of an open mind. But I remain very firmly of a mind that in the brief time that we have had an opportunity to look at it and examine it here on the Senate side, the time is inadequate to address an issue which I regard as of enormous importance. This is an issue that I would hope this Chamber would have the opportunity to discuss, whether to put into law a provision as proposed by the House or a provision as proposed by Mr. *Israel*, a Member of Congress, which addresses the perspectives of this issue from a different angle. This is just an example of the diversity of views on this important issue.

Among the conferees--I cannot name names; I will not--there is a strong division, those in favor of certain language other than what is in the House

bill. Some conferees think that the provision by Mr. *Israel* should be included. So there is at this time just an enormous uncertainty among the conferees.

The House book that contains what we call report language, which is a very helpful instrument to try to explain the background of how provisions come into our legislation, trying to explain what some of the words mean, this book is silent. The only report language is a recitation, exactly, of the proposed bill language. So there is no guidance that Congress is providing on this important phrase.

I hasten to point out that, as is the case in just about all matters that we take up in the Armed Services Committee regarding the annual authorization bill, the Secretary of Defense transmits to us opinions that he has, on behalf of the Department, with regard to proposed legislation. I now will have printed in the **RECORD** what is entitled:

The Department of Defense Appeal, FY 2007 Defense Authorization Bill; Subject: Military Chaplains; Language/Provision: House section 590 established chaplains at each of the Military Services would have the prerogative to pray according to the dictates of their own conscience, except as must be limited by military necessity. The Senate included no similar provision.

The Department of Defense position is they oppose this provision. This reads as follows:

This provision could marginalize chaplains who, in exercising their conscience, generate discomfort at mandatory formations. Such erosion of unit cohesion is avoided by the Military's present insistence on inclusive prayer at interfaith gatherings--something the House legislation would operate against.

The Department urges exclusion of this provision.

We have not decided as yet. But that is another dimension to the diversity of thinking on this very important provision.

As all Members in this body fully appreciate and understand, when a matter of this controversy comes along you are often singled out by a variety of people who disagree. I have not taken a position, but nevertheless I am being besieged by telephone, by bloggers, by everything else--that I have taken this or that position. I will state momentarily what I think should be done. But I am very proud of my background.

I was blessed with two magnificent parents. We were active in the Episcopal Church, and I have remained active in that faith nearly all of my life, nearly 80 years now. My uncle was a rector of a very prominent parish here in Washington, DC, in the shadow of the Washington Cathedral where I

was raised, not more than three blocks from his church, and I was a regular attendee of Sunday school through that. I am just sorrowful that people attack me personally, as if I had no religious foundation. I have that foundation.

I have had the privilege to serve in uniform. Not a career--and I have said it many times here on the floor of the Senate--of any great note, a very modest career, but as a young, 17, 18-year-old in the last year of World War II, just in the training command. We were trained to be replacements to go overseas to the Pacific. The war ended. We were sent home.

But many a time in the course of that period in military service, the second chapter, this time as a United States Marine, a young officer serving in Korea, the First Marine Air Wing, at a time when, indeed, certainly the infantry troops in the front lines, where I visited on occasion, were being subject to the most difficult combat under rigorous conditions in Korea, but I knelt and prayed many, many times with my fellow soldiers--men and women, fellow marines, fellow sailors.

So I speak as one who has benefited through the years from the religion that was instilled in me through my parents and the church of my choice, and it has given me a great strength to face up to the trials and tribulations that all of us experience in a lifetime.

I respect the chaplains. I went to chaplains on occasion, and I am grateful for the counseling that they gave me. So I say, I look back with a sense of humility on what the military has taught me. Many times have I said I don't think I would ever have achieved the opportunity to be a U.S. Senator had I not had the opportunity, the privilege of serving in uniform during the periods of two conflicts of our Nation and the learning that I received throughout the military. I have often said the military did more for me than I ever did for the military. But I just will stand my ground against anyone who wishes to challenge my religion.

Now, in my 28th year in this magnificent Chamber, many is the time I stood here as our Senate opens and listened to either our chaplain or a visiting clergy. Each of us have the privilege of inviting from our several States a visiting clergy to come and deliver a prayer. It is part of the life of the U.S. Senate. I know of no effort ever to try and censor or legislate the prayers given here in the Senate, either by our chaplain or by the many who come from all over America to give their prayers here. So I am not suggesting the military is like the Senate. But it is an example of the use of prayer.

The military is different. It is for that reason, that it is different, that I think it is important that we proceed to resolve such problems as may exist today in the military regarding how our chaplains pray, that we resolve that only after the institutions of the Senate and the House of Representatives go

through a careful and deliberative process, not just try in the heat of resolving a conference report, in brief meetings here and there among just a very few--well, sometimes all the conferees, sometimes in small groups--trying to reconcile the differences between legislative provisions in the House bill and those in the Senate bill.

I would like to call our attention to the Constitution of the United States. It says:

Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the government for a redress of grievances.

This is such a fundamental part of our democracy. It is a pillar of strength in this Republic. But it is constantly reviewed by the courts against the different factual situations that come up.

I think the military deserves no less than to have the most careful and deliberative review of this suggested language rather than to put it into law at this time. My recommendation--I will cooperate with the conferees--is that I am not prepared to take any position on how this language should be put into law or not put into law at this time. But I do say that I will strongly recommend to the Committee on Armed Services that the seriousness of this issue literally demands that as soon as the new Congress convenes in January, the committees of the Armed Services of the Senate and the House put on hearings at the earliest possibility. You could start with this language as recommended by the House of Representatives--the Senate has no language--to go through a process where people can come in.

For example, I asked each of the chiefs of the chaplains of the Army, Navy, and the Air Force to come in and speak to the conferees--there were only four conferees there at that time--which they did. I attached the utmost confidentiality as to what they said. But I was left with the impression that now is not the time to try to quickly put this one sentence into law by virtue of incorporating it into the final draft of the conference report. Those chaplains would be quite willing to come before the Congress in open session. Let the whole of the United States see this debate unfold, as it should.

Prayer is very important to the men and women of the Armed Forces. I remember so well the old maxim, ``There is no atheist in the foxholes of war.'' Military people, military families are heavily dependent upon the comfort that is given by prayer--prayer alone or prayer with others.

I urge this Congress not to do at this time this one sentence. I will read it again. I have difficulty, as many times as I have read it, understanding exactly what it means.

   It says: Each chaplain shall have the prerogative to pray according to the dictates of the chaplain's own conscience except as must be limited by military necessity.

   What is that? What is military necessity? We should define that very carefully. I continue:

   With any such limitation being imposed in the least restrictive manner feasible.

   That, to me, is a complicated sentence and a complicated message to put forth.

   In conclusion, I will recommend to the conferees that at this time Congress not enact this bill language in the House, that we defer it to a time when the entire Senate and the entire House in open before the public invites in as many as we can possibly accommodate to give their views on the institution of the chaplain in the Armed Forces of the United States, an institution that I have known since the closing days of World War II and have known for over a half century and have seen it function and have seen it work. Before we change those rules, I think we owe no less to the men and women in the Armed Forces to have these deliberative bodies of the House and Senate have their hearings, debate the language, and then decide whether they wish or not to write language that in many respects we were admonished by the Founding Fathers to be careful, at least at the most under the First Amendment.

   In addition, some of the concern--and I think it is a legitimate concern--of those proposing this language emanates from actions taken by the Department of the Air Force, the Department of the Navy, and I believe--I have not seen it--the Department of the Army in issuing certain guidance. The guidance was issued recently about this subject of prayer and other matters relating to the chaplain.

   I will not go into it, but I will put in today's **RECORD** the documents that were issued by several military departments. You can read it for yourselves.

   I think that we should put in report language in our bill two things: First, that the Secretary of Defense will stay--that means hold in abeyance--enforcement of these newly promulgated regulations until such time as the Congress has had an opportunity to hold its hearings, go through a deliberative process, and then decide whether it wishes to act by way of sending a conference report to the President for purposes of becoming the law of the land.

   So it is twofold: let the system of the chaplain, which has been operating for my lifetime, half a century, serving the needs of the men and women of the Armed Forces, continue to do as they have done but stand down any

regulations until studied by this coequal branch of the Government, which under the Constitution has a very special language provision that says we have a responsibility to care for the needs in general of the men and women of the Armed Forces. That is what the conference report does.

I am hopeful that the conferees will see the wisdom of this action, let this bill go forward to the President's desk so it can become law, and it can care for the men and women of the Armed Forces.

That will be written in report language. It does not have the force of law. But I am basically assured by the Department of Defense that they will comply; stay for the time being the most recent regulations, whatever they wish to call them, that have been sent out to their respective commands until Congress has had a reasonable time within which to decide whether they feel it is necessary to prepare for the President's signature a new law.

Mr. President, I ask unanimous consent that additional materials regarding this subject be printed in the **RECORD**.

There being no objection, the material was ordered to be printed in the **RECORD,** as follows:

Department of the Navy

SECNAV INSTRUCTION 1730.7C

*d. Chaplains*

(1) Chaplains are Qualified Religious Ministry Professionals (RMPs) endorsed by a Department of Defense (DOD)--listed Religious Organization (RO) and commissioned as CHC officers.

(2) As a condition of appointment, every RMP must be willing to function in a pluralistic environment in the military, where diverse religious traditions exist side-by-side with tolerance and respect. Every RMP must be willing to support directly and indirectly the free exercise of religion by all military members of the DON, their family members, and other persons authorized to be served, in cooperation with other chaplains and RMPs. Chaplains are trained to minister within the specialized demands of the military environment without compromising the tenets of their own religious tradition.

(3) In providing religious ministry, chaplains shall strive to avoid the establishment of religion to ensure that free exercise rights are protected for all authorized personnel.

(4) Chaplains will provide ministry to those of their own faith, facilitate ministry to those of other faiths, and care for all service members, including

those who claim no religious faith. Chaplains shall respect the rights of others to their own religious beliefs, including the right to hold no beliefs.

(5) Chaplains advise commands in matters of morale, morals, ethics, and spiritual well-being. They also serve as the principal advisors to commanders for all issues regarding the impact of religion on military operations.

(6) Chaplains are non-combatants. Chaplains are not authorized to obtain weapons qualifications, warfare qualifications, or bear arms; however, chaplains who attained weapons or warfare qualifications during prior service as a combatant are authorized to wear their awards and/or warfare qualifications. Chaplains are eligible to qualify for and to wear the insignia of qualification designations such as Fleet Marine Force, Basic Parachutist, and Navy/Marine Parachutist.

*6. Responsibilities of Commanders*

a. Commanders shall provide a Command Religious Program (CRP) in support of religious needs and preferences of the members of their commands, eligible family members and other authorized personnel. The CRP is supported with appropriated funds at a level consistent with other personnel programs within DON.

b. Chaplains will not be compelled to participate in religious activities inconsistent with their beliefs.

c. Commanders retain the responsibility to provide guidance for all command functions. In planning command functions, commanders shall determine whether a religious element is appropriate. In considering the appropriateness for including a religious element, commanders, with appropriate advice from a chaplain, should assess the setting and context of the function; the diversity of faith that may be represented among the participants; and whether the function is mandatory for all hands. Other than Divine/Religious Services, religious elements for a command function, absent extraordinary circumstances, should be non-sectarian in nature. Neither the participation of a chaplain, nor the inclusion of a religious element, in and of themselves, renders a command function a Divine Service or public worship. Once a commander determines a religious element is appropriate, the chaplain may choose to participate based on his or her faith constraints. If the chaplain chooses not to participate, he or she may do so with no adverse consequences. Anyone accepting a commander's invitation to provide religious elements at a command function is accountable for following the commander's guidance.

d. Commanders shall, when in a combat area, only assign, detail, or permit chaplains, as non-combatants under the Geneva Convention, to perform such duties as are related to religious ministry under Art. 1063 of reference (b).

    e. Commanders shall not assign chaplains collateral duties that violate the religious practices of the chaplain's religious organization or that require services in a capacity in which the chaplain may later be called upon to reveal privileged or sensitive information.

    f. Commanders shall not assign chaplains duties to act as director, solicitor, or treasurer of funds, other than administrator of a Religious Offering Fund; or serve on a courtmartial; or stand watches other than that of duty chaplain.

--