

**DEPARTMENT OF THE NAVY**
COMMANDER
NAVY REGION, MID-ATLANTIC
1510 GILBERT ST.
NORFOLK, VA 23511-2737

IN REPLY REFER TO:
5819
Ser 00L/003-06
11 JAN 2006

→ Rear Admiral F.R. Ruehe

From: Commander, Navy Region, Mid-Atlantic
To:   Secretary of the Navy
Via:  Judge Advocate General

Subj: COMPLAINT OF WRONGS BY LT GORDON JAMES KLINGENSCHMITT, CHC, USNR, AGAINST CAPT JAMES M. CARR, USN

Ref: (a) Article 138, U.C.M.J.
     (b) Article 1150, U.S. Navy Regulations, 1990
     (c) Manual of the Judge Advocate General (JAGMAN)

Encl: (1) Original complaint with enclosures
      (2) NAVSTA Norfolk ltr 5800 Ser N01L/512 of 19 May 05
      (3) USS ANZIO (CG68) ltr 5800 Ser CG 68/0098 of 24 May 05
      (4) COMCARSTRKGRU TWELVE ltr 5800 Ser N02L/098 of 24 May 05
      (5) COMNAVREG MIDLANT ltr 5800 Ser 00L1/68-05 of 8 Jun 05
      (6) COMNAVREG MIDLANT ltr 5800 Ser 00L/67-05 of 8 Jun 05
      (7) CDR J. Lauterbach, Jr., JAGC, USNR, ltr of 5 Aug 05
      (8) LT G. J. Klingenschmitt ltr of 3 Aug 05
      (9) COMNAVREG MIDLANT ltr 5819 Ser 00L/108-05 of 19 Aug 05
      (10) LT G. J. Klingenschmitt ltr of 1 Sep 05
      (11) LT G. J. Klingenschmitt ltr of 7 Sep 05
      (12) COMNAVREG MIDLANT ltr 5819 Ser 00L/155-05 of 8 Nov 05
      (13) LT G. J. Klingenschmitt ltr of 10 Nov 05
      (14) COMNAVREG MIDLANT ltr 5819 Ser 00L/158-05 of 1 Dec 05
      (15) LT G. J. Klingenschmitt ltr of 9 Dec 05

1. Per references (a) through (c), enclosures (1) through (15) are forwarded.

   a. Lieutenant Klingenschmitt characterizes his complaint as one made under reference (a), since the Respondent was his Commanding Officer at the time of the alleged wrongs. He did not file his complaint, however, until after he had transferred to Naval Station Norfolk, at which time the Respondent was no longer his Commanding Officer. Whether it is reference (a) or

Atch 10

Subj: COMPLAINT OF WRONGS BY LT GORDON JAMES KLINGENSCHMITT,
      CHC, USNR, AGAINST CAPT JAMES M. CARR, USN

(b) that gives Lieutenant Klingenschmitt the right to complain, he clearly has that right, and pursuant to Article 0302b(1)(a) of reference (c), the same rules apply to the handling of his complaint in either case.

    b.  Pursuant to Article 0305c(3) of reference (c), Commander, Navy Region, Mid-Atlantic is acting on this complaint at the request of Commander, Carrier Strike Group TWELVE, who was the General Court-Martial Authority (GCMA) over the Respondent, Captain James M. Carr, U.S. Navy, at the time of the alleged wrongs. Lieutenant Klingenschmitt specifically requested that Commander, Carrier Strike Group TWELVE recuse himself from acting as GCMA on this complaint.

    c.  Lieutenant Klingenschmitt submitted his complaint on 18 May 2005. Commander, Carrier Strike Group TWELVE, forwarded the complaint to Commander, Navy Region, Mid-Atlantic, by endorsement dated 24 May 2005. Once satisfied the complaint met the threshold requirements of reference (c), an investigating officer was appointed on 8 June 2005. Due to the USS ANZIO's operational schedule, and the need to interview personnel attached to that command, the Investigating Officer did not complete his report until 5 August 2005. The Report of Investigation and the intermediate endorsements were provided to Lieutenant Klingenschmitt by letter dated 19 August 2005. He submitted substantial materials in rebuttal on 1 September 2005. Following review of Lieutenant Klingenschmitt's rebuttal, additional factual inquiry was conducted, and the newly developed material was provided to Lieutenant Klingenschmitt for his review and rebuttal on 1 December 2005. He submitted additional materials in rebuttal on 9 December 2005.

2. In enclosure (1), Lieutenant Klingenschmitt makes the allegations described in paragraphs 2b through 2d below.

    a.  <u>Preliminary observations</u>. Before describing Lieutenant Klingenschmitt's allegations, some preliminary observations are in order.

        (1) Much, though not all, of what Lieutenant Klingenschmitt specifically alleges in the body of his complaint are conclusory statements, such as Captain Carr acted unjustly or violated the Constitution, rather than specific acts, omissions, decisions, or orders. Insofar as he fails to allege

Subj: COMPLAINT OF WRONGS BY LT GORDON JAMES KLINGENSCHMITT, CHC, USNR, AGAINST CAPT JAMES M. CARR, USN

a specific act, omission, decision or order by Captain Carr, he fails to state a cognizable wrong.

    (2) Nevertheless, when the complaint is read together with its 13 appendices, it is possible to identify alleged acts by Captain Carr that, while not explicitly alleged in the body of the complaint, Lieutenant Klingenschmitt contends have wronged him. After describing below the specific allegations in the complaint, this letter will list three additional allegedly wrongful acts by Captain Carr against Lieutenant Klingenschmitt culled from the complaint's appendices, followed, by way of recap, with a complete list of the allegedly wrongful acts by Captain Carr against Lieutenant Klingenschmitt fairly raised by Lieutenant Klingenschmitt in either the complaint itself or its appendices. This letter will then address each of those allegedly wrongful acts in paragraph 3.

    (3) The appendices contain numerous other allegations, arguments and contentions, some of which do not describe any specific actions by Captain Carr,[1] and others of which describe alleged acts by Captain Carr affecting someone other than Lieutenant Klingenschmitt. Issues raised in the complaint and its appendices that do not concern actions by Captain Carr against Lieutenant Klingenschmitt are not addressed. This limit is not meant to suggest that these other matters should not be appropriately investigated, but rather simply reflect the conclusion that Commander, Navy Region, Mid-Atlantic is not the appropriate authority to undertake that investigation.

    b. <u>First allegation of the complaint</u>. Captain Carr acted unjustly, arbitrarily, capriciously and in a religiously discriminatory manner toward Lieutenant Klingenschmitt due to the Complainant's religious beliefs and practices, and because of his representation of, and advocacy for, the religious beliefs of Sailors of other faiths. Lieutenant Klingenschmitt does not identify what those allegedly unjust, arbitrary, capricious and discriminatory acts are. He does, however, cite to appendices C, H, L, and R of his complaint. These appendices

---

[1] For example, Appendix J is a copy of the Naval Chaplain School's training entitled "Introduction to Pluralism: Pluralism Workshop", with annotations by Lieutenant Klingenschmitt. Likewise, Appendix N is a "talking paper" by the Executive Director of the Armed Forces Chaplains Board that was forwarded to Navy chaplains in May 1998 by then-Chief of Chaplains, Rear Admiral A. B. Holderby, Jr., with annotations by Lieutenant Klingenschmitt.

Subj:  COMPLAINT OF WRONGS BY LT GORDON JAMES KLINGENSCHMITT,
       CHC, USNR, AGAINST CAPT JAMES M. CARR, USN

concern, respectively, Lieutenant Klingenschmitt's advocacy for religious accommodation of a Jewish ANZIO crewmember, his sermon at a June 2004 memorial service for a deceased ANZIO crewmember, his objection to a Fleet Week 2004 event at the Marble Collegiate Church in New York and his protest over "government mandated church quotas" for that event, and Captain Carr's alleged refusal to allow crewmembers of varying faiths to deliver Evening Prayer on board ANZIO.

   c. <u>Second allegation of the complaint</u>. Captain Carr discredited Lieutenant Klingenschmitt's character before the ANZIO crew by characterizing his sincere expressions of his Christian faith as misconduct. Captain Carr allegedly did this by means of the following:

      (1) Wrongfully relieved Lieutenant Klingenschmitt of duty and transferred him ashore on 3 March 2005, based on Captain Carr's own false written statement of 7 July 2004.[2]

      (2) "Downgraded" Lieutenant Klingenschmitt's fitness report for the period ending 31 January 2005 for religiously discriminatory reasons, based on his 7 July 2004 letter of instruction.[3]

      (3) Negatively endorsed, for religiously discriminatory reasons, Lieutenant Klingenschmitt's 2 March 2005 request for continuation on active duty.[4] Lieutenant Klingenschmitt alleges

---

[2] Lieutenant Klingenschmitt here refers to his Appendices D, F and P. The false written statement to which he refers is a letter of instruction Captain Carr gave to him, which he includes at Appendix D. Appendix F concerns ANZIO Command Religious Ministries Program Surveys, and appendix P is a narrative prepared by Lieutenant Klingenschmitt that recounts what he believes to be the series of events leading up to his "relief" from duty in March 2005. As is apparent from Lieutenant Klingenschmitt's first rebuttal, the relief from duty of which he complains is his TAD assignment to RSO Norfolk during an underway period for ANZIO in March 2005.

[3] LT Klingenschmitt describes this fitness report as "downgraded." Actually, the report is more accurately described as declining, i.e. the report for the period ending 31 JAN 05 is less favorable than the report for the period ending 31 JAN 04, his last previous report.

[4] By letter dated 2 March 2005, Lieutenant Klingenschmitt requested voluntary extension on active duty. That letter was addressed to Commander, Navy Personnel Command, via Commanding Officer, USS ANZIO, Force Chaplain (for Naval Surface Forces, U.S. Atlantic Fleet) and Commander, Fleet Forces Command. Captain Carr endorsed that request by letter dated 7 March 2005. Lieutenant Klingenschmitt apparently believed that he was required

4

Subj: COMPLAINT OF WRONGS BY LT GORDON JAMES KLINGENSCHMITT, CHC, USNR, AGAINST CAPT JAMES M. CARR, USN

that Captain Carr's negative endorsement was based primarily on advice from senior Navy chaplains who do not share his religious beliefs and who advised Captain Carr to give him a negative endorsement for religiously discriminatory reasons.

(4) Granted government endorsement to the "non-Christian Unitarian-Universalist faith of 'Pluralism'," with the result that "free exercise of unique faiths such as Christianity, Islam, Judaism, Wicca and all others" was suppressed, excluded and prohibited on board ANZIO. Captain Carr allegedly did this by:

(a) punishing Christian sermons (Lieutenant Klingenschmitt refers to his Appendix H concerning his June 2004 memorial service sermon);[5]

(b) censoring Christian prayers; and

(c) denying Sailors equal opportunity to deliver Evening Prayer.

With respect to these last two acts, Lieutenant Klingenschmitt refers to his Appendix R, concerning his proposal to have Evening Prayer said by a variety of crewmembers of differing faiths.

d. Third allegation of the complaint. Captain Carr violated five laws or regulations, to wit: The First Amendment to the U.S. Constitution (religion clauses), section 6031 of title 10, United States Code (10 U.S.C. § 6031),[6] Article 0817 of

---

affirmatively to request continuation on active duty, and have his commanding officer's favorable recommendation for continuation in order to remain on active duty beyond his initial period of obligated service. While this complaint has been pending, the Chief of Naval Personnel notified Lieutenant Klingenschmitt that his request for continuation on active duty was approved.

[5] While Lieutenant Klingenschmitt alleges Captain Carr punished his Christian sermons, the only sermon he cites as incurring punishment is his sermon at the June 2004 memorial service for a deceased ANZIO crewmember. He alleges that he was punished for that sermon by means of a letter of instruction, a "downgraded" fitness report, a negative endorsement on his request for continuation on active duty, and the conduct of Command Religious Ministries Program Surveys.

[6] "(a) An officer in the Chaplain Corps may conduct public worship according to the manner and forms of the church of which he is a member. (b) The commanders of vessels and naval activities to which chaplains are attached shall cause divine services to be performed on Sunday, whenever the weather

5

Subj: COMPLAINT OF WRONGS BY LT GORDON JAMES KLINGENSCHMITT, CHC, USNR, AGAINST CAPT JAMES M. CARR, USN

U.S. Navy Regulations, 1990 (NAVREGS),[7] Paragraph 4.a. of Secretary of the Navy Instruction (SECNAVINST) 1730.7B,[8] and applicable equal opportunity laws prohibiting religious discrimination in employment. In his first rebuttal, Lieutenant Klingenschmitt also alleges violation of the Religious Freedom Restoration Act, 42 U.S.C. § 2000bb-1. Lieutenant Klingenschmitt fails to identify here any specific act by Captain Carr. It appears Lieutenant Klingenschmitt intended this "allegation" as a statement of the laws and regulations he believes Captain Carr's previously alleged conduct violates, rather than as a separate, independent allegation of wrongdoing.

   e. <u>Culled allegations</u>. Reading the Complaint and its 13 appendices in the light most favorable to Lieutenant Klingenschmitt, it is possible to identify three alleged acts by Captain Carr, in addition to the acts alleged in paragraph 5b(2) of the complaint and described in subparagraph c above, that Lieutenant Klingenschmitt contends have wronged him.

      (1) <u>Letter of instruction</u>. Captain Carr improperly gave Lieutenant Klingenschmitt a "secret letter of theological instruction".

      (2) <u>Mandatory church attendance</u>. Captain Carr illegally and unconstitutionally directed Lieutenant Klingenschmitt to fill a mandatory attendance quota for a Sunday service at Marble Collegiate Church in New York City during Fleet Week 2004.

      (3) <u>Command religious ministries program surveys</u>. Captain Carr "theologically harassed" Lieutenant Klingenschmitt by conducting two surveys of the command's religious ministries program in July and November 2004.

   f. <u>Recap of Captain Carr's allegedly wrongful acts</u>. Between the actual complaint and the 13 appendices, Lieutenant

---

and other circumstances allow it to be done; and it is earnestly recommended to all officers, seamen, and others in the naval service diligently to attend at every performance of the worship of Almighty God. (c) All persons in the Navy and in the Marine Corps are enjoined to behave themselves in a reverent and becoming manner during divine service." 10 U.S.C. § 6031.
[7] This article incorporates 10 U.S.C. § 6031 into NAVREGS. The Article is entitled "Observance of Sunday."
[8] "Chaplains shall not be assigned collateral duties which violate the religious practices of the chaplain's faith group."

Subj: COMPLAINT OF WRONGS BY LT GORDON JAMES KLINGENSCHMITT, CHC, USNR, AGAINST CAPT JAMES M. CARR, USN

Klingenschmitt alleges these eight specific wrongful acts by Captain Carr against him.

(1) Gave Lieutenant Klingenschmitt a letter of instruction.

(2) Negatively endorsed Lieutenant Klingenschmitt's request for continuation on active duty.

(3) Gave Lieutenant Klingenschmitt a "downgraded" periodic fitness report for the period ending 31 January 2005.

(4) Theologically harassed Lieutenant Klingenschmitt by conducting command religious ministries program surveys in July and November 2004.

(5) Relieved Lieutenant Klingenschmitt from duty on board ANZIO in March 2005.

(6) Ordered Lieutenant Klingenschmitt to fill mandatory attendance quotas for a religious service at Marble Collegiate Church in New York during Fleet Week 2004.

(7) Denied equal access to ANZIO crewmembers of varying faiths to deliver the ship's evening prayer.[9]

(8) Censored Lieutenant Klingenschmitt's Christian prayers.

3. The allegations in paragraph 2 above are addressed below in the order they are listed in paragraph 2f.

a. <u>Letter of instruction</u>. The claim that Captain Carr wronged Lieutenant Klingenschmitt by giving him the 7 July 2004 letter of instruction fails to allege a cognizable wrong. A letter of instruction is a private communication between a commanding officer and a subordinate. It is non-punitive and does not become a part of the recipient's official record. As such, it does not result in a personal detriment, harm or injury to the recipient, as is required for a cognizable wrong to exist. The fact that Lieutenant Klingenschmitt chose to

---

[9] Obviously this allegation does not actually allege a wrong by Captain against Lieutenant Klingenschmitt, but it is one of the specific allegations made by Lieutenant Klingenschmitt in the body of his complaint.

7

Subj: COMPLAINT OF WRONGS BY LT GORDON JAMES KLINGENSCHMITT, CHC, USNR, AGAINST CAPT JAMES M. CARR, USN

publicize the letter does not change this result, as any harm is the result of Lieutenant Klingenschmitt's action in publishing the letter rather than Captain Carr's action in delivering it to him. Further, while the letter may serve as evidence of Captain Carr's intent, or explain subsequent actions, the letter itself does not wrong Lieutenant Klingenschmitt as that term is defined by reference (c).

   b. <u>Continuation request endorsement</u>. Pursuant to article 1331-010 of the Naval Military Personnel Manual (MILPERSMAN), Lieutenant Klingenschmitt did not need to request continuation in order to remain on active duty at the expiration of his minimum obligated service. Since his continuation request was unnecessary, so was Captain Carr's endorsement on that request. Further, the Chief of Naval Personnel has now approved Lieutenant Klingenschmitt's request. Clearly, Captain Carr's endorsement did not result in any personal detriment, harm or injury to Lieutenant Klingenschmitt, and therefore does not meet the definition of "wrong" found in reference (c).

   c. <u>"Downgraded" fitness report</u>. In Captain Carr's 31 January 2005 fitness report on Lieutenant Klingenschmitt he marked Lieutenant Klingenschmitt "Must Promote" in block 42. He had marked Lieutenant Klingenschmitt "Early Promote" on the previous periodic report. In both reports, Lieutenant Klingenschmitt was "one of one" for summary group purposes. The January 2005 promotion recommendation is clearly a decline from the previous report. Lieutenant Klingenschmitt also argues the two statements in the narrative imply that there are problems with the appeal of Lieutenant Klingenschmitt's religious ministries program and that his message needs to be more positive.

      (1) This report is clearly a final act by Captain Carr that will foreseeably result in personal detriment to Lieutenant Klingenschmitt, and is capable of redress within command channels (as the complaint was filed before the report became final). It does, therefore, allege a wrong.

      (2) The allegation that Captain Carr wronged Lieutenant Klingenschmitt by giving him a declining fitness report for religiously discriminatory reasons, based on matters discussed in the 7 July 2004 letter of instruction, is without merit. Captain Carr's evaluation of Lieutenant Klingenschmitt's

8

Subj:  COMPLAINT OF WRONGS BY LT GORDON JAMES KLINGENSCHMITT,
       CHC, USNR, AGAINST CAPT JAMES M. CARR, USN

performance was not an abuse of his discretion as reporting senior, was not the product of a discriminatory purpose or intent, and was not unjust. In fact, Lieutenant Klingenschmitt did not take the opportunity provided on every fitness report to submit a statement for the record.

(3) The 7 July 2004 letter of instruction called Lieutenant Klingenschmitt's attention to a number of professional performance deficiencies both in his conduct as an officer and in his accomplishment of the command religious ministries program mission. Neither the letter of instruction nor the fitness report criticize Lieutenant Klingenschmitt for his religious beliefs or the practice of his faith. Rather, in both places, Captain Carr addressed himself to Lieutenant Klingenschmitt's performance of duty. For example, in addressing Lieutenant Klingenschmitt's advocacy for kosher meals for a Jewish crewmember, it is clear Captain Carr's concern was the fact a subordinate officer was attracting the attention of superiors in the chain of command, without first involving the Commanding Officer. Likewise, in addressing the Marble Collegiate Church event at Fleet Week in New York, Captain Carr's concern was not the content of Lieutenant Klingenschmitt objections, but rather the way he conducted himself in dealing with other Navy personnel.[10] Other criticisms chiefly concerned Lieutenant Klingenschmitt's performance in providing a command religious ministries program that appropriately cared for and met the needs of the entire ANZIO crew. In sum, Lieutenant Klingenschmitt's 31 January 2005 fitness report was not the result of improper discrimination on the basis of his religious beliefs or the practice of his faith, but rather Captain Carr's legitimate evaluation of his performance of duty.

---

[10] Lieutenant Klingenschmitt argues that in objecting to the Marble Collegiate Church event, he was speaking only for himself and not on behalf of the command. While it is true his initial email on the subject said "I am withdrawing my support from this event," (emphasis added) he was obviously, and reasonably, presumed by the recipients of that message to be acting in his capacity as the ANZIO Action Officer for this event. Indeed, the whole reason he was involved in this matter was because, as ANZIO command chaplain, he was the command's action officer for this event. Further, after withdrawing his support, his failure to provide or seek any substitute Action Officer for the event only confirmed his apparent intention that ANZIO, as a command, not participate in the event. Finally, it is undeniable that others perceived his objections as withdrawing ANZIO from participation in the event.

9

Subj: COMPLAINT OF WRONGS BY LT GORDON JAMES KLINGENSCHMITT, CHC, USNR, AGAINST CAPT JAMES M. CARR, USN

(4) Lieutenant Klingenschmitt's allegation that part of the reason Captain Carr "downgraded" his 31 January 2005 fitness report was Captain Carr's personal disapproval of the religious content of his sermon at the June 2004 memorial service for Petty Officer Damon Runyon deserves special mention here. The salient question is whether Captain Carr's fitness report on Lieutenant Klingenschmitt was without substantial basis, arbitrary and capricious, unjust, or discriminatory.

(a) The June 2004 memorial service was a command-sponsored event, styled on the program as "In Loving Memory of EN2(SW) Damon Timothy Runyon." In addition to the prayers, scripture readings, and sermon by Lieutenant Klingenschmitt, both the Commanding Officer and Command Master Chief offered "reflections." The program also indicates someone offered "words of remembrance." The program lists both Captain Carr and Master Chief Roger McCormack, along with Lieutenant Klingenschmitt, as "participants." According to Lieutenant Klingenschmitt's own submissions, the proposed program was submitted in advance to, and approved by, Captain Carr. The electronic mail message Lieutenant Klingenschmitt sent to advertise the service indicated that participants and speakers should be in uniform (Summer White or Service Dress White). It concluded by saying, "Let's come together to pay our respects, and remember our friend, EN2(SW) Damon Runyon." It appears Lieutenant Klingenschmitt sent this message to the Commanding Officer, Executive Officer and Command Master Chief, with the request that the Command Master Chief forward it to "all hands."

(b) Prior to the event, Captain Carr did not review Lieutenant Klingenschmitt's sermon, nor censor it in any way. Neither did he interfere with Lieutenant Klingenschmitt's delivery of his sermon or his conduct of the memorial service. Subsequent to the service, Captain Carr received "no fewer than two dozen specific verbal and written complaints [about Lieutenant Klingenschmitt's sermon] from Sailors and family members who attended the service."[11]

(c) Lieutenant Klingenschmitt argues the memorial service was advertised as an optional Christian service in the Protestant Chapel, and that section 6031 of title 10, United

---

[11] See paragraph 4 of Captain Carr's 7 JUL 04 letter of instruction to Lieutenant Klingenschmitt.

10

Subj: COMPLAINT OF WRONGS BY LT GORDON JAMES KLINGENSCHMITT,
      CHC, USNR, AGAINST CAPT JAMES M. CARR, USN

States Code, gave him the right to conduct the service according to the manner and forms of the church of which he is a member. He further contends his bishop requires he preach all the Gospels, not just those that non-believers find inoffensive. In all the material Lieutenant Klingenschmitt has submitted as part of this complaint, however, he has not submitted any <u>document</u> that establishes he was *required* by his church to preach, on that occasion, the particular message he did. Presumably, if his bishop requires him to preach all the Gospels, and he was not required to deliver that particular message on that particular occasion, he was free to choose to deliver a message at the memorial service that, while being true to his own beliefs, could also have commanded the assent of the vast majority of his audience. Nevertheless, Lieutenant Klingenschmitt chose to deliver a message he knew to be, by his own description, "exclusive." Captain Carr's concern, supported by feedback he received from people who had attended the service, was that Lieutenant Klingenschmitt's sermon did not support the purpose of the memorial service, which was intended to pay respects to a deceased crewmember and console the crew. The impact Lieutenant Klingenschmitt's performance at the command memorial service had on command morale was a legitimate matter of concern to the Commanding Officer, and was a proper matter to consider in evaluating the officer's performance.

    (d) Finally, no one, including Captain Carr, has told Lieutenant Klingenschmitt that he may not preach any Gospel message, or that he may *only* preach certain messages. Indeed, Captain Carr himself said to Lieutenant Klingenschmitt, "I would not presume to advise you how to provide pastorship to 'your flock.'" Additionally, there is no evidence Captain Carr took any adverse action against Lieutenant Klingenschmitt based on the content of his regular Protestant worship services. Rather, Captain Carr merely sought to have Lieutenant Klingenschmitt assist him in inspiring ANZIO Sailors to reach for their better selves whatever their faith. Lieutenant Klingenschmitt's level of effort to meet command expectations was a proper matter for Captain Carr to consider in evaluating Lieutenant Klingenschmitt's performance in his periodic fitness report.

   d. <u>Religious ministries program surveys</u>. In July and again in November 2004, Captain Carr conducted a command religious ministries program survey. Lieutenant Klingenschmitt alleges Captain Carr "theologically harassed" him by conducting these

[Handwritten margin notes: "See next page (next docu.)"; "★ PROOF the Admiral is quoting the Bible 5 Criteria for punishing the Chaplain during optional worship service."]

11

Subj: COMPLAINT OF WRONGS BY LT GORDON JAMES KLINGENSCHMITT, CHC, USNR, AGAINST CAPT JAMES M. CARR, USN

surveys, spurred by his disapproval of the religious content Lieutenant Klingenschmitt's June 2004 Memorial Service sermon.

(1) If the surveys were undertaken for the purpose of religiously harassing Lieutenant Klingenschmitt and reasonably had that affect, then the surveys would constitute a personal detriment, harm or injury to Lieutenant Klingenschmitt, and his claim would allege a wrong.

(2) The investigation shows that Captain Carr did not religiously harass Lieutenant Klingenschmitt by conducting these surveys. Accordingly, this allegation is without merit. A commanding officer is responsible for the religious ministries program within his command. While a chaplain is assigned to assist and advise the commanding officer in carrying out such a program, the commanding officer is ultimately responsible for an effective program. The collection of metrics by which to measure the effectiveness of the program in meeting the needs of the crew is a valid pursuit of command. Further, the surveys were reasonably designed to elicit relevant and useful information. Finally, the second survey in November 2004 was a reasonable undertaking in light of the results of the July 2004 survey.

e. <u>Relieved of duty</u>. In March 2005, roughly a month before Lieutenant Klingenschmitt's routine detachment from ANZIO pursuant to Permanent Change of Station (PCS) orders, Lieutenant Klingenschmitt was given Temporary Additional Duty (TAD) orders to Regional Support Organization (RSO) Norfolk while ANZIO was underway for three weeks. Just prior to the issuance of these orders, Captain Carr, the ANZIO Executive Officer, and Lieutenant Klingenschmitt had met to discuss the results of the second command religious ministries program survey. Lieutenant Klingenschmitt contends that meeting ended when he confronted Captain Carr about the statement in the letter of instruction that "more than 70% of the respondents [to the command religious ministries program survey] had negative or very negative comments about the [religious ministries] program," and that Captain Carr then had him removed from the ship, i.e. sent to RSO on TAD orders. Both Captain Carr and the Executive Officer remember the meeting differently. Both report Captain Carr and Lieutenant Klingenschmitt could not agree on whether the survey results should be viewed as negative or positive, and that the meeting ended when the Executive Officer suggested they halt,

12

Subj: COMPLAINT OF WRONGS BY LT GORDON JAMES KLINGENSCHMITT, CHC, USNR, AGAINST CAPT JAMES M. CARR, USN

due to the inability to make progress. Captain Carr subsequently decided it would be best for Lieutenant Klingenschmitt to remain ashore during the underway period, particularly in light of his approaching transfer in due course to Naval Station, Norfolk, in April. Lieutenant Klingenschmitt appears to allege that this action wronged him because it discredited his character before the ANZIO crew by characterizing his sincere expression of his Christian faith as misconduct.

   (1) These TAD orders did not discredit Lieutenant Klingenschmitt before the ANZIO crew or characterize his sincere expression of his Christian faith as misconduct. Consequently, this allegation lacks merit.

   (2) Sailors are routinely left behind during underway periods for a variety of reasons, and such short term, occasional TAD periods have no negative effect on the individuals involved. Indeed, Lieutenant Klingenschmitt himself had stayed behind on various other occasions, albeit at his request on those other occasions. His subjective dissent from the orders on this occasion does not, however, give rise to a detriment, harm or injury that does not otherwise exist.

   (3) Further, there is no indication that Captain Carr in any way publicized or announced the reasons for Lieutenant Klingenschmitt's TAD orders on this occasion. In the absence of any public statement of the reasons for the TAD orders, Lieutenant Klingenschmitt's remaining behind did not discredit him with the crew, especially as his transfer pursuant to routine Permanent Change of Station orders followed within a few weeks of the ship's return to port.

   f. *Ordered mandatory church attendance.* Lieutenant Klingenschmitt alleges Captain Carr illegally ordered him to fill a quota of twenty ANZIO sailors to attend a service at Marble Collegiate Church in New York during Fleet Week 2004. A Sunday service at Marble Collegiate Church was one of several community relations events on the Fleet Week schedule. For this event, the Congregation of the Marble Collegiate Church had invited sailors from the visiting ships to attend a service in thanksgiving for their service on behalf of the nation, followed by lunch. A few weeks before Fleet Week, Lieutenant Klingenschmitt "withdrew his support" from this event. In

13

Subj: COMPLAINT OF WRONGS BY LT GORDON JAMES KLINGENSCHMITT, CHC, USNR, AGAINST CAPT JAMES M. CARR, USN

response, the Force Chaplain told Lieutenant Klingenschmitt he did not have to attend the event, and he did not. On 20 May 2004, the lead Action Officer on this event for the ships attending Fleet Week sent an email assigning each ship an attendance quota. Lieutenant Klingenschmitt contends he protested to Captain Carr, but Captain Carr ordered him to identify Sailors to fill the quota. Captain Carr denies he ordered Lieutenant Klingenschmitt to force crewmembers to attend the service. Rather, he says he told Lieutenant Klingenschmitt he did not have to attend the event, and offered to replace him as ANZIO Action Officer for the event if his conscience would not permit him to serve even in that role. Lieutenant Klingenschmitt did not ask to be relieved as Action Officer.

(1) Captain Carr's denial that he ordered Lieutenant Klingenschmitt to force ANZIO crewmembers to attend this service, and his statement that he offered to replace Lieutenant Klingenschmitt as Action Officer for the event are both credible.

(2) Further, even if Captain Carr issued such an order, Lieutenant Klingenschmitt suffered no personal detriment, harm or injury from that act. Ultimately, it appears no ANZIO Sailors were actually ordered to attend this service.[12] Lieutenant Klingenschmitt himself says (in Appendix L to his complaint) that he "recruited many volunteers," and that ultimately ANZIO fell short of her "quota" due to an inability to find sufficient volunteers. Lieutenant Klingenschmitt was not subsequently disciplined or otherwise penalized as a result. Clearly, Captain Carr did criticize aspects of Lieutenant Klingenschmitt's conduct in this matter, most explicitly in his letter of instruction, but that criticism focused on Lieutenant Klingenschmitt's conduct in dealing with other parts of the chain of the command outside ANZIO, and not his failure to meet quota, for which there appears to have been no adverse consequence.

g. <u>Denial of equal access to evening prayer</u>. Lieutenant Klingenschmitt alleges that Captain Carr wrongfully denied his request to permit "equal access" to evening prayer by having crewmembers of differing faiths deliver the prayer. This claim

---

[12] Lieutenant Klingenschmitt alleges Sailors from other ships at Fleet Week were ordered to attend the service, but those claims are beyond the scope his complaint against Captain Carr.

14

Subj: COMPLAINT OF WRONGS BY LT GORDON JAMES KLINGENSCHMITT, CHC, USNR, AGAINST CAPT JAMES M. CARR, USN

fails to allege a cognizable wrong by Captain Carr against Lieutenant Klingenschmitt. Pursuant to SECNAVINST 1730.7B, the commanding officer is responsible for the command religious ministries program. The command chaplain is assigned to assist the commanding officer in carrying out that program. The decision on who will deliver evening prayer, or whether even to have evening prayer, is committed to the commanding officer's sound discretion. Captain Carr did not abuse that discretion by deciding to leave Lieutenant Klingenschmitt responsible for performing that function on ANZIO. Further, Lieutenant Klingenschmitt suffered no personal detriment, harm or injury from that decision.

    h. <u>Censorship of Christian prayers</u>. Lieutenant Klingenschmitt alleges Captain Carr censored his Christian prayers, thereby giving government endorsement to the "non-Christian Unitarian-Universalist faith of 'Pluralism'," and discrediting Lieutenant Klingenschmitt's character before the ANZIO crew by characterizing his sincere expressions of his Christian faith as misconduct. In making this allegation, he cites to Appendix R of his complaint. That appendix, however, concerns Lieutenant Klingenschmitt's proposal to share the delivery of evening prayer with crewmembers of other faiths. In his second rebuttal, however, Lieutenant Klingenschmitt focuses this allegation. He alleges Captain Carr told him "let's tone it down, you keep saying the prayers, just pray Old Testament prayers. Our Jewish Sailor will like that more." Captain Carr said that it was "absolutely false" that he told Lieutenant Klingenschmitt to limit his prayers to the Old Testament.

    (1) There is no evidence Captain Carr's actions in this matter, even if they are as Lieutenant Klingenschmitt described, discredited Lieutenant Klingenschmitt's character before the crew or characterized his religious beliefs as misconduct. Insofar as that is the allegation, it is without merit.

    (2) Evening prayer on Navy ships is part of the command religious ministries program, which is the responsibility of the commanding officer. No regulation requires a commanding officer to have evening prayer, and the ship's 1MC is clearly not a "public forum". Rather, the 1MC is a means of official communication, access to which is ultimately controlled by the commanding officer. In delivering evening prayer over the 1MC, a command chaplain is assisting the commanding officer in

15

Subj: COMPLAINT OF WRONGS BY LT GORDON JAMES KLINGENSCHMITT, CHC, USNR, AGAINST CAPT JAMES M. CARR, USN

carrying out an aspect of the command religious ministries program. As such, a command chaplain is appropriately subject to the commanding officer's supervision in carrying out that duty. In this case, Captain Carr legitimately sought to ensure evening prayer had the broadest possible appeal, in order to accomplish the official purpose for which he permitted access to the 1MC, namely execution of an effective command religious ministries program that promoted the spiritual well being and morale of the crew.

    (3) Lieutenant Klingenschmitt contends that Captain Carr's conduct is wrongful because it is illegal. In particular, he contends it violates the Free Exercise Clause of the First Amendment and 10 U.S.C. § 6031. Lieutenant Klingenschmitt was commissioned to perform official duties in support of the Navy's religious ministries program, and while the Navy may not infringe on his right as a citizen to freely exercise his religion, it may define the duties it expects its officers to perform. Particularly in the context of evening prayer, where a chaplain is speaking to the entire crew, using an official communication channel, without regard to their willingness to listen, the Navy must be sensitive to the requirements of the Constitution's Establishment Clause, which prohibits official government endorsement of sectarian religious beliefs.

    (4) In conclusion, the allegation that Captain Carr wronged Lieutenant Klingenschmitt by censoring his evening prayers is without merit.

*[handwritten margin note: ※ Proof CAPT Carr censored the Chaplain's prayers (and Admiral defends him... cover-up!)]*

4. In enclosure (1), Lieutenant Klingenschmitt requests the following relief:

    a. Positive command endorsement on his request for continuation on active duty.

    b. Replace fitness report for the period ending 31 January 2005 (delivered 18 February 2005) with the original draft submitted by Lieutenant Klingenschmitt and forwarded to Captain Carr by ANZIO's Executive Officer, to include marking Lieutenant Klingenschmitt as "1 of 1, Early Promote" vice, "1 of 1, Must Promote".

16

Subj: COMPLAINT OF WRONGS BY LT GORDON JAMES KLINGENSCHMITT, CHC, USNR, AGAINST CAPT JAMES M. CARR, USN

    c. Ceremony on board USS ANZIO (CG 68) to include:

        (1) Presentation of a Navy Commendation Medal to Lieutenant Klingenschmitt for two years of service on board ANZIO.

        (2) Presentation of Navy Achievement Medals to all five producers of the ANZIO Christmas video, including Lieutenant Klingenschmitt.

        (3) Departure honors (two bells, with the announcement over the ship's 1MC of "Chaplain departing") upon Lieutenant Klingenschmitt's disembarkation from the ship following the ceremony.

    d. Written letter of apology signed by Captain Carr, or by any commanding officer in his chain of command.

    e. Written retraction of Captain Carr's 7 July 2004 letter of instruction.

    f. In addition to the above, in the materials Lieutenant Klingenschmitt has submitted in rebuttal, he requests numerous times that Captain Carr be charged with various offenses under the Uniform Code of Military Justice. With respect to those requests, pursuant to article 0304b of reference (c), the imposition of disciplinary action against another may not be requested as redress in a complaint of wrongs.

5. Based on all of the foregoing, no relief is appropriate in this case.

6. My point of contact on this matter is Captain Edward S. White, JAGC, USN. He may be reached by telephone at (757) 322-2934 (commercial) or 262-2934 (DSN), or by electronic mail at edward.s.white@navy.mil.

7. By copy of this letter, Lieutenant Klingenschmitt is advised of the action I have taken on his complaint as the general court-martial authority.

                        F. R. RUEHE

Subj: COMPLAINT OF WRONGS BY LT GORDON JAMES KLINGENSCHMITT, CHC, USNR, AGAINST CAPT JAMES M. CARR, USN

Copy to:
→ LT G. J. Klingenschmitt
CAPT J. M. Carr
Commander, Fleet Forces Command
Commander, Naval Surface Force
Commander, Carrier Strike Group TWELVE
Commanding Officer, Naval Station, Norfolk