# UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

|  |  |
|---|---|
| CHAPLAIN GORDON JAMES KLINGENSCHMITT, ) ) ) ) | |
| Plaintiff, ) ) | |
| v. ) ) | Civil Action No. 06-01832 (HHK) |
| DONALD C. WINTER In his Official Capacity as Secretary, DEPARTMENT OF THE NAVY, ) ) ) ) | |
| Defendant. ) ) | |

## DEFENDANT'S MOTION TO DISMISS

For the reasons stated in the accompanying memorandum of points and authorities,

Defendant Donald C. Winter hereby moves that the court dismiss this action in its entirety under

Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).


Dated: <u>December 21, 2006</u>                          Respectfully submitted,

                                        PETER D. KEISLER
                                        Assistant Attorney General

                                        JEFFERY A. TAYLOR
                                        United States Attorney

                                        VINCENT M. GARVEY
                                        Deputy Branch Director


Of Counsel:                                 **/s/ Michael P. Abate**
Lieutenant Commander Thomas Leary           MICHAEL P. ABATE
Lieutenant Katy Pasieta                     Attorney, Civil Division
Office of the Judge Advocate General        U.S. Department of Justice
Department of the Navy                      P.O. Box 883

Washington Navy Yard, Bldg 33
1322 Patterson Ave., S.E., Suite 3000
Washington, D.C.  30274-5066

20 Massachusetts Ave., N.W., Room 7302
Washington, D.C. 20530
Telephone: (202) 616-8209

Attorneys for Defendants

# UNITED STATES DISTRICT COURT
# DISTRICT OF COLUMBIA

|  |  |
|---|---|
| )<br>CHAPLAIN GORDON JAMES )<br>KLINGENSCHMITT, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>DONALD C. WINTER )<br>In his Official Capacity as Secretary, )<br>DEPARTMENT OF THE NAVY, )<br>)<br>Defendant. )<br>) | Civil Action No. 06-01832 (HHK) |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

PETER D. KEISLER
Assistant Attorney General

JEFFERY A. TAYLOR
United States Attorney

VINCENT M. GARVEY
Deputy Branch Director

Of Counsel:
Lieutenant Commander Thomas Leary
Lieutenant Katy Pasieta
Office of the Judge Advocate General
Department of the Navy
Washington Navy Yard, Bldg 33
1322 Patterson Ave., S.E., Suite 3000
Washington, D.C.  30274-5066

MICHAEL P. ABATE
Attorney, Civil Division
U.S. Department of Justice
P.O. Box 883
20 Massachusetts Ave., N.W., Room 7302
Washington, D.C. 20530
Telephone: (202) 616-8209

Attorneys for Defendants

# TABLE OF CONTENTS

PAGE(S)

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    I.    Controlling Regulations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    II.    Relevant Factual Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    III.    Plaintiff's Complaint . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

    I.    Plaintiff's Claim That the Navy Violated Its Own Regulations
        By Instituting Separation Proceedings Against Him Should Be
        Dismissed Under Rule 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

        A.    The Navy Did Not Violate Its Regulations By Instituting
               Separation Proceedings Against Plaintiff . . . . . . . . . . . . . . . . . . . . . . . 10

        B.    The Navy Did Not Violate Its Regulations By Using a
               CARE Board to Consider Plaintiff's Request For Approval
               of His New Endorsement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

    II.    Plaintiff's Claims That the Navy Retaliated Against Him for His
        Religious Views or Speech Should Be Dismissed Under
        Rule 12(b)(1) AND/OR RULE 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

        A.    Plaintiff's Claim That He Is Being Separated In Retaliation
               for His Religious Speech and Beliefs Fails as a Matter of Law . . . . . . . 16

        B.    This Court Lacks Jurisdiction to Consider Plaintiff's
               Other Claims of Wrongful Retaliation . . . . . . . . . . . . . . . . . . . . . . . . . 18

             1.    This Court Lacks Jurisdiction to Consider Any Challenge
                 to Plaintiff's Court-Martial . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

2.      This Court Lacks Jurisdiction to Consider Plaintiff's
               Remaining Claims of Retaliation by Navy Personnel . . . . . . . . . 20

       C.      Any Challenge to the Basis of Plaintiff's Pending Separation
               Must be Brought Under the Administrative Procedures Act . . . . . . . . . . 22

III.   This Court Lacks Jurisdiction to Consider Plaintiff's Free Exercise
        and RFRA Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

       A.      Plaintiff's Challenge to the Former Navy Policy Concerning
               Religious Elements at Command Functions
               (SECNAVINST 1730.7C) is Moot . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

       B.      Plaintiff Lacks Standing to Seek Declaratory and
               Injunctive Relief for These Alleged Violations of The
               Free Exercise Clause and RFRA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

       C.      Plaintiff Can Not Obtain Damages for These Alleged
               Violations of The Free Exercise Clause and RFRA . . . . . . . . . . . . . . . 29

       D.      Even If Plaintiff's Free Exercise and RFRA Claims Were
               Not Moot and He Had Standing to Pursue Them, They
               Should be Dismissed Under Rule 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . 29

IV.    To The Extent This Court Construes Plaintiff's Complaint to
       Include An Establishment Clause Claim, It Should Dismiss
       That Contention . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

       A.      This Court Lacks Jurisdiction to Consider an Establishment
               Clause Claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

       B.      If This Court Does Consider an Establishment Clause Claim
               on the Merits, It Should Dismiss That Claim Under Rule 12(b)(6) . . . . . 33

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

## TABLE OF AUTHORITIES

**CASES**                                                                  **PAGE(S)**

\* <u>Alexis v. District of Columbia</u>, 44 F. Supp. 2d 331 (D.D.C. 1999) . . . . . . . . . . . . . . . . . . . . . . 17

<u>Animal Legal Def. Fund, Inc. v. Espy</u>,
    23 F.3d 496 (D.C. Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

<u>Auction Co. of Am. v. Fed. Deposit Ins. Corp.</u>,
    132 F.3d 746 (D.C. Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

<u>Bank of Commerce of Laredo v. City Nat. Bank of Laredo</u>,
    484 F.2d 284 (5th Cir. 1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

<u>Black & Decker Corp. v. C.I.R.</u>, 986 F.2d 60 (4th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . 12

<u>Branch Ministries v. Rossotti</u>, 211 F.3d 137 (D.C. Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . 30

<u>Byrd v. Smith</u>, 693 F. Supp. 1199 (D.D.C. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 21

<u>Center For Biological Diversity v. Gutierrez</u>,
    451 F. Supp. 2d 57 (D.D.C. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

<u>Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.</u>,
    467 U.S. 837 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

<u>Citizens to Preserve Overton Park, Inc. v. Volpe</u>,
    401 U.S. 402 (1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

<u>City of Los Angeles v. Lyons</u>, 461 U.S. 95 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 29

\* <u>Cone v. Caldera</u>, 223 F.3d 789 (D.C. Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

<u>Fair  Employment Council of Greater Washington, Inc. v.</u>
    <u>BMC Marketing Corp.</u>, 28 F.3d 1268 (D.C. Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . 28

<u>Florida Power & Light Co. v. Lorion</u>, 470 U.S. 729 (1985) . . . . . . . . . . . . . . . . . . . . . . . 24

\* <u>Goldman v. Weinberger</u>, 475 U.S. 503 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31, 32

<u>H & F Enterprises, LTD. v. United States</u>,
    973 F. Supp. 170 (D.D.C. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24, 26

Henderson v. Kennedy, 253 F.3d 12 (D.C. Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30, 31

Hibbs v. Winn, 542 U.S. 88 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Hinrichs v. Bosma, 440 F.3d 393 (7th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

Jackson v. Bush, 448 F. Supp. 2d 198 (D.D.C. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 29

Jerome Stevens Pharmaceuticals, Inc. v. Food & Drug Admin.,
    402 F.3d 1249 (D.C. Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 26

Jimmy Swaggart Ministries v. Board of Equalization,
493 U.S. 378 (1990)) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30, 33

Kentron Hawaii, Ltd. v. Warner, 480 F.2d 1166 (D.C. Cir. 1973) . . . . . . . . . . . . . . . . . . 24

Kowal v. MCI Commc'ns Corp., 16 F.3d 1271 (D.C. Cir. 1994) . . . . . . . . . . . . . . . . . . . 10

* Larsen v. U.S. Navy, 346 F. Supp. 2d 122 (D.D.C. 2004) . . . . . . . . . . . . . . . . . . . . . . . . 22

Lee v. Weisman, 505 U.S. 577 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

Marsh v. Chambers, 463 U.S. 783 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

Marshall County Health Care Auth. v. Shalala,
    988 F.2d 1221 (D.C. Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

McGuirl v. United States, 360 F. Supp. 2d 129 (D.D.C. 2004) . . . . . . . . . . . . . . . . . . . . 20

Md. Cas. Co. v. Pac. Coal & Oil Co., 312 U.S. 270 (1941) . . . . . . . . . . . . . . . . . . . . . . . 21

Morgan v. Perry, 142 F.3d 670 (3d Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Mova Pharm. Corp. v. Shalala, 140 F.3d 1060 (D.C. Cir. 1998) . . . . . . . . . . . . . . . . . . . 21

New v. Cohen, 129 F.3d 639 (D.C. Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Newdow v. Eagen, 309 F. Supp. 2d 29 (D.D.C. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

O'Donnell v. Barry, 148 F.3d 1126 (D.C. Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

O'Shea v. Littleton, 414 U.S. 488 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Papasan v. Allain, 478 U.S. 265 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Plaquemines Port v. Fed. Mar. Comm'n,
    838 F.2d 536 (D.C. Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Renne v. Geary, 501 U.S. 312, 316 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

\* Schlesinger v. Councilman, 420 U.S. 738 (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Simpson v. Chesterfield County Bd. of Supervisors,
    404 F.3d 276 (4th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

Snyder v. Murray City Corp., 159 F.3d 1227 (10th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . 35

Sparrow v. United Air Lines, Inc.,
    216 F.3d 1111 (D.C. Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

Sullivan v. Stroop, 496 U.S. 478 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Sw. Bell Tel. Co. v. Fed. Commc'n Comm'n,
    168 F.3d 1344 (D.C. Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

\* Trudeau v. Federal Trade Comm'n,
    456 F.3d 178 (D.C. Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11, 14

\* Turner v. Dep't of Navy, 325 F.3d 310 (D.C. Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

United States Dep't of the Treasury v. Galioto,
    477 U.S. 556 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

United States v. Garde, 848 F.2d 1307 (D.C. Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

Van Orden v. Perry, 545 U.S. 677, 125 S. Ct. 2854 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . 34

\* Veitch v. Danzig, 135 F. Supp. 2d 32 (D.D.C. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

\* Veitch v. England, ___ F.3d. ___, 2006 WL 3408196 (D.C. Cir. 2006) . . . . . . . . . . . . . . . . . . 19

Webman v. Federal Bureau of Prisons,
    441 F.3d 1022 (D.C. Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

Webster v. Doe, 486 U.S. 592 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Wynne v. Town of Great Falls, S.C.,
    376 F.3d 292 (4th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  35

## **STATUTES**

5 U.S.C. § 551(1)(F) (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  20

5 U.S.C. § 702 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  23

5 U.S.C. 706(2)(A) (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  16, 24

10 U.S.C. § 643 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2, 3, 14

10 U.S.C. § 860(b)(1) (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  19

10 U.S.C. § 864 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  19

10 U.S.C. § 869 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  19

10 U.S.C. § 6031 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  31, 36

28 U.S.C. §1331 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  20, 21, 22

28 U.S.C. §1343(a)(4) (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  20

28 U.S.C. §1361 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  20

28 U.S.C. § 2201(a) (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  21

42 U.S.C. § 2000bb-1(a) (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  30

## INTRODUCTION

Donald C. Winter, Secretary of the Navy ("Defendant") moves to dismiss this action in its entirety under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Plaintiff, a Navy chaplain, will be separated from naval service no later than January 31, 2007. He alleges in his Complaint that the Navy instituted separation proceedings against him in violation of its own regulations and in retaliation for his religious views and his criticism of the Navy's policy concerning "religious elements" at official command functions. Plaintiff also alleges that the Navy policy he criticized violated his rights to free exercise of religion under the First Amendment and the Religious Freedom Restoration Act ("RFRA"), and unconstitutionally "established" an official, Unitarian religion. Each of these claims should be dismissed without any further proceedings in this court.

Plaintiff is simply wrong to assert that the Navy violated its own rules or retaliated against him when it began Plaintiff's separation proceedings. Thus, these counts of his Complaint should be dismissed under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. Military regulations required the Navy to begin those proceedings in response to Plaintiff's decision to voluntarily resign his ecclesiastical endorsement to seek another one.

In light of the fact that the Navy was required to institute these separation proceedings against Plaintiff, all of his other claims should be dismissed. Plaintiff's retaliation claims fail as a matter of law because he cannot demonstrate that the Navy's alleged discrimination against his speech and religious beliefs played any role in the Navy's decision to institute separation proceedings against him. Moreover, because those proceedings resulted in a decision to separate Plaintiff from Navy service by January 31, 2007, he lacks standing to challenge any of the Navy's

-1-

prayer policies under the First Amendment or the RFRA.  Additionally, even if Plaintiff did have

standing to challenge those policies, this court would still lack jurisdiction to consider Plaintiff's

First Amendment and RFRA claims because the Navy subsequently cancelled the instruction

Plaintiff attacks, thereby mooting this action.  And, in any event, the facts alleged in Plaintiff's

complaint do not make out a violation of the First Amendment or RFRA; thus, this court should

dismiss those claims even if it concludes it has jurisdiction to consider them.

Finally, Plaintiff's attempt to seek damages for all of these alleged violations is barred by

the doctrine of sovereign immunity.  Plaintiff has not pled any cause of action that would

abrogate the United States' immunity against damages actions.  Thus, this court has no

jurisdiction to consider those damages claims.

## BACKGROUND

### I.    CONTROLLING REGULATIONS

Section 643 of Title 10 of the United States Code gives the Secretary of Defense authority

to establish regulations concerning the discharge of a military chaplain who "fails to maintain the

qualifications needed to perform his professional function."  10 U.S.C. § 643 (2000).  Pursuant to

that grant of authority, the Department of Defense promulgated an instruction entitled "Guidance

for the Appointment of Chaplains for the Military Departments."  See DoDI 1304.28 (June 11,

2004).[1]  Under that regulation, in order to "serve as a chaplain, a [Religions Ministry

Professional] shall receive an endorsement from a qualified Religions Organization."  Id. ¶ 6.1.

The chaplain must maintain that ecclesiastical endorsement throughout his or her military

---

[1] DoDI 1304.28 was attached to Defendant's Brief in Opposition to Plaintiff's Motion for
a Preliminary Injunction ('Def. Prelim. Inj. Opp.") as Exh. 2.

service.  If that ecclesiastical endorsement is ever withdrawn, the chaplain's endorsing

organization "shall provide written notification to the Military Department concerned."  Id. ¶ 6.5.

"Processing for separation in accordance with [10 U.S.C. § 643] shall be initiated immediately

upon such notification."  Id. (emphasis added).

As part of these mandatory separation proceedings required by DoDI 1304.28, the

Military Department must notify the chaplain, in writing, of several things.  First, the Department

must inform the chaplain of his right to consult military or private counsel (at no expense to the

Government).  Id. ¶ 6.5.1.1.  Second, the Department must notify the chaplain of the loss of

ecclesiastical endorsement.  Id. ¶ 6.5.1.2.  Third, the Department must notify the chaplain the

options available to him.  He may "seek another ecclesiastical endorsement," apply for "non-

chaplain duties" or "voluntary retirement," or "tender a voluntary resignation."  Id. ¶ 6.5.1.3.

If the chaplain requests one of the options listed under ¶ 6.5.1.3, he is not automatically

entitled to that relief.  Instead, DoDI 1304.28 grants the Secretary of the appropriate Military

Department discretion whether or not to approve such a request.  See id. ¶ 6.5.3 ("The Secretary

of the Military Department concerned may . . . ." (Emphasis added)); see also id. ¶ 6.5.2 ("If . . . a

request [under ¶ 6.5.1.3] is disapproved, the chaplain shall be separated with an appropriate

discharge.").  Specifically listed among those decisions committed to the Secretary's discretion is

power to "[a]pprove a request for a new ecclesiastical endorsement for a serving chaplain

submitted in accordance with this Instruction."  Id. ¶ 6.5.3.1.

The Navy enacted instructions based on, and consistent with, DoDI 1304.28.

Specifically, the Chief of Naval Operations promulgated an instruction entitled "Appointment of

-3-

Officers in the Chaplain Corps of the Navy."  See OPNAVINST 1120.9 (Dec. 20, 2005).[2]  Under

OPNAVINST 1120.9, the Chief of Chaplains is required to "[n]otify Chief of Naval Personnel

(CHNAVPERS) when an ecclesiastical endorsing agency withdraws its endorsement of a

chaplain or when the Chief of Chaplains withdraws its designation of a chaplain."  OPNAVINST

1120.9 ¶ 3.  After notifying the CHNAVPERS of the loss of endorsement, the Chief of Chaplains

must "[r]ecertify a chaplain's professional qualification upon receipt of a new ecclesiastical

endorsement" and "[r]ecommend to CHNAVPERS a chaplain's continuance based on needs of

the Navy."  Id. ¶ 3(a)-(b).  If the Secretary or his designee denies the request for approval of the

new endorsement, the chaplain will be separated from service, as required by DoDI 1304.28 ¶

6.5.2.

## II.    RELEVANT FACTUAL BACKGROUND

Plaintiff, a Navy chaplain, resigned his endorsement with the Evangelical Episcopal

church on September 25, 2006.  See Compl. ¶ 9.  On September 27, 2006, the Evangelical

Episcopalian church notified the Chief of Naval Personnel that Plaintiff's ecclesiastical

endorsement was withdrawn effective October 1, 2006.  Id.  Two days later, on September 29,

2006, the Chaplaincy of Full Gospel Churches ("CFGC") faxed a notice of a new endorsement to

the Chief of Navy Chaplains.  Compl. ¶ 10.  That same day, the Chief of Chaplains sent Plaintiff

a letter informing him of the loss of his ecclesiastical endorsement and stating that the new

endorsement from CFGC did not automatically qualify him to serve as a chaplain.  Compl. ¶¶ 11-

---

[2] OPNAVINST 1120.9 was attached as Exh. A to Defendant's October 30, 2006 filing in
opposition to Plaintiff's Motion for a Temporary Restraining Order and/or a Preliminary
Injunction.  Additionally, this and other Navy regulations may be located on the Department of
Navy Issuances website at http://doni.daps.dla.mil/default.aspx.

12.

On September 30, 2006, Plaintiff sent a letter to the Chief of Chaplains, contending that he never lost his endorsement and that the Navy's refusal to recognize his new endorsement from CFGC violated controlling naval regulations. Compl. ¶ 14. The Navy responded in a letter dated October 4, 2006, reiterating that Plaintiff's new endorsement from CFGC did not automatically qualify him to serve as a chaplain. That letter also reiterated that Plaintiff had the right to request that the Secretary approve his new ecclesiastical endorsement, and informed Plaintiff that if he availed himself of this option, the Chief of Chaplains would make a recommendation to the Secretary, who would ultimately make the final decision about whether to approve Plaintiff's new ecclesiastical endorsement. Compl. ¶¶ 15-16. Plaintiff submitted a formal request for approval of the CFGC endorsement on October 14, 2006. Compl. ¶ 19. On October 26, 2006, Plaintiff filed this complaint against the Secretary of the Navy and moved that this court grant a temporary restraining order and/or a preliminary injunction ordering the Navy, inter alia, not to continue the separation proceedings instituted against Plaintiff. This court denied the motion for a temporary restraining order on November 1, 2006. Plaintiff's request for a preliminary injunction remains pending.

Several relevant events occurred subsequent to the filing of the complaint. First, on October 26, 2006 – the same day Plaintiff filed this action – the Chaplain Appointment and Recall Eligibility ("CARE") advisory board convened to consider Plaintiff's request for approval of his new ecclesiastical endorsement recommended denial of his application. See First Parker

Decl. ¶ 16.[3]  The Chief of Naval Personnel concurred with the CARE board's assessment and

recommended to the Assistant Secretary of the Navy for Manpower and Reserve Affairs ("ASN

M&RA") that Plaintiff's request for approval of his new endorsement be denied.  On November

16, 2006, the Commander of the Navy Personnel Command sent Plaintiff a letter informing him

that the Secretary denied his request for approval of a new endorsement.  The Secretary found

Plaintiff to be "professionally unsuited for further service as a naval officer and chaplain" based

on (1) Plaintiff's most recent fitness report, which indicated below average ratings for "military

bearing/character," (2) his conviction by Special Court Martial, and (3) the lack of support from

Plaintiff's chain of command.  See Def. Prelim. Inj. Opp., Exh. 1.  The Secretary directed that

Plaintiff be separated from the Navy by January 31, 2007.  Id.[4]

## III.    PLAINTIFF'S COMPLAINT

Plaintiff's complaint seeks declaratory, injunctive, and compensatory relief for alleged

constitutional and statutory violations committed by the Navy.  That complaint sets out four

---

[3] Citations to the "First Parker Declaration" refer to the declaration of Captain Gregory Parker filed on October 30, 2006.  Citations to the "Second Parker Declaration" refer to Captain Parker's declaration attached to Defendant's Brief in Opposition to Plaintiff's Motion for a Preliminary Injunction, filed on November 22, 2006.

[4] Plaintiff's 131-paragraph Complaint asserts numerous other allegations in an attempt to support his claims that the Navy violated the Free Exercise Clause, RFRA, and the Establishment Clause, or that the Navy otherwise retaliated against him for the content of his speech.  For the reasons explained infra, this court does not have jurisdiction to consider those claims.  Therefore, Defendant has limited its summary of the factual background to include only those facts related to Plaintiff's pending separation.  Plaintiff's other factual allegations are discussed infra, as they become relevant to establishing why this court does not have jurisdiction to hear those other claims.

theories for obtaining that relief.[5]  First, Plaintiff alleges that the Navy violated its own rules and regulations by initiating separation proceedings against him after he resigned his ecclesiastical endorsement.  See Compl. ¶¶ 106-110.  Second, Plaintiff claims that the Navy is separating him in retaliation for his religious views and his criticism of the Navy's now-rescinded regulation concerning religious elements at official command functions.  See Compl. ¶¶ 111, 114-118. Third, Plaintiff maintains that the Navy restricted his free exercise of religion in violation of the First Amendment and the Religious Freedom Restoration Act.  See Compl. ¶¶ 121-131.  Fourth, Plaintiff asserts that the Navy unconstitutionally established a Unitarian religion.  See Compl. ¶¶ 112-113.  This court should dismiss each of these challenges.

First, the Navy's decision to institute separation proceedings against Plaintiff was lawful. Plaintiff concedes in his complaint that he voluntarily resigned his ecclesiastical endorsement.  In light of that fact, the Navy was required to institute the separation proceedings that Plaintiff now challenges.  Plaintiff's contrary arguments – that the Navy regulations entitled him to automatic recertification – constitute nothing more than his own legal conclusions, which are not binding on this court for purposes of a Rule 12(b)(6) motion, and, more importantly, are erroneous.

Second, because Plaintiff's first claim fails under Rule 12(b)(6), so too must his second claim.  The factual predicate for Plaintiff's retaliation claim is his assumption that the Navy did not have to begin the separation proceedings against him.  That assumption is incorrect; the Navy

---

[5] These four theories do not map perfectly onto the four "counts" of Plaintiff's complaint. The first of those "counts" – styled as a claim for "Injunctive Relief" – is largely cumulative of the other three.  It does, however, contain some allegations that are omitted from the other "counts" – for example, Plaintiff's claims that the Navy violated its own procedures and that it established a Unitarian religion.  To assist this court in addressing all of Plaintiff's allegations, Defendant has structured this motion to dismiss around the four asserted bases for relief, rather than around the four "count" headings in Plaintiff's complaint.

had no discretion not to institute these proceedings against Plaintiff after he resigned his endorsement. Thus, Plaintiff's factual allegations fail to state a retaliation claim upon which relief could be granted. Moreover, to the extent that Plaintiff now wishes to challenge the outcome of those separation proceedings, which resulted in the Secretary's decision to separate Plaintiff from service, he must do so under the Administrative Procedures Act.[6] As APA review is a question of law for this court to resolve on the basis of the record in front of the Secretary at the time he made his decision to separate Plaintiff, this court could dismiss any such challenge under Rule 12(b)(6).

Third, this court lacks jurisdiction to consider Plaintiff's constitutional and statutory free exercise claims. As Plaintiff is being discharged from the Navy, he is no longer subject to the policy he attacks and thus lacks standing to challenge it. Moreover, even if he did have standing, the Navy rendered this challenge moot when it cancelled the regulation that Plaintiff attacks in his free exercise challenges, SECNAVINST 1730.7C. Even if this court were to reach the merits of this free exercise claim, it should dismiss that challenge under Rule 12(b)(6) because the facts alleged in Plaintiff's complaint simply do not make out a statutory or constitutional violation.

Fourth, this court also lacks jurisdiction to consider Plaintiff's Establishment Clause challenge. Again, his pending separation deprives him of standing to bring such a challenge. And, again, any such challenge would be moot because of the Navy's decision to rescind SECNAVINST 1730.7C. Even if Rule 12(b)(1) did not justify dismissal of these claims, Rule

---

[6] Plaintiff's Complaint attacks only the use of these separation proceedings, not their result. As noted supra, Plaintiff's separation proceedings were still ongoing at the time he filed this Complaint. The Secretary subsequently exercised his discretion to deny Plaintiff's request for approval of his new ecclesiastical endorsement and directed his separation from service by January 31, 2007.

12(b)(6) would.  Plaintiff alleges only that the Navy recommended that all religious elements at official command functions be non-sectarian in nature.  This factual allegation does not state a violation of the Establishment Clause.

Finally, Plaintiff's claims for damages under all of these theories must be dismissed under Rule 12(b)(1).  Because the doctrine of sovereign immunity bars such suits, this court lacks jurisdiction to consider them.

### STANDARD OF REVIEW

Defendant moves this court to dismiss this action under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  In reviewing a motion to dismiss for lack of jurisdiction under Rule 12(b)(1), courts must "presume that [they] lack jurisdiction unless the contrary appears affirmatively from the record." Renne v. Geary, 501 U.S. 312, 316 (1991) (citation and internal quotation marks omitted).  Moreover, "[i]t is the responsibility of the complainant clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute and the exercise of the court's remedial powers." Id. (citation and internal quotation marks omitted); see also Center For Biological Diversity v. Gutierrez, 451 F. Supp. 2d 57, 64 (D.D.C. 2006) (party that seeks to invoke the federal court's jurisdiction "bears the burden of establishing by a preponderance of the evidence that the Court possesses jurisdiction").  Also, under Rule 12(b)(1), the court "may consider materials outside the pleadings." Jerome Stevens Pharmaceuticals, Inc. v. Food & Drug Admin., 402 F.3d 1249, 1253 (D.C. Cir. 2005).

In reviewing a motion to dismiss under Rule 12(b)(6), however, "the Court must accept all well-pleaded allegations as true, construing them in the light most favorable to the plaintiff." Jackson v. Bush, 448 F. Supp. 2d 198, 200 (D.D.C. 2006).  Although Plaintiff is entitled to "the

benefit of all reasonable inferences from the facts alleged," this court is not "bound to accept as true a legal conclusion couched as a factual allegation." Trudeau v. Federal Trade Comm'n, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1114 (D.C. Cir. 2000) and Papasan v. Allain, 478 U.S. 265, 286 (1986)).  Similarly, this court need not "accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint."  Id. (quoting Kowal v. MCI Commc'ns Corp., 16 F.3d 1271, 1276 (D.C. Cir.1994)); see also 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (3d ed. 2004) ("'[T]he court will not accept conclusory allegations concerning the legal effect of the events the plaintiff has set out if these allegations do not reasonably follow from the pleader's description of what happened, or if these allegations are contradicted by the description itself." (emphasis added)).  As the D.C. Circuit put it, "it is possible for a plaintiff to plead too much: that is, to plead himself out of court by alleging facts that render success on the merits impossible." Sparrow, 216 F.3d at 1116.

## ARGUMENT

**I.    PLAINTIFF'S CLAIM THAT THE NAVY VIOLATED ITS OWN REGULATIONS BY INSTITUTING SEPARATION PROCEEDINGS AGAINST HIM SHOULD BE DISMISSED UNDER RULE 12(b)(6)**

### A.    THE NAVY DID NOT VIOLATE ITS REGULATIONS BY INSTITUTING SEPARATION PROCEEDINGS AGAINST PLAINTIFF

Plaintiff first maintains that the Navy violated its own rules by initiating separation proceedings against him after the Evangelical Episcopalian Church notified the Navy that it was withdrawing Plaintiff's ecclesiastical endorsement.  See, e.g., Compl. ¶ 106-07.  Plaintiff's argument proceeds as follows: (1) the Evangelical Episcopal Church notified the Navy on

September 27, 2006 that it was withdrawing its endorsement effective October 1, 2006.  Compl.

¶ 9; (2) CFGC notified the Navy on September 29, 2006 that it now endorsed Plaintiff.  Compl ¶

10; (3) OPNAVINST 1120.9 required the Navy to automatically "recertify" Plaintiff as a military

chaplain upon receipt of the new endorsement.  Compl. ¶ 13; (4) thus, Plaintiff never lost his

endorsement.  Compl. ¶ 14; (5) DoDI 1304.28, which requires the Navy to institute separation

proceedings upon the loss of ecclesiastical endorsement, is therefore not applicable.  See, e.g.,

Compl. ¶ 107.  The lynchpin of this claim is the third element – the contention that OPNAVINST

1120.9 required the Navy to recertify Plaintiff immediately upon receiving notice of his new

endorsement.  That is not a factual assertion; it is a legal conclusion this court need not accept it

as true for the purposes of a Rule 12(b)(6) motion.  Trudeau, 456 F.3d at 193.

Plaintiff is simply wrong to assert that OPNAVINST 1120.9 required the Navy to

automatically recertify him as a chaplain.  As explained supra, DoDI 1304.28 clearly vests the

Secretary with discretion over whether or not to approve a new ecclesiastical endorsement.  See

DoDI 1304.28 ¶ 6.5.3.1.  OPNAVINST 1120.9, which is the Navy regulations designed to

implement DoDI 1304.28, see OPNAVINST 1120.9 ¶ 1, does nothing to undermine the

Secretary's authority.  Instead, it merely directs other officers to perform certain functions to

assist the Secretary in making that decision.

Plaintiff's contrary argument rests on a single word in OPNAVINST 1120.9.  He directs

the court's attention to ¶ 5(b)(3)(a) of that regulation, which states that the Chief of Chaplains

"shall . . . [r]ecertify a chaplain's professional qualifications upon receipt of a new ecclesiastical

endorsement."  (emphasis added).  Notwithstanding the clear language of DoDI 1304.28,

Plaintiff believes that the word "recertify" entitles him to automatic approval of his new

-11-

endorsement from CFGC.  That argument assumes that the word "recertify" orders the Navy to reach a specific <u>outcome</u>.  A correct reading of the regulation reveals otherwise, however.  The command to "recertify" the chaplain's professional qualifications merely requires the Chief of Chaplains to undertake the <u>process of reviewing</u> those credentials before he recommends to the Chief of Naval Personnel whether the chaplain's Naval service should be continued.

There are three reasons why Plaintiff's interpretation of the word "recertify" in OPNAVINST 1120.9 must be rejected.  First, as noted above, his claim that the Navy must accept the new endorsement is at odds with DoDI 1304.28.  That Defense Department regulation vests the Secretary with discretion to decide whether to accept a new ecclesiastical endorsement.  Yet Plaintiff maintains that OPNAVINST 1120.9, which merely directs the Chief of Chaplains to "recertify" a chaplain's professional qualifications, somehow robs the Secretary of the discretion DoDI 1304.28 affords him.  OPNAVINST 1120.9 should not be read to render meaningless the regulation on which it was based.

Second, Plaintiff's argument that the word "recertify" requires a specific outcome is at odds with the text and structure of OPNAVINST 1120.9.  Plaintiff's interpretation of that instruction would, in fact, violate two separate canons of construction.  "A statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant . . . ."  <u>Hibbs v. Winn</u>, 542 U.S. 88, 101 (2004)  (quoting 2A N. Singer, Statutes and Statutory Construction § 46.06 (rev. 6th ed. 2000)).[7]  Plaintiff's construction, if credited, would render meaningless paragraph 5(b)(3)(b) of that instruction.  That paragraph,

---

[7] Canons of statutory construction apply with equal force when interpreting instructions or regulations.  <u>See</u> <u>Black & Decker Corp. v. C.I.R.</u>, 986 F.2d 60, 65 (4th Cir. 1993) ("Regulations, like statutes, are interpreted according to canons of construction.").

which appears immediately following the paragraph commanding the Chief of Chaplains to "recertify" the professional qualifications of a chaplain with a new ecclesiastical endorsement, directs the Chief of Chaplains to recommend to the Chief of Naval Personnel whether that chaplain's continuance would suit the "needs of the Navy." OPNAVINST 1120.9 ¶ 5(b)(3)(b). If the Navy had no choice but to accept the new endorsement, there would be no reason to consider whether a chaplain's continuance suited the "needs of the Navy," and ¶ 5(b)(3)(b) would be rendered superfluous. Such an interpretation must be avoided.

Moreover, Plaintiff's interpretation would also violate the canon of construction declaring that "identical words used in different parts of the same act are intended to have the same meaning." Sullivan v. Stroop, 496 U.S. 478, 484 (1990) (quotation marks omitted). Yet, Plaintiff's interpretation of OPNAVINST 1120.9 would give the word "recertify" an entirely different meaning than the word "certify," which appears in ¶ 5(b)(2) of that same regulation. Paragraph 5(b)(2) orders the Chief of Chaplains to "[c]ertify professional qualifications and calculate entry grade credit based on these qualifications" for new applicants to the Chaplain Corps. As Plaintiff himself notes, the Chief of Chaplains is required to use CARE boards to consider whether these new applicants to the Chaplain Corps should be approved. Compl. ¶ 17. Thus the command that the Chief of Chaplains "certify" a new applicant can only mean that he is to undertake the process of reviewing that applicant's credentials. The word "recertify" must be given the same, process-oriented meaning.

Third, to the extent that this court finds the word "recertify" to be ambiguous, it should defer to the Secretary's construction of the regulation. OPNAVINST 1120.9 is a regulation promulgated by the Secretary pursuant to a specific Congressional grant of rule making authority.

-13-

See 10 U.S.C. § 643 (granting Secretary authority to enact regulations concerning the discharge of an officer who "fails to maintain the qualifications needed to perform his professional function"). The Secretary's interpretation must be "given controlling weight unless [it is] arbitrary, capricious, or manifestly contrary to the statute." Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 844 (1984). Because the Secretary's interpretation of the word "recertify" accords with the structure and text of OPNAVINST 1120.9, and is consistent with DoDI 1304.28, it is not arbitrary or capricious and, thus, is entitled to deference.

In short, Plaintiff is simply wrong about the meaning of OPNAVINST 1120.9. Thus, his claim that the Navy violated its own rules by refusing to recognize his new endorsement must fail as a matter of law.

### B. THE NAVY DID NOT VIOLATE ITS REGULATIONS BY USING A CARE BOARD TO CONSIDER PLAINTIFF'S REQUEST FOR APPROVAL OF HIS NEW ENDORSEMENT

Plaintiff also asserts that the Navy violated its own rules by convening a CARE board to consider his application for approval of his new endorsement. He maintains that the controlling regulations only authorize CARE boards to be used in the situations specified in Chief of Chaplains Instruction ("COCINST") 1110.1G, entitled "Chaplain Appointment and Recall Eligibility Advisory Group." See Compl. ¶ 17, 108. This is a legal conclusion.

Moreover, it is a flawed legal conclusion. Plaintiff's entire argument rests on the fact that COCINST 1110.1G does not specifically state that the Chief of Chaplains is to use a CARE board when considering a request for a change of endorsement. While true, that does not render the use of a CARE board improper in such circumstances. Nothing in COCINST 1110.1G

-14-

prohibits the Chief of Chaplains from convening a CARE board in other instances.  Nor does

DoDI 1304.28 or SECNAVINST 1120.9 specify the process that the Chief of Chaplains is to use

in reviewing the professional qualifications of a chaplain submitting a new ecclesiastical

endorsement.  It is entirely appropriate for the Chief of Chaplains to decide to use the same

procedure in considering a request for a change of endorsement that he is required to use when

considering a new application for admission into the Chaplain Corps.  If anything, the use of the

CARE board affords Plaintiff a more formal procedure than he otherwise would be entitled to

demand.  Plaintiff simply has no legal basis for asserting that the use of a CARE board violated

the Navy's procedures or any other right he possesses.  As this claim is a purely legal one, and is

completely unsupported by the regulation on which Plaintiff relies, it must be dismissed under

Rule 12(b)(6).[8]

## II.    PLAINTIFF'S CLAIMS THAT THE NAVY RETALIATED AGAINST HIM FOR HIS RELIGIOUS VIEWS OR SPEECH SHOULD BE DISMISSED UNDER RULE 12(b)(1) AND/OR RULE 12(b)(6)

The exact nature of Plaintiff's retaliation claim is unclear.  At times, Plaintiff appears to

be suggesting that the Navy instituted separation proceedings against him because of his religious

views and speech.  See, e.g., Compl. ¶¶ 111, 115.  At other times, however, Plaintiff merely

asserts that he was punished and retaliated against for those same reasons, without specifying

---

[8] Even if this Court were to construe Plaintiff's claim about the use of a CARE board as
requiring a resolution of factual issues, the record in this case establishes that the Navy has
consistently convened CARE boards to evaluate the professional qualifications of chaplains
seeking approval of new ecclesiastical endorsements.  See First Berto Decl. (Def. Prelim. Inj.
Opp., Exh. 4); Second Berto Decl. (Defendant's Sur-reply in Opposition to Plaintiff's Motions
for a Preliminary Injunction and an Expedited Discovery Schedule, Exh. 3).  Indeed, Plaintiff
himself submitted a declaration from a purported expert conceding that CARE boards have been
convened in at least twenty two such instances.  See Leuba Decl.

whether that punishment took the form of separation proceedings or some other action.  See, e.g., Compl. ¶¶ 117-18, 122.  Whichever way this court construes Plaintiff's complaint, it should dismiss these claims.  To the extent Plaintiff claims his separation proceedings are retaliation for his speech or beliefs, that claim fails on its own terms and should be dismissed under Rule 12(b)(6); as described above, the Navy was required to institute those proceedings after Plaintiff resigned his ecclesiastical endorsement.  To the extent Plaintiff raises more generalized claims of retaliation, those claims must be dismissed for lack of jurisdiction under Rule 12(b)(1).  Plaintiff can obtain neither damages (because of sovereign immunity) nor declaratory or injunctive relief (because of his pending, lawful dismissal from the Navy).

Finally, to the extent that Plaintiff wishes to use this action to challenge the Secretary's decision to dismiss him from the Navy – a decision reached after this Complaint was filed – he would have to seek to amend his complaint to allege a cause of action under the Administrative Procedures Act.  Under the APA, this court reviews the Secretary's decision to determine whether, as a matter of law, it was arbitrary, capricious, an abuse of discretion, or not otherwise in accordance with the law.  See 5 U.S.C. § 706(2)(A).  Because the Secretary's determination that Plaintiff is professionally unqualified to serve as a chaplain – a decision based upon Plaintiff's court-martial conviction, below-average fitness report, and lack of support from his chain of command – is clearly lawful, this court can dispose of Plaintiff's challenge to his dismissal under Rule 12(b)(6).

### A.    PLAINTIFF'S CLAIM THAT HE IS BEING SEPARATED IN RETALIATION FOR HIS RELIGIOUS SPEECH AND BELIEFS FAILS AS A MATTER OF LAW

Plaintiff's allegation that the Navy instituted separation proceedings against him in

retaliation for his religious speech and beliefs, see Compl. ¶ 111, 115, fails as a matter of law.  In

evaluating a First Amendment retaliation claim, this court must examine four factors: (1) First,

Plaintiff must show that he "spoke on a matter of public concern"; (2) Second, "the court must

consider whether the government's interest in promoting efficient public service outweighs the

plaintiff's interest, as a citizen, in commenting upon matters of public concern, or that of

potential audiences in hearing what [he] has to say"; (3) Third, Plaintiff must show that his

speech "was a substantial or motivating factor in prompting the retaliatory act of which [he]

complains"; (4) "Lastly, the employer should have the opportunity to show, by a preponderance

of the evidence, that it would have taken the same action even in the absence of the protected

conduct."  Alexis v. District of Columbia, 44 F. Supp. 2d 331, 346-47 (D.D.C. 1999) (quoting

O'Donnell v. Barry, 148 F.3d 1126, 1133 (D.C. Cir. 1998)).  Because Plaintiff can allege no facts

that would satisfy the last two prongs of this First Amendment retaliation standard, his claim

should be dismissed under Rule 12(b)(6).

     Plaintiff simply cannot prove that his speech was a "substantial or motivating factor in

prompting" the separation proceedings against him.  Indeed, because DoDI 1304.28 required the

Navy to institute those proceedings after Plaintiff resigned his ecclesiastical endorsement, he

cannot prove that his speech or religious beliefs played any part in "prompting" those

proceedings.  The failure to meet this third prong of the retaliation claim is sufficient reason, on

its own, to dismiss the case under Rule 12(b)(6).  See, e.g., Alexis, 44 F. Supp. 2d at 347 ("In

short, the plaintiff has failed to demonstrate that her speech activity was a substantial or

motivating factor in her dismissal.  Therefore, the plaintiff has failed to state a claim upon which

relief may be granted.").  But even if the other facts in the complaint supported Plaintiff's

inference that his speech or beliefs motivated the separation proceedings – which they do not – Plaintiff still would not be entitled to proceed on this retaliation claim because the Navy would prevail on the fourth prong of the test.  The Navy can prove without a doubt that it "would have taken the same conduct" absent any alleged discrimination against Plaintiff's speech or beliefs; DoDI 1304.28 permitted the Secretary <u>no discretion not to</u> institute those proceedings.

### B. THIS COURT LACKS JURISDICTION TO CONSIDER PLAINTIFF'S OTHER CLAIMS OF WRONGFUL RETALIATION

In addition to alleging that his separation proceedings were in retaliation for his religious views and speech, Plaintiff's complaint also appears to allege more generalized forms of retaliation in violation of the First Amendment.  <u>See, e.g.</u>, Compl. ¶¶ 117-18, 122.  While the sections of Plaintiff's complaint setting out the First Amendment counts do not specify which acts he believes to have been improper retaliation, the rest of his complaint alleges facts that might form the basis of these more generalized retaliation allegations.  For example, Plaintiff argues that his court-martial unconstitutionally applied SECNAVINST 1730.7C to him and punished him for the content of his public prayers.  <u>See</u> Compl. ¶¶ 85-86, 92-96.  Similarly, he contends that Captain Carr improperly punished him for the content of his prayers and that others in the Navy improperly condoned that punishment.  <u>See</u> Compl. ¶¶ 36-41, 59-60, 87-88.  Moreover, Plaintiff alleges that Vice Admiral Harvey recommended his involuntary release after Plaintiff complained to the President, and that Captain Holcomb threatened to transfer Plaintiff to Iraq after hearing that Plaintiff prayed in uniform.  <u>See</u> Compl. ¶¶ 54, 69, 83-84.  Even if those factual assertions could be considered well-pleaded allegations of First Amendment retaliation, this court lacks jurisdiction to consider them.

1.    **This Court Lacks Jurisdiction to Consider Any Challenge to Plaintiff's Court-Martial**

Much of Plaintiff's complaint centers on the circumstances surrounding his conviction by a Special Court Martial for praying in uniform at a protest in front of the White House on March 30, 2006.  See, e.g., Compl. ¶¶ 70-73, 80-86, 92-96, 102.  This court has no jurisdiction to consider Plaintiff's challenge to his court-martial conviction.  A military member convicted at a court-martial must first exhaust all avenues of appeal open to him within the military justice system before he can initiate a civil action seeking to overturn the result of that proceeding.  See, e.g., Schlesinger v. Councilman, 420 U.S. 738, 758 (1975); Veitch v. England, ___ F.3d. ___, 2006 WL 3408196, at *4 & n.4 (D.C. Cir. 2006).  "In connection with court-martial proceedings, the exhaustion requirement is particularly important, because, given the reality that the military must 'prepare for and perform its vital role' of fighting wars, it 'must insist upon a respect for duty and a discipline without counterpart in civilian life.'"  New v. Cohen, 129 F.3d 639, 643 (D.C. Cir. 1997) (quoting Councilman, 420 U.S. at 757).

Plaintiff has not alleged that he exhausted any of the remedies available to him within the military justice system.  Once he receives the authenticated record of trial, he may ask the convening authority to review the proceedings.  See 10 U.S.C. § 860(b)(1) (2000).  After the convening authority has reviewed the conviction, it will automatically be reviewed by a judge advocate, who may send the case back to the convening authority for corrective action.  See id. § 864.  Finally, if Plaintiff does not obtain relief in the mandatory § 864 review, he may appeal his conviction to the Judge Advocate General, who may set aside the conviction or send the case to the Navy-Marine Corps Court of Criminal Appeals (NMCCA).  See id. § 869.  As Plaintiff has

not even alleged, much less demonstrated, that he exhausted any of these options, he may not attempt to collaterally attack the fact of conviction in this civil action.[9]

### 2. This Court Lacks Jurisdiction to Consider Plaintiff's Remaining Claims of Retaliation by Navy Personnel

As noted above, Plaintiff's complaint alleges that his superior officers took and/or threatened him with disciplinary actions in retaliation for his speech and religious views. See, e.g., Compl. ¶¶ 36-41, 59-60, 87-88 (discussing actions of Captain Carr); ¶¶ 54, 69, 83-84 (discussing alleged threats made by Vice Admiral Harvey and Captain Holcomb). Because this court lacks jurisdiction to consider any claims based on these allegations, it should dismiss them under Rule 12(b)(1).

Plaintiff has not alleged a cause of action that will allow him to seek a remedy for allegations of past wrongdoing by his commanding officers. Plaintiff's complaint seeks declaratory, injunctive, and compensatory relief.[10] None of these are available based upon the

---

[9] Moreover, even if Plaintiff had exhausted his appeals on his special court martial, he still would need to allege a proper jurisdictional basis for challenging that conviction. As noted infra, the proper way to challenge the Secretary's exercise of discretion is through the APA. However, that APA suit could not be used to challenge the court-martial conviction. See 5 U.S.C. § 551(1)(F) (2000) (APA review not available for decisions of "courts martial and military commissions"). Thus, Plaintiff would first need to successfully attack the court-martial under some independent basis and then, if successful, bring an APA suit challenging the Secretary's reliance on that conviction and other factors in deciding to separate Plaintiff from service.

[10] Plaintiff's Complaint does not actually allege any cause of action. It states that this case arises under 28 U.S.C. §§ 1331, 1343(a)(4), and 1361. Those jurisdictional statutes do not create causes of action. See, e.g., McGuirl v. United States, 360 F. Supp. 2d 129, 131 (D.D.C. 2004) ("The plaintiffs' complaint states that jurisdiction in this case is conferred under 28 U.S.C. § 1331. . . . However, section 1331 requires that the plaintiffs allege another basis for jurisdiction in addition to section 1331, i.e. a cause of action created by a substantive federal statute."). Moreover, none of those jurisdictional statutes abrogate the United States' sovereign immunity. See Byrd v. Smith, 693 F. Supp. 1199, 1201 (D.D.C. 1986) (holding that §§ 1331 and

-20-

facts alleged in his complaint.  First, even if the claims against his superior officers were well-

plead allegations of First Amendment retaliation, "[a] single past instance of exposure to illegal

conduct is insufficient to establish standing for injunctive relief if there are no 'continuing,

present adverse effects.'"  Newdow v. Eagen, 309 F. Supp. 2d 29, 37 (D.D.C. 2004) (citing

O'Shea v. Littleton, 414 U.S. 488, 495-96 (1974) and City of Los Angeles v. Lyons, 461 U.S. 95,

106-10 (1983)).  As Plaintiff is being separated from his Naval service, he can allege no threat of

a continuing violation.  The Secretary will have no power over him once he is dismissed, and

thus there is simply nothing to enjoin.

Similarly, the Declaratory Judgement Act provides no basis for seeking relief of these

alleged past violations.[11]  Although the Act allows a court to "declare the rights and other legal

relations of any interested party," 28 U.S.C. § 2201(a), it does not do away with the requirement

that there be "a controversy of 'sufficient immediacy and reality to warrant the issuance of a

declaratory judgment.'"  Mova Pharm. Corp. v. Shalala, 140 F.3d 1060, 1073 (D.C. Cir. 1998)

(quoting Md. Cas. Co. v. Pac. Coal & Oil Co., 312 U.S. 270, 273 (1941)).  If "an action has no

continuing adverse impact and there is no effective relief that a court may grant, any request for

judicial review of the action is moot."  Sw. Bell Tel. Co. v. Fed. Commc'n Comm'n, 168 F.3d

---

1343 do not waive the United States' sovereign immunity).  Plaintiff seems to be relying, instead,
on the court's inherent power to grant equitable relief.  And, of course, he purports to raise a
claim under RFRA, although he fails to include a reference to that statute in the "Jurisdiction"
section of his complaint.  Unless he amends his complaint to specify the cause of action under
which his claims arise, and to make clear the waiver of sovereign immunity he invokes, this court
should dismiss the entire action under Rule 12(b)(1).  See, e.g., id.

[11] Again, Plaintiff has invoked no cause of action in support of his claim for declaratory
relief.  Defendant assumes that the basis of such relief would be the Declaratory Judgment Act,
28 U.S.C. § 2201 (2000).

1344, 1350 (D.C. Cir. 1999). Thus, as with the request for injunctive relief, Plaintiff's pending

separation makes inappropriate any attempt to seek declaratory relief concerning past actions;

there simply is no "continuing adverse impact" from his supervisors' alleged criticisms and

threats.[12]

Nor may Plaintiff seek compensatory relief based on these allegations of past

wrongdoing. The Navy is entitled to the sovereign immunity enjoyed by the United States. See

Auction Co. of Am. v. Fed. Deposit Ins. Corp., 132 F.3d 746, 752 (D.C. Cir. 1998) (federal

agencies performing federal functions always possess sovereign immunity unless there is a

waiver). Although Plaintiff has not cited a waiver of sovereign immunity in his complaint,

Plaintiff may be seeking to rely upon the waiver provided in the APA. See 5 U.S.C. § 702.

While that waiver does allow claims for injunctive and declaratory relief against an agency of the

United States, it does not permit a plaintiff to seek compensatory damages. See Larsen v. U.S.

Navy, 346 F. Supp. 2d 122, 128 (D.D.C. 2004) (APA "waiver of immunity does not apply to

suits for money damages"). Thus, any attempt to obtain money damages for these allegations of

past wrongdoing must be dismissed under Rule 12(b)(1).

### C.    ANY CHALLENGE TO THE BASIS OF PLAINTIFF'S PENDING SEPARATION MUST be BROUGHT UNDER THE ADMINISTRATIVE PROCEDURES ACT

Plaintiff's separation proceedings continued after he filed his complaint. As part of those

proceedings, Plaintiff requested that the Secretary approve his new endorsement from CFGC.

---

[12] Indeed, even if he were not being dismissed, the fact that the alleged wrongdoing by Vice Admiral Harvey and Captain Holcomb consisted of mere threats would deprive this court of jurisdiction to enter a declaratory judgment. Because he was not actually dismissed for his complaint to the President, nor was he actually transferred to Iraq, these allegations do not sufficiently allege the type of concrete injury required for a federal cause of action.

-22-

Compl. ¶ 19.  Pursuant to OPNAVINST 1120.9, the Chief of Chaplains reviewed Plaintiff's

professional qualifications.  He submitted Plaintiff's request for approval to a CARE Board.  <u>See</u>

First Parker Decl. ¶ 13.  The CARE board, after considering Plaintiff's new endorsement, service

record, and court-martial conviction, recommended that Plaintiff's application for approval of his

new endorsement be denied.  First Parker Decl. ¶ 16.  The Chief of Chaplains concurred in that

recommendation.  <u>Id.</u> ¶ 17.  Pursuant to the discretion provided by DoDI 1304.28, the Secretary

determined Plaintiff was "professionally unsuited for further service as a naval officer and

chaplain" based on (1) Plaintiff's most recent fitness report, which indicated below average

ratings for "military bearing/character," (2) his conviction by Special Court Martial, and (3) the

lack of support from Plaintiff's chain of command.  <u>See</u> Def. Prelim. Inj. Opp., Exh. 1.  The

Secretary directed that Plaintiff be separated from the Navy by January 31, 2007.  <u>Id.</u>

      Plaintiff's Complaint does not attack this decision, and for obvious reason; the Secretary

had not decided to separate him at the time he filed that Complaint.  If Plaintiff wishes to

challenge his pending dismissal as part of this action, he will have to amend his complaint to

bring an action pursuant to the Administrative Procedures Act (APA).  There is no question that

the Navy is an "agency" covered by the APA.  <u>See</u> <u>Morgan v. Perry</u>, 142 F.3d 670, 687 n.33 (3d

Cir. 1998) ("[E]ach branch of the military is an agency within the meaning of the Administrative

Procedures Act.").  The Secretary's discretionary decision to separate Plaintiff from service is

thus a final agency action subject to APA review.  <u>See, e.g.</u>, <u>Turner v. Dep't of Navy</u>, 325 F.3d

310, 313-14 (D.C. Cir. 2003) ("We review the decisions of the Secretary under the arbitrary and

capricious standard of the APA."); <u>Cone v. Caldera</u>, 223 F.3d 789, 793 (D.C. Cir. 2000).

      Under that APA standard, this court asks whether the Secretary's decision was "arbitrary,

-23-

capricious, an abuse of discretion, or otherwise not in accordance with law." See 5 U.S.C. § 706(2)(A) (2000).  "This standard requires plaintiff to demonstrate that the agency action 'had no rational basis' or 'involved a clear and prejudicial violation of applicable statutes or regulations.'"  H & F Enterprises, LTD. v. United States,  973 F. Supp. 170, 173 (D.D.C. 1996) (quoting Kentron Hawaii, Ltd. v. Warner, 480 F.2d 1166, 1169 (D.C. Cir. 1973)).

    In opposing Plaintiff's motions for a preliminary injunction and expedited discovery, Defendant advanced this same contention regarding Plaintiff's need to amend his complaint to assert a cause of action under the APA.  To date, however, Plaintiff has steadfastly resisted that suggestion.  Instead, he maintained in his reply briefs on those motions that Webster v. Doe, 486 U.S. 592 (1988), permits him to bring a free-standing constitutional (i.e., non-APA) challenge to the Secretary's decision to dismiss him.  That argument must fail.  Webster does not stand for the proposition that a party challenging an agency action may elect to bring the case under the Constitution even though APA review is available.  Instead, it simply held that a constitutional challenge to agency action might lie even though the APA otherwise precludes review of the action (where, for example, it is a decision committed to agency discretion).

    Plaintiff's refusal to recognize that a challenge to the Secretary's decision to dismiss him must arise under the APA is not merely a semantic difference or a technical defect in pleading. Plaintiff proposes to undertake a broad fishing expedition to probe the decision-making process of the Secretary of the Navy.  That attempt is anathema to the APA.  The court's review under the § 706 standard must generally be conducted "on the basis of the agency record compiled in the course of informal agency action in which a hearing has not occurred."  Florida Power & Light Co. v. Lorion, 470 U.S. 729, 744 (1985) (citations omitted).  "The factfinding capacity of

-24-

the district court is thus typically unnecessary to judicial review of agency decisionmaking." Id.; see also Plaquemines Port v. Fed. Mar. Comm'n, 838 F.2d 536, 551 (D.C. Cir. 1988) (court must rely "on the factual record transmitted . . . by the agency" even if it is reviewing "constitutional issues not reached by the agency").  "When findings of fact, rendered contemporaneously with the concomitant administrative decision, are subsequently available, a reviewing court may not require the agency officials who participated in that decision to give testimony explaining their action unless there has been a strong showing of bad faith or improper behavior." Bank of Commerce of Laredo v. City Nat. Bank of Laredo, 484 F.2d 284, 288 (5th Cir. 1973) (citing Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 420 (1971)).  Plaintiff has not made such a showing.

Thus, to the extent that Plaintiff continues to attempt to challenge the basis of his pending separation, and the court allows that challenge to proceed, this court should treat that as a claim under the Administrative Procedures Act, and should dismiss that claim under Rule 12(b)(6). When reviewing an agency action under the APA, "[t]he entire case on review is a question of law, and only a question of law. And because a court can fully resolve any purely legal question on a motion to dismiss, there is no inherent barrier to reaching the merits at the 12(b)(6) stage." Marshall County Health Care Auth. v. Shalala, 988 F.2d 1221, 1226 (D.C. Cir. 1993).  At the time he made the decision not to approve Plaintiff's application for approval of his new endorsement, the Secretary had in front of him a two-page letter from the Chief of Naval Personnel.  See Exh. 1.  That letter informed the Secretary of the very facts that he relied upon in denying Plaintiff's request.  Plaintiff cannot show that the Secretary's reliance on (1) Plaintiff's court-martial conviction, (2) his below-average fitness report, and (3) his lack of support from

the chain of command "had no rational basis" or "involved a clear and prejudicial violation of applicable statutes or regulations."  H & F Enterprises, LTD.,  973 F. Supp. at 173.  Thus, this court should dismiss any wrongful separation claim under Rule 12(b)(6).

## III.    THIS COURT LACKS JURISDICTION TO CONSIDER PLAINTIFF'S FREE EXERCISE AND RFRA CLAIMS

Plaintiff also claims that the Navy violated his constitutional and statutory rights to free exercise of his religion by forbidding him from praying "in Jesus' name" at official command functions.  See Compl. ¶¶ 22-24, 26-27, 34, 50, 64, 66, 85, 121-31.  This court lacks jurisdiction to consider those claims for two reasons.  First, the Navy mooted this claim by cancelling SECNAVINST 1730.7C, the regulation which Plaintiff attacks.[13]  Second, Plaintiff lacks standing because his injury is too speculative to support the exercise of federal court jurisdiction.

Moreover, even if this court were to conclude that it had jurisdiction over Plaintiff's free exercise and RFRA claims, it should dismiss them under Rule 12(b)(6).  Plaintiff simply has not alleged an infringement of any free exercise right.

### A.    PLAINTIFF'S CHALLENGE TO THE FORMER NAVY POLICY CONCERNING RELIGIOUS ELEMENTS AT COMMAND FUNCTIONS (SECNAVINST 1730.7C) IS MOOT

Plaintiff's complaint alleges that the Navy violated his free exercise rights by preventing him from praying "in Jesus' name" at official command functions.  This claim constitutes, essentially, a facial attack on the instruction governing religious elements at official command

---

[13] As noted supra, under Rule 12(b)(1), this court may consider information outside Plaintiff's complaint – such as the Navy's order rescinding SECNAVINST 1730.7C – for the purposes of determining whether it has jurisdiction to consider the claim. See Jerome Stevens Pharmaceuticals, Inc., 402 F.3d at 1253.

functions.[14]  Plaintiff repeatedly attacked that instruction, Secretary of Navy Instruction

("SECNAVINST") 1730.7C, in his Complaint.  On November 21, 2006, the Navy rescinded

SECNAVINST 1730.7C.  See Def. Prelim. Inj. Opp., Exh. 6.[15]  In its place, the Navy reinstated

two regulations that existed prior to the passage of 1730.7C.  The Navy reinstated (1)

SECNAVINST 1730.7B, see Def. Prelim. Inj. Opp., Exh. 7 (October 12, 2000 regulation setting

forth rules for religious ministry support within the Navy), and (2) SECNAVINST 1730.8A, see

Def. Prelim. Inj. Opp., Exh. 8 (December 31, 1997 regulation setting forth Navy's position on

religious accommodation).  The effect of this change is that the Navy no longer has a unified

policy for including religious elements at command functions.  The language in the now-

rescinded 1730.7C that Plaintiff complained of – ¶ 6.c., which stated that religious elements at

command functions should be "nonsectarian" – no longer exists.  Each individual commander

now controls whether a religious element is appropriate in his or her command functions, and

how that element should be carried out.

     The Navy's decision to rescind SECNAVINST 1730.7C moots Plaintiff's request for a

preliminary injunction against that regulation.  See, e.g., United States Dep't of the Treasury v.

Galioto, 477 U.S. 556, 559-60 (1986) (repeal of challenged regulation rendered case moot).

---

[14] Although Plaintiff complains about being punished for prayers at a funeral service, see, e.g., Compl. ¶ 36, that allegation is not separate from his attack on SECNAVINST 1730.7C. SECNAVINST 1730.7C governed that funeral service because it was not a "divine service." Compl. ¶ 88.

[15] The Navy's decision to rescind the instruction relieves this court of the burden of evaluating Plaintiff's completely unsupported assertion that the language of a Conference Committee report, combined with the President's signature on the bill that Committee reported, actually operates to repeal an existing regulation – despite the fact that the bill in question was silent on the issue.  See Compl. ¶ 97-100.

Plaintiff can obtain neither declaratory nor injunctive relief against an instruction that no longer exists.  See, e.g., United States v. Garde, 848 F.2d 1307, 1309 (D.C. Cir. 1988) ("Insofar as there is no relief that could be granted by this court, the appeal must be dismissed as moot.").

As Plaintiff's allegations concerning OPNAVINST 1120.9 are now moot, his statutory and constitutional claims for injunctive relief against applying that regulation to him must be dismissed under Rule 12(b)(1).

### B.    PLAINTIFF LACKS STANDING TO SEEK DECLARATORY AND INJUNCTIVE RELIEF FOR THESE ALLEGED VIOLATIONS OF THE FREE EXERCISE CLAUSE AND RFRA

Plaintiff also lacks standing to seek declaratory and injunctive relief on his free exercise and RFRA claims.  This is so for the two, independent reasons.  First, because Navy's the decision to rescind SECNAVINST 1730.7C leaves individual commanders with the power to determine the policy for including religious elements at command functions, Plaintiff cannot demonstrate that his commander would adopt the same policy concerning the use of non-sectarian prayers at command functions.  But that is exactly what he must do to allege a constitutional violate concrete enough to support federal court jurisdiction.  See, e.g., Fair Employment Council of Greater Washington, Inc. v. BMC Marketing Corp., 28 F.3d 1268, 1274 (D.C. Cir. 1994) (allegations of a past pattern or practice of violations is insufficient to support standing to enjoin that practice where "plaintiffs . . . have said nothing to indicate that future violation of their rights is even remotely probable"); Animal Legal Def. Fund, Inc. v. Espy, 23 F.3d 496, 500 (D.C. Cir. 1994) (alleged harm that might occur "at some undefined future time" is not sufficient to confer Article III standing).

Second, even if Plaintiff could demonstrate that his commander would adopt such a

policy, he could not demonstrate that the policy will be applied to <u>him</u>.  Because he is being

separated from the Navy on January 31, 2007, and is not performing any duties as a chaplain at

the current time, <u>see</u> Compl. ¶ 11, Plaintiff cannot allege a credible fear of suffering the alleged

injury outlined in his complaint.  Thus, he cannot show the type of "injury in fact" necessary to

confer Article III standing.  <u>See</u> <u>Veitch v. Danzig</u>, 135 F. Supp. 2d 32, 37-38 (D.D.C. 2001)

(discharged chaplain could not show injury because "[n]ow out of uniform, plaintiff can preach

as he chooses, unconstrained by military discipline or protocol"); <u>see also</u> <u>Lyons</u>, 461 U.S. at

102-03 (the "threat of injury must be both real and immediate, not conjectural or hypothetical."

(quotation marks omitted)).

### C.     PLAINTIFF CAN NOT OBTAIN DAMAGES FOR THESE ALLEGED VIOLATIONS OF THE FREE EXERCISE CLAUSE AND RFRA

As with Plaintiff's retaliation claims, Defendant is shielded from Plaintiff's damages

claims by the doctrine of sovereign immunity.  Neither the First Amendment nor RFRA

abrogates the United States' sovereign immunity in damages actions.  <u>See, e.g.</u>, <u>Jackson</u>, 448 F.

Supp. 2d at 201 ("Our Circuit has found that Congress has not waived immunity for suits seeking

monetary damages that arise under the Constitution." (citation omitted)); <u>Webman v. Federal</u>

<u>Bureau of Prisons</u>, 441 F.3d 1022, 1026 (D.C. Cir. 2006) ("We therefore hold that RFRA does

not waive the federal government's sovereign immunity for damages.").  Thus, Plaintiff's

damages claims for asserted violations of his free exercise rights must be dismissed.

### D.     EVEN IF PLAINTIFF'S FREE EXERCISE AND RFRA CLAIMS WERE NOT MOOT AND HE HAD STANDING TO PURSUE THEM, THEY SHOULD BE DISMISSED UNDER RULE 12(b)(6)

Plaintiff's free exercise and RFRA claims could not survive a motion to dismiss even if

this court had jurisdiction to consider them.  Plaintiff claims that the Navy violates constitutional and statutory free exercise of chaplains rights by encouraging them to pray in a nonsectarian manner at official command functions open to all service members.  These challenges are nothing less than a frontal assault on the military's commitment to asking its chaplains to function in a pluralistic religious environment.  See DoDI 1304.28 ¶ 6.1.3 (Religious Ministry Professionals must be "willing to function in a pluralistic environment . . . and to support directly and indirectly the free exercise of religion by all members of the Military Services, their family members, and other persons authorized to be served by the military chaplaincies").

First, Plaintiff's allegations do not make out a violation of the Religious Freedom Restoration Act, 42 U.S.C. § 2000bb-1(a)(b) ("RFRA").  To make out a violation of that Act, Plaintiff must show that "'the government has placed a substantial burden on the observation of a central religious belief or practice.'"  Henderson v. Kennedy, 253 F.3d 12, 17 (D.C. Cir. 2001), aff'd on reh'g, 265 F.3d 1072 (D.C. Cir. 2001) (quoting Jimmy Swaggart Ministries v. Board of Equalization, 493 U.S. 378, 384-85 (1990)); Branch Ministries v. Rossotti, 211 F.3d 137, 142 (D.C. Cir. 2000).  Plaintiff cannot satisfy even this threshold showing.  Plaintiff points to SECNAVINST 1730.7C, which directed commanders to ask chaplains to use non-sectarian religious elements at command functions if the commander felt a religious element was appropriate to that occasion.  If a chaplain was asked to offer such a religious element, that chaplain could "choose not to participate based on his or her faith constraints . . . . with no adverse consequences. "  SECNAVINST 1730.7C ¶ 6.c.  By attacking this policy as a violation of his free exercise rights, Plaintiff asks this court, in essence, to conclude that a regulation allowing commanders to ask – but not force – chaplains to offer non-sectarian religious elements

at official Navy functions somehow infringes upon a "central religious belief or practice."

In evaluating this claim, it is important to reiterate that SECNAVINST 1730.7C applied only to official command functions. It did not govern a chaplain's "divine services," which are to be conducted according to the tenets of his religion. See 10 U.S.C. § 6031.[16] Thus, by attacking SECNAVINST 1730.7C, Plaintiff is not merely alleging that he should be allowed to conduct his own religious services according to the dictates of his faith; he is alleging, in essence, that his religion requires him to proselytize at all official command functions. But Plaintiff has not demonstrated that this duty to proselytize at official command functions is a central "belief or practice" of his religion. And, moreover, even if he did establish that his religion required this, the Navy would have "a compelling governmental interest" that "justifies the burden" upon Plaintiff's supposed right to proselytize. Henderson, 253 F.3d at 17. "The military need not encourage debate or tolerate protest to the extent that such tolerance is required of the civilian state by the First Amendment; to accomplish its mission the military must foster instinctive obedience, unity, commitment, and esprit de corps." Goldman v. Weinberger, 475 U.S. 503, 507 (1986). Hence, the military's interest in allowing its commanders to control command functions would justify a regulation that infringed on Plaintiff's purported free exercise right to proselytize at such events if the commander did not wish to let that chaplain address the assembled service

---

[16] At two points in his complaint, Plaintiff alleges that SECNAVINST 1730.7C actually violated 10 U.S.C. § 6031, because it prohibited chaplains from praying according to their faith at command functions. See, e.g., Compl. ¶¶ 22, 50. 10 U.S.C. § 6031, of course, only applies to "Public Worship." By implication, then, Plaintiff alleges that command functions are a form of "Public Worship." This argument ignores the fact that SECNAVINST 1730.7C defined "Public Worship" to include only "Divine Services" and "Religious Services." See SECNAVINST 1730.7C, Encl. 1 ¶ 5. Thus, SECNAVINST 1730.7C, which did not apply to either Divine Services or Religious Services – i.e., forms of "Public Worship" – clearly did not violate 10 U.S.C. § 6031. Plaintiff's claims to the contrary are meritless.

members.  Moreover, the Navy also has a compelling interest in fostering its "esprit de corps" by shielding service members attending command functions from unwanted proselytizing.

Similarly, Plaintiff's Free Exercise Clause claim would fail under Rule 12(b)(6) even if this court had jurisdiction to address it.  Plaintiff simply can not show that a policy allowing commanders to request – but not demand – that a chaplain offer a non-sectarian religious element at a function where they otherwise would not have a right to speak abridges any First Amendment free exercise rights.  Moreover, the Supreme Court has held that the "review of military regulations challenged on First Amendment grounds is far more deferential than constitutional review of similar laws or regulations designed for civilian society."  Goldman, 475 U.S. at 507 (rejecting claim that Air Force regulation preventing plaintiff from wearing yarmulke infringed free exercise rights).  "[W]hen evaluating whether military needs justify a particular restriction on religiously motivated conduct, courts must give great deference to the professional judgment of military authorities concerning the relative importance of a particular military interest."  Id.

In short, Plaintiff's factual allegations simply do not rise to the level of stating either a statutory or constitutional violation of his free exercise rights.  Thus, in the event that this court concludes it does have jurisdiction to consider these claims, it should dismiss them under Rule 12(b)(6).

IV.    **TO THE EXTENT THIS COURT CONSTRUES PLAINTIFF'S COMPLAINT TO INCLUDE AN ESTABLISHMENT CLAUSE CLAIM, IT SHOULD DISMISS THAT CONTENTION**

Although Plaintiff's Complaint does not contain a count alleging a violation of the

Establishment Clause,[17] that complaint is littered with allegations that the Navy unconstitutionally established an official, Unitarian religion by encouraging its chaplains to function in a pluralistic religious environment.  See Compl. ¶¶ 25, 28, 32, 33, 47, 50, 112-13.  Like Plaintiff's free exercise and RFRA claims, his establishment clause allegations are aimed largely at the now-repealed SECNAVINST 1730.7C.  Thus, any claim for relief under the Establishment Clause should be dismissed for the same reasons noted above.

###### A.    THIS COURT LACKS JURISDICTION TO CONSIDER AN ESTABLISHMENT CLAUSE CLAIM

The Navy's repeal of SECNAVINST 1730.7C moots any claim concerning the establishment of a Unitarian religion.  The Navy no longer requires that religious elements at official command functions be non-sectarian.  Thus, even if Plaintiff's claim concerning the establishment of religion ever had merit – which it did not, see infra – that claim is now moot.  Moreover, for the reasons discussed above, the rescinding of the regulation and Plaintiff's pending separation render any alleged injury too speculative to grant him standing to bring this challenge.

###### B.    IF THIS COURT DOES CONSIDER AN ESTABLISHMENT CLAUSE CLAIM ON THE MERITS, IT SHOULD DISMISS THAT CLAIM UNDER RULE 12(B)(6)

Plaintiff's factual allegations, even if accepted as true for the purposes of a Rule 12(b)(6) motion, establish only that the Navy has adopted an environment of religious pluralism at official command functions.  These allegations do not state a claim for a violation of the Establishment

---

[17] The four counts are entitled "Injunctive Relief," "First Amendment Violation," "Religious Discrimination (Free Exercise Clause of the First Amendment)," and "Violations of the Religious Freedom Restoration Act."  The "First Amendment Violation" count alleges only retaliation for the content of his speech; not an Establishment Clause violation.

Clause. To the contrary, they demonstrate that the Navy is careful to avoid Establishment Clause violations.

Plaintiff alleges that the Navy has instructed its chaplains to pray in a non-sectarian manner at official command functions. From this fact, Plaintiff concludes that the Navy has "established" an official Unitarian religion that "believes in the oneness of God and not the Christian doctrine of the Trinity." Compl. ¶ 29. That conclusory allegation is simply not supported by the factual allegations in Plaintiff's complaint. Indeed, it is belied by those factual allegations. As noted, Plaintiff alleges that chaplains were required to pray in a non-sectarian manner if they addressed a command function; he offers no other theory for how the Navy has established Unitarianism as its official religion beyond this requirement that prayers be non-sectarian. But if the Navy truly requires prayers to be non-sectarian, then any explicitly Unitarian prayer would violate that policy just as much as a prayer to Jesus or any other religious figure.

What Plaintiff really seems to be alleging is that any non-sectarian prayer is a Unitarian prayer and, thus, a violation of the Establishment Clause. That is a legal conclusion to which this court need not defer. More importantly, it is a conclusion directly contradicted by the line of Establishment Clause cases considering challenges to legislative prayer. In Marsh v. Chambers, 463 U.S, 783, 792 (1983), the Supreme Court held that "invok[ing] Divine guidance on a public body entrusted with making the laws is not . . . an 'establishment' of religion or a step toward establishment; it is simply a tolerable acknowledgment of beliefs widely held among the people of this country." The Court recently reaffirmed this principle in Van Orden v. Perry, 545 U.S. 677, 125 S. Ct. 2854, 2863 (2005), where it held, citing Marsh, that "[s]imply having religious content or promoting a message consistent with a religious doctrine does not run afoul of the

-34-

Establishment Clause." What does run afoul of the Establishment clause, however, is when a legislative prayer ceases to be non-sectarian and starts to promote (or denigrate) the tenets of any specific religion. See, e.g., Hinrichs v. Bosma, 440 F.3d 393, 398-402 (7th Cir. 2006) (collecting authorities); Simpson v. Chesterfield County Bd. of Supervisors, 404 F.3d 276, 283 (4th Cir. 2005); Wynne v. Town of Great Falls, S.C., 376 F.3d 292, 298-300 (4th Cir. 2004); Snyder v. Murray City Corp., 159 F.3d 1227, 1235 (10th Cir. 1998). By implication, these cases illustrate that a mere non-sectarian prayer, like the one the Navy permits at command functions, does not run afoul of the Establishment Clause by officially promoting Unitarianism or any other religion. In fact, these cases demonstrate that Plaintiff gets the argument exactly backwards. The use of nonsectarian religious elements is designed to avoid any possible Establishment Clause issues; it does not create them.[18]

## CONCLUSION

For all of the foregoing reasons, this action should be dismissed in its entirety.

---

[18] It is important to note that Plaintiff is not alleging that any prayer at a command ceremony – even if non-sectarian – violates the Establishment Clause. Plaintiff does not seek to end all prayer at command functions but, instead, seeks to be able to offer explicitly sectarian ones. Hence, the case that Plaintiff relied on to support his Establishment Clause claim in his motion for a preliminary injunction, Lee v. Weisman, 505 U.S. 577 (1992), is inapposite to his argument. If Lee applied – which it does not, for the reasons articulated in Defendant's opposition to Plaintiff's motion for a preliminary injunction, see Def. Prelim. Inj. Opp. at 31-33 – the relief sought by Plaintiff would be more objectionable than the policy he attacks.

Dated: <u>December 21, 2006</u>                                   Respectfully submitted,

                                                                 PETER D. KEISLER
                                                                 Assistant Attorney General

                                                                 JEFFERY A. TAYLOR
                                                                 United States Attorney

                                                                 VINCENT M. GARVEY
                                                                 Deputy Branch Director


Of Counsel:                                                      <u>**/s/ Michael P. Abate**</u>
Lieutenant Commander Thomas Leary                                MICHAEL P. ABATE
Lieutenant Katy Pasieta                                          Attorney, Civil Division
Office of the Judge Advocate General                             U.S. Department of Justice
Department of the Navy                                           P.O. Box 883
Washington Navy Yard, Bldg 33                                    20 Massachusetts Ave., N.W., Room 7302
1322 Patterson Ave., S.E., Suite 3000                            Washington, D.C. 20530
Washington, D.C.  30274-5066                                     Telephone: (202) 616-8209

                                                                 <u>Attorneys for Defendants</u>

# UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| CHAPLAIN GORDON JAMES KLINGENSCHMITT, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 06-01832 (HHK) |
| DONALD C. WINTER In his Official Capacity as Secretary, DEPARTMENT OF THE NAVY, | ) ) ) ) | |
| Defendant. | ) ) | |

## ORDER

The Court, having fully considered Defendants' Motion to Dismiss, finds Defendants'

Motion to be well-taken, and it is hereby GRANTED.


IT IS SO ORDERED, this _____ day of _____, 2007.


_____

HON. HENRY H. KENNEDY
UNITED STATES DISTRICT JUDGE



**DEPARTMENT OF THE NAVY**
CHIEF OF NAVAL PERSONNEL
WASHINGTON, D.C. 20370-5000

1920
Ser N1/142
14 Nov 06

From:  Chief of Naval Personnel
To:    Secretary of the Navy

Subj:  LT GORDON J. KLINGENSCHMITT, CHC, USNR, XXX-XX-0240/4105

Ref:   (a) 10 U.S.C. § 643
       (b) DODI 1304.28
       (c) SECNAVINST 1920.6C
       (d) OPNAVINST 1120.9

Encl:  (1) CNO (N097A) ltr 1900 Ser N097/856131 of 27 Sep 06
       (2) CNPC ltr 1900 Ser PERS-48/039 of 4 Oct 06
       (3) LT Klingenschmitt's acknowledgment of rights dtd
           14 Oct 06
       (4) CARE Advisory Group ltr 1730 N097/Ser 856138 of
           26 Oct 06
       (5) CNO (N097) ltr 1730 Ser N097/856140 of 26 Oct 06

1. <u>Discussion</u>

    a.  LT Klingenschmitt is a Chaplain Corps officer with fifteen
years and five months of total active commissioned service.

    b.  Enclosure (1) reported the withdrawal of LT
Klingenschmitt's ecclesiastical endorsement by the Evangelical
Episcopal Church.  Enclosure (2) notified LT Klingenschmitt of the
initiation of administrative action due to loss of ecclesiastical
endorsement.  LT Klingenschmitt acknowledged his rights and
requested recertification of his new ecclesiastical endorsement by
the Chaplaincy of Full Gospel Churches, enclosure (3).  A Chaplain
Appointment and Recall Eligibility (CARE) Advisory Group convened
on 26 October 2006 and recommended that LT Klingenschmitt's request
for recertification of his professional qualification be denied,
enclosure (4). The Chief of Navy Chaplains concurred with the CARE
group's recommendation and, in accordance with references (a)
through (d), recommended the administrative separation of LT
Klingenschmitt, enclosure (5).

    c.  As evidenced by enclosures (4) and (5),  LT Klingenschmitt
is professionally unsuited for further service as a Naval officer
and Chaplain.  Presentation of a new ecclesiastical endorsement
from a qualified Religious Organization does not automatically
mandate recertification of a Chaplain's professional qualification.
 Rather, a new ecclesiastical endorsement is just one factor to be
considered in evaluating whether a Chaplain's professional
qualification should be recertified.  Other factors include the

Subj:  LT GORDON J. KLINGENSCHMITT, CHC, USNR, XXX-XX-0240/4105

officer's record of professional performance and accomplishment,
disciplinary record, if any, and chain of command support.  LT
Klingenschmitt's recent professional performance has been
unsatisfactory. His most recent fitness report, for the period 23
July 2005 to 31 January 2006, graded him below average in the area
of  "military bearing/character," and the narrative noted that "he
fails to meet standards of military bearing."    Moreover, LT
Klingenschmitt was convicted at a Special Court-Martial on 14
September 2006 for violating the lawful order a superior
commissioned officer.  In addition, he does not have the support of
his community leader.  The Chief of Chaplains concurred in the CARE
Group's recommendation and he specifically recommended
administrative separation.    LT Klingenschmitt's record
demonstrates that he does not possess the character, leadership, or
professional traits needed to successfully serve as a Naval
Officer.

2.  Recommendations.  Deny LT Klingenschmitt's request for
recertification of his professional qualification.  In accordance
with references (a) through (d), direct LT Klingenschmitt's
administrative separation due to loss of professional qualification
(with an Honorable discharge).  His separation code will be JDL
(loss of ecclesiastical endorsement).  There is no recoupment in
this case.

J. C. HARVEY, JR
Vice Admiral, U.S. Navy

ASN(M&RA) DECISION:

Approved: _____ 11-15-06

Disapproved: _____

Other: _____

2