UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

CHAPLAIN GORDON JAMES KLINGENSCHMITT )
                                            )
                                            )
                      Plaintiff,            )   Civil No.: 06CV 1832 (HHK)
            v.                              )
                                            )
DONALD C. WINTER                            )
                                            )
                      Defendant,            )
_____

---

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF HIS OPPOSITION TO THE DEFENDANT'S MOTION TO DISMISS HIS COMPLAINT**

---

**William P. Farley 466280**
**Law Office of William P. Farley**
**1350 Connecticut Avenue, N.W.,**
**Suite 200**
**Washington, D.C. 20036**
**(202) 775-1550 (telephone)**
**(202) 775-0008 (fax)**
**farley@dccounselor.com**
**Counsel for Plaintiff**

Participating Attorney for the
Rutherford Institute

## TABLE OF CONTENTS

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I. FACTUAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

II. STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

III. PRELIMINARY ARGUMENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
        A. The Controlling Regulations Require Acceptance of the New Endorsement . . . . 8
        B. The District Court Has Jurisdiction in This Matter . . . . . . . . . . . . . . . . . . . . . . . . 9

IV. ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
        A. Count I - Equal Protection . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
                1. Defendant Violated the Chaplain's Rights to Equal Protection . . . . . . . . 11
                2. Navy Regulations Require the Chaplain Klingenschmitt be Recertified . 12
                3. The Navy Was Barred From Convening a CARE Board . . . . . . . . . . . . 14

        B.  Count II - Religious Discrimination . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

        C.  Count III - The Plaintiff's Claims Under the Free Exercise Clause and The
            RFRA Are Not Moot and Present Live Controversies Within This Court's
            Jurisdiction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
            1.     The Rescinding of SECNAVINST 1730.7C Does Not Affect This Court's
                    Jurisdiction Over Counts III and IV . . . . . . . . . . . . . . . . . . . . . . . . . 20
            2.     The Plaintiff Has Standing To Seek Prospective Relief On His Claims
                    Under the Free Exercise Clause and RFRA. . . . . . . . . . . . . . . . . . . 21
            3.     Damages Are An Appropriate Remedy Under RFRA and Should Be
                    Allowed to the Plaintiff. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24
            4.     The Complaint States a Claim For Violation of the Plaintiff's Right to
                    Religious Freedom Under the First Amendment and RFRA . . . . . . . 25

        D.  The Complaint Alleges Facts Setting Forth a Violation of the Establishment
            Clause and That Claim Is Not Moot. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

## TABLE OF AUTHORITIES

### CASES

*ACLU Found. of S. Cal. v. Barr,* 952 F.2d 457 (D.C. Cir.1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Altman v. Minnesota Dept. Of Corrections*, 251 F. 3d 199 (8th Cir. 2001) . . . . . . . . . . . . . . . . 26

*Anderson v. Laird*, 466 F.2d 283 (D.C. Cir. 1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*Appalachian Power Co. v. EPA,* 135 F.3d 791 (D.C.Cir.1998) . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Beckett v. Air Line Pilots Ass'n*, 995 F.2d 280 (D.C. Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Beers v. Arkansas*, 61 U.S. 527 (1857) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Brannum v. Lake*, 311 F.3d 1127 (D.C.Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*\* Califano v. Sanders*, 430 U.S. 99 (1977). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*\* Chappell v. Wallace*, 462 U.S. 296 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29, 32

*Church of Lukumi Babalu Aye v. City of Hialeah*, 508 U.S. 520 (1993) . . . . . . . . . . . . . . . . . . 22

*Conley v. Gibson*, 355 U.S. 41 (1957) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

*Day v. Harris*, 655 F.2d 258 (D.C. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Dillard v. Brown*, 652 F.2d 316 (3d Cir. 1981). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Emory v. Secretary of the Navy*, 819 F.2d 291 (D.C. Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Engel v. Vitale*, 370 U.S. 421 (1962) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*Franchise Tax Bd. v. United States Postal Service*, 467 U.S. 512 (1984) . . . . . . . . . . . . . . . . . . 25

*\* Goldman v. Weinberger*, 475 U.S. 503 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 126 S. Ct. 1211 (2006) . . . . . . . 28

*Harding v. Gray*, 9 F.3d 150 (D.C. Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*In re Medicare Reimbursement Litigation,* 414 F.3d 7 (D.C. Cir. 2005) . . . . . . . . . . . . . . . . . . . 13

*Jerome Stevens Pharmaceuticals, Inc. v. FDA.*, 402 F.3d 1249 (D.C. Cir. 2005) . . . . . . . . . . . . 7

*Kowal v. MCI Communications Corp.*, 16 F.3d 1271 (D.C. Cir.1994) . . . . . . . . . . . . . . . . . . . . 7

* *Larsen v. United States Navy*, 346 F. Supp. 32d 122 (D.D.C. 2004) . . . . . . . . . . . . . 21, 23, 29

*Laughlin v. Metropolitan Washington Airports Authority,* 149 F.3d 253 (4th Cir. 1998) . . . . . . . 1

*Leatherman v. Tarrant County Narc. Intel. and Coord. Unit*, 507 U.S. 163 (1993) . . . . . . . . . . . 8

* *Lee v. Weisman*, 505 U.S. 577 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30, 31

*Marsh v. Chambers*, 463 U.S. 783 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

* *Miller v. French*, 530 U.S. 327 (2000)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Moore v. Valder*, 65 F.3d 189 (D.C.Cir.1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Mullen v. United States*, 17 Cl.Ct. 578 (1989)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*N.E. Fla. Chpt of Assoc. Gen. Cont. of Am. v. City of Jacksonville*, 508 U.S. 656 (1993)  . . . . . 11

*Nguyen v. CNA Corp.*, 44 F.3d 234 (4th Cir.1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Nichols v. United States*, 74 U.S. 122 (1868)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Parker v. Levy*, 417 U.S. 733 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Rigdon v. Perry*, 962 F.Supp. 150 (D.D.C. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Sacred Heart Hosp. v. Dept. of Pub. Welfare*, 133 F.3d 237 (3d Cir. 1998) . . . . . . . . . . . . . . . 25

*Scheuer v. Rhodes*, 416 U.S. 232 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Scheuer v. Rhodes*, 416 U.S. 319 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Seamons v. Snow*, 206 F.3d 1021 (10th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Settles v. U.S. Parole Com'n,* 429 F.3d 1098 (D.C. Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Sherbert v. Verner*, 374 U.S. 398 (1963) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Sims v. Artuz*, 230 F.3d 14 (2d Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Thomas v. Review Bd. of Ind. Employment Sec. Div.*, 450 U.S. 707 (1981) . . . . . . . . . . . . . . . 27

*United Christian Scientists v. First Church,* 829 F.2d 1152 (D.C.Cir.1987) . . . . . . . . . . . . . . 33

*United States v. Nordic Village*, 503 U.S. 30 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*United States v. White Mountain Apache Tribe*, 537 U.S. 465 (2003) . . . . . . . . . . . . . . . . . . . . 10

*Warth v. Seldin*, 422 US. 490 (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Webman v. Federal Bureau of Prisons*, 441 F.3d 1022 (D.C. Cir. 2006) . . . . . . . . . . . . . . . . . 24

## STATUTES

10 U.S.C. § 6031 - Chaplains: Divine Service . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 19, 20, 27

42 U.S.C. § 2000bb-1©) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Federal Rule of Civil Procedure Rule 8 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8, 33

Federal Rules of Civil Procedure Rule 12(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 7, 8, 28

Federal Rules of Civil Procedure Rule 56 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Religious Freedom Restoration Act . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19, 21, 24-29

Section 643 of Title 10 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

## OTHER AUTHORITY

8 Papers of James Madison 301 (W. Rachal, R. Rutland, B. Ripel, & F. Teute eds. 1973). . . . . 31

Chief of Chaplains Instruction 1110.1G . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Department of Defense Instruction 1304.28 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Earl Warren, The Bill of Rights and the Military, 37 N.Y.U.L.Rev. 181 (1962) . . . . . . . . . . . 32

Memorial and Remonstrance Against Religious Assessments (1785) . . . . . . . . . . . . . . . . . . . . 31

-iv-

OPNAVINST 1120.9 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 5

SECNAVINST 1730.7C . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19-23, 26, 28-30

United States Constitution - First Amendment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 25, 32

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| | ) | |
| **CHAPLAIN GORDON JAMES KLINGENSCHMITT** | ) | |
| | ) | |
| | ) | |
| **Plaintiff,** | ) | **Civil No.: 06CV 1832 (HHK)** |
| **v.** | ) | |
| | ) | |
| **DONALD C. WINTER** | ) | |
| | ) | |
| **Defendant,** | ) | |
| | ) | |

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION
TO THE MOTION TO DISMISS BY DEFENDANT**

Plaintiff, Chaplain Gordon James Klingenschmitt, ("Chaplain Klingenschmitt") submits this memorandum of points and authorities in opposition to defendant Donald C. Winter's (the "Navy" or "Defendant") Motion to Dismiss his complaint.

Plaintiff's constitutional rights were violated after he prayed in Jesus' name and objected to Navy policies that seek to establish a civic religion for the Navy in violation of the Establishment Clause of the First Amendment to the United States Constitution and in contravention of the provisions of 10 U.S.C. § 6031, which provides that an officer in the Chaplain Corps may conduct public worship according to the manner and forms of the church of which he is a member.

## INTRODUCTION

The Navy has filed a motion for summary judgment and titled it a motion to dismiss.[1]  There

---

[1]  Plaintiff is simultaneously filing a Rule 56(f) motion because no discovery has been taken in this matter and summary judgment decisions would be premature without discovery. *Laughlin v. Metropolitan Washington Airports Authority,* 149 F.3d 253, 261 (4th Cir. 1998) (If "further discovery was necessary to adequately oppose summary judgment [pursuant to Rule

is nothing in the complaint that supports any of Defendant's arguments. In fact, Defendant claims

on numerous occasions in their brief that Chaplain Klingenschmitt is factually "wrong."

Chaplain Klingenschmitt alleges four discrete causes of action in his complaint: Count I

(Injunctive Relief - Equal Protection, Establishment Clause Violation); Count II (First Amendment

Violation); Count III (Religious Discrimination); (Free Exercise Clause of the First Amendment)

Count IV (Violations of Religious Freedom Restoration Act). Chaplain Klingenschmitt has properly

pled each of his causes of action.

Defendant moves to dismiss the complaint, *inter alia,* based upon factual assertions:

(1) "Plaintiff is simply wrong to assert that the Navy violated its own rules or retaliated against him"

Def. Br., pg. 1. Whether the Defendant retaliated against Chaplain Klingenschmitt is a factual

matter as is whether they violated their own policies and practices as is alleged in the complaint. *See*

*e.g.* Complaint ¶ 23, 31, 67, and 92.

The rest of Defendant's motion is also lacking in the elements and analysis necessary to bring

a legitimate motion to dismiss. The Navy ignores the elephant in the room, that Chaplain

Klingenschmitt alleges that they Navy has policies and practices that violate the Constitution, such

as the Establishment Clause. The Navy's motion is based upon their misunderstanding of paragraphs

22, 23, 31, 38, 66, 67, 77, and ¶ 92 of Chaplain Klingenschmitt's complaint. The defendant informs

this honorable court that military regulations ***required*** the Navy to begin those [separation]

proceedings in response to Chaplain Klingenschmitt's merely switching his ecclesiastical endorser

---

12(b)(6)], [a party is required] to make a motion under Rule 56(f)."); *Cf. Nguyen v. CNA Corp.*,
44 F.3d 234, 242 (4th Cir.1995) (noting that the appellate court will not overturn a district court's
grant of summary judgment on bald assertions of inadequate discovery when the party did not
make an appropriate motion under Rule 56(f)).

from one church to another.

There is no such requirement and the Navy's past practices are contrary to this bald assertion as every other sitting chaplain that has switched endorsers has been accepted because logic dictates that their professional knowledge does not lessen by changing endorsers. The only mandatory requirement the Navy had is pursuant to OPNAVINST 1120.9 ¶ 5(b)(3)(a) which required the Chief of Chaplains to recertify Chaplain Klingenschmitt when he received the qualifying endorsement from the Chaplaincy of the Full Gospel Churches.

In addition, there is no support for the Navy's positions in the complaint to support a motion to dismiss. Chaplain Klingenschmitt alleged in his October 25, 2006 complaint: (1) "The refusal of the Navy's Chief of Chaplains and the Chief of Naval Personnel to recognize the ecclesiastical endorsement of the Plaintiff by the Chaplaincy of the Full Gospel Churches is in violation of the operative and controlling instructions of the U.S. Navy, OPNAVINST 1120.9, para. 5, dated December 20, 2005," (2) ¶ 3 "the Defendant has refused to recognize a valid ecclesiastical endorsement obtained by the Plaintiff in violation of Navy rules and regulations and such proceedings are being pursued contrary to the Navy's own rules and regulations, justifying immediate injunctive and mandamus relief against the Defendant." (3) ¶ 10 On September 28, 2006, the authorized representative of the Chaplaincy of Full Gospel Church, a fully qualified and recognized Religious Organization that has and continues to endorse numerous chaplains in the U.S. Navy and other military branches, signed a Statement of Ecclesiastical Endorsement for the Plaintiff attesting that the Plaintiff is professionally qualified as a religious ministry professional for the military chaplaincy. This Statement of Ecclesiastical Endorsement was received by the Chief of Navy Chaplains on September 29, 2006.

# I. FACTUAL BACKGROUND [2]

The Plaintiff is currently on active duty in the United States Navy Chaplain Corps at Norfolk Naval Station. The Plaintiff has been on active duty in the United State Military since July 1, 1986, and has served as a Chaplain in the United States Navy since September 3, 2002. On September 2, 2002, Chaplain Klingenschmitt volunteered for demotion in rank and pay cut to switch from Air Force Major O-4 (missile officer) to Navy Lieutenant O-3 (chaplain) so he could share his faith with others and serve Jesus Christ as a Navy Chaplain. Chaplain Klingenschmitt programs as a Navy Chaplain have been the recipient of six Naval awards for community service.

In order to be considered for appointment as a Chaplain in the Military Departments, a Religious Ministry Professional (RMP) obtains an endorsement from a qualified Religious Organization verifying that the RMP is fully qualified according to that Religious Organization. This Ecclesiastical Endorsement is provided to the Navy by the filing a statement of Ecclesiastical Endorsement. Plaintiff received a Trinitarianism Christian Ecclesiastical Endorsement from the Evangelical Episcopal Church in 2002 when he first joined the Navy.

On September 25, 2006, the Plaintiff tendered his voluntary resignation from the Evangelical Episcopal Church to be effective on October 1, 2006. On September 28, 2006, the Chaplain received confirmation of his new Trinitarianism Christian endorsement from another recognized Christian organization, the Chaplaincy of Full Gospel Church ("Chaplaincy"). The Chaplaincy is a fully qualified and recognized Religious Organization that has, and continues to, endorse numerous chaplains in the U.S. Navy and other military branches. The Chaplaincy confirmed Chaplain Klingenschmitt's Christian *bona fides* as being qualified for religious his professional military

---

[2] All facts are directly from Chaplain Klingenschmitt complaint, ¶ 4-63.

chaplaincy. This Statement of Ecclesiastical Endorsement was received by the Chief of Navy Chaplains on September 29, 2006.

On September 29, 2006, CHNAVPERS Vice Admiral J. C. Harvey, Jr., U.S. Navy, sent a letter to the Plaintiff informing him that his loss of his ecclesiastical endorsement from the Evangelical Episcopal Church, effective October 1 2006, has rendered him professionally unqualified to serve as a Navy Chaplain. The letter directed the Plaintiff not to perform any duties of a Navy Chaplain.

Vice Admiral Harvey's September 29, 2006, letter further acknowledged the Plaintiff receipt of the ecclesiastical endorsement of the Chaplaincy of the Full Gospel Churches, but wrote that this endorsement did not make him qualified to serve as a Navy Chaplain. The Navy has not explained how Chaplain Klingenschmitt having the endorsement that made him qualified, *did not make him qualified.*

The refusal of the Navy to recognize the ecclesiastical endorsement of the Plaintiff by the Chaplaincy of the Full Gospel Churches violates Navy practices and policies. Navy practices and regulations dictated that Chaplain Klingenschmitt be recertified as a chaplain professional qualification upon receipt of a new ecclesiastical endorsement.

On September 30, 2006, the Plaintiff pointed the Navy to their controlling provisions of OPNAVINST 1120.9, para. 5.b.3.a, and respectfully requested that the Chief of Chaplains comply with the provisions of that instruction and notify the Chief of Naval Personnel that the Plaintiff has a qualifying ecclesiastical endorsement and is certified to perform the services of a Navy Chaplain.

In a letter dated October 4, 2006, the Commander, Navy Personnel Command, responded to the Plaintiff and informed him that the switching from one Christian ecclesiastical endorser, the

Evangelical Episcopal Church, to a second Christian Endorser, the Chaplaincy of Full Gospel Churches, rendered the Plaintiff professionally unqualified to serve as a Navy Chaplain.

The Navy also told Plaintiff that due to his switching Christian ecclesiastical endorsers, he was to separated from the naval service. The letter Plaintiff then requested that his professional qualifications, which had not changed, should be should be recertified by a board convened by the Chief of Chaplains.

However, Navy instructions do not cover the situation that plaintiff is in. A fully competent and professionally qualified Christian minister does not become something else by switching Christian endorsers. In fact, under Chief of Chaplains Instruction (COCINST) 1110.1G, a Chaplain Appointment and Recall Eligibility (CARE) Advisory Group is authorized only to assist the Chief of Chaplains in validating the professional qualifications of all applicants for appointment in the Chaplain Corps, the Chaplain Candidate Program Officer (CCPO) program, and transfers between active and inactive duty. The Plaintiff does not fall into any of the categories set forth in COCINST 1110.1G, and the convening of a CARE Advisory Board to review or recommend whether the Plaintiff is authorized or qualified to continue to serve as a Navy Chaplain is contrary to established Navy instructions and regulation.

The case marks the first time that the Secretary of the Navy refused to recognize a sitting Chaplain's switch of ecclesiastical endorsers and a sitting Chaplains endorsement from the Chaplaincy of Full Gospel Churches. The Plaintiff is fully certified and qualified to serve as a Chaplain in the United States Navy in accordance with that ecclesiastical endorsement and his professional qualifications did not change because another Christian body endorsed him.

## II. STANDARD OF REVIEW

At the pleading stage, the issue before the district court is not, as defendant argues, whether Chaplain Klingenschmitt has established sufficient proof, but whether plaintiff has sufficiently pled his complaint. *Jerome Stevens Pharmaceuticals, Inc. v. Food & Drug Admin.*, 402 F.3d 1249, 1253-54 (D.C. Cir. 2005);*Cf. Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). While the district court may consider materials outside the pleadings in deciding whether to grant a motion to dismiss for lack of jurisdiction, the court must still "accept all of the factual allegations in [the] complaint as true," *Id. (quotations and citations omitted).*

At the Rule 12(b) stage the court does not assess "the truth of what is asserted or determin[e] whether a plaintiff has any evidence to back up what is in the complaint." *ACLU Found. of S. Cal. v. Barr,* 952 F.2d 457, 467 (D.C. Cir.1991).

For a Rule 12(b) motion to dismiss for failure to state a claim, "the complaint is construed liberally in the plaintiffs' favor and plaintiff is granted the benefit of all inferences that can be derived from the facts alleged. *Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1276 (D.C. Cir.1994). Dismissal pursuant to a Rule 12(b) motion, which merely tests the legal sufficiency of a complaint, is inappropriate unless the "plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The plaintiff's factual allegations are accepted as true and the complaint is construed "liberally," "grant[ing] plaintiff[ ] the benefit of all inferences that can be derived from the facts alleged," *Moore v. Valder*, 65 F.3d 189, 192 (D.C.Cir.1995).

The Federal Rule of Civil Procedure Rule 8 requires simply that the defendants be given fair notice of what the plaintiff's claim is and the grounds upon which it rests. This simplified notice

pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims. *Conley v. Gibson*, 355 U.S. 41, at 47-48; *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 168-169, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993).

The task of the court addressing a 12(b) motion is not to determine the weight of the evidence, but only to assess the legal feasibility of the complaint. *Sims v. Artuz*, 230 F.3d 14, 20 (2d Cir. 2000). "The issue is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 319, 322, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).

At this stage of the litigation, Chaplain Klingenschmitt need only supply "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a), which he has done. *See, e.g., Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002); *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993). Thus, to survive a motion to dismiss, Plaintiff need only assert a short and plain statement alleging that Defendant violated his constitutional rights through (1) an official policy or custom of Defendant; or (2) a single act which inflicts constitutional injury by an official with final policy making authority with respect to the challenged action. *See Seamons v. Snow*, 206 F.3d 1021, 1029 (10th Cir. 2000).

## III. PRELIMINARY ARGUMENTS

### A. The Controlling Regulations Require Acceptance of the Chaplain's Endorsement

The Navy makes at least two arguments that are red herrings. First, that Section 643 of Title 10 of the U.S. Code, which gives the Secretary of Defense authority to establish regulations of for

8

discharging Chaplains that have not maintained their qualifications, requires that Chaplain Klingenschmitt be discharged. 10 U.S.C. 643 ("Under regulations prescribed by the Secretary of Defense, a commissioned officer on the active-duty list of the Army, Navy, or Air Force who is appointed or designated as a chaplain may, if he fails to maintain the qualifications needed to perform his professional function, be discharged or, if eligible for retirement, may be retired.")

The Defendant goes to great lengths to cite to DoDI 1304.28, however, they failed to fully cite to the most important part of that regulation which provides that if Chaplain Klingenschmitt loses his ecclesiastical endorsement the Navy was required to inform him in writing that he could **"Seek another ecclesiastical endorsement within the time frame allotted by the Military Department involved."** DoDI1304.28 ¶6.5.1.3.1. Why the Navy failed to cite to this most relevant section raises the question as to their motives throughout the rest of their brief.

In this case there is no argument that Chaplain Klingenschmitt has not kept his Trinitarianism Christian qualifications maintained and has acquired that endorsement. He merely switched endorsers and never went a day without having an endorsement. The only basis to deny him an ecclesiastical endorsement would be based on the qualifications of the endorser, not of Chaplain Klingenschmitt. In this case the Navy has not argued, indeed has no argument, that the Chaplaincy of Full Gospel Churches is unqualified to endorse Chaplain Klingenschmitt because the Navy has accepted their endorsement for hundreds of other Navy Chaplains. Discovery would be required prior to taking the leap of faith to believe that the Navy was denying Chaplain Klingenschmitt re-certification for anything other than unconstitutional reasons.

### B. The District Court Has Jurisdiction in This Matter

As a part of the sovereign United States, the Navy may not be sued except by its consent, and

9

a fortiori the government can place conditions on the circumstances under which it will consent to suit. *See, e.g., United States v. White Mountain Apache Tribe*, 537 U.S. 465, 472, 123 S.Ct. 1126, 155 L.Ed.2d 40 (2003); *Nichols v. United States*, 7 Wall. 122, 74 U.S. 122, 126, 19 L.Ed. 125 (1868); *Beers v. Arkansas*, 61 U.S. (20 How.) 527, 529, 15 L.Ed. 991 (1857). At issue here is one such condition: Congress's decision to require that certain claims against the government be brought in the Court of Federal Claims. The APA waives sovereign immunity, allowing the United States to be sued in the district courts for remedies *other than money damages* arising from an agency's unlawful action.

The Court of Federal Claims has jurisdiction over all non-tort claims for monetary damages against the United States. See 28 U.S.C. § 1491(a). For suits not exceeding $10,000, however, Congress has granted the district courts concurrent jurisdiction. See 28 U.S.C. § 1346(a)(2). Here, plaintiff has damages of less than $10,000. In fact, he has not been terminated and has not lost any pay. Defendant does not allege that Plaintiff seeks more than $10,000. Instead, this suit seeks primarily equitable relief.

The district court has jurisdiction over suits for these types of non-monetary damages cases. As plaintiff seeks equitable relief, this Court has jurisdiction. All of plaintiff's compensatory damages add up to less than $10,000. Defendant does not allege otherwise.

Second, the APA does not bar this action because this matter raises serious constitutional issues. Chaplain Klingenschmitt brought this action pursuant to 28 U.S.C. §§ 1331, 1343(b)(4) and 1361, as it is an action arising under the laws and Constitution of the United States. The APA does bar such an action because "[c]onstitutional questions obviously are unsuited to resolution in administrative hearing procedures and, therefore, access to the courts is essential to the decision of

such questions." *Califano v. Sanders*, 430 U.S. 99, 109 (1977).

Third, the Navy's admits they seek to separate Chaplain Klingenschmitt "solely" because he changed his ecclesiastical endorsement, while they simultaneously contend he was properly punished for the content of his religious expression on several other occasions. Further, the Chaplain's separation is a punishment for his exercise of his First Amendment speech.

Thus, Defendant's arguments in their Brief that the Court lacks jurisdiction is without merit.

## IV. ARGUMENT

### A. Count I - Equal Protection

### 1. Defendant Violated the Chaplain's Rights to Equal Protection

In his complaint Chaplain Klingenschmitt alleges he was denied benefits given to similarly situated Unitarian Navy Chaplains because of his Trinitarianism Christian religious way of praying. Complaint, ¶ 28, 32, 48, 111, 112, 126, and 129. To demonstrate an injury in fact for an equal protection claim:

> [w]hen the government erects a barrier that makes it more difficult for members of one group to obtain a benefit than it is for members of another group, a member of the former group seeking to challenge the barrier need not allege that he would have obtained the benefit but for the barrier in order to establish standing. The "injury in fact" in an equal protection case of this variety is the denial of equal treatment resulting from the imposition of the barrier, not the ultimate inability to obtain the benefit . . .

*Northeastern Fla. Chapter of Assoc. Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 666, 113 S.Ct. 2297, 124 L.Ed.2d 586 (1993). Here, Chaplain Klingenschmitt alleges in his claims that he was treated differently than Unitarian Chaplains with the U.S. Navy because as a Christian Chaplain he was denied the opportunity to pray in the way his religion dictated. ¶ 6, 29, 34, 35, and

48. When he complained he became the only sitting Chaplain to ever be considered from separation from Naval service for switching religious endorsers which, in turn, made it more difficult for him to gain promotions and impossible to gain the benefit of a military career. Complaint, ¶ 3, 16, 19, 101, 106, 107, and 108.

While the Court in Northeastern Florida was addressing instances where individuals in one group are competing with individuals in another group for a benefit (such as a contract or admission to a school), the analytical framework is appropriately applied here because Klingenschmitt's claim is that the Navy's violation of equal protection made it more difficult for him to be promoted, because they lowered his evaluations for his Christian prayers, and achieve the benefit of a military career. Complaint, ¶ 39, 61; *See e.g. Settles v. U.S. Parole Com'n,* 429 F.3d 1098, 1102 (D.C. Cir. 2005).

Chaplain Klingenschmitt's arguments that the Navy is violating his religious beliefs and the Free Exercise Clause and Establishment Clause, as well as his claim that his separation from the Navy is being sought because of his rejection of illegal and improper Navy directives requiring that he change the content of his prayer in violation of the Establishment Clause are below.

## 2. Navy Regulations Require the Chaplain Klingenschmitt be Recertified

Defendant's long winded argument can be boiled down to whether Chaplain Klingenschmitt raises a factual question in that Navy Regulations clearly state that the "Chief of Chaplains Chaplains shall . . . Recertify a chaplain's professional qualification upon receipt of a new ecclesiastical endorsement." OPNAVINST 1120.9(5)(b)(3)(a)[3]. The regulations couldn't be clearer.

---

[3] Of course, the question for a motion to dismiss is not what the statute provides, but whether Chaplain Klingenschmitt alleged the violation - which he did in ¶ 13, 14, and 19.

Shall is a mandatory term and the government's interpretation that it is permissive subverts the plain meaning of the regulation. *See Miller v. French*, 530 U.S. 327, 337-338 (2000) (the government's interpretation that shall is permissive, however, would subvert the plain meaning of the statute, making its mandatory language merely permissive "not only does the statute employ the mandatory term 'shall,' but it also specifies the points."); *In re Medicare Reimbursement Litigation*, 414 F.3d 7, 10 (D.C. Cir. 2005) (The D.C. Circuit has determined that shall is a mandatory term.)

The term at issue is the word "shall" - the mandatory term, there is no permissive discretion. The D.C. Circuit has specifically recognized the mandatory requirements of the word "shall." *Beckett v. Air Line Pilots Ass'n*, 995 F.2d 280, 287 (D.C. Cir. 1993 ) ("The mandatory "shall" makes clear that the disputed "sums" must be distributed to the eligible pilots, including appellants."); *Cf. Appalachian Power Co. v. EPA,* 135 F.3d 791, 807 (D.C.Cir.1998) (stating that "when a statute uses the permissive 'may' rather than the mandatory 'shall,' this choice of language suggests that Congress intends to confer some discretion on the agency" (internal quotation marks omitted)).

Indeed, even if the word was "may", which it isn't, taken to the extreme, the defendant's construction would mean that even if the Navy expressly found in a particular case that it was in "the interest of justice" to recertify a chaplain, it could still decline to do so. *Cf. Mullen v. United States*, 17 Cl.Ct. 578, 582 (1989) (reading "may" in § 1552(b) to mean "shall").

The Navy's argument that certify and recertify are the same word is their strongest and best argument. However, any dictionary will provide different meanings for those words. Certify means to declare or confirm officially. CHAMBERS TWENTY FIRST CENTURY DICTIONARY 66 (1996), pg. 229. Recertify means to certify again, which in this case, recertification would be limited to sitting chaplains. A person who has not been serving as a chaplain would not be eligible for recertification.

The logic is clear, if a chaplain is serving in his position well and his endorser pulls his endorsement, for what could be improper or illegal reasons, there is no reason to punish a serving chaplain.

Thus, the Chief of Chaplains was required to recertify Chaplain Klingenschmitt. It makes logical sense because his qualifications did not change, just his endorser. If one of the larger Navy religious endorsers, such as the Full Chaplaincy, went out of business, the Navy's argument is that they would be required to separate hundreds of chaplains because of their loss of endorsement. That is just non-sensical and indicates that the Navy is really seeking to separate Chaplain Klingenschmitt for nefarious reasons.

The Defendant attempts to avoid the mandatory language of OPNAVINST 1120.9 ¶ 5(b)(3)(a) urging that the "shall" language is limited by provisions of DODI 1304.28. Not only is the argument convoluted, it is unnecessary to refer to the DODI because that DODI also provides that a chaplain who loses his ecclesiastical endorsement may seek another ecclesiastical endorsement "[u]nder conditions established by the Secretary of the Military Department concerned[.]" DODI 1304.28 ¶ 6.5.1.3. In this case, the Navy has established that its Chief of Chaplains "shall . . . [r]ecertify a chaplain's professional qualifications upon receipt of a new ecclesiastical endorsement." The Navy is now bound to follow the conditions and rules it has established by recertifying Chaplain Klingenschmitt's endorsement.

The rest of the Navy's argument is based on an erroneous assumption that regulations required the Secretary to separate Plaintiff because he switched his ecclesiastical endorsers.

Thus, the Navy's own regulations required that the Navy recertify Chaplain Klingenschmitt when the Chaplaincy provided their endorsement. Once the Navy followed its own regulations, then there is no basis to separate Chaplain Klingenschmitt from military service.

### 3. The Navy Was Barred From Convening a CARE Board

Navy instructions do not provide that a CARE board be convened in situations such as the present. A fully competent and professionally qualified Christian minister does not become something else by switching Christian endorsers. In fact, under Chief of Chaplains Instruction (COCINST) 1110.1G, a Chaplain Appointment and Recall Eligibility (CARE) Advisory Group is authorized only to assist the Chief of Chaplains in validating the professional qualifications of all ***applicants*** for appointment in the Chaplain Corps, the Chaplain Candidate Program Officer (CCPO) program, and transfers between active and inactive duty. The Plaintiff does not fall into any of the categories set forth in COCINST 1110.1G, and the convening of a CARE Advisory Board to review or recommend whether the Plaintiff is authorized or qualified to continue to serve as a Navy Chaplain is contrary to established Navy instructions and regulation.

Furthermore, the CARE board considered the plaintiff's "entire service record" as the basis to deny his recertification, which included (1) Captain Carr's downgraded evaluation that punished Chaplain Klingenschmitt for quoting the Bible in the chapel and for praying in Jesus name, (2) Captain Pyle's downgraded (reprisal) evaluation that punished Chaplain Klingenschmitt for filing whistleblower complaints of religious harassment to the President and Congress, (3) the ruling by the special court-martial military judge that commanders can "lawfully" order chaplains to stop "worshipping in public" in uniform. The defense admits their "proper punishment" of the chaplain's religious expression and whistleblower complaints are the real reason he is "unfit for further service as a naval officer" but are using the change of religious endorsers as the phony pretext to suddenly terminate his award-winning 20.5 year career, with just over 4 years remaining before he'd be eligible for full active-duty retirement.

Thus, the Navy violated its own regulations by convening a CARE Board, and then violated them again by empowering the CARE Board to decide issues that were outside its mandate. Further, the issues that the CARE Board was given to decide are the very constitutional issues that Chaplain Klingenschmitt alleges were violated by the Navy's actions.

### B.  Count II - Religious Discrimination

In Count II, Religious Discrimination, plaintiff has alleged that Defendant restrained his communications with illegal procedures that infringed upon his protected religious expression. Chaplain Klingenschmitt alleges he has been punished and retaliated against because of his expression on matters of public concern, which expression is protected by the First Amendment to the United States Constitution.  In addition, Chaplain Klingenschmitt alleges he has been and continues to be, deprived of his rights under the First Amendment and is entitled to appropriate relief to remedy and prevent further and future violations of his fundamental constitutional rights.

First, the complaint reveals that Chaplain Klingenschmitt alleges that: (1) He was similarly situated to Unitarian Chaplains; (2) he was treated worse than other similarly situated employees who did not complain to the Navy about religious harassment; and (3) the question of whether the Navy's sole reason for retaliating against the Chaplain was for his complaining about religious harassment is a factual issue that has to be developed on a full record.

Chaplain Klingenschmitt was denied his right to practice his religion and has been denied the right to work as a Chaplain in the Navy because of his actions in speaking out against the Navy's discrimination against his type of Christianity.  As more fully explained below, the Navy has on numerous occasions taken actions against him in retaliation of the Chaplain's religious practices.

Defendant concedes that discovery is required for the retaliation issue when they inform this

16

honorable Court that it must balance by "a preponderance of the evidence" whether the defendant

would have taken the same action in absence of the protected speech.  Def. Br., pg. 17.

 An investigation of Defendant and the Navy's suppression of prayer may have a chilling effect on

the exercise of First Amendment rights by other military Chaplains.  *See, e.g., Thornhill v. Alabama,*

310 U.S. 88, 97 (1940) ("It is not merely the sporadic abuse of power by the censor but the pervasive

threat inherent in its very existence that constitutes the danger to freedom of discussion.").

Other District of Columbia courts have characterized the Navy's respect for the First

Amendment as:

> What we have here is the government's attempt to override the Constitution and the laws of the land by a directive that clearly interferes with military chaplains' free exercise and free speech rights, as well as those of their congregants. On its face, this is a drastic act and can be sanctioned only by compelling circumstances. The government clearly has not met its burden. The "speech" that the plaintiffs intend to employ to inform their congregants of their religious obligations has nothing to do with their role in the military. They are neither being disrespectful to the Armed Forces nor in any way urging their congregants to defy military orders. *The chaplains in this case seek to preach only what they would tell their non-military congregants.* **There is no need for heavy-handed censorship, and any attempt to impinge on the plaintiffs' constitutional and legal rights is not acceptable.** (Emphasis added)

*Rigdon v. Perry*, 962 F.Supp. 150 (D.D.C. 1997).

As to the Defendant's contention that Chaplain Klingenschmitt does not allege that his

speech is a motivating factor and the employer would have taken the same action in absence of that

speech.  His complaint at ¶ 34, 43 (Chaplain punished solely for his religious speech), 76 (Chaplain

reprimanded for praying to Jesus), 92-96 (Chaplain punished for praying in Jesus' name), and 127

lies those arguments to rest.

Chaplain Klingenschmitt may also establish his *prima facie* case in part by presenting evidence of background circumstances which indicate "something 'fishy' about the facts of the case at hand." *Harding v. Gray*, 9 F.3d 150, 153 (D.C. Cir. 1993). Facts showing that "something 'fishy'" occurred support the inference that plaintiff was treated less favorably than others for discriminatory and/or retaliatory reasons. *Day v. Harris*, 655 F.2d 258, 262 (D.C. 1981).

### C.    Count III - The Plaintiff's Claims Under the Free Exercise Clause and RFRA Are Not Moot and Present Live Controversies Within This Court's Jurisdiction.

The Defendant also seeks dismissal of Counts III and IV of the Complaint which allege, respectively, that Plaintiff has been and continues to be deprived of his rights under the Free Exercise Clause of the First Amendment and under the Religious Freedom Restoration Act (RFRA), 42 U.S.C. §§ 2000bb et seq. The essence of these Counts is that the Defendant has restricted and restrained the Plaintiff from communicating with service members and others on matters within the Plaintiff's pastoral duties in a manner that accords with the Plaintiff's sincerely-held religious beliefs and convictions.

Specifically, the Navy has adopted rules, orders and directives that have forbidden or restrained the Plaintiff from praying in the name of Jesus in accordance with the Plaintiff's religious beliefs. *See* Comp. ¶¶ 121, 127-128. The Complaint is replete with examples of the Defendant's actions aimed at suppressing religious expression that does not conform to the Defendant's Unitarian, non-sectarian civic religion. Thus, lectures taught at the Naval Chaplain School instruct students to censor their prayers and to criticize those, including the Plaintiff, who pray publicly in the name of Jesus. Comp. ¶¶ 35, 41. Captain James Carr forbade the Plaintiff from sharing evening prayer because of Plaintiff's invocation of Jesus and pressured the Plaintiff to change his prayer.

18

Comp. ¶¶ 37-38.  A 1998 memorandum from the Navy's Chief of Chaplains, which was endorsed as late as August 2005, instructed Navy Chaplains not to participate as prayer givers if their religious beliefs called on them to pray in Jesus' name.  Comp. ¶ 48.  In February 2006 the Navy formalized this restraint on the content of prayer by adopting the now-repealed SECNAVINST 1730.7C, which required non-sectarian prayer by Navy Chaplains in any context except divine Services at Sunday Chapel.  Comp. ¶ 67.

Counts III and IV also are based upon the Defendant's retaliation against the Plaintiff when the Plaintiff followed his religious beliefs and convictions and invoked the name of Jesus in prayer. Comp. ¶¶ 22, 122.  Thus, it is alleged that the Navy's decision to seek the Plaintiff's separation from the service in October 2006, notwithstanding the fact that the Plaintiff had no lapse in ecclesiastical endorsement, was undertaken because of the Plaintiff's religious beliefs and because the Plaintiff continued to invoke the name of Jesus in his prayers as a Chaplain.  Comp. ¶ 111, 114.  It is further alleged that the Plaintiff was given adverse performance evaluations and punished for his Christian prayers and sermons, Comp. ¶¶ 39, 44, and was court martialed because of he had prayed in Jesus' name at a religious event contrary to the mandates of SECNAVINST 1730.7C.  Comp. ¶¶ 85-86, 92.

The Complaint sets forth an ongoing pattern of suppression of the Plaintiff's exercise of his religious beliefs and retaliation against him for expressing himself in prayer and otherwise as required by his religious beliefs.  There exists a present and real controversy between the parties as to whether the Defendant, his officers and agents can forbid the Plaintiff from offering prayer and pastoral services as a Chaplain according to his religious beliefs and convictions, a right afforded to the Plaintiff under 10 U.S.C. § 6031 and whether the Navy is presently seeking to separate the Plaintiff from the Navy because of his exercise of fundamental rights.  If the Plaintiff is the victim

19

of an ongoing pattern of actions aimed at suppressing and punishing his exercise of his religion, then he is clearly entitled under the First Amendment and RFRA to declaratory and injunctive relief forbidding that conduct. As such, Counts III and IV of the Complaint set forth justiciable claims for violation of the Plaintiff's constitutional and statutory rights.

### 1.     The Rescinding of SECNAVINST 1730.7C Does Not Affect This Court's Jurisdiction Over Counts III and IV

The Defendant spends a great deal of argument on the effect of the fact that the Navy has rescinded SECNVAVINST 1730.7C, which had institutionalized the Navy's policy of restricting the religious practices of the Plaintiff and other Chaplains by forbidding Navy Chaplains from praying according to their beliefs except in very limited circumstances. According to Defendant, the withdrawal of SECNAVINST 1730.7C moots a claim of the Plaintiff. But nothing in the Complaint sought relief as to SECNAVINST 1730.7C or requested that the instruction be enjoined or declared illegal. Indeed, the Complaint itself recognizes that the formal policy embodied SECNAVINST 1730.7C has been expunged from the books because of the wise intervention of Congress to order its withdrawal. Comp. ¶¶ 97. The formal withdrawal does not affect any aspect of the Plaintiff's requests for relief.

This is not to say that the existence and effect of SECNAVINST 1730.7C are not relevant to the instant case. The Instruction constituted a tangible illustration of the policies and mind-set that exist within the Navy respecting the promotion of a non-sectarian, civic, Unitarian religion to the detriment of the religious liberty of Navy Chaplains such as the Plaintiff. Indeed, the Instruction was a vehicle whereby the Navy initiated a court martial against the Plaintiff. Comp. ¶¶ 86-88. That court martial is in turn being used at present to justify the separation of the Plaintiff from the Navy

for his supposed loss of ecclesiastical endorsement. Comp. ¶¶ 101-102. The Navy is using a court

martial under an illegal (as contrary to 10 U.S.C. § 6031) and unconstitutional (as a violation of the

First Amendment) Instruction as a pretext for deeming the Plaintiff unfit for continuation in the

service. In truth, the pending separation is a direct result of the Plaintiff's decision to exercise

protected First Amendment rights to free speech and religious liberty and the Navy's determination

to suppress this conduct by the Plaintiff and retaliate against him for doing so. While

SECNAVINST 1730.7C is not at present formally operating against the Plaintiff, its existence and

the policies it embodies is part of the fabric of the case and illustrates the root of the harm that is

presently being inflicted upon the Plaintiff.

      **2.**    **The Plaintiff Has Standing To Seek Prospective Relief On His Claims Under the Free Exercise Clause and RFRA.**

      The Defendant contends that the Plaintiff does not have standing to request prospective

declaratory and injunctive relief in connection with the claims in Counts III and IV. According to

the Defendant, the Plaintiff is not suffering any present harm from policies and practices that

burdened and punished his exercise of his religion. As this standing argument challenges this

Court's subject-matter jurisdiction to hear these claims of the Plaintiff, the motion to dismiss can be

granted "only if 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his

claim which would entitle him to relief.'" *Larsen v. United States Navy*, 346 F. Supp. 32d 122, 127

(D.D.C. 2004).

      The Defendant's claim that the Plaintiff is not suffering any present harm as a result of the

infringement of his religious liberty must be rejected for a number of reasons. First, the Plaintiff is

clearly in danger of imminent harm because the Defendant is seeking to separate him from the

service and the Complaint alleges that this is in retaliation for his exercise of rights protected by the First Amendment.  Comp. ¶¶ 22-23, 111, 114, 122, and 127.  Such retaliation and targeting of the Plaintiff because of his exercise of religious liberty is clearly a burden upon religion and a violation of the First Amendment's Free Exercise Clause.  *Church of Lukumi Babalu Aye v. City of Hialeah*, 508 U.S. 520, 531 (1993).  If the Plaintiff succeeds in proving that he has been targeted for separation because of his exercise of his religious beliefs, he would be entitled to relief declaring the Navy's attempt in this respect illegal and an injunction forbidding the Navy from proceeding with separation or restoring the Plaintiff to his position.  The violations of the Plaintiff's religious liberties also have resulted in adverse actions on his personnel record which may be corrected by prospective relief as requested in the Complaint.

The Defendant's further claim that the Plaintiff will not be subject to orders and directives that suppress his exercise of religion and promote the Unitarian, non-sectarian religion promoted by Navy also misses the mark.  The Defendant again points to the fact that SECNAVINST 1730.7C has been rescinded and asserts that new policies that have been revived in that Instruction's stead leave it up to individual commanders to determine the religious elements of command functions.  But the policies cited by the Defendant, which were attached as Exhibits 7 and 8 to the Defendant's Opposition to Plaintiff's Motion for a Preliminary Injunction, do not have the effect asserted by the Defendant. SECNAVINST 1730.7B, simply sets out the command structure for Navy Chaplains and instructs commanding officers to "provide Command Religious Programs in support of the religious needs and preferences of all members of the naval service[.]" SECNAVINST 1730.7B, ¶ 5. SECNAVINST 1730.8A simply addresses how Navy command is to address requests for religious accommodations by service members when there is some conflict between Navy procedure and a

service member's religious beliefs and observances.  Neither of these Instructions addresses how commanders are to address the religious elements of command functions.

Indeed, the issue of religious elements would instead be controlled by a 1998 prayer memorandum that has the same pernicious effect on religious liberty as did SECNAVINST 1730.7C. As set forth in the Complaint,

> On August 23, 2005, the Chief of Navy Chaplains, Rear Admiral Lou Iasiello, declined to rescind his predecessor's 1998 prayer memorandum, which instructed Navy Chaplains that if they pray "in Jesus name" the "the chaplain ought not to participate in the secular event as a prayer giver." Iasiello told Chaplain Klingenschmitt that praying publicly in Jesus' name was improper because ending public prayers "in Jesus name" in all situations, without using discretion or regards to the venue or audience, was claimed by the Navy to reasonably tend to denigrate those with different forms of faith.

Comp. ¶ 48.  Moreover, the Complaint also alleges that the Navy continues to promote Unitarianism and that a Chaplain who prays publicly in Jesus' name risks the loss of reputation and effectiveness in the military community and violates precepts of Unitarianism still taught and promoted at the Naval Chaplain School.  Comp. ¶¶ 30, 35.

In light of these allegations, it cannot be said beyond any doubt that the Plaintiff will not continue to suffer retaliation and incur burdens because of his religious practice of praying in the name of Jesus.  In order to establish standing to obtain prospective relief, "a plaintiff 'must allege facts from which it reasonably could be inferred that, absent the [challenged policy], there is a substantial probability that . . . if the court affords the relief requested, the asserted injury will be removed.'" *Larsen*, 346 F. Supp. 2d at 133 (quoting *Warth v. Seldin*, 422 US. 490, 504 (1975)).  In *Larsen*, the court held that protestant ministers who were denied commissions in the Navy Chaplain Corps could seek prospective relief to forbid the Navy from engaging in future discrimination against

non-liturgical Christian clergy.  Rejecting the Navy's standing argument in opposition to the claims for prospective relief, the court held that, given the allegations of past discrimination in the application of policies affecting Chaplains, there was a sufficient likelihood that the plaintiffs would be subject to such policies in the future when they sought to reapply for the Chaplain Corps. *Id.* at 132-33.  For the same reason, the Plaintiff here has standing to seek prospective relief on Counts III and IV of his Complaint.  Given the history of discrimination and retaliation against the Plaintiff and the existence of a culture within the Navy that promotes Unitarianism to the prejudice of Trinitarian Christians, there is a sufficient likelihood that the Plaintiff will continue to be subjected to these policies to give him standing to request prospective relief barring those policies.

The Defendant finally argues that the Plaintiff has no standing to challenge the Navy's policies because, under the retaliatory and unlawful separation proceedings begun against the Plaintiff, the Plaintiff will soon be separated from the service and no longer subject to Navy rules and regulations.  But the validity of the separation and the ability of the Navy to carry out that separation is the very action being challenged and at issue in this case.  The Navy cannot "bootstrap" the separation to its standing argument when the separation is the very action at issue in this case and the conduct that the Plaintiff seeks to enjoin.  This aspect of the Defendant's argument is meritless and does not support dismissal.

### 3.    Damages Are An Appropriate Remedy Under RFRA and Should Be Allowed to the Plaintiff.

The Plaintiff recognizes that damages may not be recovered against the federal government for constitutional violations.  Moreover, even though the only authority from this Circuit has held that damages are not recoverable from the federal government under RFRA, *Webman v. Federal*

*Bureau of Prisons*, 441 F.3d 1022 (D.C. Cir. 2006), the Plaintiff contends that this ruling is contrary to the plain language of RFRA.  Under 42 U.S.C. § 2000bb-1©), "[a] person whose religious exercise has been burdened in violation of this section may assert that violation as a claim or defense in a judicial proceeding and obtain *appropriate relief* against a government." (Emphasis added). Congress, which ultimately controls whether to waive federal sovereign immunity, *Franchise Tax Bd. v. United States Postal Service*, 467 U.S. 512, 517 (1984), used broad language in defining the remedial power of courts in cases where RFRA has been violated, *i.e.*, a person may assert a claim based upon RFRA and obtain "appropriate relief."  This broad language is not unlike Congress's use of "sue and be sued" clauses, which the Supreme Court has held should be "liberally construed" as a waiver of immunity and allowing the full panoply of remedies generally available to civil litigants. *Id.* at 517.  The Supreme Court has narrowly construed exceptions to waivers of sovereign immunity where it is consistent with Congress' clear intent.  *United States v. Nordic Village*, 503 U.S. 30, 34 (1992), *superseded by statute as stated in Sacred Heart Hosp. v. Dept. of Pub. Welfare*, 133 F.3d 237, 242 n. 8 (3d Cir. 1998).  It is submitted that a waiver allowing RFRA plaintiffs to obtain "appropriate relief" indicates Congress' intent to allow damages and that the Plaintiff should have this remedy available if appropriate under the facts of the case.  At this stage of the proceedings, a preliminary Rule 12(b) motion, the appropriateness of damages cannot be determined in favor of the Defendant.

### 4.    The Complaint States a Claim For Violation of the Plaintiff's Right to Religious Freedom Under the First Amendment and RFRA

The Defendant goes on to argue that, as a matter of law, Counts III and IV of the Complaint fail to state claims for violations of the Plaintiff's religious liberty.  As to the RFRA claim, the

primary argument is that the Plaintiff has not shown that any "substantial burden" has been placed upon his exercise of his religious beliefs or practices. But the Complaint alleges that the Plaintiff holds sincere religious beliefs regarding how he prays. Comp. ¶ 111. As a Trinitarian Christian and pastoral leader of that faith, the Plaintiff's religious beliefs include the need to offer prayers to Jesus and invoke the name of Jesus when he prays. Comp. ¶¶ 2, 25, 33, 127. The Defendant argues that this religious belief and practice of the Plaintiff was not burdened by the Navy policies because only an outright prohibition on Chaplains praying in the name of Jesus would constitute such a burden, and Navy policies, including SECNAVINST 1730.7C, did not impose such an outright ban.

 It should initially be pointed out that, contrary to the Defendant's representation, RFRA does not apply only where there is a burden on a "central religious belief or practice." RFRA defines religious exercise, by reference to another statute, as "any exercise of religion, whether or not compelled by, or central to, a system of religious belief.42 USCS §§ 2000bb-2(4) and 2000cc-5.

In any event, it is not necessary that the government impose a ban on religiously-motivated conduct in order for a substantial burden to be imposed. "Government significantly burdens the exercise of religion if it significantly constrains conduct or expression that manifests a central tenet of a person's religious beliefs, meaningfully curtails the ability to express adherence to a particular faith, or denies reasonable opportunities to engage in fundamental religious activities." *Altman v. Minnesota Dept. Of Corrections,* 251 F. 3d 199, 1204 (8th Cir. 2001). This standard certainly was satisfied by the terms of SECNAVINST 1730.7C. Contrary to the Defendant's representation, the Instruction did not merely allow commanders to "request" Chaplains pray in a non-sectarian manner. It provided that "religious elements for a command function, *absent extraordinary circumstances,* should be non-sectarian in nature." Commanders were instructed that only in the most extraordinary

26

circumstances should sectarian prayer be allowed. This was far more than a recommendation to commanders; it essentially told them that they should not allow sectarian prayer at command functions. Moreover, as pointed out in the Plaintiff's Complaint, in practice he and other Chaplains were required to adhere to the principle of non-sectarianism or face adverse actions. Comp. ¶¶ 36-41, 47, 52, 87.

The further suggestion of the Defendant that there was no burden on the Plaintiff's exercise of religion because he could have chosen not to participate in religious elements of command functions is erroneous. The Plaintiff's participation in the activities and functions of his unit and with those that he serves may not be made to depend upon his forfeiting his religious beliefs. The Supreme Court has long recognized that where the government conditions the receipt of a government benefit upon a person's forfeiture of his religious beliefs or practices, the government burdens that person's exercise of his religion in violation of the First Amendment. *Thomas v. Review Bd. of Ind. Employment Sec. Div.*, 450 U.S. 707, 716 (1981). "'Governmental imposition of such a choice puts the same kind of burden upon the free exercise of religion as would a fine imposed against [him] for . . . Saturday worship.'" *Id. (*quoting *Sherbert v. Verner*, 374 U.S. 398, 404 (1963)).

Contrary to the Defendant's argument, the Plaintiff is not asking to proselytize at all command functions, but simply desires to offer prayer in accordance with his religious beliefs and to prevent the government from prescribing how any Chaplain, whether they be Christian, Jewish, Muslim or some other religion offers his or her prayer and blessing upon an event. This right not only is protected by the First Amendment and RFRA, but by 10 U.S.C. § 6031(a), which provides that "[a]n officer in the Chaplain Corps may conduct public worship according to the manner and

27

forms of the church of which he is a member." The Defendant argues that § 6031 is not relevant here because prayer at command functions is not "public worship." The only support for this claim is a definition contained in SECNAVINST 1730.7C that attempted to limit "public worship" for purposes of the statute to "divine services" and "religious services." But clearly, an Instruction cannot limit the scope of statutory language. The Plaintiff does not assert that "command functions" are "public worship," but the prayers offered at these command functions are "public worship" under the plain meaning of that term.

The Defendant also asks this Court to determine as a matter of law and solely on the basis of the pleadings that its interest in prescribing the prayers of the Plaintiff and other Chaplains is a compelling one that overrides the Plaintiff's rights. But that determination cannot be made at this stage of the proceedings, especially since it is the government that bears the burden of proving as a factual matter that its interest is compelling and justifies the substantial burden imposed on this Plaintiff. "RFRA requires the Government to demonstrate that the compelling interest test is satisfied through application of the challenged law 'to the person' -- the particular claimant whose sincere exercise of religion is being substantially burdened." *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 126 S. Ct. 1211, 1220 (U.S. 2006). The Defendant's assertion of generalized interests in discipline and order cannot be deemed to carry that burden in the context of a Rule 12(b) motion to dismiss.

The Defendant's final point is that this Court should not intrude into the domain of the military and should grant deference to the Navy's decision on military matters. The D.C. Circuit rejected the same argument in *Emory v. Secretary of the Navy*, 819 F.2d 291, 294 (D.C. Cir. 1987), writing that "[t]he military has not been exempted from constitutional provisions that protect the

rights of individuals. *Parker v. Levy*, 417 U.S. 733 (1974). It is precisely the role of the court to determine whether those rights have been violated. *Dillard v. Brown*, 652 F.2d 316, 320 (3d Cir. 1981)." The Supreme Court in *Chappell v. Wallace*, 462 U.S. 296, 304 (1983), also recognized that it "has never held, . . ., that personnel are barred from redress in civilian courts for constitutional wrongs suffered in the course of military service." *Accord Larsen*, 346 F. Supp. 2d at 127-28. This Court is fully capable and empowered to address the claims raised by the Plaintiff. Because the Complaint both shows standing and alleges facts showing causes of action for violations of the Free Exercise Clause and RFRA, the motion to dismiss those claims should be denied.

**D.    The Complaint Alleges Facts Setting Forth a Violation of the Establishment Clause and That Claim Is Not Moot.**

Under the establishment clause of the First Amendment, government action which is not invalid on the basis of facial differentiation among religions must have a secular legislative purpose, must have a principal or primary effect which neither advances nor inhibits religion, and must not foster an excessive governmental entanglement with religion. *Anderson v. Laird*, 466 F.2d 283 (D.C. Cir. 1972) (D.C. Circuit found that the Navy violated the Establishment Clause)..

The Defendant correctly points to allegations in the Complaint in which the Plaintiff states a claim that the Navy has violated the Establishment Clause by establishing, promoting and mandating a non-sectarian, Unitarian, pluralistic religion within the Navy. The Plaintiff alleges that while he served as a Chaplain he was pressured to practice a non-sectarian, civic religion and to suppress his Christian faith. Comp. ¶ 3. The Complaint specifically alleges that Navy policies "seek to establish a civic religion for the Navy in violation of the Establishment Clause of the First Amendment," and favors a non-sectarian religion over Christianity. Comp. ¶¶ 22-23, 25.

29

As discussed, *supra*, the Defendant is simply wrong when he asserts that this unlawful establishment of religion is based only on the terms of the now-rescinded SECNAVINST 1730.7C. The Complaint alleges numerous other facts which show the unlawful Establishment. For example, the Naval Chaplain School teaches Unitarianism and pressures Chaplains to censor their prayers to make them non-sectarian. Comp. ¶¶ 35, 47. The Plaintiff has been punished for expressing his Christian beliefs in the context of public worship. Comp. ¶¶ 36, 39. And present policy instructs Chaplains not to participate in events if they desire to invoke the name of Jesus and encourages participation by Chaplains who pray non-sectarian, pluralistic prayers. Comp. ¶ 48. In sum, "[t]he Navy promotes Unitarianism over all other religions." Comp. ¶ 28. The Complaint alleges that promotion of the non-sectarian, Unitarian religion within the Navy is systemic and not simply the outgrowth of a single Instruction. SECNAVINST 1730.7C was simply a single symptom of the establishment of this religion.

The Defendant goes on to argue that the Navy does not violate the Establishment when it instructs its Chaplains how they should pray and punishes them when they adhere to their religious convictions as to how they should pray. But the Supreme Court has expressly held that this kind of conduct is precisely what is forbidden by the Establishment Clause. In *Lee v. Weisman*, 505 U.S. 577 (1992), the court wrote as follows in striking down a high school graduation prayer policy which advised that prayers should be "non-sectarian":

> It is a cornerstone principle of our Establishment Clause jurisprudence that "it is no part of the business of government to compose official prayers for any group of the American people to recite as a part of a religious program carried on by government," *Engel v. Vitale*, 370 U.S. 421, 425 (1962), and that is what the school officials attempted to do.
>
> Petitioners argue, and we find nothing in the case to refute it, that the directions for

30

the content of the prayers were a good-faith attempt by the school to ensure that the sectarianism which is so often the flashpoint for religious animosity be removed from the graduation ceremony. . . The question is not the good faith of the school in attempting to make the prayer acceptable to most persons, but the legitimacy of its undertaking that enterprise at all when the object is to produce a prayer to be used in a formal religious exercise which students, for all practical purposes, are obliged to attend.

We are asked to recognize the existence of a practice of nonsectarian prayer, prayer within the embrace of what is known as the Judeo-Christian tradition, prayer which is more acceptable than one which, for example, makes explicit references to the God of Israel, or to Jesus Christ, or to a patron saint. . . . If common ground can be defined which permits once conflicting faiths to express the shared conviction that there is an ethic and a morality which transcend human invention, the sense of community and purpose sought by all decent societies might be advanced. But though the First Amendment does not allow the government to stifle prayers which aspire to these ends, neither does it permit the government to undertake that task for itself.

The First Amendment's Religion Clauses mean that religious beliefs and religious expression are too precious to be either proscribed or prescribed by the State. The design of the Constitution is that preservation and transmission of religious beliefs and worship is a responsibility and a choice committed to the private sphere, which itself is promised freedom to pursue that mission. It must not be forgotten then, that while concern must be given to define the protection granted to an objector or a dissenting nonbeliever, these same Clauses exist to protect religion from government interference.  James Madison, the principal author of the Bill of Rights, did not rest his opposition to a religious establishment on the sole ground of its effect on the minority. A principal ground for his view was: "Experience witnesseth that ecclesiastical establishments, instead of maintaining the purity and efficacy of Religion, have had a contrary operation." Memorial and Remonstrance Against Religious Assessments (1785), in 8 Papers of James Madison 301 (W. Rachal, R. Rutland, B. Ripel, & F. Teute eds. 1973).

These concerns have particular application in the case of school officials, whose effort to monitor prayer will be perceived by the students as inducing a participation they might otherwise reject. Though the efforts of the school officials in this case to find common ground appear to have been a good-faith attempt to recognize the common aspects of religions and not the divisive ones, our precedents do not permit school officials to assist in composing prayers as an incident to a formal exercise for their students. *Engel v. Vitale*, *supra*, at 425. And these same precedents caution us to measure the idea of a civic religion against the central meaning of the Religion Clauses of the First Amendment, which is that all creeds must be tolerated and none favored. The suggestion that government may establish an official or civic religion

31

as a means of avoiding the establishment of a religion with more specific creeds strikes us as a contradiction that cannot be accepted.

*Lee*, 505 U.S. 577, 588-590 (1992)

The policies at issue in this case run afoul of the constitutional principles identified in *Lee*. The Navy has attempted to establish a civil religion for that service. It also has attempted to prescribe and proscribe the content of prayers offered by Chaplains at service functions. This is a blatant violation of the Establishment Clause.

The cases cited by the Defendant involving legislative prayer are not to the contrary. *Marsh v. Chambers*, 463 U.S. 783 (1983), simply holds that a legislature does not violate the Establishment Clause by opening sessions with a prayer. It says nothing about the practice of a government entity mandating to those who offer the prayer what they may or may not say, which is the situation in the instant case. The Plaintiff also has no quarrel with the point made by the Defendant that the offering of non-sectarian prayer at government functions does not violate the Establishment Clause. However, what *Lee* makes clear is that when the government becomes involved in prescribing and proscribing the content of prayers that may be offered and in establishing a civic religion, the Establishment Clause is violated. The Navy has done so and has thereby run afoul of the First Amendment.

## CONCLUSION

A citizen in uniform may not be stripped of their basic constitutional rights. First Amendment protections exist for the military as "aspects of military life do not, of course render entirely nugatory in the military context the guarantees of the First Amendment." *Goldman v. Weinberger*, 475 U.S. 503, 507 (1986); *See also Chappell v. Wallace*, 462 U.S. 296, 304

(1983)(noting that " 'our citizens in uniform may not be stripped of basic rights simply because they have doffed their civilian clothes,'" quoting Earl Warren, The Bill of Rights and the Military, 37 N.Y.U.L.Rev. 181, 188 (1962)); *Brannum v. Lake*, 311 F.3d 1127, 1130 (D.C.Cir. 2002).

The Establishment Clause clearly forbids that there should be any official judgments about the correctness of religious beliefs. *See United Christian Scientists v. First Church of Christ, Scientist,* 829 F.2d 1152, 1167 (D.C.Cir.1987). To the same effect, the RFRA, 42 U.S.C. § 2000bb-1(a), (b), provides that "[g]overnment shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability" except "if it demonstrates that the application of the burden to the person--(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest."

In addition, Defendant ignores plaintiff's whistleblowing allegations and those claims are not before the Court.  Complaint ¶ 54, 69.

The plaintiff has properly pled this action pursuant to Rule 8.  Accordingly, Chaplain Klingenschmitt requests the Court to deny Defendant's Motion Dismiss.  A draft order is attached.

Respectfully submitted,

____/s/ William P. Farley_____
William P. Farley 466280
Law Office of William P. Farley
1350 Connecticut Avenue, N.W., Suite 200
Washington, D.C. 20036
(202) 775-1550 (telephone)
(202) 775-0008 (fax)

33

farley@dccounselor.com
Counsel for Plaintiff

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **CHAPLAIN GORDON JAMES KLINGENSCHMITT** | ) ) ) ) |
| **Plaintiff,** | ) **Civil No.: 06CV 1832 (HHK)** |
| **v.** | ) ) |
| **DONALD C. WINTER** | ) ) |
| **Defendant,** | ) ) |

## ORDER

Upon consideration of Defendant's Motion to Dismiss the Complaint, Plaintiff's opposition, Defendant's reply, and the record herein, it is the ___ day of _____, 2007 hereby:

**ORDERED** that the Defendant's Motion to Dismiss the Complaint should be, and hereby is **DENIED**.

_____
The Honorable Henry H. Kennedy
United States District Court Judge

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing Plaintiff's Opposition to Defendant's Motion to Dismiss the Complaint, was served on all parties pursuant to the court's rules via electronic transmission, on this 4th day of January 2007 to:

Michael P. Abate
Trial Attorney
United States Department of Justice
Federal Programs Branch
PO Box 883
Washington, D.C. 20530
Tel.: (202) 616-8209
Fax: (202) 616-8470
michael.abate@usdoj.gov

____/s/ William P. Farley_____
William P. Farley 466280
Law Office of William P. Farley
1350 Connecticut Avenue, N.W., Suite 200
Washington, D.C. 20036
(202) 775-1550 (telephone)
(202) 775-0008 (fax)
farley@dccounselor.com
Counsel for Plaintiff

3