UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| CHAPLAIN GORDON JAMES KLINGENSCHMITT | ) ) ) ) | |
| Plaintiff, | ) | Civil No.: 06CV 1832 (HHK) |
| v. | ) ) | |
| DONALD C. WINTER | ) ) | |
| Defendant, | ) ) ) | |

---

**PLAINTIFF'S EMERGENCY RULE 56(F) MOTION TO STAY PROCEEDINGS PENDING DISCOVERY AND MEMORANDUM IN SUPPORT OF THAT MOTION**

---

William P. Farley 466280
Law Office of William P. Farley
1350 Connecticut Avenue, N.W.,
Suite 200
Washington, D.C. 20036
(202) 775-1550 (telephone)
(202) 775-0008 (fax)
farley@dccounselor.com
Counsel for Plaintiff

Participating Attorney for the
Rutherford Institute

## <u>TABLE OF CONTENTS</u>

I.  INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II. ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

III.  STANDARD FOR OBTAINING A RULE 56(f) RELIEF . . . . . . . . . . . . . . . . . . . . . 6

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

## <u>TABLE OF AUTHORITIES</u>

<u>CASES</u>

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

*Conley v. Gibson*, 355 U.S. 41 (1957) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Jensen v. Redev. Agency*, 998 F.2d 1550 (10th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Jones v. Coughlin*, 45 F.3d 677 (2d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Khan v. Parsons Global Services, Ltd.*, 428 F.3d 1079 (D.C.Cir. 2005) . . . . . . . . . . . . . . . . . 7

*Kowal v. MCI Commun. Corp.*, 16 F.3d 1271 (D.C.Cir.1994) . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Meloff v. New York Life Ins. Co.*, 51 F.3d 372 (2d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Miller v. United States Department of Transportation*, 710 F.2d 656 (10th Cir. 1983) . . . . . . . 7

*Paquin v. Federal Nat. Mortg. Ass'n*, 119 F.3d 23 (D.C. Cir. 1997) . . . . . . . . . . . . . . . . . . . . . 9

*Paralyzed Veterans of America v. D.C. Arena L.P.*, 117 F.3d 579 (D.C.Cir.1997) . . . . . . . . . . 7

*Richardson v. National Rifle Association*, 871 F. Supp. 499 (D.D.C. 1994) . . . . . . . . . . . . . . . . 8

*RTC Mortgage Trust 1994-S3 v. Guadalupe Plaza*, 918 F.Supp. 1441 (D.N.M. 1996) . . . . . . . 7

*St. Surin v. Virgin Islands Daily News, Inc.*, 21 F.3d 1309 (3d Cir. 1994) . . . . . . . . . . . . . . . . . 8

*Sutera v. Schering Corp.*, 73 F.3d 13 (2d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Taylor v. FDIC*, 132 F.3d 753 (D.C.Cir.1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

<u>STATUTES</u>

Federal Rules of Civil Procedure - Rule 56(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 6-10

Federal Rules of Civil Procedure Rule 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1-3, 9

Local Rules of Civil Procedure Rule 7(m) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

## **OTHER AUTHORITY**

10A C. Wright, A. Miller, Federal Practice and Procedure § 2741 (2d ed. 1983)  . . . . . . . . . . 6-8

Chief of Chaplains Instruction 1110.1G  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Establishment Clause of the First Amendment to the United States Constitution  . . . . . . . . . . . 5

James W. Moore & Jeremy C. Vicker, Moore's Federal Practice  56.24 (1988) . . . . . . . . . . . . 7

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| **CHAPLAIN GORDON JAMES KLINGENSCHMITT** | ) | |
| | ) | |
| | ) | |
| | ) | |
| **Plaintiff,** | ) | **Civil No.: 06CV 1832 (HHK)** |
| **v.** | ) | |
| | ) | |
| **DONALD C. WINTER** | ) | |
| | ) | |
| **Defendant,** | ) | |

**PLAINTIFF'S EMERGENCY RULE 56(F) MOTION TO STAY PROCEEDINGS
PENDING DISCOVERY AND MEMORANDUM IN SUPPORT OF THAT MOTION**

Plaintiff, Chaplain Klingenschmitt, brings his motion for an order to either (1) strike the summary judgment motion of Defendant, or (2) grant a continuance pursuant to Rule 56(f) of the Federal Rules of Civil Procedure or (3) grant a stay pursuant to Rule 56(f) of the Federal Rules of Civil Procedure. This motion is not made for the purposes of delay and cannot prejudice Defendant because there has been no discovery in this matter and the Defendant controls nearly all of the admissible evidence in this matter.

In compliance with local Rule 7(m) Plaintiff requested Defendant's consent to this motion. Defendants do not consent to this motion. No discovery has been provided in this matter.[1]

Discovery is necessary for Chaplain Klingenschmitt to oppose Defendant's Rule 12(b)(6) motion, specifically: (1) when the Navy began to create their "non-sectarian" civic religion

---

[1] Exhibit A, January 4, 2007 Declaration of William P. Farley. In fact. 28 separate offices have information relevant to this matter. January 4, 2006 Declaration of Gordon Klingenschmitt, ¶ 2 ("GK Decl."). A copy is attached as Exhibit "B."

suppressing plaintiff's Christian faith; (2) why the Navy removed Chaplain Klingenschmitt for his Trinitarianistic Christian views; (3) what conditions the Navy placed on Chaplain Klingenschmitt's prayers, including separating him from the Navy for praying to Jesus; (4) whether it is systemic within the Navy to deny Chaplains the liberties of religion and expression by infringing by denial of or by placing conditions on benefit or privilege; and each of the allegations in Chaplain Klingenschmitt's complaint; and (5) the 4,000 pages of emails and documents which will shed light on the Navy's motives - identified by the Navy in FOIA and Congressional requests. GK Decl. ¶ 2.

Defendant filed a motion to dismiss pursuant to Rule 12(b)(6). For a 12(b)(6) motion to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56. Defendant relies upon Rule 12(b)(6) on 30 separate occasions in their memorandum.

This motion seeks that material which the Rules require Chaplain Klingenschmitt to receive prior to having to defend against a Rule 12(b)(6) motion.

## I. INTRODUCTION

Defendant's motion and accompanying brief in support are an exercise in sleight of hand, obfuscation, and glaring omission. The sleight of hand frames the whole motion, which even though titled as a motion to dismiss challenges the factual allegations set out in the complaint and then introduces assertions of fact outside the complaint, all of which seem more aptly suited to a Fed.R.Civ.P. 56 motion for summary judgment. Defendant would rush this Court to final judgment on the central factual issues of this case based exclusively on their account of the facts, which are

not even supported by any affidavits.

The one letter attached to the Defendant's Motion is untested by cross-examination and made by an interested witness. Moreover, as of this writing, discovery has not even yet begun. Def. Mem., pg. 25. Without discovery, the Navy's glaring constitutional transgressions will darken the entire military Chaplain Corps. GK Dec. ¶ 1-24.

## II. ARGUMENT

Chaplain Klingenschmitt's separation would have an unwelcome effect on other military Chaplains' seeking to exercise their Constitutional rights. Chaplain Klingenschmitt requires an expedited discovery schedule because he believes the Navy is separating him to chill his opposition to their establishment of a secular religion. Thus, Chaplain Klingenschmitt should be granted expedited discovery with sufficient time for presentation to this court prior to the Navy being permitted to separate him from military service.

1.      Defendant's Rule 12(b)(6) Motion ("Motion For Summary Judgment") is premature in that there has been no discovery in this matter and, at the very least, depositions of Defendant's witnesses must be taken to understand their affidavits and declarations. Defendant relies upon numerous documents for their Summary Judgment Motion. Def. Memo., pg. 27 (three separate exhibits). In addition, Defendant relies upon untested declarations that have not been subjected to cross-examination.[2]

2.      Plaintiff has not yet had the opportunity to discover information vital to his Opposition to the Navy's Motion, including deposing the witnessed Defendant is relying upon for

---

[2]  The declarations that the Defendant relies upon for the Motion for Summary Judgment are found within that motion on: (1) Page 6, fn. 3, "First Parker Declaration" (also cited on page 23); (2) Page 6, fn. 3, "Second Parker Declaration"; (3) Page 15, fn. 8, "Berto Declaration"; (4)

their Summary Judgment Motion.  *See* GK Decl., ¶ 2-24

3.     Plaintiff contends that Defendant systematically and continuously violated his constitutional and statutory rights during the relevant time period while Plaintiff was serving as a Chaplain in the United States Department of the Navy ("defendant" or "Navy"), and pressured him to practice a "non-sectarian" civic religion suppressing plaintiff's Christian faith.  *See*, Plaintiff's October 25, 2006 Complaint, ¶ 3, 27-28.

4.     Chaplain Klingenschmitt alleges that the Navy directs and controls the content of prayers that military members may say by requiring their Chaplains to pray in a Unitarian fashion because the Navy promotes Unitarianism over all other religions.. *Id.*, ¶ 27-28.

5.     There has been no discovery on whether in September 2002, Captain Bertram Moore taught mandatory lectures at the Naval Chaplain School, pressuring Chaplain Klingenschmitt to censor the content of his public prayers if offered outside of Sunday chapel, and distributed a 1998 prayer memo signed by the former Chief of Navy Chaplains defaming chaplains who pray publicly "in Jesus' name" as insensitive or incompetent. These lectures are still being taught today. *Id.*, ¶ 35.

6.     Plaintiff alleges that the Navy has an ongoing practice of promoting the one non-sectarian, Unitarian, Pluralistic religion and discouraging public expression of diverse faiths and religions violates the Establishment Clause of the First Amendment to the United States Constitution because, among other things, the only purpose or the primary purpose is to promote the one non-sectarian, Unitarian, Pluralistic religion over all other religions and it constitutes a government preference for certain specific religious tenets and modes of worship over other religious tenets and modes of worship. The Establishment Clause applies with full force and effect to the acts of Navy officials. *Id.*, ¶ 23.

7.      The Navy places limits on how their Christian Chaplains can publicly pray and forbids them from saying "in Jesus' name." *Id.,* ¶ 34. Discovery is required to understand why the Navy is limiting religious speech.

8.      Additionally, Plaintiff contends that the Defendant is presently undertaking to involuntarily separate the Plaintiff from the Navy under the pretext that the Plaintiff has lost his ecclesiastical endorsement when the Defendant has never before refused to recognize a valid ecclesiastical endorsement obtained by any Chaplain who was on active service. *Id.*, ¶ 3.

9.      Plaintiff contends the Navy is in violation of Navy rules and regulations and their proceedings against Chaplain Klingenschmitt are being pursued contrary to the Navy's own rules and regulations. *Id.*

10.     Plaintiff alleges that the Navy has recurring and continuing violations of Plaintiff's constitutional rights because of his objection to Navy policies that seek to establish a civic religion for the Navy in violation of the Establishment Clause of the First Amendment to the United States Constitution and in contravention of the provisions of 10 U.S.C. § 6031, which provides that "an officer in the Chaplain Corps may conduct public worship according to the manner and forms of the church of which he is a member." *Id.,* ¶ 22.

11.     Under Chief of Chaplains Instruction (COCINST) 1110.1G, a Chaplain Appointment and Recall Eligibility (CARE) Advisory Group is authorized only to assist the Chief of Chaplains in validating "the professional qualifications of all applicants for appointment in the Chaplain Corps, the Chaplain Candidate Program Officer (CCPO) program, and transfers between active and inactive duty." COCINST 1110.1G, para. 5 makes CARE Advisory Groups responsible for examining "each direct, superseding, recall or interservice transfer application and each Regular chaplain officer

discharged from active duty who requests a Naval Reserve appointment." *Id.,* ¶ 17.

12.    Plaintiff has alleged his constitutional rights were violated by the Navy.

13.    Plaintiff also alleges that the Navy is in violation of the Establishment Clause because they are establishing a new religion which forbids Christian Chaplains from praying in Jesus' name.

14.    These allegations all create triable issues of fact which will likely preclude the Navy's Motion.  Without the opportunity to discover this information, plaintiff will be denied his rights in violation of the constitution.

15.    Chaplain Klingenschmitt respectfully requests that the Court strike Defendant's Motion, without prejudice to renew at the appropriate time, and permit plaintiff the discovery he has been vainly seeking.

### III.  STANDARD FOR OBTAINING A RULE 56(f) RELIEF

16.    Rule 56(f) of the Federal Rules of Civil Procedure provides that:

> Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

The policy behind Fed.R.Civ.P. 56(f) is straightforward:  "Summary judgment should not be granted where the non-moving party has not had the opportunity to discover information that is essential to his opposition."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n.5 (1986)).  In this Circuit, "a reasonable opportunity to complete discovery before grappling with a summary judgment motion is the norm."  *See generally* 10A C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 2741 at 541-48 (2d ed. 1983) ("One of the most common reasons offered under Rule

6

56(f) for being unable to present specific facts in opposition to a summary judgment motion is insufficient time or opportunity to engage in discovery.")

"The protection afforded by Rule 56(f) is an alternative to a response in opposition to summary judgment under 56(e) and is designed to safeguard against a premature or improvident grant of summary judgment." 10A Wright, Miller, & Kane, Federal Practices and Procedure §2740 (1983). *See, Miller v. United States Department of Transportation*, 710 F.2d 656, 666 (10th Cir. 1983) ("[D]iscovery is strongly favored and generally denying the right to have full discovery on all pertinent issues before a summary judgment is granted would be error, particularly in the face of a Rule 56(f) affidavit.")

Consistent with its underlying policy, courts treat Rule 56(f) motions and affidavits liberally: "Unless dilatory or lacking ill merit, the motion should be liberally treated.'" James W. Moore & Jeremy C. Vicker, Moore's Federal Practice  56.24 (1988). *See, Jensen v. Redev. Agency*, 998 F.2d 1550, 1554 (10th Cir. 1993); *RTC Mortgage Trust 1994-S3 v. Guadalupe Plaza*, 918 F.Supp. 1441, 1448 (D.N.M. 1996).

Additional discovery pursuant to Rule 56(f) is often granted. *See Khan v. Parsons Global Services, Ltd.*, 428 F.3d 1079, 1087 (D.C.Cir. 2005) ("Because the district court never ruled on the Khans' initial Rule 56(f) discovery request, on remand, the district court should address both Rule 56(f) declarations."). Who has made the decisions in this matter is of key importance. *See Paralyzed Veterans of America v. D.C. Arena L.P.*, 117 F.3d 579, 587 (D.C.Cir.1997) ("A speech of a mid-level official of an agency . . . is not the sort of 'fair and considered judgment' that can be thought of as an authoritative departmental position.")  Plaintiffs should be granted an opportunity to depose decision makers to determine whether Chaplain Klingenschmitt's religious beliefs are the

sole reason he has been punished by the Navy. Chaplain Klingenschmitt will also seek to discover the Navy's position on the Constitutional right to pray.

In *Anderson*, 477 U.S. at 250 n.5, the Supreme Court noted that Rule 56(f) provides that "summary judgment be refused where the non-moving party has not had the opportunity to discover information that is essential to his position." Because a plaintiff should not be "'railroaded' by a premature motion for summary judgment, the United States Supreme Court has held that a district court must apply Federal Rule of Civil Procedure Rule 56(f) if the opposing party has not made full discovery. *Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986).

Thus, the district court is empowered with discretion to decide whether the movant's motion is ripe and thus determine whether to delay action on a motion for summary judgment. *St. Surin v. Virgin Islands Daily News, Inc.*, 21 F.3d 1309, 1313 (3d Cir. 1994). Only in the rarest of cases may summary judgment be granted against a plaintiff who has not been afforded the opportunity to conduct discovery. *See Sutera v. Schering Corp.*, 73 F.3d 13, 18 (2d Cir. 1995); *Meloff v. New York Life Ins. Co.*, 51 F.3d 372, 375 (2d Cir. 1995); *Jones v. Coughlin*, 45 F.3d 677, 680 (2d Cir. 1995). Accord WRIGHT & MILLER, 10A FEDERAL PRACTICE AND PROCEDURE § 2741 at 546 (West 1983)(Most courts are reluctant to grant summary judgment prior to the termination of discovery).

Plaintiff has amply demonstrated its need for discovery. In *Richardson v. National Rifle Association*, 871 F. Supp. 499, 501-502 (D.D.C. 1994), that Court stated: Under Rule 56(f), the Court upon request may defer ruling on a summary judgment motion and allow the non-moving party an opportunity through limited discovery to obtain information relevant to an issue of material fact he maintains is in dispute. The party opposing summary judgment and seeking deferral, usually but not invariably by motion and affidavit, must (i) alert the Court to the need for further discovery

8

and (ii) demonstrate, either through an affidavit or other documents such as opposing motions and outstanding discovery requests, how additional discovery will enable it to rebut the movant's allegations of no genuine issue of fact.

The Defendant (Defendant or "Navy") has stated that they have initiated separation proceedings against Chaplain Klingenschmitt based upon his lack of ecclesiastical endorsement. For three major reasons discovery is required: (1) there is no evidence that in its more than 200 year history the Navy has ever separated a chaplain who has an ecclesiastical endorsement (which Chaplain Klingenschmitt has his Ecclesiastical Endorsement from the Chaplaincy of Full Gospel Churches) on the grounds he has no endorsement; (2) there needs to be discovery on whether any other chaplain in the Navy has faced separation based upon praying in Jesus' name; and (3) the treatment of the other Navy Chaplains that are similarly situated to Chaplain Klingenschmitt and are not being separated.

As the plaintiff has properly alleged constitutional violations in his complaint, a dispositive motion would be premature without discovery. *Paquin v. Federal Nat. Mortg. Ass'n*, 119 F.3d 23, 28 (D.C. Cir. 1997) ("Because we believe the district court erred in not granting Paquin's Rule 56(f) motion, we reverse the district court's grant of summary judgment and remand for further discovery")

In general, a motion to dismiss under Federal Rule of Civil Procedure 12(b) should not prevail "unless plaintiffs can prove no set of facts in support of their claim that would entitle them to relief." *Kowal v. MCI Commun. Corp.*, 16 F.3d 1271, 1276 (D.C.Cir.1994) (*citing Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). As the Court has subject matter jurisdiction pursuant to Rule 12(b)(1) and 12(b)(6) would not be applicable, the only other possibility is a motion for summary judgment. And "[w]hen a district court converts a Rule 12(b)(6) motion

9

to one for summary judgment, it must allow all parties both a reasonable opportunity to present all material made pertinent to such a motion by Rule 56 and a chance to pursue reasonable discovery." *Taylor v. FDIC*, 132 F.3d 753, 765 (D.C.Cir.1997) (quoting Fed.R.Civ.P. 12(b)(6)) (internal quotation marks and other citation omitted); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (holding that an adequate time for discovery is required) (citation omitted).

Thus, discovery is required prior to any dispositive motion being considered.

Plaintiff herein seeks discovery relating to his claim that Defendant violated the Establishment Clause by instructing Navy Chaplains on the content of their prayers.  Farley Dec., ¶ 1-11.  Specifically with regard to Defendant's exercise of control over Navy chaplains with respect to, inter alia, their prayers, their religious expression, their religious endorsements, their directives, their operating policies and procedures, and reasons for requiring no prayers in the name of Jesus.

Carr, Gragg, Moore, Iasiello, Pyle, Ruehe, Holcomb, and Blair acted and conspired to prevent, by force, intimidation, or threat, Chaplain Klingenschmitt from discharging his religious duties as Naval Chaplain and to injure him in his person or property on account of his lawful discharge of the duties of his office.  Complaint, ¶ 103.  Plaintiff intends to depose and otherwise seek discovery from, at a minimum, Parker, Berto, Carr, Harvey, Gragg, Moore, Iasiello, Pyle, Ruehe, Holcomb, and Blair.  *Id.,* ¶ 1-11.  Plaintiff has also attached to this filing an affidavit of Chaplain Klingenschmitt, the Plaintiff, in conformance with Rule 56(f). In sum, Plaintiff has met his Rule 56(f) burden.

## CONCLUSION

Prior to any dispositive motions decision, Chaplain Klingenschmitt should be permitted to find out: (1) when the Navy began to create their "non-sectarian" civic religion suppressing

plaintiff's Christian faith; (2) why the Navy removed Chaplain Klingenschmitt for his Trinitarianistic

Christian views; (3) what conditions the Navy placed on Chaplain Klingenschmitt's prayers,

including separating him from the Navy for praying to Jesus; (4) whether it is systemic within the

Navy to deny Chaplains the liberties of religion and expression by infringing by denial of or by

placing conditions on benefit or privilege; and each of the allegations in Chaplain Klingenschmitt's

complaint.

For the foregoing reasons, Defendant's Motion to Dismiss Plaintiff's Complaint should

be denied and discovery should commence immediately in this matter.

WHEREFORE, Klingenschmitt respectfully requests that the motion be granted and the

Court issue grant an order permitting discovery and keeping the status quo in this case.

Respectfully submitted,

     /s/ William P. Farley
William P. Farley 466280
Law Office of William P. Farley
1350 Connecticut Avenue, N.W., Suite 200
Washington, D.C. 20036
(202) 775-1550 (telephone)
(202) 775-0008 (fax)
farley@dccounselor.com
Counsel for Plaintiff

11

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| | ) | |
| CHAPLAIN GORDON JAMES KLINGENSCHMITT | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | Civil No.: 06CV 1832 (HHK) |
| v. | ) | |
| | ) | |
| DONALD C. WINTER | ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |

**ORDER**

Upon consideration of Plaintiff's Emergency Rule 56(f) Motion, Plaintiff's memorandum of points and authorities in support thereof, the Defendant's opposition thereto, Plaintiff's Reply and the record herein, it is the ___ day of _____ 2007 hereby:

**ORDERED** that the Plaintiff's motion be and hereby is **GRANTED**; and it is further

**ORDERED** that this case shall be placed on an expedited schedule; and it is further

**ORDERED** that the parties shall comply with initial disclosures required by Rule 26(a)(1), F.R.Civ.P. within ten days; and it is further

**ORDERED** that all discovery shall be completed within 60 days; and it is further

**ORDERED** that each party shall be permitted thirty depositions; and it is further

**ORDERED** that each party shall be permitted forty-five interrogatories to be served on each of the other respective parties; and it is further

**ORDERED** that all motions shall be filed no later than twenty days after the close of

discovery; and it is further

**ORDERED** that the opposing party shall have 10 days to respond and to file any cross motion; and it is further

**ORDERED** that the party who filed the initial motion will then have five days to reply, and to oppose any cross-motion; and it is further

**ORDERED** that the other party will then have five days to file a reply; and it is further

**ORDERED** that the parties shall keep the status quo until this Court orders otherwise and Chaplain Klingenschmitt shall be kept on active duty; and it is further

**ORDERED** that the Pretrial Conference be held on _____, 2007.


_____
Judge Henry H. Kennedy
Federal District Court Judge - District of Columbia

Copies to:

William P. Farley
Farley@dccounselor.com
Counsel for Plaintiff

Michael P. Abate
Trial Attorney
United States Department of Justice
Federal Programs Branch
PO Box 883
Washington, D.C. 20530
Tel.: (202) 616-8209
Fax: (202) 616-8470
michael.abate@usdoj.gov

Counsel for Defendant

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing Plaintiff's Emergency Rule 56(f) Motion was served on all

parties by delivering a copy thereof via the Court's electronic filing, on this 4th day of January 2007

to:

> Michael P. Abate
> Trial Attorney
> United States Department of Justice
> Federal Programs Branch
> PO Box 883
> Washington, D.C. 20530
> Tel.: (202) 616-8209
> Fax: (202) 616-8470
> michael.abate@usdoj.gov

> ___/s/ William P. Farley_____
> William P. Farley 466280
> Law Office of William P. Farley
> 1350 Connecticut Avenue, N.W., Suite 200
> Washington, D.C. 20036
> (202) 775-1550 (telephone)
> (202) 775-0008 (fax)
> farley@dccounselor.com
> Counsel for Plaintiff

15

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| _____ ) | |
| **CHAPLAIN GORDON JAMES KLINGENSCHMITT** ) | |
| ) | |
| ) | |
| **Plaintiff,** ) | **Civil No.: 06CV 1832 (HHK)** |
| **v.** ) | |
| ) | |
| **DONALD C. WINTER** ) | |
| ) | |
| **Defendant,** ) | |
| _____ ) | |

## DECLARATION OF WILLIAM P. FARLEY

### Concerning Plaintiff's Emergency Rule 56(f) Memorandum

I William P. Farley, have personal knowledge of the following facts and could and would testify competently thereto:

1.    I am an attorney in good standing in the District of Columbia.

2.    I have been lead counsel on numerous lawsuits, including the present matter of *Klingenschmitt v. Winter.*

3.    On October 25, 2006 the complaint in this matter was stamped as filed by the Court.

4.    At this time, plaintiff has not received any discovery from Defendant.

5.    Plaintiff hopes to receive discovery concerning all the declarations listed in the Defendant's Rule 12(b)(6) motion.

6.    Plaintiff hopes to be able to cross-examine all persons giving statements.

7.    Plaintiff hopes to discover correspondence that would shed light on the issues.

8.    The plaintiff needs discovery to explore facts essential to justify the party's opposition

to the Rule 12(b)(6) motion.

9.     Plaintiff herein seeks discovery relating to his claim that Defendant violated the Establishment Clause by instructing Navy Chaplains on the content of their prayers as alleged in the complaint.

10.     Defendant's exercise of control over Navy chaplains with respect to, inter alia, their prayers, their religious expression, their religious endorsements, their directives, their operating policies and procedures, and reasons for requiring no prayers in the name of Jesus.

11.     Plaintiff intends to depose and otherwise seek discovery from, at a minimum, Parker, Berto, Carr, Harvey, Gragg, Moore, Iasiello, Pyle, Ruehe, Holcomb, and Blair.

12.     I declare under penalty of perjury under the laws of the United States that this is my best recollection of the sum and substance my understanding of this litigation to date.  I believe that the forgoing is true and correct as of this date, January 4, 2007.

    /s/ William P. Farley            
William P. Farley

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **CHAPLAIN GORDON JAMES KLINGENSCHMITT** | ) ) ) ) |
| **Plaintiff,** | ) **Civil No.: 06CV 1832 (HHK)** |
| **v.** | ) ) |
| **DONALD C. WINTER** | ) ) |
| **Defendant,** | ) ) ) |

## DECLARATION OF GORDON JAMES KLINGENSCHMITT IN SUPPORT OF PLAINTIFF'S 56(f) MOTION

I , **GORDON JAMES KLINGENSCHMITT**, have personal knowledge of the following facts and could and would testify competently thereto:

1.     I have personal knowledge of the facts in this case, and expertise in Navy chaplain regulations, and if called would testify truthfully under oath as to the following matters.

2.     The defendant (Navy) has the material required to oppose their Rule 12(b)(6) motion, including over 4,000 pages of emails and documents about me personally (of which I've received less than 1,500 heavily redacted pages) which the Navy has identified but not provided in response to my repeated FOIA requests of the last 16 months, and Congressional inquiries by Congressman Tom Reynolds, that would shed light on Defendant's motives.  In personal conversations with FOIA personnel and other DoD and Navy investigators (especially LCDR Frank Katz of CNRMA legal, and Ms. Doris Lama of the Pentagon's top FOIA office), I have learned of the existence of

thousands of responsive documents and emails, not over-broadly requested about other chaplains, but documents specifically referring to me, LT Klingenschmitt, created from September 2002 until today, now collected and held in the offices of the following 28 people:

A) Donald C. Winter (SECNAV) and his immediate staff and counsel
B) Mr. Navas ASN (M&RA) and his immediate staff and counsel
C) Vice Admiral John Harvey (Chief of Naval Personnel) and his entire staff/counsel
D) Mr. Christopher Morin (counsel to VADM Harvey)
E) CAPT Parker (who filed the affidavit for CHNAVPERS)
F) Chaplain Community Manager at CHNAVPERS
G) Rear Admiral Lou Iasiello (Former Chief of Navy Chaplains)
H) CAPT Lyman Smith (Former Executive Assistant to Admiral Iasiello)
I) Rear Admiral Bob Burt (Current Chief of Navy Chaplains)
J) CAPT Steve Gragg (Current Exec. Asst. to Admiral Burt)
K) LCDR Dan Stallard (Key Staffer to Chief of Chaplains)
L) CAPT Bertram Moore (Former Chaplain School Director)
M) RADM Frederic Ruehe (Commander, Navy Region Mid-Atlantic) and his staff/counsel including (investigator CDR Lauterbach)
N) CAPT Ed White (Former counsel to RADM Ruehe)
O) LCDR Frank Katz (Former counsel to RADM Ruehe, and FOIA coordinator)
P) CAPT Loyd Pyle (Commander, Naval Station Norfolk)
Q) CAPT Bill Crow (Former executive officer, Naval Station Norfolk)
R) CAPT Norm Holcomb (Senior Chaplain, Naval Station Norfolk)
S) LCDR Rich Inman (Deputy Chaplain, Naval Station Norfolk)
T) OJAG Code 14 (Office of FOIA requests) at Judge Advocate General of the Navy
U) OJAG Code 13 (Office of Litigation) at Judge Advocate General of the Navy (including all documents relating to their investigations of harassment of LT Klingenschmitt by RADM Iasiello, and CAPT's Moore, Vieira, Gragg, Evans, and Carr)
V) Ms. Doris Lama (Top Navy FOIA redactor)
W) CHINFO (Top Navy office of public affairs, all staffers)
X) LCDR Bob Mehal, Regional (CNRMA) Public Affairs
Y) Ms. Terri Davis, Base Public Affairs at Naval Station Norfolk
Z) RADM Nowakowski and Surflant Staff (including SJA CAPT Battin and Investigator CAPT Heckelman).
AA) VADM Conway and CNIC Staff (including EO investigator STGCS Treste Loving)
AB) DoD Inspector General and staff (including Reprisal investigator Eileen Keenan)

3.    The Defendant has not provided discovery to support their statement that the chaplain "cannot demonstrate that the Navy's alleged discrimination against his speech and religious beliefs played any role in the Navy's decision to institute separation

proceedings against him."  The Navy's statement is based upon the lack of discovery in this matter.  There is a direct causality between religious discrimination and the Navy's desire to separate me after 15 years of exemplary military service.  For instance:

A) The Navy admits the CARE board considered my "entire service record" when recommending the Chief of Chaplains deny my request for recertification.  But Navy investigators have already stipulated (see 11 Jan 06 Ruehe memo, pp. 11 and 16) that my service record contained a 2005 downgraded evaluation (by CAPT Carr) in which I was "properly punished" for praying in Jesus' name on the ship, and for quoting the Bible in the chapel at an optionally-attended "Christian memorial service."  When I sought FOIA documents about the reasons for this, many were withheld or redacted.

B) The Navy's religiously discriminatory policy SECNAVINST 1730.7C was enforced against me during my court-martial, when Navy Judge Lewis Booker wrote that "public worship" isn't the same as "worshipping in public" and so any orders issued by my commanding officer to stop "worshipping in public" in uniform were deemed "lawful." But when I filed a motion for discovery before the start of my court martial, asking to see any emails or documents held by my chain of command (about me) over the past year, Judge Booker only allowed narrow discovery of documents from 11 calendar days, despite his full knowledge that thousands of other documents were being withheld.

C) Captain Pyle ordered me to cease praying in uniform in the presence of news media, I appealed that unlawfully restrictive order to the President.  Instead of forwarding my appeal up the chain of command, Captain Pyle downgraded my evaluation to punish me

for appealing that unlawful order to the President, and for reporting constitutional violations of senior Naval officials.  This unlawful whistleblower reprisal, punishing me by labeling me as "lacking military bearing," further enforces religious conformity, and the defendant admits that's a primary reason for my separation, in violation of 10 USC 1034 and DoDD 7050.6 Whistleblower Protection Act.  But when I requested copies of emails or other documents about me from members of my chain of command, the FOIA people confirmed the existence of many documents, but said they couldn't be provided until other agencies coordinated their release.  (It's now been several months, and I've heard nothing).

4.      The only information I have indicates that I have been irreparably harmed and my reputation will be ruined for ever as I am now being fired, directly because I challenged the Navy's illegal prayer policies.

5.      The Defendant has not provided any discovery to support their statement that "the facts alleged in Plaintiff's complaint do not make out a violation of the First Amendment or RFRA."  Nor has the defendant provided any discovery to support any of their allegations in their motion to dismiss / motion for summary judgment.

6.      The evidence that I have been provided indicates the Navy knows they cannot establish a "non-sectarian, Unitarian, Pluralistic" religion and punish the chaplain for his "sectarian" religious expression unless they violate the First Amendment and RFR, and they are acting in bad faith when they claim otherwise.

7.      The Navy has information concerning its recruitment of chaplains due to the Navy being short-handed in chaplains.  I have been informed by Naval officials that Chaplain is the hardest position to recruit and fill, and many billets are unmanned.

8.      The Navy has not provided evidence that a chaplain changing

denominations is less likely to perform his duties.

9.    The Defendant admits ASN M&RA "found Plaintiff to be 'professionally unsuited for further service as a naval officer and chaplain' based on (1) Plaintiff's most recent fitness report, which indicated below average ratings for 'military bearing/character'"  This proves they're firing me based on their consideration of my 2006 fitness report (signed by CAPT Pyle), which is smoking-gun proof the Navy is now conducting open reprisals against a whistleblower in violation of 10 USC 1034, punishing me because I complained of religious harassment and appealed the violations of the Constitution by senior naval officials to the President of the United States.

10.    This fitness report and other evidence I've seen indicates the Navy is violating SECNAVINST 5354.1 which requires protection of whistleblowers, stating: **"Commanders will ensure that their command climate does not tolerate acts of reprisal, intimidation or further acts of discrimination...the commander will monitor potential reprisals by checking on work-center climate and ensuring performance appraisals document job performance accurately (i.e. downgrades shall be supported by written counseling and not related to the complaint.)"  SECNAVINST 5354.1, para 5.g.**  Violating this regulation, Captain Pyle implemented the reprisal threats made by Chaplain Holcomb (who verbally threatened to downgrade my evaluation because I had written the President), and so both men downgraded my 2006 evaluation for 'military bearing/character' *directly citing my appeal to the President*.  They did so without offering ANY prior written counseling as required above, instead three weeks after the fact they issued a clarifying 28 Feb 06 letter of caution (Exhibit A, attached) which further justified their reprisals, and further intimidated and silenced me, telling me "*You show disdain and insubordination toward a specific superior commissioned officer by*

*accusing him of personally disregarding the Constitution and considering himself above the law."*   This statement alone proves the Navy has now criminalized my protected whistleblower speech, and my reports to Congress as "insubordinate" and are now their basis to terminate my career after 20.5 years of award-winning service.   Their admitted reliance on this "reprisal fitness report" as cause for separation also violates DoDD 7050.6, Military Whistleblower Protection, and SECNAVINST 5370.7C, Military Whistleblower Reprisal Protection.

11.    The Defendant has not provided any discovery to support their statement that this court cannot limit the punishment imposed by a Special Court Martial, when their own manual for court-martial directly forbids the Navy from dismissing an officer convicted at this misdemeanor level court.   For example, a Special Court-Martial cannot confine or dismiss an officer, or separate him from service, according to the defendant's own rules in the Manual for Courts-Martial (2005 ed. Rules for Courts Martial 1003.c.2.A.iv) which states: "Only a General Court-Martial, upon conviction of any offense in violation of the Code, may sentence a commissioned or warrant officer or a cadet or midshipman to be separated from the service." (RCM 1003).   Since I was not accused at a (felony) General Court-Martial, and I was only accused at a (misdemeanor) Special Court-Martial, the defendant now violates his own rules and imposes an extra punishment by using the special courts-martial as a reason to deny recertification, to cause my separation from service.   My special court-martial jury recommended only a small suspended fine of $3,000 and letter of reprimand, not sudden termination of my 15.5 year career with loss of a $1 million (annuitized) pension, and eviction from military housing, and loss of health-care benefits for my family, which additional extreme punishment is cruel and unusual for a first misdemeanor offense, especially in light of my

previous 15 years of award-winning evaluations.  I therefore seek this court's assistance

to limit the (ever-expanding) punishment imposed by the chaplain's special court-martial

conviction, to be restricted within the scope of Navy's own rules, and to prevent "cruel

and unusual punishment" and "double-jeopardy."

      12.  The Defendant concedes our argument that "COCINST 1110.1G does not

specifically state that the Chief of Chaplains is to use a CARE board when considering a

request for a change of endorsement."  But then he attempts to argue, "While true, that

does not render the use of a CARE board improper."  This argument is highly incredible,

and the defendant has provided no discovery to prove their allegation.  The use of a

CARE board is highly improper, and deprives the plaintiff of due process rights, because

CARE boards are only authorized to consider the qualifications when hiring new

accessions, and are not authorized by COCINST 1110.1G to consider terminating the

career of a chaplain who has 20.5 years of military experience.  Furthermore, the fact this

CARE board is composed entirely of chaplains, especially those exact same senior

chaplains against whom I've has filed whistleblower complaints, rendering the process

religiously partial, since those senior chaplains seek to impose a non-sectarian, Unitarian,

Pluralistic religion upon junior chaplains during their review.  The standard, proper, and

fair method to terminate an officer's career is by a "Show Cause Review Board" (which

proper board I was denied, while all other experienced officers in my position are

granted), at which I can call witnesses, present evidence, appear in person, and hire a

lawyer to represent me, appealing to an impartial board of religiously neutral line

officers, instead of religiously biased chaplains.  My due process rights were therefore

abrogated.

13.  The Defendant has not provided any discovery to support their statement that that CARE boards have been convened to recertify other chaplains, citing an affidavit by Ms. Berto, which conflicts with data the Navy has provided to our statistician Dr. Leuba. The inconsistencies in the data demand this court grant our motion for further discovery. But even if there were no inconsistencies, and even if other chaplains were considered by CARE boards, this would only prove the Navy has repeatedly violated their own rules by convening such boards, when the defendant concedes that "COCINST 1110.1G does not specifically [authorize] the Chief of Chaplains is to use a CARE board when considering a request for a change of endorsement."  Indeed, <u>CARE boards are only authorized by instruction to consider new applicants</u>, when I had already been a chaplain many years, and so they violated my right to due process and equal treatment under the law.

14.  The Defendant wrongly argues the Secretary of the Navy has "discretion" to impose a non-sectarian, Unitarian, Pluralistic religion upon all its chaplains, then terminate those chaplains who refuse to comply.  To whatever degree this court finds the Secretary has discretion in personnel matters, or religious matters, I hereby assert all of his unfavorable decisions about me were arbitrary, capricious, an abuse of discretion, or not otherwise in accordance with the law.

15.  Defendant finally concedes we're arguing for a First Amendment retaliation claim, and we agree this court must examine four factors:

A)  First, Plaintiff must show that he "spoke on a matter of public concern."

This is easily done, since I was not only praying "in Jesus name" in public (in uniform), I also made protected whistleblower speeches (in civilian clothes) about my right to pray in Jesus name, and filed many formal whistleblower complaints to Congress and the

President, complaints for which I was later punished by the Navy who conducted open reprisals.

B) Second, "the court must consider whether the government's interest in promoting efficient public service outweighs the plaintiff's interest, as a citizen, in commenting upon matters of public concern, or that of potential audiences in hearing what [he] has to say." The Navy's censorship of prayers offered "in Jesus name" cannot be intended to promote the efficient public service, nor can the Navy punish the chaplain for his formal whistleblower complaints of religious harassment, complaints made in his off-duty capacity as a private citizen, whistleblower speech specifically protected by DoDD 7050.6 and 10 USC 1034. It also cannot be in the Navy's best interest to violate the First Amendment rights of their chaplains, or violate the Religious Freedom Restoration Act.

C) Third, Plaintiff must show that his speech "was a substantial or motivating factor in prompting the retaliatory act of which [he] complains"; This is easily done, just by reading Captain Pyle's downgraded evaluation, accusing me of "lacking military bearing" (which evaluation the defendant admits is directly causing his separation and denial of recertification), and further explained in Captain Crow's 28 Feb 06 letter of caution (Exhibit A), which accuse me of "insubordination and disdain" and "lack of military bearing" because he claimed I wasn't allowed to report to the President and Congress that religiously abusive senior naval officials had violated the constitution when they censored and punished my prayers and sermons.

D) "Lastly, the employer should have the opportunity to show, by a preponderance of the evidence, that it would have taken the same action even in the absence of the protected conduct." This is moot, since the employer has never documented performance problems about me, unless they were related to my prayers, sermons, or protected

As stated before, this court has jurisdiction under the Whistleblower Protection Act, and the Religious Freedom Restoration Act, as well as the First Amendment.

16.     Lacking proper discovery, it remains to be seen whether this court is willing to challenge the special-court martial conviction, but even if it doesn't, this court can certainly undertake a parallel examination to prevent my commanding officer from giving (and enforcing by this separation) unlawful orders that prohibit my freedom of religious expression in uniform.  Even today, the Navy has issued standing orders (and is still enforcing those orders) signed by Captain Pyle on 16 Dec 05, directing me to stop praying in uniform whenever news media might be present, orders which Navy lawyers admitted on 3 Jan 06 and 6 Jan 06 were unlawfully overbroad and religiously restrictive, orders which I appealed to the President (and was punished for complaining), which religious orders have still never been rescinded, and which religiously restrictive orders were disobeyed only at my peril at court-martial.  The Government cannot order a chaplain to stop praying in uniform, unless they violate their own Naval Uniform Regulations 6405 which states:  "CHAPLAINS.  Chaplains have the option of wearing their uniform when conducting worship services and during the performance of rites and rituals distinct to their faith groups."  And yet this order was issued, and enforced at court-martial under the authority of the (now rescinded) SECNAVINST 1730.7C, and so the Navy has literally criminalized my religious speech, already punishing me for praying in Jesus name in uniform in the presence of news media, and now terminating my career because of  my religious expression.

Even if this court didn't have jurisdiction to overturn the special court-martial, this court certainly has jurisdiction to stop the Navy from issuing orders that prohibit

praying in uniform, and stop the Navy from denying my recertification because I said a public prayer in uniform. That jurisdiction is clearly spelled out in RFRA.

17. The Defendant has not provided any discovery to support their statement that "even if the claims against his superior officers were well-plead allegations of First Amendment retaliation, '[a] single past instance of exposure to illegal conduct is insufficient to establish standing for injunctive relief if there are no 'continuing, present adverse effects.'" All the evidence we have indicates that continuing, present, and adverse effects are ongoing, irreparably harming me and terminating my career.

18. The Defendant stipulates for us, that "the decision to rescind SECNAVINST 1730.7C leaves individual commanders with the power to determine the policy for including religious elements at command functions." But we strongly disagrees that any such lawful policy exists, since it would contradict 10 USC 6031. (In practice, however, the Navy enforces their unlawful policy of the 1998 prayer memo signed by then Chief of Chaplains Holderby, pressuring chaplains to pray "non-sectarian" prayers.) We concede only that commanders may determine IF OR IF NOT a religious element should be included in command sponsored events. But once the commander has decided to include (or not include) a religious element, his involvement ceases. He may not favor those chaplains who pray non-Christian prayers over those who pray Christian prayers, nor may he later punish a chaplain who, after being invited to pray, decides to pray a Christian prayer. But this is exactly what Captain Carr did to me. He invited me to preach a Christian sermon, then punished me for the content of that sermon, because it was too Christian. No! If a commander invites a chaplain to speak, he does so knowing full well the chaplain prays as a representative of his civilian bishop endorser, not as a representative of the command, and is therefore entitled to pray in according to the

11

manner and forms of his own church, according to statute.  Any Navy policy that now empowers commanders is novel, and contradicts the spirit and intent of 10 USC 6031.

19.  The Defendant wrongly contends "Plaintiff cannot demonstrate that his commander would adopt the same policy concerning the use of nonsectarian prayers at command functions.  But that is exactly what he must do to allege a constitutional violate concrete enough to support federal court jurisdiction."   But we have already demonstrated this, in fact Navy investigators (11 Jan 06 Ruehe decision) have stipulated this is exactly what Captain Carr did when downgrading my 2005 evaluation, which was now considered by the CARE board along with my "entire service record" when deciding to deny recertification and terminate my career.  And so defendant here actually stipulates our complaint is now "concrete enough to support federal court jurisdiction."

20.  Defendant wrongly claims that "These challenges are nothing less than a frontal assault on the military's commitment to  asking its chaplains to function in a pluralistic religious environment. See DoDI 1304.28 ¶ 6.1.3 (Religious Ministry Professionals must be "willing to function in a pluralistic environment . . . and to support directly and indirectly the free exercise of religion by all members of the Military Services, their family members, and other persons authorized to be served by the military chaplaincies").  But I strongly advocated for members of other faiths, to enjoy the same freedom of religious expression he wanted for himself.  For example, he advocated so strongly for his Orthodox Jewish Sailor to have Kosher meals, he caused a stir at headquarters, to his own detriment.  I do not challenge the pluralistic environment in which the chaplain must function, I only challenge the Navy's interpretation that their form of "pluralism" somehow requires chaplains water-down his prayers to pray "non-sectarian, Unitarian, Pluralistic" prayers.  The government cannot establish one non-

sectarian religion for all chaplains and all Sailors, nor can they pressure or force all chaplains to pray to one government god.  Instead, the chaplain and the Navy should facilitate a diversity of religious expression, allowing Sailors and chaplains of many faiths to "take turns" and "share the prayer" and share the public microphone, just like I proposed to Captain Carr, but Captain Carr disapproved.

21.  Defendant wrongly claims Plaintiff "is alleging, in essence, that his religion requires him to proselytize at all official command functions."  But I have alleged no such thing.  I only state the obvious, that when Christian chaplains are invited to conduct public worship, or say a public prayer, we are bound by religious vows to pray in a Christian manner.  To be excluded because of my Christian faith, when other chaplains who pray to the government's "non-sectarian" god are routinely invited to pray, proves the Navy has favored and established their own religion, while excluding Jewish chaplains who pray to Adonai, and Muslim chaplains who pray to Allah, and Catholic chaplains who pray to the Trinity, and Chaplain Klingenschmitt who prays "in Jesus name."  The obvious solution is to include all faiths, and let chaplains and Sailors take turns, freely expressing a diversity of religious viewpoint.

22.  The Navy has not provided any discovery to the contrary, in fact they continue to hide the evidence in their possession that could further prove my allegations.

23.  This Navy inconsistency and confusion were compounded by Chief of Navy Chaplains RADM Lou Iasiello's deception to the Washington Post on 30 Aug 05, when he said, "We don't direct how a person's going to pray. Because everyone's own denomination or faith group has certain directives or certain ways of doing things, and we would never -- it's that whole separation-of-church- and-state thing -- we would never

want to direct institutionally that a person could or couldn't do something." So now even Chaplain Iasiello admits the Navy policy of non-sectarianism violates the Constitution.

24.  Defendant properly repeats our claim, when stating "It is important to note that Plaintiff is not alleging that any prayer at a command ceremony – even if non-sectarian – violates the Establishment Clause. Plaintiff does not seek to end all prayer at command functions but, instead, seeks to be able to offer explicitly sectarian ones." While I do not seek to end public prayer, I do only seek the same equal opportunity and equal access rights afforded other chaplains, and other Sailors. If a commander opens the public forum for one religion, he must open the microphone to free and equal expression of all diverse religions, without favoritism. Commanding Officers have great power and rank, which is precisely the reason they must be restrained by the courts from giving religious orders. The Navy has routinely refused to restrain commanders from giving religious orders, in fact they defend the commanders who punish religious expression, and therefore I very respectfully call upon this honorable court to intervene.

25.   I declare under penalty of perjury under the laws of the United States that this is my best recollection of the sum and substance my understanding of this litigation to date. I believe that the forgoing is true and correct as of this date, January 4, 2007.

_____
Chaplain Gordon James Klingenschmitt



**DEPARTMENT OF THE NAVY**
NAVAL STATION NORFOLK
1530 GILBERT STREET SUITE 2000
NORFOLK VA 23511-2722

IN REPLY REFER TO:

1626
Ser N01L/0204
28 Feb 06

From:   Commanding Officer, Naval Station Norfolk
To:     LT Gordon J. Klingenschmitt, CHC, USNR

Subj:   NONPUNITIVE LETTER OF CAUTION

Ref:   (a) MILPERSMAN 1611-010
       (b) JAG Manual, section 105(b)
       (c) R.C.M. 306(c)(2), Manual for Courts-Martial
           (2005 ed.)
       (d) Manual for Courts-Martial (2005 ed.)
       (e) Public statement made by LT Gordon J.
           Klingenschmitt, CHC, USNR, on Internet website
           www.persuade.tv IRT Chief of Navy Chaplains
           Official Statement on Public Prayer in the Navy

1.  This Nonpunitive Letter of Caution is issued per references
(a)-(c) to discuss observed deficiencies in your performance
while staff chaplain at Naval Station Norfolk.

2.  Some of your recent behavior and actions have been in
violation of the Uniform Code of Military Justice (UCMJ),
Article 89, Disrespect toward a Senior Commissioned Officer.
Pursuant to reference (d), disrespect is defined as the
following:

    "Disrespectful behavior is that which detracts from the
respect due the authority and person of a superior commissioned
officer.  It may consist of acts or language, however expressed,
and it is immaterial whether they refer to the superior as an
officer or as a private individual.  Disrespect by words may be
conveyed by abusive epithets or other contemptuous or
denunciatory language.  Truth is no defense."

3.  Reference (e) is a statement you posted on your publicly
accessible website, www.persuade.tv, in rebuttal to the Chief of
Navy Chaplains Official Statement on Public Prayer in the Navy.
Your disagreement with military policy may be discussed in such
a public forum, but as a Naval Officer, you must always ensure
proper military respect.  Your rebuttal remarks use intemperate

Subj:  NONPUNITIVE LETTER OF CAUTION

language directed toward and in reference to senior Navy
leadership.  Examples of disrespectful comments you made in
reference (e) include:

    a.  "Mr. President, will you protect our right to pray
publicly in Jesus [sic] name in the daylight, without punishment
by senior chaplains and commanding officers, who routinely
censor and punish our prayers?  Did anyone swear to defend the
Constitution?"  This comment is not limited to disagreement with
Navy policy.  In asking "Did anyone swear to defend the
Constitution?", you personally attack senior chaplains and
commanding officers, accusing them of failing to uphold their
commitment to the oath of service.  It is immaterial that you
pose the accusation as a question.  The tone of your question
clearly impugns your senior leadership's honor and is
contemptuous of their Naval service.

    b.  "But today Chaplain Iasiello takes a black-magic marker
to the Constitution, entirely blots out the First Amendment, and
assumes HIS unlawful authority holds more power than Federal Law
since 1860."  This comment is not limited to an allegation that
Navy policy violates the law.  You show disdain and
insubordination toward a specific superior commissioned officer
by accusing him of personally disregarding the Constitution and
considering himself above the law.

    c.  "MR. PRESIDENT, HOW LONG WILL YOU LET YOUR ADMIRALS RUN
ROUGH-SHOD OVER OUR FAITH? WHEN SIR, WILL YOU DEFEND THE
CONSTITUTION YOU SWORE TO UPHOLD? WHEN WILL YOU ORDER THEM TO
OBEY THE LAW?"  This statement also is not limited to
allegations that Navy policy is not in accordance with the law.
Your selection of words "run rough-shod over our faith" displays
contempt toward senior commissioned officers and denounces their
character.  You have also shown marked disrespect toward the
President of the United States by accusing him of failing to
fulfill his oath of service and not upholding and enforcing the
law.

Discussion of policy is conduct separate and distinct from
disrespectful demeanor and language toward senior commissioned
officers.  Disrespect in any situation is not necessary, even to
express the most vehement disagreement with policy.  Regardless

2

Subj:   NONPUNITIVE LETTER OF CAUTION

of the misconduct you currently allege senior officers to have committed, there is no excuse or defense for failing to maintain proper respect.

4.   You have also, on numerous occasions, failed to use the chain of command properly to route official correspondence and communications.  Most recently, on 16 February 06, you completely by-passed your Division Officer, Department Head, and Executive Officer, by simply dropping off official correspondence at the Naval Station Quarterdeck.  By failing to utilize their levels in the chain of command, you not only completely disregard proper procedures, but also detract from the respect due the authority and persons of three superior commissioned officers.

5.   Corrective Action.  You are to remove all disrespectful language on your publicly accessible website that refers directly and indirectly to senior commissioned officers and the President of the United States.  This includes but is not limited to the above examples.  You are to complete this within five calendar days of receipt of this letter.  If you do refer to senior commissioned officers in a public statement, you will, as is required of Naval personnel at all times, maintain proper standards of respect and comportment.  Further, you will utilize your chain of command properly in all future correspondence, respecting both their authority and persons.  Further violations of disrespect will not be tolerated.

6.   This letter provides cautionary counseling and directs you to correct a specific violation of the UCMJ.  As a Naval Officer with 14 years of military service, you should possess the sound judgment required to distinguish respectful from disrespectful language and action.  Exercise the kind of quality judgment expected of a Naval Officer of your paygrade and years of service.  The chain of command is available at all times to assist you in correcting the deficiencies identified above.

W. W. CROW
By direction

3