# UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| CHAPLAIN GORDON JAMES KLINGENSCHMITT, | ) ) ) | |
|  | ) | |
| Plaintiff, | ) | |
|  | ) | |
| v. | ) | Civil Action No. 06-01832 (HHK) |
|  | ) | |
| DONALD C. WINTER | ) | |
| In his Official Capacity as Secretary, | ) | |
| DEPARTMENT OF THE NAVY, | ) | |
|  | ) | |
| Defendant. | ) | |
|  | ) | |

## DEFENDANT'S REPLY IN SUPPORT
## OF ITS MOTION TO DISMISS

PETER D. KEISLER
Assistant Attorney General

JEFFERY A. TAYLOR
United States Attorney

VINCENT M. GARVEY
Deputy Branch Director

MICHAEL P. ABATE
Attorney, Civil Division
U.S. Department of Justice
P.O. Box 883
20 Massachusetts Ave., N.W., Room 7302
Washington, D.C. 20530
Telephone: (202) 616-8209

Attorneys for Defendants

Of Counsel:
Lieutenant Commander Thomas Leary
Lieutenant Katy Pasieta
Office of the Judge Advocate General
Department of the Navy
Washington Navy Yard, Bldg 33
1322 Patterson Ave., S.E., Suite 3000
Washington, D.C.  30274-5066

<u>**TABLE OF CONTENTS**</u>

<u>**PAGES**</u>

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

I.     This Court Lacks Jurisdiction to Entertain Plaintiff's Free
Exercise, RFRA, and Establishment Clause Challenges . . . . . . . . . . . . . . . . . . . . 3

     A.     Plaintiff Lacks Standing to Bring Free Exercise, RFRA,
and Establishment Clause Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

          1.     Plaintiff Cannot Demonstrate an Injury-In-Fact . . . . . . . . . . . . . 5

          2.     Plaintiff Cannot Show Redressability . . . . . . . . . . . . . . . . . . . . . 6

          3.     Plaintiff Does Not Address Defendant's
Standing Arguments . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

     B.     Plaintiff's Free Exercise, RFRA, and Establishment
Clause Claims Are Moot . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

     C.     Plaintiff's Free Exercise, RFRA, and Establishment
Clause Claims Would Fail To State A Claim Upon Which
Relief Could Be Granted Even if This Court Had Jurisdiction
to Consider Them . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

II.     Plaintiff's Challenge to His Separation Proceedings Fails to State
a Claim Upon Which Relief Can be Granted . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

     A.     Plaintiff's Complaint Attacks Only the Separation
Proceedings, Not the Secretary's Ultimate Decision to
Separate Him From Service . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

     B.     Defendant's Arguments Concerning the Correct Interpretation
of Controlling Navy Regulations Are Not Factual Assertions . . . . . . . . . 14

     C.     Plaintiff Was Not Entitled to Automatic Acceptance of His
New Endorsement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

     D.     The Navy's Use of a CARE Board Was Not Improper . . . . . . . . . . . . . 18

1.     Navy Regulations Did Not Prohibit the Use of a
CARE Board . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

2.     Plaintiff's New Arguments About the Substance of
the CARE Board's Review Should be Rejected . . . . . . . . . . . . 19

E.     Based on the Allegations in the Complaint, Plaintiff's
Challenges to His Separation Proceedings Should Be
Dismissed Under Rule 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

III.     Plaintiff's Complaint Does Not State Either an Equal Protection
Challenge or a Claim Under Any Whistleblower Protection Provision . . . . . . . 22

A.     Plaintiff's Complaint Does Not Allege a Violation of the
Equal Protection Clause . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

B.     Plaintiff's Complaint Does Not Seek Relief Pursuant to Any
Whistleblower Protection Provision . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

## TABLE OF AUTHORITIES

**CASES**                                                                                          **PAGES**

\* Allen v. Wright, 468 U.S. 737 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3, 4

Baker v. England, 397 F. Supp. 2d 18 (D.D.C. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  20

Bolling v. Sharpe, 347 U.S. 497 (1954) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  23

Car Carriers, Inc. V. Ford Motor Co.,
    745 F.2d 1101, (7th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

City of Los Angeles v. Lyons, 461 U.S. 95 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5, 6

Darby v. Cisneros, 509 U.S. 137 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  20

EEOC v. St. Francis Xavier Parochial Sch.,
    117 F.3d 621 (D.C. Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Elk Grove Unified Sch. Dist. v. Newdow,
    542 U.S. 1 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Fernandors v. District of Columbia,
    382 F. Supp. 2d 63 (D.D.C. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  24

Flast v. Cohen, 392 U.S. 83 (1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4

\* Henderson v. Kennedy, 253 F.3d 12 (D.C. Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

Jerome Stevens Pharm., Inc. v. Food & Drug Admin.,
    402 F.3d 1249 (D.C. Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10

\* Jung v. Ass'n of American Med. Coll.,
    300 F. Supp. 2d 119 (D.D.C. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14, 19, 23, 25

Kreis v. Secretary of Air Force,
    866 F.2d 1508 (D.C. Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  20

Larsen v. U.S. Navy, 346 F. Supp. 2d 122 (D.D.C. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . .  7

\* Lujan v. Defenders of Wildlife, 504 U.S. 555 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . .  3, 4, 5

Nichols v. Truscott, 424 F. Supp. 2d 124 (D.D.C. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

O'Shea v. Littleton, 414 U.S. 488 (1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Orloff v. Willoughby, 345 U.S. 83 (1953) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Papasan v. Allain, 478 U.S. 265 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Renne v. Geary, 501 U.S. 312 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Schlesinger v. Reservists Comm. to Stop the War,
      418 U.S. 208 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Trudeau v. Federal Trade Comm'n,
      456 F.3d 178 (D.C. Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

* Valley Forge Christian Coll. v. Americans United for
      Separation of Church and State, Inc.,
      454 U.S. 464 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4

* Veitch v. Danzig, 135 F. Supp. 2d 32 (D.D.C. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . 6, 8, 22

* Veitch v. England, __ F.3d __, 2006 WL 3408196
      (D.C. Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6, 19

Warth v. Seldin, 422 U.S. 490 (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Washington v. Davis, 426 U.S. 229 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Webman v. Federal Bureau of Prisons,
      441 F.3d 1022 (D.C. Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Worth v. Jackson, 451 F.3d 854 (D.C. Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

## CONSTITUTIONAL AND STATUTORY PROVISIONS

U.S. Const. art. III, § 2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4

5 U.S.C. §552a(g)(1) (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

5 U.S.C. § 706(2)(A) (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

10 U.S.C. § 1552(a) (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

10 U.S.C. § 5011 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

10 U.S.C. § 5013 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

10 U.S.C. §5031 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

10 U.S.C. §5033 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

10 U.S.C. § 14502(g) (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

## REGULATIONS

32 C.F.R. § 700.301 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

32 C.F.R. § 700.403 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

32 C.F.R. § 701.108 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

COCINST 1110.1G . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

DoDI 1304.28 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16, 17, 21

OPNAVINST 1120.9 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16, 17, 18

SECNAVINST 1730.7C . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

# INTRODUCTION

Plaintiff asserts three species of claims in his Complaint: (1) generalized grievances against the Navy's religious policies and practices; (2) allegations of past wrongdoing by his superior officers; and (3) claims that the Navy violated its own rules and retaliated against Plaintiff when it instituted separation proceedings against him. This court lacks jurisdiction to consider the first two categories of claims, and therefore must dismiss them under Rule 12(b)(1). The final category, which rests on an erroneous interpretation of Navy regulations, must be dismissed under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

First, Plaintiff raises generalized grievances against the Navy's policies and practices of encouraging chaplains to function in a pluralistic environment (including an attack on the now-rescinded Navy regulation that required religious elements at official command functions to be non-sectarian). He asserts that the Navy violates the Free Exercise Clause, the Religious Freedom Restoration Act ("RFRA"), and the Establishment clause. Plaintiff lacks standing to maintain any of these challenges, however. Plaintiff, who will be dismissed from Navy service on January 31, 2007,[1] and has not been performing any chaplain duties since he lost his ecclesiastical endorsement last September, is no longer subject to these policies and practices. He simply cannot allege the type of ongoing injury required to confer Article III standing.

Second, Plaintiff alleges past retaliation by his superior officers. As this court recognized in denying Plaintiff's request for a preliminary injunction, such allegations of past wrongdoing

---

[1] Plaintiff attempted to prevent his separation by filing a Motion for a Temporary Restraining Order and/or a Preliminary Injunction. On November 1, 2006, after an emergency hearing, this court denied Plaintiff's request for a TRO. On January 4, 2007, after full briefing on the relevant issues, this court also denied Plaintiff's request for a preliminary injunction. As this court has denied Plaintiff's requests for preliminary equitable relief, Plaintiff cannot prevent his pending separation.

are insufficient to support a request for prospective relief.  Moreover, because Plaintiff's claims for compensatory relief are barred by sovereign immunity – as he now concedes – he has stated no cause of action that would allow him to obtain relief on these allegations of past wrongdoing. This court should dismiss this category of claims for lack of jurisdiction under Rule 12(b)(1).

Finally, Plaintiff alleges that the Navy improperly instituted separation proceedings against him.  He maintains that those separation proceedings violated the Navy's own regulations, and that the proceedings occurred in retaliation for Plaintiff's protected speech and conduct.  These claims, which all start from the false premise that the Navy was required to automatically approve Plaintiff's new ecclesiastical endorsement, should be dismissed under Rule 12(b)(6).  As defendant has repeatedly demonstrated, the Navy was required to institute these separation proceedings after Plaintiff voluntarily resigned his ecclesiastical endorsement.

Defendant's Motion to Dismiss demonstrated these jurisdictional and legal deficiencies in Plaintiff's Complaint.  Plaintiff's lengthy Opposition to that Motion does nothing to cure the deficiencies or otherwise rebut Defendant's primary arguments.  Instead of addressing the jurisdictional deficiencies of his Complaint, Plaintiff attempts to elide those flaws by improperly conflating the three separate species of allegations outlined above.  And, instead of rebutting Defendant's arguments concerning the flaws in his legal analysis, Plaintiff attempts to recharacterize the claims asserted in his complaint, and to pass off his various legal arguments as "factual assertions" that may not be resolved on a motion to dismiss.  Indeed, Plaintiff goes so far as to try and convince this court that Defendant is really seeking summary judgment.  Not so.

This court should reject Plaintiff's myriad attempts at obfuscation, and should grant Defendant's Motion to Dismiss in its entirety.

## ARGUMENT

I. **THIS COURT LACKS JURISDICTION TO ENTERTAIN PLAINTIFF'S FREE EXERCISE, RFRA, AND ESTABLISHMENT CLAUSE CHALLENGES[2]**

"When a motion to dismiss under Rule 12(b)(1) has been filed, the plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence." Nichols v. Truscott, 424 F. Supp. 2d 124, 132 (D.D.C. 2006) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992)). Whether a federal court has jurisdiction over a case depends on "[t]hree inter-related judicial doctrines – standing, mootness, and ripeness." Worth v. Jackson, 451 F.3d 854, 855 (D.C. Cir. 2006) (citing U.S. Const. art. III, § 2.). Because Plaintiff can neither demonstrate that he has standing to bring his generalized Free Exercise, RFRA, and Establishment Clause claims against the Navy, nor show that these claims are not moot, this court must dismiss these portions of this action under Rule 12(b)(1).

A. **PLAINTIFF LACKS STANDING TO BRING FREE EXERCISE, RFRA, AND ESTABLISHMENT CLAUSE CLAIMS**

Article III's standing requirement assures that the federal courts "exercise power only in the last resort, and as a necessity," Allen v. Wright, 468 U.S. 737, 752 (1984) (internal quotation marks omitted), and that "the legal questions presented to the court will be resolved, not in the rarified atmosphere of a debating society, but in a concrete factual context conducive to a realistic appreciation of the consequences of judicial action," Valley Forge Christian Coll. v. Americans United for Separation of Church and State, Inc., 454 U.S. 464, 472 (1982). At an

---

[2] Defendant maintains that Plaintiff's Complaint failed to properly allege an Establishment Clause challenge. See Def. Mot. at 33 n.17 (noting that none of the "counts" in Plaintiff's complaint referred to the Establishment Clause). Plaintiff does not refute that contention. Nevertheless, and without waiving the argument, Defendant's Reply will explain why an Establishment Clause claim would have to be dismissed even if it was asserted.

"irreducible constitutional minimum," the requirement of standing contains three elements. Lujan, 504 U.S. at 560. First, the plaintiff must have suffered an "injury-in-fact"—an "invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." Id. (internal quotation marks and citations omitted). Second, there must be a "causal connection between the injury and the conduct complained of." Id. (internal quotation marks omitted). Third, "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Id. at 561 (internal quotation marks omitted).

The Supreme Court has "repeatedly held that an asserted right to have the Government act in accordance with law is not sufficient, standing alone, to confer jurisdiction on a federal court." Allen, 468 U.S. at 754; see also Valley Forge, 454 U.S. at 483 ("Such claims amount to little more than attempts 'to employ a federal court as a forum in which to air . . . generalized grievances about the conduct of government.'") (quoting Flast v. Cohen, 392 U.S. 83, 106 (1968)). Thus, Article III's standing requirements are not relaxed solely because Plaintiff wishes to advance constitutional claims. See, e.g., Valley Forge, 454 U.S. at 487 ("[A] claim that the Government has violated the Establishment Clause does not provide a special license to roam the country in search of governmental wrongdoing and to reveal [such] discoveries in federal court."). Indeed, the Supreme Court has held precisely the opposite – that courts must require strict adherence to standing requirements when constitutional questions are presented because of the "deeply rooted commitment not to pass on questions of constitutionality unless adjudication of the constitutional issue is necessary." Elk Grove Unified Sch. Dist. v. Newdow, 542 U.S. 1, 11 (2004) (internal quotation marks omitted); see also Schlesinger v. Reservists Comm. to Stop the War, 418 U.S. 208, 221 (1974) ("[W]hen a court is asked to undertake constitutional

adjudication, the most important and delicate of its responsibilities, the requirement of concrete injury further serves the function of insuring that such adjudication does not take place unnecessarily.").

### 1.    Plaintiff Cannot Demonstrate an Injury-In-Fact

To satisfy Article III, Plaintiff must demonstrate a concrete and particularized injury that is actual or imminent, not speculative or hypothetical. Lujan, 504 U.S. at 560.  A particularized injury is one that directly affects a plaintiff "in a personal and individual way."  Id. at 561 n.1. Moreover – and importantly for this case – to obtain prospective injunctive relief it is not enough that a plaintiff may have suffered a past injury.  See City of Los Angeles v. Lyons, 461 U.S. 95, 102 (1983); O'Shea v. Littleton, 414 U.S. 488, 495–96 (1973) ("Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief, however, if unaccompanied by any continuing, present adverse effects.").[3]  Rather, Plaintiff must show that he is "immediately in danger of sustaining some direct injury" because of the Navy's policies. Lyons, 461 U.S. at 102.

Plaintiff, who was ordered to stop performing Navy chaplain duties when he lost his ecclesiastical endorsement, see Compl. ¶ 11, and will be separated from the Navy on January 31, 2007, is no longer subject to the Navy's allegedly unconstitutional or illegal religious practices or policies.  Hence, he has no standing to challenge them.

In a closely analogous case, Veitch v. England, __ F.3d __, 2006 WL 3408196 (D.C. Cir. 2006), the D.C. Circuit held that a lawful separation from Navy service deprives a chaplain of standing to allege Free Exercise, RFRA, and Establishment Clause violations against the

---

[3] Allegations of past harm are also insufficient to warrant a declaratory judgment.  See Def. Mot. at 21-22.

religious policies and practices governing the Navy Chaplain Corps.  In that case, a Navy chaplain attacked both his separation and the Navy's generalized policies concerning religious practice by Navy Chaplains.  The D.C. Circuit, after concluding that Rev. Veitch could not succeed in reversing his separation, held that he lacked standing to challenge policies that no longer applied to him. See Veitch, __ F.3d __, 2006 WL 3408196, at *7 ("Once determining that appellant had voluntarily resigned – a determination we affirm – the district court . . . held that Veitch lacked standing to pursue his broadside constitutional attack on the Navy Chaplain Corps's pluralism policy.  We quite agree with the district court on the assumption that the resignation stands."); see also Veitch v. Danzig, 135 F. Supp. 2d 32, 37-38 (D.D.C. 2001) ("The loss of First Amendment freedoms in this case took place, if at all, approximately two years ago. A preliminary injunction will not remedy any impending harm to plaintiff's First Amendment interests today for there is none.  Now out of uniform, plaintiff can preach as he chooses, unconstrained by military discipline or protocol.").

The same logic applies in this case.  For the reasons stated infra, Plaintiff's challenge to his separation proceedings fails under Rule 12(b)(6).  Thus, Plaintiff, who will be separated from Navy service on January 31, 2007, will not be able to obtain reinstatement as a Navy chaplain via this litigation.  As a consequence, Plaintiff is not "immediately in danger of sustaining some direct injury" to the Free Exercise Clause, RFRA, or Establishment Clause rights he advances in this action.  Lyons, 461 U.S. at 102.

### 2.    Plaintiff Cannot Show Redressability

"To survive a motion to dismiss on redressability grounds, a plaintiff must allege facts from which it reasonably could be inferred that, absent the [challenged policy], there is a substantial probability that . . . if the court affords the relief requested, the asserted [injury] will

be removed." <u>Larsen v. U.S. Navy</u>, 346 F. Supp. 2d 122, 133 (D.D.C. 2004) (internal quotation

marks omitted) (quoting <u>Warth v. Seldin</u>, 422 U.S. 490, 504 (1975)).  For the same reasons that

Plaintiff cannot establish injury, he cannot plead redressability.  Plaintiff seeks only declaratory

and injunctive relief on his Free Exercise, RFRA, and Establishment Clause claims.[4]  Because

Plaintiff is no longer serving as a Navy chaplain, and thus is no longer subject to the allegedly

unconstitutional and illegal policies and practices, prospective relief could afford him no remedy

even if he were to win on the merits of these claims.

### 3.    Plaintiff Does Not Address Defendant's Standing Arguments

Although it is Plaintiff's burden to demonstrate that he has standing to bring his Free

Exercise, RFRA, and Establishment Clause claims, he goes to great lengths to avoid doing so.

Indeed, Plaintiff actually attempts to shift the burden of demonstrating that he has standing back

onto Defendant.  He reasons that he must have standing because "it cannot be said beyond any

doubt that the Plaintiff will not continue to suffer retaliation and incur burdens because of his

religious practice of praying in the name of Jesus."  Pls. Opp. at 23.  This gets it precisely

backwards; as Plaintiff is attempting to invoke the court's jurisdiction, it is his burden to prove

that standing exists, not the Navy's burden to prove that it does not.  <u>See</u> <u>Renne v. Geary</u>, 501

U.S. 312, 316 (1991).

Plaintiff also confuses the Navy's standing arguments with its mootness arguments.  In

response to the Navy's contention that he lacks standing because his pending separation renders

---

[4] Plaintiff concedes that he may not obtain damages for any of his alleged constitutional violations.  <u>See</u> Pls. Opp. at 24.  And while plaintiff maintains that he may seek damages for his RFRA claims, that contention is frivolous because, as Plaintiff further concedes, his argument is foreclosed by D.C. Circuit precedent.  <u>Id.</u> at 24-25 (discussing <u>Webman v. Federal Bureau of Prisons</u>, 441 F.3d 1022 (D.C. Cir 2006)).  Plaintiff's cursory assertion that <u>Webman</u> is "contrary to the plain language of RFRA" should be rejected.  <u>See</u> Pls. Opp. at 25.

the Navy's policies inapplicable to him, Plaintiff merely retorts that a 1998 memorandum from the Chief of Chaplains demonstrates that the policies are still in effect.  Even if true (and it is not, for reasons explained infra), this mootness argument is non-responsive to the claim that Plaintiff lacks standing because he is no longer subject to the Navy's policy – regardless of what it is.

Finally, Plaintiff attempts to confuse this court by conflating the three separate species of claims he brings against the Navy.  Plaintiff accuses the Defendant of attempting to "'bootstrap' the separation to its standing argument."  Pls. Opp. at 24.  Although Plaintiff does not explain precisely what he means when employing the phrase "bootstrap," he seems to be suggesting that his separation cannot deprive him of standing to bring his generalized Free Exercise, RFRA, and Establishment Clause challenges because, (Plaintiff believes) those are the very same practices and policies that resulted in his separation.  See id. (arguing that "the validity of the separation and the ability of the Navy to carry out that separation is the very action being challenged and at issue in this case" and "the separation is the very action at issue in this case and the conduct that the Plaintiff seeks to enjoin").  This argument is fatally flawed.

Plaintiff's "bootstrapping" argument is precluded by Veitch itself.  In that case the chaplain similarly claimed that the Navy's allegedly unconstitutional policies resulted in his separation from the Navy.  See Veitch, 135 F. Supp. 2d at 33 (Plaintiff argued his resignation was "induced by unconstitutional demands of his command chaplain and others").  The court, however, dealt first with the arguments concerning that plaintiff's separation – in that case, a constructive discharge claim – before turning to Rev. Veitch's arguments concerning the Free Exercise Clause, RFRA, and the Establishment Clause.  The D.C. Circuit affirmed that analysis.  Plaintiff's contrary argument – that he automatically has standing to challenge the Navy's

pluralism policies because he is also challenging his separation proceedings – is therefore meritless.

Moreover, and even more important, the issues surrounding Plaintiff's separation proceedings are in fact distinct from the issues at the heart of his generalized Free Exercise, RFRA, and Establishment Clause claims. Plaintiff is challenging both (1) the Navy's actions in instituting separation proceedings against him, which he contends violated Navy regulations and were in retaliation for speech protected by the First Amendment, and (2) the Navy's general policy of allegedly establishing a Unitarian religion and allegedly infringing the free exercise rights of all non-Unitarian chaplains. Although Plaintiff wishes to portray one overarching conspiracy to discriminate against his religious beliefs, these are, in fact, distinct arguments. His attempt to obscure the issue by conflating his challenges to the <u>procedures</u> used to separate him – claims for which he does have standing – with his broad constitutional attacks against the Navy's religious policies and practices – which he lacks standing to pursue – must be rejected.

### B.    PLAINTIFF'S FREE EXERCISE, RFRA, AND ESTABLISHMENT CLAUSE CLAIMS ARE MOOT

Even if Plaintiff has standing to challenge the Navy's practice of including non-sectarian religious elements at command functions, his Free Exercise, RFRA, and Establishment Clause claims against that practice were mooted when the Navy repealed the policy which Plaintiff repeatedly attacked in his Complaint. <u>See</u> Def. Mot. at 26-28.[5] Plaintiff nevertheless maintains

---

[5] Plaintiff argues that his generalized constitutional claims attack more than the Navy's policy concerning religious elements at command functions. But, other than that policy, everything else attacked in Plaintiff's complaint concerned past events. <u>See</u> Pls. Opp. at 18-19 (discussing Plaintiff's training at Navy chaplain school, allegedly improper behavior by Captain Carr, and other allegations of past retaliation). Because such past acts cannot form the basis for prospective relief, <u>see</u> Def. Mot. at 21, Defendant confines the mootness discussion to Plaintiff's attack on the policy and practice concerning religious elements at command functions.

that these claims are not moot because "the formal withdrawal [of that regulation] does not affect any aspect of the Plaintiff's requests for relief." Pls. Opp. at 20. This is simply erroneous.

Plaintiff argues that there is an ongoing controversy, despite the rescinding of SECNAVINST 1730.7C. See Pls. Opp. at 21, 23. According to Plaintiff, current Navy regulations only empower a commander to determine whether there should be a religious element at his command function; the content of that religious element, he asserts, is governed by a 1998 memorandum from the Chief of Chaplains embodying the same policy codified in SECNAVINST 1730.7C. Id. at 21-22. This assertion completely ignores not only the plain language of the memorandum ("I cannot tell you what you must do"),[6] but also the Navy's chain of command. To the extent the Navy could constitutionally restrict the content of a religious element, such a policy would necessarily originate from either the Secretary of the Navy, see 10 U.S.C. §§ 5011, 5013 (2000); 32 C.F.R. § 700.301 (detailing the Secretary's responsibilities, including formulation and implementation of policy), or the Chief of Naval Operations, see 10 U.S.C. §§ 5031, 5033 (2000); 32 C.F.R. § 700.403 (detailing the CNO's responsibilities, including carrying "into effect" plans approved by the Secretary and presiding over the Office of the CNO, which includes the Chief of Chaplains). Thus, the memorandum from the Chief of

---

[6] Plaintiff attached this 1998 memorandum as "Exhibit G" to his December 1, 2006 reply brief in support of the motion for an expedited discovery schedule (see docket entry 14-9). As this memorandum is probative of the court's jurisdiction (i.e., mootness), this court may consider it without converting the Motion into one for summary judgment. See Jerome Stevens Pharm., Inc. v. Food & Drug Admin., 402 F.3d 1249, 1253 (D.C. Cir. 2005); Pls. Opp. at 7 ("[T]he district court may consider materials outside the pleadings in deciding whether to grant a motion to dismiss for lack of jurisdiction."). Moreover, because Plaintiff himself has put the memorandum at issue, see Compl. ¶ 48, this court would be free to consider it even on a 12(b)(6) motion. See EEOC v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624 (D.C. Cir. 1997) (in deciding a motion to dismiss under Rule 12(b)(6), a court may consider, inter alia, "any documents either attached to or incorporated in the complaint").

Chaplains – unlike the now-rescinded SECNAVINST 1730.7C, which was issued by the Secretary – does not represent a uniform Navy policy concerning religious elements at command functions.  There simply is no such policy.

### C.    PLAINTIFF'S FREE EXERCISE, RFRA, AND ESTABLISHMENT CLAUSE CLAIMS WOULD FAIL TO STATE A CLAIM UPON WHICH RELIEF COULD BE GRANTED EVEN IF THIS COURT HAD JURISDICTION TO CONSIDER THEM

Defendant's Motion to Dismiss explained why, even if Plaintiff's Free Exercise, RFRA, and Establishment clause claims were properly before this court, they should be dismissed under Rule 12(b)(6).  Defendant did not rely on these 12(b)(6) arguments as the primary basis of its motion but, instead, included them for the court's consideration only if Plaintiff met his burden of demonstrating that the court had jurisdiction over these claims.  See Def. Mot. at 29.  Because Plaintiff has failed to satisfy that burden, this court should dismiss these claims under 12(b)(1) without reaching the 12(b)(6) issues.

Nevertheless, it must be noted that in his attempt to rebut Defendant's Motion, Plaintiff materially misrepresents key portions of Defendant's reasoning.  His arguments are not responsive to Defendant's contentions but are, instead, aimed at straw men of Plaintiff's own creation.  The most obvious misstatement of Defendant's position appears in the portion of the Opposition asserting that Plaintiff has stated a claim under RFRA.  Plaintiff contends that Defendant believes "only an outright prohibition on Chaplains praying in the name of Jesus would constitute" a burden on religious exercise sufficient to satisfy RFRA.  Pls. Opp. at 26. Plaintiff provides no citation to where this argument appears in Defendant's Motion.  Nor could he, for Defendant never advanced such a claim.[7]  Instead, Defendant argued that Plaintiff could

_____

[7] Plaintiff also attacks the Defendant's characterization of the appropriate legal standard under RFRA.  The language that Plaintiff criticizes appears at page 30 of Defendant's motion and

not make out a violation of RFRA because he could not establish that it was a central practice of his religion to have to pray at a Navy command function.  See Def. Mot. at 30-31.  This argument focused not on the degree of the restriction on Plaintiff's prayers but, rather, on the fact that Plaintiff had no right to address the command function in the first place.[8]  Put another way, it is immaterial that Plaintiff claims to have alleged "the need to offer prayers to Jesus and invoke the name of Jesus when he prays." Pls. Opp. at 16.  Even if his Complaint had made such an allegation – a doubtful proposition, because this allegation appears nowhere in the paragraphs Plaintiff cites – that "need" would not be infringed by the Navy's practices and policies.  To allege that the policy of allowing a commander to invite (but not compel) a chaplain to offer a non-sectarian religious element at a command function infringes a religious duty, Plaintiff would in fact have to allege that his religion required him to offer a sectarian prayer at that event.  Cf. Henderson, 253 F.3d at 16 ("[P]laintiffs cannot claim that the regulation . . . prevents them from engaging in conduct their religion requires.  Their declarations do not suggest that their religious beliefs demand that they sell t-shirts in every place human beings occupy or congregate." (internal citations omitted)).  Plaintiff has made no such allegation.

Plaintiff also materially misstates Defendant's position with regard to his Establishment Clause claim.  Plaintiff cursorily dismisses the legislative prayer cases cited by Defendant, claiming that they are consistent with Plaintiff's legal theory.  See Pls. Opp. at 32 ("The Plaintiff

_____

is, in fact, a direct quote from an opinion of the D.C. Circuit.  See Def. Mot. at 30 (quoting Henderson v. Kennedy, 253 F.3d 12, 17 (D.C. Cir. 2001)).

[8] Plaintiff attempts to create a such a right to pray at a command function when he characterizes that speaking opportunity as a "government benefit" to which he is entitled.  See Pls. Opp. at 27.  The cases relied upon by Plaintiff, which concerned exclusively monetary benefits, are inapposite.

also has no quarrel with the point made by the Defendant that the offering of non-sectarian prayer at government functions does not violate the Establishment Clause."). That is not the point Defendant made. These cases illustrate that Plaintiff's claims that the Navy "established" a religion are legal, not factual, assertions. Plaintiff's Establishment Clause arguments seem to rest on the assumption that any non-sectarian or pluralistic religious practice is by definition "Unitarian." See, e.g., Compl. ¶¶ 27-29, 112. But these legislative prayer cases dispel that notion by showing that a non-sectarian prayer is just that – a prayer that does not establish any religion. See Def. Mot. at 34-35. Thus, even if the Complaint properly asserted an Establishment Clause claim, and this court had jurisdiction to entertain it – neither of which is true – that claim would have to be dismissed under Rule 12(b)(6) because it rests on an erroneous legal premise.

## II. PLAINTIFF'S CHALLENGE TO HIS SEPARATION PROCEEDINGS FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

Plaintiff's challenges to his separation proceedings fail to state a claim upon which relief can be granted, and therefore must be dismissed under Rule 12(b)(6). As the Navy was required to institute separation proceedings against Plaintiff after he resigned his ecclesiastical endorsement, Plaintiff simply cannot succeed on the contention that those proceedings violated Navy regulations or represented unconstitutional retaliation for protected speech and beliefs.

### A. PLAINTIFF'S COMPLAINT ATTACKS ONLY THE SEPARATION PROCEEDINGS, NOT THE SECRETARY'S ULTIMATE DECISION TO SEPARATE HIM FROM SERVICE

At the time the Plaintiff filed his Complaint, separation proceedings against him were ongoing. The Secretary had not yet not made a final determination about whether to approve Plaintiff's new ecclesiastical endorsement. A fortiori, then, the Complaint cannot be read to

attack that final determination.  Instead, the Complaint must be read to attack only the Navy's actions in <u>instituting</u> these separation proceedings.

Defendant has repeatedly explained that Department of Defense regulations give the Secretary discretion as to whether he will accept a chaplain's new ecclesiastical endorsement. <u>See, e.g.</u>, Def. Mot. at 22-24 (discussing DoDI 1304.28 ¶ 6.5.3).  Challenges to these types of discretionary determinations must be brought under the Administrative Procedures Act, pursuant to which they are reviewed to determine whether the action was "arbitrary capricious, an abuse of discretion, or otherwise not in accordance with the law."  5 U.S.C. § 706(2)(A).  Because Plaintiff has steadfastly refused to amend his complaint to allege an APA cause of action, <u>see, e.g.</u>, Pls. Opp. at 10-11 (citing inapposite case law about whether constitutional challenges must be made to agencies themselves), this court must disregard any portions of Plaintiff's Opposition that seem to be attacking the Secretary's ultimate decision.

This clarification about what Plaintiff's Complaint attacks is important because it demonstrates that Plaintiff can only reverse his pending separation if he convinces the court that the Navy's decision to institute the separation proceedings was itself improper.  Plaintiff cannot attack the Secretary's reliance on (1) his court-martial, (2) his fitness reports, or (3) his lack of support from the chain of command.  If he wants to put these issues before the court, he will have to amend his complaint; it is not sufficient to simply make such arguments in a brief in opposition to a Motion to Dismiss.  <u>See</u> <u>Jung v. Ass'n of Am. Med. Coll.</u>, 300 F. Supp. 2d 119, 163 (D.D.C. 2004) ("It is 'axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.'") (quoting <u>Car Carriers, Inc. v. Ford Motor Co.</u>, 745 F.2d 1101, 1107 (7th Cir.1984)).

**B.    DEFENDANT'S ARGUMENTS CONCERNING THE CORRECT INTERPRETATION OF CONTROLLING NAVY REGULATIONS ARE NOT FACTUAL ASSERTIONS**

Plaintiff argues that "Defendant's long winded argument can be boiled down to whether Chaplain Klingenschmitt <u>raises a factual question</u> in that Navy Regulations clearly state that the 'chief of chaplains shall . . . Recertify a chaplain's professional qualification upon receipt of a new ecclesiastical endorsement." Pls. Opp. at 12 (emphasis added). In a footnote, Plaintiff goes on to assert that the question on a motion to dismiss is "not what the statute provides, but whether Chaplain Klingenschmitt alleged the violation." <u>Id.</u> n.3. In other words, Plaintiff argues that this court cannot grant Defendant's Motion to Dismiss because the correct interpretation of DoDI 1304.28 and OPNAVINST 1120.9 is a <u>factual question</u> that may only be resolved at the summary judgment stage. To articulate this claim is to refute it. The correct interpretation of a statute or regulation is a question of law, not of fact. Such a question is uniquely suited to resolution on a Rule 12(b)(6) motion because no discovery is needed or warranted. Moreover, because Plaintiff's claim is a "legal conclusion couched as a factual allegation," this court is not "bound to accept [it] as true" for the purposes of deciding this Motion to Dismiss. <u>Trudeau v. Federal Trade Comm'n</u>, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting <u>Papasan v. Allain</u>, 478 U.S. 265, 286 (1986)).[9]

**C.    PLAINTIFF WAS NOT ENTITLED TO AUTOMATIC ACCEPTANCE OF HIS NEW ENDORSEMENT**

_____

[9] Plaintiff advances a similarly frivolous argument when he characterizes as "factual assertions" the Complaint's allegations that "[t]he refusal . . . to recognize the ecclesiastical endorsement . . . is in <u>violation of the operative and controlling instructions</u> of the U.S. Navy," and that "the Defendant has refused to recognize a <u>valid ecclesiastical endorsement</u> . . ." Pls. Opp. at 3 (emphasis added). These claims, too, are legal conclusions about the meaning of Navy regulations.

Plaintiff's attempts to rebut Defendant's interpretation of DoDI 1304.28 and OPNAVINST 1120.9 fall flat. These regulations give the Secretary ultimate discretion over whether to approve a new endorsement submitted by a sitting chaplain that lost his ecclesiastical endorsement, and only require the Chief of Chaplains to undertake the <u>process</u> of recertifying the credentials of a chaplain that obtains a new endorsement. <u>See</u> Def. Mot. at 10-14. Nothing in these regulations required the Secretary to accept Plaintiff's new endorsement.

Plaintiff's rebuttal arguments do little more than restate his opening position. He explains at length that the word "shall," as used in OPNAVINST 1120.9 ¶ 5(b)(3)(a), is a "mandatory term." <u>See</u> Pls. Opp. 12-13. This argument is beside the point, because what the parties really dispute is the meaning of the word "recertify." Defendant maintains that this word only refers to a <u>process</u> of reevaluating the professional qualifications of a chaplain that obtains a new endorsement. <u>See</u> Def. Mot. at 11-13. Plaintiff does not meaningfully rebut Defendant's arguments that the text and structure of OPNAVINST 1120.9 require such an interpretation. For example, Plaintiff ignores the fact that his interpretation of ¶ 5(b)(3)(a) of OPNAVINST 1120.9 would render meaningless ¶ 5(b)(3)(b), which requires the Chief of Chaplains, after "recertify[ing]" a chaplain's professional qualifications, to further recommend to the Chief of Navy Personnel whether that chaplain's continuance would suit the "needs of the Navy." Nor does Plaintiff explain why OPNAVINST 1120.9 should be interpreted to implicitly overturn the regulation on which it is based – DoDI 1304.28.[10] Finally, even though Plaintiff argues that

_____

[10] Plaintiff's only reference to DoDI 1304.28 is his claim that DoDI 1304.28 requires the Navy to inform a chaplain who loses his ecclesiastical endorsement that he may seek another. <u>See</u> Pls. Opp. at 9. Plaintiff claims that Defendant entirely ignores this provision and, that this alleged oversight "raises questions as to [Defendant's] motives throughout the rest of the brief." <u>Id.</u> This unjustified <u>ad hominem</u> attack on Defendant's motives is inappropriate. Defendant did in fact note the Navy's obligation to inform a chaplain that loses an endorsement of the option to "seek another

"certify" and "recertify" have different dictionary definitions (in response to Defendant's argument that Plaintiff's interpretation would impermissibly give the same word two different meanings), his attempt to distinguish those meanings only strengthens Defendant's argument. Plaintiff observes that "recertify" means "to certify again." Pls. Opp. at 13. Because the word "certify," as used in OPNAVINST 1120.9, requires the Chief of Chaplains to undertake a process, the command "to certify again" must require the Chief of Chaplains to undertake a second process of verifying a chaplain's professional qualifications. Whether or not those qualifications have "change[d]," see id. at 14, is beside the point; OPNAVINST 1120.9 requires that the Chief of Chaplains undertake such a review. That is exactly what the Navy did.

In short, nothing in Plaintiff's Opposition supports his legal conclusion that the Navy was required to accept his new ecclesiastical endorsement from CFGC. Plaintiff's argument that he was never without an endorsement therefore fails as a matter of law. Because DoDI 1304.28 required the Navy to institute separation proceedings against him, all of Plaintiff's challenges to those proceedings – including his claim that the proceedings were instituted in retaliation for protected speech and beliefs – must fail under Rule 12(b)(6). See Def. Mot. 15-18.[11]

---

ecclesiastical endorsement." See Def. Mot. at 3. But even if Defendant had not cited that provision, it would not have mislead the court, because that provision merely gives a chaplain the right to "seek" a new endorsement; it does not create any right to reinstatement. To the contrary, DoDI 1304.28 ¶ 6.5.3 gives the Secretary discretion as to whether to approve that new endorsement. Thus it is Plaintiff, who ignores ¶ 6.5.3, that "failed to fully cite to the most important part of that regulation." Pls. Opp. at 9.

[11] Plaintiff incorrectly states that "the Navy's argument is based on an erroneous assumption that regulations required the Secretary to separate Plaintiff because he switched ecclesiastical endorsement." Pls. Opp. at 14. Defendant has never argued that the Navy was required to separate Plaintiff from service. Defendant has consistently argued that DoDI 1304.28 ¶ 6.5 merely required the Navy to institute separation proceedings against Defendant after he resigned his endorsement. The Secretary could have approved Plaintiff's new endorsement as part of those proceedings. See DoDI 1304.28 ¶ 6.5.3.1. But he was not required to do so, as Plaintiff contends.

### D.    THE NAVY'S USE OF A CARE BOARD WAS NOT IMPROPER

#### 1.    Navy Regulations Did Not Prohibit the Use of a CARE Board

As with the arguments concerning OPNAVINST 1120.9, Plaintiff's arguments concerning the use of a CARE board do little more than restate his opening position. Plaintiff claims that the Navy regulations <u>forbid</u> the use of CARE boards in evaluating a sitting chaplain's application for approval of a new endorsement. The only support Plaintiff cites for this legal contention – and it is a purely legal contention – is that COCINST 1110.1G only <u>requires</u> CARE boards to be used for new applicants. Plaintiff simply assumes that the inverse must also be true – that COCINST 1110.1G <u>forbids</u> the use of CARE boards in other circumstances. <u>See</u> Pls. Opp. at 15 ("Under [COCINST] 1110.1G, a [CARE Board] is authorized only to assist the Chief of Chaplains in validating the professional qualifications of all <u>applicants</u> for appointment . . . ."). That assumption is not warranted. The only appropriate legal conclusion that can be drawn from COCINST 1110.1G's silence is – as Plaintiff concedes – that "Navy instructions do not cover the situation that plaintiff is in." Pls. Opp. at 6.

As Navy regulations are silent on the use of CARE boards for sitting chaplains that lose their endorsement and obtain another, Plaintiff has no legal support for his contention that the use of the CARE boards violated those regulations. Nor has Plaintiff cited a single case suggesting that the use of the CARE board has harmed him in any way. Plaintiff therefore has failed to state a claim upon which relief can be granted.

There is simply nothing improper about the use of a CARE board to evaluate the professional qualifications of a chaplain that loses his ecclesiastical endorsement and reapplies with another. It is entirely appropriate for the Navy's regulations to require the Chief of

Chaplains to reexamine the professional qualifications of a chaplain that, for whatever reason, lost his ecclesiastical endorsement.  And there is no reason why the Chief of Chaplains, in conducting such a review, should not be able to enlist the help of the specialized body with experience in reviewing the professional qualifications of applicants to the Chaplain Corps.

**2.      Plaintiff's New Arguments About the Substance of the CARE Board's Review Should be Rejected**

Plaintiff's new arguments concerning the items considered by the CARE board are red herrings.  See Pls. Opp. at 15.  These new arguments about the substance of the CARE board's review are beside the point because Plaintiff's Complaint does not challenge what the CARE board considered – only that the Navy convened such a board.  See, e.g., Compl. ¶¶ 17-18, 20, 108.  Plaintiff cannot amend the allegations in that Complaint through subsequent briefing.  See Jung, 300 F. Supp. 2d at 163.

Moreover, these new arguments about the substance of the CARE board's review represent a thinly-veiled attempt to challenge the basis of the Secretary's decision, which relied on Plaintiff's court-martial, fitness report, and lack of support from the chain of command.  As noted supra, Plaintiff refused to amend his Complaint to attack that ultimate decision by the Secretary.  Plaintiff cannot smuggle a challenge to the basis of that decision – which must be reviewed under the APA – into his baseless legal argument that the Navy was forbidden to use a CARE board to review his professional qualifications.

Finally, these new arguments also attempt to make an end run around the jurisdictional and prudential barriers to challenges by Plaintiff on his court-martial conviction or the contents of his fitness reports.  Absent an allegation that he exhausted remedies available within the Navy, this court lacks jurisdiction to review Plaintiff's court-martial conviction.  See Veitch, __ F.3d at

-19-

__, 2006 WL 3408196, at *4 & n.4. Similarly, this court should decline jurisdiction to consider

any challenge to the content of Plaintiff's fitness reports. The appropriate way for Plaintiff to

challenge the contents of his personnel records is by appeal to the Board for Correction of Naval

Records, which is empowered by 10 U.S.C. § 1552(a) (2000) to "correct an error or remove an

injustice" in a service member's record.[12] And, because Plaintiff refuses to bring this case under

the APA, this court is free to require Plaintiff to exhaust those remedies before attacking a fitness

report in federal court. See Darby v. Cisneros, 509 U.S. 137, 153-54 (1993) ("Of course, the

exhaustion doctrine continues to apply as a matter of judicial discretion in cases not governed by

the APA."). Discretion to require such exhaustion is appropriately exercised in military

personnel cases, due to the long-standing deference afforded the military in handling such

matters. See, e.g., Orloff v. Willoughby, 345 U.S. 83, 94 (1953) ("Orderly government requires

that the judiciary be as scrupulous not to interfere with legitimate Army matters as the Army

must be scrupulous not to intervene in judicial matters."); Kreis v. Secretary of Air Force, 866

F.2d 1508, 1511 (D.C. Cir. 1989) (quoting Orloff).

E.    **BASED ON THE ALLEGATIONS IN THE COMPLAINT, PLAINTIFF'S CHALLENGES TO HIS SEPARATION PROCEEDINGS SHOULD BE DISMISSED UNDER RULE 12(b)(6)**

Plaintiff attempts to convince this court that Defendant has "filed a motion for summary

judgment and titled it a motion to dismiss." Pls. Opp. at 1. This is simply not the case. In order

to reject Plaintiff's challenges to his separation proceedings this court need look no further than

---

[12] Plaintiff could also challenge a fitness report under the Privacy Act, 5 U.S.C. § 552a(g)(1)(A) or (g)(1)(C) (2000), but such review would be limited to correcting factual errors in the report; it could not be used to attack subjective evaluations of Plaintiff's performance. See 32 C.F.R. § 701.108; Baker v. England, 397 F. Supp. 2d 18, 25 (D.D.C. 2005). Because Plaintiff seems to attack the conclusion that he lacked appropriate military bearing, the Privacy Act could afford him no relief even if he amended his Complaint.

Plaintiff's own Complaint. Indeed, the court need only look to a single paragraph of the Complaint to see why Plaintiff's challenges to his separation proceedings must fail. Paragraph 9 sets forth two key facts that insulate the Defendant from any of Plaintiff's attacks against the separation proceedings: (1) Plaintiff voluntarily resigned his ecclesiastical endorsement on September 25, 2006; and (2) Plaintiff's Religious Organization notified Defendant on September 27, 2006 that it was withdrawing its endorsement effective October 1, 2006. See Compl. ¶ 9. No other facts are necessary to demonstrate that Defendant was required to institute separation proceedings against Plaintiff "immediately upon such notification." DoDI 1304.28 ¶ 6.5.

All of Plaintiff's claims against those proceedings – claims based on the erroneous assumption that his new endorsement from CFGC automatically entitled him to reinstatement – are thus defeated by Plaintiff's own factual allegations. Plaintiff implicitly concedes as much with the following formulation of his retaliation claim: "it is alleged that the Navy's decision to seek the Plaintiff's separation from the service in October 2006, notwithstanding the fact that the Plaintiff had no lapse in ecclesiastical endorsement, was undertaken because of the Plaintiff's religious beliefs and because the Plaintiff continued to invoke the name of Jesus in his prayers as a chaplain." Pls. Opp. at 19 (emphasis added). Because Plaintiff had a "lapse in ecclesiastical endorsement," this entire species of retaliation claims must fail.

This court should also reject Plaintiff's related and equally frivolous contention that "Defendant concedes that discovery is required for the retaliation issue when they inform this honorable Court that is must balance by 'a preponderance of the evidence' whether the defendant would have taken the same action in absence of the protected speech." Pls. Opp. at 16-17 (emphasis added); see also id. at 2 (arguing that Plaintiff's allegations of retaliation are purely

factual questions).  Defendant made no such concession.  Defendant clearly argued that Plaintiff's First Amendment retaliation claim could be resolved as a matter of <u>law</u> – not on a factual balancing – because the Plaintiff's own Complaint contained facts that prevented him from satisfying either the third or fourth prongs of the First Amendment retaliation test.  <u>See</u> Def. Mot. at 17-18.  As just described, Plaintiff's Complaint (when divorced from Plaintiff's incorrect interpretation of the Navy's regulations) demonstrates that the Navy was required to institute these separation proceedings; hence, any claim that those allegedly unnecessary proceedings constituted a form of retaliation must be rejected.

Plaintiff simply refuses to recognize that it was his own action – resigning his endorsement – that set in motion the chain of events that led to the Secretary's discretionary decision not to approve his new endorsement; those proceedings, therefore, do not represent a form of unconstitutional reprisal.  <u>Cf.</u> <u>Veitch</u>, 135 F. Supp. 2d at 36 ("The problem for plaintiff here, however . . . is that the dispute appears more to be centered upon his military deportment than upon his religious convictions. The charge brought against him was disrespect for a superior officer, not heresy.").  Plaintiff's challenges to his separation proceedings must therefore be dismissed under Rule 12(b)(6).

**III.  PLAINTIFF'S COMPLAINT DOES NOT STATE EITHER AN EQUAL PROTECTION CHALLENGE OR A CLAIM UNDER ANY WHISTLEBLOWER PROTECTION PROVISION**

Plaintiff's Opposition contends that his Complaint states an equal protection claim, <u>see</u> Pls. Opp. at 11-12, and a claim for violation of some (unspecified) whistleblower protection provision, <u>see</u> <u>id.</u> at 33.  Neither of these claims are properly before the court for the simple reason that they were not causes of action identified in Plaintiff's Complaint.  But even if they had been contained in the Complaint, this court would lack jurisdiction to consider them.

A.    **PLAINTIFF'S COMPLAINT DOES NOT ALLEGE A VIOLATION OF THE EQUAL PROTECTION CLAUSE**

Plaintiff purports to be alleging an equal protection claim.  See Pls. Opp. at 11.  What makes this claim so striking is that the phrase "equal protection" never appears in Plaintiff's Complaint.  Nor does the Complaint ever mention the Fifth Amendment, which provides the only basis for an equal protection claim against the United States.  See, e.g., Bolling v. Sharpe, 347 U.S. 497, 499 (1954).  Moreover, none of the "counts" or "requested relief" in Plaintiff's Complaint ever cite the Fifth Amendment or use the phrase "equal protection."  Plaintiff's Opposition attempts to reframe the case as one brought under the Equal Protection Clause.  But, as noted, Plaintiff's brief in opposition to Defendant's Motion cannot amend his Complaint.  Jung, 300 F. Supp. 2d at 163.  Therefore, this court should reject Plaintiff's contention that the Complaint states an equal protection claim.

More importantly, even if the Complaint did state such a claim, the court would have to dismiss it.  To the extent any of those equal protection claims concerned his generalized grievances against the Navy's religious policies and practices, Plaintiff's pending separation deprives this court of jurisdiction to consider those claims.[13]  To the extent those claims attack alleged past wrongdoing by Plaintiff's superior officers, the court would similarly lack jurisdiction because such allegations of past wrongdoing cannot serve as the basis for obtaining prospective relief (especially as Plaintiff will no longer be serving in the Navy).  And, finally, to the extent that Plaintiff alleges his separation proceedings resulted from this purportedly unequal treatment

---

[13] Indeed, Plaintiff appears to simply be repackaging his generalized Establishment Clause claim – which he lacks standing to pursue – as an equal protection claim.  The portions of the Complaint he cites to support his equal protection claim refer to the Navy's alleged promotion of Unitarianism above all other religions.  See, e.g., Compl. ¶¶ 28, 32, 48, 111, 112, 126, 129.

-23-

of religions, that claim (like his other attacks on the separation proceedings) would be premised on the erroneous assumption that the Navy was required to accept his new endorsement and, therefore, that the refusal to do so can be viewed as evidence of some illegal discrimination. Because the Navy was required to institute Plaintiff's separation proceedings, Plaintiff simply could not state a claim that the Navy's actions were the result of a discriminatory motive – as would be his burden on a constitutional equal protection claim. See, e.g., Fernandors v. District of Columbia, 382 F. Supp. 2d 63, 69 (D.D.C. 2005) ("An allegation of racial discrimination in violation of the Constitution's guarantee of equal protection cannot survive unless the plaintiff establishes that the defendant acted with discriminatory intent." (citing Washington v. Davis, 426 U.S. 229, 241 (1976)).[14]

### B.   PLAINTIFF'S COMPLAINT DOES NOT SEEK RELIEF PURSUANT TO ANY WHISTLEBLOWER PROTECTION PROVISION

Plaintiff also asserts that Defendant ignores the "whistleblowing allegations" in his complaint. Pls. Opp. at 33 (citing Compl. ¶¶ 54, 69). There are two fundamental problems with this argument. First, Defendant does not ignore those paragraphs of the Complaint, which allege past acts of retaliation against Plaintiff by Captain Holcomb and Vice Admiral Harvey. On the contrary, Defendant specifically cited those allegations, explaining why such complaints of past retaliation cannot support a request for prospective relief. See Def. Mot. at 18, 20-22.

---

[14] As part of this new equal protection argument, Plaintiff advances another new claim: that the Navy's equal protection violations made it more difficult for Plaintiff to be promoted. See Pls. Opp. at 12 (citing Compl. ¶¶ 39, 61). Neither of those paragraphs make any mention of harm to his chances for promotion; nor does Plaintiff allege that he was actually denied a promotion as a result of this alleged equal protection violation. Even if Plaintiff had alleged such an injury, that allegation would be outside the scope of this court's jurisdiction. Congress specifically requires service members to exhaust challenges to promotion decisions before such claims may be brought to federal court. See 10 U.S.C. § 14502(g) (2000). Plaintiff has not alleged any such exhaustion.

Moreover, Plaintiff seems to be suggesting that his Complaint actually contains a count alleging violations of some whistleblower protection provision. It does not. As with the asserted equal protection claim, Plaintiff's jurisdictional statement, "counts," and "requested relief" make absolutely no reference to a whistleblower protection statute. He cannot amend that Complaint to state such a claim through his brief in opposition. Jung, 300 F. Supp. 2d at 163. And even if he tried to amend the Complaint to do so, that attempt would be futile. These allegations cannot support a request for prospective relief and, absent a valid waiver of sovereign immunity, Plaintiff cannot seek damages on any such claim.

## CONCLUSION

For all the foregoing reasons and the reasons contained in Defendant's Motion to Dismiss, this court should dismiss Plaintiff's action in its entirety.

Dated: January 17, 2007

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

JEFFERY A. TAYLOR
United States Attorney

VINCENT M. GARVEY
Deputy Branch Director

Of Counsel:
Lieutenant Commander Thomas Leary
Lieutenant Katy Pasieta
Office of the Judge Advocate General
Department of the Navy
Washington Navy Yard, Bldg 33
1322 Patterson Ave., S.E., Suite 3000
Washington, D.C. 30274-5066

/s/ Michael P. Abate
MICHAEL P. ABATE
Attorney, Civil Division
U.S. Department of Justice
P.O. Box 883
20 Massachusetts Ave., N.W., Room 7302
Washington, D.C. 20530
Telephone: (202) 616-8209

Attorneys for Defendants