# UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

| | |
|---|---|
| CHAPLAIN GORDON JAMES KLINGENSCHMITT, )))) | |
| Plaintiff, ) | |
| v. ) | Civil Action No. 06-01832 (HHK) |
| DONALD C. WINTER )))) In his Official Capacity as Secretary, DEPARTMENT OF THE NAVY, | |
| Defendant. )) | |

## DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTIONS (1) TO RECONSIDER THE DENIAL OF HIS MOTION FOR A PRELIMINARY INJUNCTION AND (2) FOR AN INJUNCTION PENDING APPEAL OF THE DENIAL OF HIS MOTION FOR A PRELIMINARY INJUNCTION

With these two new emergency motions, Plaintiff effectively seeks the same relief that this Court has already denied: an order preventing his separation from Navy service on January 31, 2007. Plaintiff's duplicative motions seek that relief in four separate ways. First, Plaintiff asks this court to reconsider its January 4, 2007 order denying his request for a preliminary injunction ("Mot. Recon."). In the event that request is denied, Plaintiff seeks an injunction pending appeal of the court's order denying his initial preliminary injunction motion ("Mot. Inj."). As a fallback position, in the event this court denies him an injunction pending appeal, Plaintiff seeks the same relief by another name; he requests that "the date of Chaplain Klingenschmitt's separation be stayed to allow the Plaintiff to present his injunction request to the Court of Appeals." Mot. Inj. at 2. Finally, as a last resort in the event this court rejects that alternative request for a "stay," Plaintiff seeks "in the alternative . . . an injunction stopping the Navy from separating Chaplain Klingenschmitt to [sic] February 15, 2007 to allow more time to

complete consideration of plaintiff's motion for an injunction pending appeal." Mot. Inj. at 3.

These four redundant requests seek the same relief that this court twice denied Plaintiff in rejecting his requests for a temporary restraining order and a preliminary injunction. Moreover, these motions are duplicative of the injunction request that Plaintiff included in his most recent "emergency" discovery motion. See Emergency Rule 56(f) Motion at 3 ("Chaplain Klingenschmitt should be granted expedited discovery with sufficient time for presentation to this court prior to the Navy being permitted to separate him from military service." (emphasis added)). Plaintiff's motions present no new grounds for granting injunctive relief not already considered by this court. Just as there was no basis for granting that relief in the first instance, there is no basis to reconsider those rulings or to grant an injunction pending appeal. These motions should be denied.

## ARGUMENT

**I.    THIS COURT LACKS JURISDICTION TO CONSIDER PLAINTIFF'S MOTION TO RECONSIDER THE ORDER DENYING A PRELIMINARY INJUNCTION**

Plaintiff simultaneously filed (1) a motion to reconsider the court's January 4, 2007 order denying a preliminary injunction and (2) a notice of appeal asking the D.C. Circuit to review that same order. The filing of that notice of appeal deprives this court of jurisdiction to consider the motion for reconsideration, which asks this court revisit the very same order Plaintiff has appealed to the D.C. Circuit. "The filing of a notice of appeal is an event of jurisdictional significance – it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." Griggs v. Provident Consumer Discount Co., 459 U.S. 56, 58 (1982) (emphasis added).

If he had acted more promptly, Plaintiff could have filed both a notice of appeal and a

motion to reconsider without depriving this court of jurisdiction to reconsider its prior ruling on

the preliminary injunction.  Federal Rule of Appellate Procedure 4 provides a framework for

doing just that.  It states that a notice of appeal from an order does not become effective until the

court has disposed of any motions to reconsider that order.  <u>See</u> Fed. R. App. P. 4(a)(4)(A),

(4)(B)(1).  The problem for Plaintiff, however, is that Rule 4(a) presupposes a <u>timely filed</u>

motion to reconsider (<u>i.e.</u>, one filed within the ten (10) day time limit under Rule 59(e)).  Because

Plaintiff's motion was not timely-filed under Rule 59(e)[1] – excluding weekends and legal

holidays as provided for in Rule 6(a), and accounting for the additional three days afforded by

Rule 6(e)'s mailing rule, Rule 59(e)'s ten (10) day time limit expired on January 22, 2007;

Plaintiff did not move to reconsider until January 24, 2007 – Rule 4(a)(4) does not delay the

effective date of the notice of appeal.  That notice was immediately effective upon filing, and

therefore deprives this court of jurisdiction to rule on the same issue now in front of the D.C.

Circuit.[2]

 Moreover, even if this court had jurisdiction over the motion to reconsider, that motion

was untimely.  As noted, Rule 59(e) requires motions to alter or amend a judgment to be filed

within ten (10) days of the entry of that judgment.  Because Plaintiff waited too long to file this

---

[1] Rule 59(e), although it governs motions to alter or amend "judgments," actually applies to the court's order denying a preliminary injunction.  This is so because under the Federal Rules, a "judgment" is defined as anything that may be immediately appealed.  <u>See</u> Fed. R. Civ. P. 54(a).  And, because "the denial of [an] application for a preliminary injunction is an interlocutory order appealable under 28 U.S.C. § 1292(a)(1)," <u>Deaver v. Seymour</u>, 822 F.2d 66, 68 (D.C. Cir. 1987), the court's order constitutes a "final judgment" subject to reconsideration under Rule 59(e)'s ten (10) day time limit.  <u>See</u> <u>Credit Suisse First Boston Corp. v. Grunwald</u>, 400 F.3d 1119, 1123-24 & n.6 (9th Cir. 2005).

[2] Defendant does not contend that the notice of appeal deprives this court of jurisdiction to consider the motion for an injunction pending appeal.

motion to reconsider, he can only obtain relief under the more demanding standard of Rule 60(b).

See McMillian v. District of Columbia, 233 F.R.D. 179, 180 n.1 (D.D.C. 2005) (motions to

reconsider filed more than 10 days after entry of judgment must be evaluated under Rule 60(b)).

Plaintiff does not identify the specific subsection of Rule 60(b) that allows him to bring

this motion to reconsider; indeed, Plaintiff does not cite any basis for filing this motion. Because

none of the grounds for relief identified in Rules 60(b)(1) - (5) apply in this case (i.e.,

inadvertence, new evidence, fraud, void or satisfied judgment), Plaintiff may only obtain relief

under the catch-all provision contained in Rule 60(b)(6). See Fed. R. Civ. P. 60(b)(6) ("[T]he

court may relieve a party . . . from a final judgment, order, or proceeding for . . . any other reason

justifying relief from the operation of the judgment."). That provision "should be used sparingly

and applied only in 'extraordinary circumstances.'" Johnson v. Ashcroft, 223 F. Supp. 2d 116,

117 (D.D.C. 2002) (quoting Pioneer Inv. Serv. Co. v. Brunswick Assoc. Ltd. P'ship, 507 U.S.

380, 393 (1993)). Plaintiff's motion for reconsideration, which does little more than reassert his

original arguments, does not meet the exceptionally high bar for Rule 60(b)(6) relief.

Finally, even if this motion were to be reviewed under the more lenient Rule 59(e)

standard, this court should deny the motion to reconsider. For the reasons explained infra (as

well as those reasons discussed in Defendant's Opposition to Plaintiff's Motion for a Preliminary

Injunction ("Prelim. Inj. Opp."), Plaintiff simply is not entitled to a preliminary injunction.

## II. PLAINTIFF IS NOT ENTITLED TO AN INJUNCTION PENDING APPEAL

The standard for an injunction pending appeal of the denial of a preliminary injunction is

effectively the same as the standard for seeking that preliminary injunction in the first instance.

The court must consider: "(1) whether the . . . applicant has made a strong showing that he is

likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent

[relief]; (3) whether issuance of the [injunction] will substantially injure the other parties

interested in the proceeding; and (4) where the public interest lies." Ellsworth Associates, Inc. v.

United States, 917 F. Supp. 841, 847 (D.D.C. 1996) (internal quotation marks omitted) (quoting

Hilton v. Braunskill, 481 U.S. 770, 776 (1987)).

"The question whether to issue an injunction pending appeal pursuant to Rule 62(c) is

addressed to the discretion of the Court." Id.; Fed. R. Civ. P. 62(c). Courts regularly exercise

that discretion to deny motions for an injunction pending appeal of the denial of a preliminary

injunction where, as here, that subsequent motion merely restates the grounds previously

presented to the court. "[A]bsent some change in circumstances, a movant ought not to be able

to file a motion under the aegis of Fed. R. Civ. P. 62(c) and relitigate the 'original issue' simply

because the case involves preliminary injunctive relief." Ortho Pharmaceutical Corp. v. Amgen,

Inc., 887 F.2d 460, 463 (3rd Cir. 1989); see also Ellsworth, 917 F. Supp. at 847 ("[D]efendants

do not, however, allege any change in circumstances or novel argument that leads the Court to

conclude that they bear a substantial chance of success on appeal) (citing Abrams v.

Communications Workers of Am., 702 F. Supp. 920, 925 (D.D.C. 1988)).

Like a preliminary injunction, an injunction pending appeal seeks "an extraordinary and

drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the

burden of persuasion." Mazurek v. Armstrong, 520 U.S. 968, 972 (1997) (per curiam) (emphasis

in original). Moreover, because Plaintiff seeks to enjoin a military personnel decision, he must

meet an even higher bar that a typical plaintiff seeking a preliminary injunction. See Sebra v.

Neville, 801 F.2d 1135, 1139 (9th Cir. 1986) ("[T]he test for injunctive relief is much more

stringent for a government military employee than the normal test for an injunction."); see also

Hartikka v. United States, 754 F.2d 1516, 1518 (9th Cir. 1985); (citing Sampson v. Murray, 415

U.S. 16, 83- 84 (1974) and Orloff v. Willoughby, 345 U.S. 83, 93-94 (1953)); Crager v. United

States, 25 Cl. Ct. 400, 406 (Cl. Ct. 1992) (citing Wronke v. Marsh, 787 F.2d 1569, 1576 (Fed.

Cir. 1986)).

Plaintiff's original motion for a preliminary injunction failed to satisfy even the normal

requirements for obtaining a preliminary injunction – let alone the heightened standard that

applies in military personnel cases.  The court correctly determined that there was no basis for

awarding that relief.  Because Plaintiff offers no new arguments, there is similarly no basis for

issuing an injunction pending appeal.

## A.    PLAINTIFF HAS NOT DEMONSTRATED A LIKELIHOOD OF SUCCESS ON THE MERITS

Plaintiff offers no new arguments on the merits of his claims.  Instead, he relies upon the

same two unsupported legal conclusions that Defendant has repeatedly discredited: Plaintiff

claims (1) that the Navy was required to accept his new endorsement, and (2) that the Navy was

forbidden to use a CARE board in evaluating his professional qualifications.  See, e.g., Mot.

Recon. at 4-5; Mot. Inj. at 5-6, 8.  These contentions are frivolous.

As Defendant previously explained, the Navy was required to institute separation

proceedings against Plaintiff after he resigned his ecclesiastical endorsement.  See DoDI 1304.28

¶ 6.5 ("If a chaplain . . . has ecclesiastical endorsement to serve as a chaplain withdrawn, the

appropriate Religious Organization shall provide written notification to the Military Department

concerned.  Processing for separation . . . shall be initiated immediately upon such notification."

(emphasis added)).  Plaintiff continues to maintain that DoDI 1304.28 does not apply to him

because he never lost his endorsement. That argument, in turn, rests upon his legal contention that Navy regulations required the Secretary to automatically approve Plaintiff's new ecclesiastical endorsement. Plaintiff's interpretation of those Navy regulations – which is the basis of his entire challenge to his separation proceedings – rests on a <u>single word</u> in a Navy regulation; OPNAVINST 1120.9 directs the Chief of Chaplains to "recertify" the professional qualifications of a chaplain that loses his endorsement and obtains another. Taking that word out of context, Plaintiff ignores (1) the word's most logical plain meaning (the command to "recertify" merely requires the Chief of Chaplains to undertake a <u>process</u> of reviewing a chaplain's qualifications, and does not prescribe a specific outcome of that review), (2) the structure of the regulation in which that word appears (Plaintiff's interpretation would conflict with the plain meaning of the same word used elswhere in the OPNAVINST 1120.9 and would render other portions of that regulation meaningless), and (3) the fact that DoDI 1304.28 – the regulation on which OPNAVINST 1120.9 explicitly relies – unequivocally grants the Secretary discretion to accept or reject a chaplain's new endorsement. <u>See</u> DoDI 1304.28 ¶ 6.5.3.1 ("The Secretary of the Military Department concerned <u>may . . . [a]pprove</u> a request for a new ecclesiastical endorsement for a serving chaplain submitted in accordance with this Instruction." (emphasis added)).

Although Defendant previously has explained why Plaintiff's interpretation of OPNAVINST 1120.9 is erroneous, <u>See</u> Prelim. Inj. Opp. at 14-17; Defendant's Motion to Dismiss ("Mot. Dismiss") at 10-14; Reply Brief on Defendant's Motion to Dismiss ("Mot. Dismiss Rep.") at 15-16, Plaintiff has never meaningfully rebutted those arguments. Indeed, Plaintiff's reply brief on the motion for a preliminary injunction relied on a regulation that he

knew was cancelled two years prior.  See Defendant's Sur-reply on Motion for a Preliminary

Injunction at 2-3.[3]  Thus, Plaintiff has no legitimate grounds on which to rebut Defendant's

interpretation of the controlling regulations.  Consequently, Plaintiff simply reasserts the legal

conclusions advanced in his Complaint, while ignoring Defendant's counter-arguments.

Plaintiff's challenge to Defendant's interpretation of those regulations should be rejected.

        Plaintiff's arguments concerning the use of a CARE board are similarly hollow.  There is

no regulation prohibiting the use of a CARE board to evaluate the professional qualifications of a

chaplain that loses his endorsement and requests approval of another one.  See Prelim. Inj. Opp.

at 17-19; Mot. Dismiss at 14-15; Mot. Dismiss Rep. at 18-19.  Plaintiff has simply pointed out

that there is no regulation requiring the Navy to convene a CARE board in such instances.  This

observation that Navy regulations are silent on the use of CARE boards in such circumstances is

insufficient to meet Plaintiff's burden of demonstrating that he is likely to succeed in convincing

a court that the use of such a board was improper.

        These two arguments are neither new nor meritorious.  Thus, Plaintiff cannot succeed in

establishing a likelihood of success on the merits of his case.  This fact is sufficient, on its own,

to justify rejection of Plaintiff's request for relief under Rule 62(c).  See Barnstead Broadcasting

Corp. v. Offshore Broadcasting Corp., 869 F. Supp 35, 39 (D.D.C. 1994) ("Even should

[Plaintiff] show that irreparable harm would result without the imposition of a stay, if [Plaintiff]

has not provided a sufficient showing of likelihood of success on the merits of the appeal, the

---

[3] This court granted leave to file that Sur-reply on January 8, 2007.

[injunction] will not be granted." (citing <u>Blankenship v. Boyle</u>, 447 F.2d 1280 (D.C. Cir. 1971)).[4]

### B. PLAINTIFF HAS NOT DEMONSTRATED THAT HE WILL BE IRREPARABLY INJURED IF THIS COURT DENIES AN INJUNCTION PENDING APPEAL

In denying Plaintiff's motion for a preliminary injunction, this court properly held that

Plaintiff did not allege irreparable injury. That reasoning was indisputably correct for two

reasons. First, as this court explicitly recognized, the mere fact that Plaintiff will lose his job is

insufficient under <u>Sampson v. Murray</u>, 415 U.S. 16 (1974), to satisfy the high burden of alleging

irreparable injury in cases seeking to enjoin military personnel actions. Second, the D.C.

Circuit's recent opinion in <u>Chaplaincy of Full Gospel Churches v. England</u>, 454 F.3d 290 (D.C.

Cir. 2006) (hereinafter "<u>CFGC</u>"), which held that allegations of Establishment Clause violations

are sufficient to meet the irreparable injury prong of the preliminary injunction analysis, is

inapposite. Plaintiff's Establishment Clause claims – which center on past acts of allegedly

---

[4] Plaintiff incorrectly asserts that he need not show any likelihood of success on the merits to obtain an injunction pending appeal. <u>See</u> Mot. Recons. at 4-5; Mot. Inj. at 6. This assertion, which relies upon a misunderstanding of the holding of a Fifth Circuit case, must be rejected. Under Plaintiff's logic, it would be <u>easier</u> to obtain an injunction pending appeal of the denial of an injunction than to obtain an injunction in the first place. Even the Fifth Circuit – on whose reasoning Plaintiff purports to rely – has rejected that approach. <u>See, e.g.</u>, <u>Bayless v. Martine</u>, 430 F.2d 873, 879 (5th Cir. 1970) ("Since appellants failed to make out a prima facie case demonstrating a reasonable probability of success on the merits <u>a fortiori</u> they did not make <u>that even stronger showing</u> that is prerequisite to the grant of a stay and the issuance of an injunction pending a hearing on the merits of an interlocutory appeal." (emphasis added)). The D.C. Circuit has adopted a similarly heightened standard for Rule 62(c) motions, requiring parties that challenge the denial of an injunction pending appeal to make an even stronger showing of error by the district court than would be needed to succeed on appeal of the denial of the injunction itself. <u>See</u> <u>Society for Animal Rights, Inc. v. Schlesinger</u>, 512 F.2d 915, 917 (D.C. Cir. 1975) ("[E]ven if we were now determining the appeal from the denial of the preliminary injunction, we could not reverse unless we . . . conclude . . . that the district judge abused his discretion. This would present a narrow question, and a great burden on appellants. <u>The question is still more narrow, and the burden is still greater for litigants, like appellants, seeking an injunction pending the disposition of the appeal from the denial of the temporary injunction</u>." (emphasis added)) (citing <u>Virginia Petroleum Jobbers Ass'n v. FPC</u>, 259 F.2d 921 (1958)).

unconstitutional behavior by Plaintiff's superior officers and a now-cancelled policy concerning religious elements at Navy command functions – are distinct from Plaintiff's claims against his separation proceedings. The court properly recognized that <u>CFGC</u>'s presumption of irreparable harm is beside the point because Plaintiff can obtain no prospective relief based solely on his allegations of past Establishment Clause violations: "[t]o the extent he seeks redress for harms he suffered in the past, an injunction can afford him no relief."

Before addressing Plaintiff's irreparable injury arguments, Defendant notes that Plaintiff entirely ignores this court's express holding that a party seeking to enjoin a government or military personnel decision must make a heightened showing of irreparable harm. In its January 4, 2007 order, this court cited <u>Sampson</u>, which held that courts are not to "routinely apply[] . . . the traditional standards governing more orthodox 'stays'" in government personnel cases, but should demand, instead, "a showing of irreparable injury sufficient in kind and degree to override these factors cutting against the general availability of preliminary injunctions in Government personnel cases." <u>Sampson</u>, 415 U.S. at 83-84; <u>see also</u> <u>Guitard v. U.S. Secretary of Navy</u>, 967 F.2d 737, 742 (2d Cir. 1992) (<u>Sampson</u> applies with even greater force in cases seeking to enjoin military personnel actions); <u>Guerra v. Scruggs</u>, 942 F.2d 270, 274 (4th Cir. 1991) (same); <u>Hartikka</u>, 754 F.2d at 1518 (same); <u>Chilcott v. Orr</u>, 747 F.2d 29, 32 (1st Cir. 1984) (same); <u>see also</u> <u>Sebra</u>, 801 F.2d at 1139 (applying <u>Sampson</u> to injunction sought by "employee who performs both civilian and military functions"); <u>Veitch v. Danzig</u>, 135 F. Supp. 2d 32, 37 (D.D.C. 2001); Prelim. Inj. Opp. at 7-13 (explaining why Plaintiff has not alleged harm sufficient to meet the demanding <u>Sampson</u> standard). Attempting to avoid the force of <u>Sampson</u> and its progeny, Plaintiff asserts two equally frivolous arguments concerning irreparable harm. The first

is a reprisal of an argument the court properly rejected in Plaintiff's initial motion for a preliminary injunction.  The second is a confusing new contention that Plaintiff will suffer irreparable harm from his separation because – he finally seems to concede[5] – he will lack standing to seek <u>prospective relief</u> against policies that will no longer apply to him.  Put another way, Plaintiff asserts he will be irreparably harmed because his separation will deprive him of the kind of concrete injury required to convey Article III standing.  Both of these arguments should be rejected.

### 1.    *Plaintiff's Reliance on <u>CFGC v. England</u> is Misplaced*

First, Plaintiff accuses this court of ignoring the D.C. Circuit's opinion in  <u>Chaplaincy of Full Gospel Churches v. England</u>, 454 F.3d 290 (D.C. Cir. 2006) (holding that allegations of Establishment Clause violations are sufficient to establish irreparable harm for the purposes of preliminary injunction analysis).  <u>See</u> Mot. Recons. at 3-4, 6; Mot. Inj. at 4, 8-9.  For the reasons explained in Defendant's original opposition to the motion for a preliminary injunction, that case is inapposite.  <u>See</u> Prelim. Inj. Opp. at 12-13.  <u>CFGC</u> does not apply to Plaintiff's attack on his <u>separation proceedings</u> – which is what Plaintiff seeks to enjoin – and even if it did, it would not justify an injunction against that pending separation.

<u>CFGC</u>'s presumption of irreparable harm extends only to Establishment Clause claims.  <u>See, e.g.</u>, <u>CFGC</u>, 454 F.3d at 301 ("[I]n this court, as in several others, there is no <u>per se</u> rule that a violation of freedom of expression <u>automatically</u> constitutes irreparable harm." (internal quotation marks omitted) (emphasis in original)); <u>id.</u> at 303 ("[W]e conclude that where a

---

[5] This court should consider Plaintiff's apparent concession that he will lose standing to bring his generalized grievances against the Navy's prayer policies when ruling on Defendant's Motion to Dismiss.

movant alleges a <u>violation of the Establishment Clause</u>, this is sufficient, without more, to satisfy

the irreparable harm prong for purposes of the preliminary injunction." (emphasis added)).

While Plaintiff's complaint does allege a violation of the Establishment Clause, that allegation is

separate and distinct from his attack against the separation proceedings. <u>See</u> Mot. Dismiss Rep.

at 1-2, 9 (detailing Plaintiff's repeated attempts to conflate his different species of claims against

the Navy). As noted <u>supra</u>, Plaintiff's attack against his separation proceedings is based on two

(erroneous) legal arguments: (1) that the Navy was required to accept his new endorsement, and

(2) that the Navy was forbidden to use a CARE board in evaluating his credentials. While

Plaintiff continues to press a claim of First Amendment retaliation – alleging that his separation

proceedings constitute retaliation for his religious expression – that claim begins from the false

assumption that the Navy was required to accept his new endorsement. <u>See</u> Mot. Recons. at 5-6

("Although the Navy has used Plaintiff's change of ecclesiastical endorsement as a pretext for

separating him from the Navy, that this is just a facade to cover retaliation against the Plaintiff

for exercising his First Amendment rights is borne out by the circumstances. Thus, the Navy

began separation proceedings <u>even though the Plaintiff always had an ecclesiastical endorsement</u>

<u>and even though the controlling Navy instruction requires the recertification of Chaplains who</u>

<u>obtain a new endorsement after one is lost</u>." (emphasis added)); Mot. Inj. at 8 (same). Plaintiff's

retaliation claim – which infers that the Navy must be discriminating against him on religious

grounds because (Plaintiff erroneously concludes) the Navy was not required to institute

separation proceedings against him – fails on its own terms when those regulations are properly

construed. <u>See</u> Prelim. Inj. Opp. at 19-22; Mot. Dismiss at 15-18; Mot. Dismiss Rep. at 20-22.

Because Plaintiff's attacks on his separation proceedings are really contentions about the

meaning of controlling Navy regulations, and are not arguments that those regulations somehow violate the Establishment Clause, CFGC could only help Plaintiff if it holds that irreparable harm is presumed on every count in Plaintiff's complaint so long as one of those counts alleges a violation of the Establishment Clause. That is not what CFGC says, however.

Again, Defendant notes that Plaintiff has not alleged that the Secretary's decision to separate him was itself a violation of the Establishment Clause. As Defendant has previously explained, the Complaint and motion for a preliminary injunction in this case were filed before the Secretary decided to separate Plaintiff from Naval service. See, e.g., Mot. Dismiss Rep. at 13-14. It goes without saying, then, that those documents do not attack the basis of the Secretary's decision. Hence, even if CFGC does apply to a claim alleging that the Secretary discriminated against Plaintiff in violation of the Establishment Clause after Plaintiff criticized the Navy's prayer policies – a debatable proposition[6] – Plaintiff has made no such claim in this case. Moreover, the fact that Plaintiff has not challenged the Secretary's ultimate decision under the Administrative Procedures Act – the only possible basis for challenging that discretionary agency action, see Prelim. Inj. Opp. at 20-22; Mot. Dismiss at 23-26; Mot. Dismiss Reply at 14, 19 – provides an independent reason why this court should not exercise its discretion to award

---

[6] The case at bar presents a very different kind of Establishment Clause claim than the one at issue in CFGC, where the plaintiffs alleged that the Navy's personnel actions resulted from quotas that evinced a denominational preference. The court found that this sort of Establishment Clause allegation differs from "other First Amendment rights that are variants of the freedom to express oneself." CFGC, 454 F.3d at 302. As noted above, CFGC made clear that expression-based claims, unlike pure "establishment" claims, are entitled to no presumption of irreparable harm. See id. at 301. Because Plaintiff's Establishment Clause claim contends that the Navy's alleged retaliation against his religious expression is evidence of an official preference for Unitarianism, that claim is merely a "variant" of his free exercise (expression-based) claim and, therefore, is not entitled to any presumption of irreparable harm under CFGC.

Plaintiff relief under Rule 62(c).  See Ellsworth, 917 F. Supp. at 847 ("The question whether to

issue an injunction pending appeal pursuant to Rule 62(c) is addressed to the discretion of the

Court.").  Plaintiff cannot show that the Secretary's determination that Plaintiff's court-martial

conviction, below-average fitness report, and lack of support from the chain of command render

him "professionally unqualified" to serve as a military chaplain was "arbitrary, capricious, an

abuse of discretion, or otherwise not in accordance with the law."  5 U.S.C. § 706(2)(A).

Even if CFGC did apply to Plaintiff's attacks on separation proceedings, however,

Plaintiff still would not be entitled to enjoin that separation.  CFGC made clear that allegations of

Establishment Clause violations do not automatically entitle a movant to an injunction:

> We stress that a finding of irreparable harm is but one of four elements that
> comprise the preliminary injunction framework.  The mere allegation that the
> government is violating the Establishment Clause may suffice to satisfy the
> irreparable harm prong, but a preliminary injunction will not issue unless the
> moving party also shows, on the same facts, a substantial likelihood of success on
> the merits, that the injunction would not substantially injure other interested
> parties, and that the public interest would be furthered by the injunction. . . .  Thus
> we do not believe that our decision today in any way lessens the burden for parties
> seeking preliminary injunctive relief against purported Establishment Clause
> violations.  It merely focuses greater attention on the three other factors that
> indisputably enter into the preliminary injunction determination.

CFGC, 454 F.3d at 304 (emphasis added).  Thus, even if CFGC applied, Plaintiff would still

need to show a likelihood of success on the merits and that the balance of harms weighed in his

favor.  For the reasons noted above, Plaintiff cannot make the required showing with regard to

the merits of his case.  He is simply in error when he asserts that he never lost his endorsement

because the Navy was required to accept his new one.  The Navy was required only to consider

his application for acceptance of that new endorsement.  See DoDI 1304.28 ¶ 6.5.3.  The

Secretary retained – and exercised – discretion not to accept that new endorsement.  And, for the

-14-

reasons noted below, Plaintiff cannot demonstrate that the equities of the situation call for injunctive relief.

Finally, although the D.C. Circuit's holding in CFGC would apply to Plaintiff's separate claims under the Establishment clause, he is not entitled to an injunction against those policies because this court lacks jurisdiction to entertain those claims in the first place. See, e.g., Prelim. Inj. Opp. at 24-28 (arguing that Plaintiff lacked standing to bring these challenges because of his pending separation, and that the challenges were moot in any event); Mot. Dismiss at 26-29 (same); Mot. Dismiss Rep. at 3-11 (same).   The fact that the D.C. Circuit's opinion in CFGC would allow him to allege irreparable harm if he had standing to bring those claims is not sufficient to create the standing he needs to request a preliminary injunction.

### 2.    *Plaintiff Misrepresents Defendant's Standing Arguments*

Plaintiff now argues that the standing arguments advanced in Defendant's Motion to Dismiss prove that he will be irreparably harmed without an injunction.  Specifically, he asserts that the loss of standing to bring generalized constitutional grievances against the government is a form of irreparable injury.  See Mot. Recons. at 1, 2-3; Mot. Inj. at 3 (accusing Defendant of making a "concession that Chaplain Klingenschmitt will lose all rights to challenge the constitutionality of the Navy's actions if he is separated by January 31, 2007.").  This new argument – the only new argument in either of Plaintiff's motions – is as misplaced as it is mystifying.

Plaintiff misrepresents the Navy's position.  Defendant never argued that Plaintiff's separation deprives him of the ability to challenge all "the unconstitutional acts of the Navy." Those are Plaintiff's words inserted (albeit in brackets) inside a purported quotation from the

Defendant's brief.  See Mot. Recons. at 3; Mot. Inj. at 3.  On the contrary, Defendant specifically

noted that Plaintiff retains standing to bring any claims against his separation proceedings –

constitutional or otherwise.  See, e.g., Mot. Dismiss Rep. at 9 ("[Plaintiff's] attempt to obscure

the issue by conflating his challenges to the procedures used to separate him – claims for which

he does have standing – with his broad constitutional attacks against the Navy's religious policies

and practices – which he lacks standing to pursue – must be rejected.")

Defendant simply maintains, consistent with D.C. Circuit precedent, that if Plaintiff's

separation proceedings are deemed lawful – as they must be for the reasons noted above –

Plaintiff will lack standing to seek prospective relief altering the Navy's prayer policies.  See

Veitch v. England, __ F.3d __, 2006 WL 3408196, at *7 ("Once determining that appellant had

voluntarily resigned – a determination we affirm – the district court . . . held that Veitch lacked

standing to pursue his broadside constitutional attack on the Navy Chaplain Corps's pluralism

policy. We quite agree with the district court on the assumption that the resignation stands.");

Veitch v. Danzig, 135 F. Supp. 2d 32, 37-38 (D.D.C. 2001) ("The loss of First Amendment

freedoms in this case took place, if at all, approximately two years ago.  A preliminary injunction

will not remedy any impending harm to plaintiff's First Amendment interests today for there is

none.  Now out of uniform, plaintiff can preach as he chooses, unconstrained by military

discipline or protocol.").

The reasoning underlying these holdings is obvious.  Because the doctrine of sovereign

immunity bars Plaintiff from seeking damages, Plaintiff can only seek prospective relief against

any allegedly unconstitutional prayer policies.  But, as he will longer be in uniform, Plaintiff can

not allege the type of ongoing injury required by Article III to seek prospective relief.  As this

-16-

court properly recognized in its January 4, 2007 order, "[t]o the extent he seeks redress for harms

he suffered in the past, an injunction can afford him no relief."

Plaintiff's argument gets it exactly backwards.  He cannot seriously maintain that the loss

of standing to seek prospective relief – which results from the fact that Plaintiff can allege no

ongoing injury – is itself an irreparable harm.  It can only be a harm if Plaintiff has some sort of

absolute right to sue the Navy over its prayer policies.  Plaintiff may wish very sincerely to

change those policies, but Article III forbids him from bringing suit to affect such a change

unless he can show a direct, ongoing injury from those prayer policies.  He cannot.

Finally, Plaintiff's new irreparable injury argument fails for yet another reason: Plaintiff

would still lack standing to bring his generalized Establishment Clause, Free Exercise, and

RFRA challenges against the Navy's prayer policies even if this court enjoins his pending

separation.  As noted in Plaintiff's Complaint, he has been ordered not to perform any Chaplain

duties.  See Compl. ¶ 11.  Hence, even if those policies do allegedly restrict chaplains' religious

speech, they do not affect Plaintiff's speech.  In order for him to show the sort of individualized

injury required to satisfy Article III, he would need to win a ruling reinstating him as a chaplain

(not merely retaining him in the Navy).  Because Plaintiff cannot succeed in demonstrating that

the separation proceedings violated Navy policies, see supra – and because he has not challenged

the Secretary's decision under the APA – this suit can afford him no such relief.

## C.    AN INJUNCTION PENDING APPEAL WOULD HARM THE NAVY AND THE PUBLIC INTEREST

Plaintiff maintains that the Navy will suffer no harm if he obtains an injunction.  See,

e.g., Mot. Inj. at 7 ("An injunction that preserves the status quo will not harm the Defendant.").

This is wrong.  The very reason that the Supreme Court requires plaintiffs seeking injunctions in

military and government personnel cases to make a heightened showing of injury to satisfy the preliminary injunction balancing test is that "the Government has traditionally been granted the widest latitude in the dispatch of its own internal affairs." Sampson, 415 U.S. at 83 (quotation marks omitted). These cases expressly acknowledge that the government's – and especially the military's – autonomy over its personnel decisions is an important interest that must be weighed against any individual plaintiff's alleged harm. See, e.g., Orloff, 345 U.S. at 93-94 ("[J]udges are not given the task of running the Army. The responsibility for setting up channels through which such grievances can be considered and fairly settled rests upon the Congress and upon the President of the United States and his subordinates. The military constitutes a specialized community governed by a separate discipline from that of the civilian. Orderly government requires that the judiciary be as scrupulous not to interfere with legitimate Army matters as the Army must be scrupulous not to intervene in judicial matters."); Guerra, 942 F.2d at 275 ("[S]econd-guessing the military . . . 'would be a disruptive force as to affairs peculiarly within the jurisdiction of the military authorities.'" (citation omitted)); Sebra, 801 F.2d at 1139 (alleged injury must be "weighed against the hardship to the military of judicial scrutiny of every military personnel decision" (citation omitted)); Hartikka, 754 F.2d at 1518 ("The necessity of making this stronger showing is implicit in the magnitude of the interests weighing against judicial interference in the internal affairs of the armed forces."); Parrish v. Brownlee, 335 F. Supp. 2d 661, 675 (E.D.N.C. 2004) ("'[T]he public has an interest, particularly in light of current events, in seeing that the Army's discretionary decision making with respect to personnel decisions is effectuated with minimal judicial interference.'" (quoting Irby v. United States, 245 F. Supp. 2d 792, 798 (E.D. Va. 2003)). It is not surprising that Plaintiff fails to give credence to this strong

-18-

government interest; he altogether ignores the Sampson line of cases. Moreover, in assessing the military's interest in personnel cases a court should not look just to the harm occasioned by retaining an individual plaintiff; instead, it must "consider the aggregate harm" of similar claims brought by other officers and look at "the total effect of such cases." Qualls v. Rumsfeld, 357 F. Supp. 2d 274, 286 (D.D.C. 2005) (internal quotation marks omitted) (citing Guerra, 942 F.2d at 275).

Also weighing against Plaintiff is the fact that the individual harms he cites are precisely those that Sampson held will not suffice to justify an injunction in government and military personnel cases. Plaintiff complains that his separation will result in (1) his eviction from military housing, (2) loss of reputation, (3) loss of benefits, (4) loss of tuition assistance, (5) loss of military ID card (providing access to the commissary and gym), (6) loss of tax benefits, (7) disruption to family stability, and (8) loss of ability to preach to sailors. See Mot. Recons. at 3; Mot. Inj. at 3-4. These are the sort of "external factors common to most discharged employees and not attributable to any unusual actions relating to the discharge itself" that "will not support a finding of irreparable injury, however severely they may affect a particular individual." Sampson, 415 U.S. at 92 n.68 (emphasis added).[7]

Finally, it must be noted that Plaintiff bears substantial responsibility for the "emergency" nature of these motions. This court denied his motion for a preliminary injunction on January 4,

---

[7] In balancing these alleged harms, this court should take note of the fact that none are irreparable. Plaintiff's separation will not sound the death knell of his action alleging wrongful separation. See Prelim. Inj. Opp. at 10-11. He can continue to litigate over whether the separation proceedings violated Navy regulations or the Constitution. Moreover, he can seek relief from either the Board of Corrections of Naval Records or the Naval Discharge Review Board. See Guitard, 967 F.2d at 741; 10 U.S.C. § 1552(a) (2000); 32 C.F.R. § 723.3(e)(4).

2007 – twenty-seven (27) days before his scheduled separation.  Instead of acting expeditiously, Plaintiff waited twenty (20) days before filing a notice of appeal and his emergency motions, leaving this court and the D.C. Circuit only seven (7) days to act.  Indeed, as noted above, Plaintiff waited so long that his motion for reconsideration is untimely under Rule 59(e).  Despite this unexplained delay, and despite the fact that the court is already considering several other emergency motions filed by Plaintiff (including a motion for expedited discovery and a Rule 56(f) motion), Plaintiff asked this court to consider and rule on his motion within two (2) days.  This court should reject Plaintiff's thinly-veiled attempt to game the system by waiting until the last possible second to seek reconsideration or notice an appeal, and then using that shortness of time as justification for obtaining an injunction – which is, after all, the very relief Plaintiff has sought from the beginning of this action.

In light of the deference owed Defendant in its administration of personnel matters, the harm to the Navy and the public interest that would result from an injunction, the lack of irreparable harm to Plaintiff, and the other avenues open to obtain relief if his separation is ultimately found to have been in error, the balance of interests favors a denial of an injunction pending appeal.

## CONCLUSION

For all the foregoing reasons, Plaintiffs' motions for reconsideration and a stay pending appeal should be denied.

Dated: January 29, 2007                                    Respectfully submitted,

                                                           PETER D. KEISLER
                                                           Assistant Attorney General

JEFFERY A. TAYLOR
United States Attorney

VINCENT M. GARVEY
Deputy Branch Director

Of Counsel:                                    **/s/ Michael P. Abate**
Lieutenant Commander Thomas Leary              MICHAEL P. ABATE
Lieutenant Katy Pasieta                        Attorney, Civil Division
Office of the Judge Advocate General           U.S. Department of Justice
Department of the Navy                         P.O. Box 883
Washington Navy Yard, Bldg 33                  20 Massachusetts Ave., N.W., Room 7302
1322 Patterson Ave., S.E., Suite 3000          Washington, D.C. 20530
Washington, D.C.  30274-5066                   Telephone: (202) 616-8209

                                               Attorneys for Defendants