# UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

| | |
|---|---|
| CHAPLAIN GORDON JAMES KLINGENSCHMITT, | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) Civil Action No. 06-01832 (HHK) |
| DONALD C. WINTER In his Official Capacity as Secretary, DEPARTMENT OF THE NAVY, | ) ) ) ) ) |
| Defendant. | ) ) |

## NOTICE OF PLAINTIFF'S DISCOVERY REQUESTS RELEVANT TO DEFENDANT'S PENDING MOTION TO STAY DISCOVERY

Through this Notice, and pursuant to LCvR 5.2(b), Defendant hereby attaches for the court copies of nonfiled discovery served by the Plaintiff on Defendant on February 16, 2007. These discovery requests are directly relevant to Defendant's pending motion to stay discovery (Docket # 28) ("Mot. Stay Discovery"), which specifically contemplated such a request by Plaintiff. Now that the threat of Plaintiff filing discovery upon Defendant has materialized, Defendant requests that this court expeditiously rule and grant the pending motion staying all discovery until the court resolves the fully-briefed Motion to Dismiss.

Defendant also notes that Plaintiff served this discovery on Defendant only one day after filing with this court the Joint Status Report setting forth the parties' widely-differing views on whether discovery is necessary, and what the appropriate extent of such discovery should be. Plaintiff's action left this court no time to consider the parties' alternative proposed orders concerning discovery. Moreover, Plaintiff served this discovery even though the court is still

considering, in addition to Defendant's motion to stay and the Joint Status Report, Plaintiff's two emergency motions to compel immediate discovery.

Without waiving any objection to the individual items requested by Plaintiff, Defendant draws the court's attention to a few specific requests that illustrate the vague, overly broad, irrelevant, and burdensome nature of these discovery requests. These highlighted requests only underscore the need for an expeditious ruling by this court to prevent Defendant from having to respond to the discovery within the time required by the Federal Rules, in light of the consequences for failing to meet those deadlines.

Among the overly broad discovery requests submitted by Plaintiff is a first request for admissions that demands responses to *one hundred and forty* (140) separate allegations. This request in effect seeks to have Defendant answer the Complaint when Defendant has already moved to dismiss this action; indeed, the request actually asks the Defendant to admit that "[a]ll statements in Plaintiff's Complaint are true." Plaintiff's First Request for Admissions ("First Admission Request") ¶ 140. Moreover, many of these requests for admission concern Plaintiff's allegations of past retaliation by superior officers – including his conviction by court-martial. *Id.* ¶¶ 44-70. These allegations are not relevant to the pending action because, as this court noted in its January 4, 2007 Order denying plaintiff's request for a preliminary injunction, (Docket #23) "[t]o the extent [Plaintiff] seeks redress for harms he suffered in the past, an injunction can afford him no relief." Additionally, several of Plaintiff's requests for admission ask the Navy to opine on the nuances of the beliefs of specific religious denominations. *Id.* ¶¶ 23, 27-31. Setting aside the question of whether it would be appropriate for the Navy to state its views on whether certain ideas expressed in the requests for admission accurately represent the views of a particular

religious denomination, none of these requests for admission are relevant to the central issue in

this case: whether Navy Instructions required the Secretary to accept Plaintiff's new

endorsement.

       In addition to these requests for admissions, Plaintiff has served upon Defendant a vague

and overly broad set of interrogatories that are irrelevant to the ultimate issue in this case (the

meaning of Navy instructions) and threaten to violate the privacy rights of military personnel not

party to this litigation.  For example, Plaintiff asks the Navy to "completely identify each and

every person in the Plaintiff's chain of command and the names of every employee directly

reporting to each and every person in Plaintiff's chain of command for the last five years."

Plaintiff's First Set of Interrogatories ("First Interrogatories") ¶ 4.  That request encompasses

numerous individuals with no alleged or apparent connection to this case.[1]  Moreover, because

Plaintiff's interrogatory request defines the term "identify" as requiring Defendant to provide a

person's "full name, date of birth, social security number, job title, dates of agency or

employment (if applicable), the person's current residence address and business address or, if

unknown, the last known business or residence address; and the person's business and home

telephone numbers," *id.* at 4, compliance with this request – which would require the Secretary to

produce large quantities of personal information about people entirely unconnected to this case

(many of whom are presumably no longer serving in the Navy) – could create possible Privacy

Act concerns.  *See* 5 U.S.C. 552a, *et seq.* (2000).

---

[1] Indeed, because the phrase "directly reports" is vague, it could in fact refer to every single member of the Navy – or even every single member of the U.S. military; there is no question that Plaintiff answers to both the Secretary of the Navy and the President.  Whether Plaintiff (and other personnel) "directly" report to the Commander in Chief is not clear from the context of this request.

Similarly, Plaintiff's document production request is overly broad, vague, and attempts to use the discovery process to obtain relief he is not entitled to pursue in this case. For example, Plaintiff asks Defendant to produce any document Plaintiff has ever requested from the Navy – including documents that are being withheld pursuant to an entirely separate FOIA request, and documents related to Plaintiff's court-martial which (Defendant has repeatedly demonstrated, *see* Def. Prelim. Inj. Opp. at 20 n.8; Def. Mot. Dismiss at 19-20), may not be attacked in this proceeding. Plaintiff's First Request For the Production of Documents to the Defendant ("First Document Request") ¶ 25.

Many of these document requests (like the aforementioned interrogatories) also seek to obtain information about service members and chaplains that are not related to this case in any way. For example, Plaintiff seeks all documents concerning requests for, and the granting and withdrawal of, religious accommodations sought by all other chaplains in the Navy. *See* First Document Request ¶¶ 13, 19, 21. Similarly, Plaintiff also seeks copies of any other Navy employees' requests seeking "clarification of [sic] praying within the Navy," and any response thereto. *Id.* ¶¶ 11, 12. Because this case concerns the meaning of Navy regulations and their application to Plaintiff (as opposed to other service members) – and because religious accommodations are *never even mentioned* in Plaintiff's Complaint – these requests are entirely irrelevant to the matter at hand and, therefore, represent nothing more than a fishing expedition.

Plaintiff's document request also seeks "[a] complete copy of each and every file maintained by Defendant pertaining to the claims made by Plaintiff." First Document Request ¶ 7. This request is too vague to answer at the present time. As the briefing on the pending Motion to Dismiss illustrates, the parties vigorously dispute what claims are alleged in the

-4-

Complaint, whether the court has jurisdiction over many of Plaintiff's allegations, and whether Plaintiff is entitled to a trial at all. *See, e.g.*, Mot. Dismiss at 19-22 (noting Plaintiff cannot challenge his court-martial or alleged acts of past retaliation in this suit); *id.* at 22 (noting Plaintiff has not challenged Secretary's decision under the "arbitrary and capricious" standard of the APA); *id.* at 32-33 (noting that Plaintiff's Complaint does not actually allege a violation of the Establishment Clause); Mot. Dismiss Reply at 22-25 (noting that, contrary to Plaintiff's contention, the Complaint does not allege a violation of the Equal Protection Clause or any whistleblower protection provision). For the same reasons, Plaintiff's request that Defendant provide "all exhibits which Defendant intends to introduce at trial" is premature. *See* First Document Request ¶ 3. Given these substantial disagreements about what Plaintiff's Complaint actually contends – and about whether this court has jurisdiction to consider many of the allegations in that Complaint – this court should not allow discovery to proceed until it has addressed the pending Motion to Dismiss.

Put simply, none of Plaintiff's vague and burdensome discovery requests relate to dispositive matters in this case: the proper interpretation of DoDI 1304.28 and OPNAVINST 1120.9. No discovery at all is warranted, as Plaintiff's entire action hinges on his untenable reading of two words in one of those instructions. Because Plaintiff misinterprets the instructions, he cannot succeed on any of his claims attacking his separation proceedings, which were mandated by DoDI 1304.28. Moreover, as Plaintiff has not alleged that the Secretary's decision not to accept his new ecclesiastical endorsement was an abuse of discretion (a challenge that must be brought under the APA), Plaintiff cannot succeed in his attempt to have the court reverse the outcome of those separation proceedings. He therefore lacks standing to seek

prospective relief on any of his other constitutional or statutory claims.

In short, because this case contains purely legal questions, there are no material facts in dispute.[2]  This court should grant the pending Motion to Stay Discovery and enter a protective order preventing Plaintiff from undertaking his proposed, wide-ranging fishing expedition into matters that simply are not relevant to his case.  Defendant respectfully requests that this court expeditiously rule and grant the pending Rule 26(c) motion.


Dated: February 22, 2007 _____  Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

JEFFERY A. TAYLOR
United States Attorney

VINCENT M. GARVEY
Deputy Branch Director


Of Counsel:                                              **/s/ Michael P. Abate**
Lieutenant Commander Thomas Leary      MICHAEL P. ABATE
Lieutenant Katy Pasieta                         Attorney, Civil Division
Office of the Judge Advocate General      U.S. Department of Justice
Department of the Navy                          P.O. Box 883
Washington Navy Yard, Bldg 33              20 Massachusetts Ave., N.W., Room 7302
1322 Patterson Ave., S.E., Suite 3000      Washington, D.C. 20530
Washington, D.C.  30274-5066                Telephone: (202) 616-8209

                                                         Attorneys for Defendants

---

[2] In a vain attempt to survive the pending Motion to Dismiss, Plaintiff has repeatedly alleged that the correct interpretation of the regulation is *irrelevant*; he maintains that he is entitled to discovery and a trial simply because he alleges a violation.  That is not the law.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 22nd day of February 2007, I caused the foregoing Notice to be served on plaintiff's counsel of record electronically by means of the Court's ECF system.


/s/ Michael P. Abate

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| CHAPLAIN GORDON JAMES KLINGENSCHMITT | ) | |
| | ) | |
| | ) | |
| **Plaintiff,** | ) | Civil No.: 06CV 1832 (HHK) |
| **v.** | ) | |
| | ) | |
| DONALD C. WINTER, in his | ) | |
| Official Capacity as Secretary of | ) | |
| the Navy, | ) | |
| | ) | |
| **Defendant,** | ) | |
| | ) | |

## PLAINTIFF'S FIRST REQUEST FOR THE PRODUCTION OF DOCUMENTS TO DEFENDANT

Plaintiff by and through his undersigned counsel, pursuant to the Federal Civil Procedure Rule 34, hereby serves the following Request for the Production of Documents upon Defendant. Pursuant to the applicable Rules of Civil Procedure, the Plaintiff requests the above-named Defendant produce, within thirty (30) days after service of this Request, for inspection and copying, at the Law Office of William P. Farley, 1350 Connecticut Avenue, NW, Suite 200, Washington, D.C. 20036, the items requested herein complete with any changes, amendments or alterations thereto.

**If the Defendant asserts a claim of privilege for any documents requested herein, furnish with the response a list describing each document for which privilege is claimed, together with the following information:**

        a.      the author;

        b.      the name and job title of each recipient, and person to whom a copy or copies

were furnished;

      c.     the date of the document;

      d.     the subject matter of the document;

      e.     the basis on which privilege is claimed; and

      f.     every request to which each such document is responsive.

## INSTRUCTIONS

1.     In responding to these Requests, produce all documents that are in the possession of, or accessible to you, your agents, employees, and all other persons acting on your behalf.

2.     These Requests are to be regarded as continuing, therefore, you are requested to supplement your responses with such additional information as may hereafter be obtained by you, or any person on your behalf, which will augment or otherwise modify any responses presently given.

3.     If any of these Requests cannot be responded to in full, please answer to the extent possible, the reasons for your inability to respond.

4.     If any of the requested items are not transcribed, you are hereby requested to produce such items in written form.

5.     For any documents previously in Defendant's possession that is requested herein, furnish a list describing each document for which Defendant is no longer controlling or possessing the document, together with the following information:

      a.     the author;

      b.     the name and job title of each recipient, and person to whom a copy or copies

were furnished;

    c.    the date of the document;

    d.    the subject matter of the document;

    e.    the reason Defendant no longer has the document; and

    f.    every request to which each such document is responsive.

## DEFINITIONS

1.    As used herein, the term "documents" shall mean and include, without limitation, all items which embody handwritten, typed, printed, oral, visual, or electronic communications or representations, agreements, letters, carbon copies of letters, telegrams, telexes, bulletins, circulars, notices, specifications, instructions, literature, books, magazine, newspapers, booklets, work assignments, email, reports, motion picture films, videotapes, kinescopes, sound recordings, photographs, studies, analysis, surveys, memoranda, memoranda of conversations, notes, notebooks, diaries, data sheets, work sheets, calculations and drafts of the aforesaid, and all copies of the aforesaid items upon which have been placed any additional marks or notations.

2.    The terms "you" and "your" shall mean the Defendant, including all its subsidiaries and affiliated entities and shall further include all officers, directors, employees, agents and representatives of such entities.

## DOCUMENTS TO BE PRODUCED

1.    All documents consulted and/or relied upon in responding to Plaintiff's First Set of Interrogatories or subsequent Interrogatories.

2.    All documents consulted and/or relied upon in responding to Plaintiff's First Request for Admissions or subsequent Requests for Admissions.

3.      All exhibits which Defendant intends to introduce at trial.

4.      All reports other similar written records pertaining to the plaintiff's prayers.

5.      All statements given by, given to, or in the possession of Defendant which relate to the denial of Plaintiff's requests to pray in any way.

6.      Any and all documents obtained by subpoena in this case.

7.      A complete copy of each and every file maintained by Defendant pertaining to the claims made by Plaintiff.

8.      Any and all employee manuals, union agreements, personnel manuals, or other such guidelines that have ever been in effect and pertained to the employment of plaintiff from the date of first hire.

9.      A complete copy of each and every file pertaining to plaintiff.

10.     Any document with Plaintiff's name or signature on it concerning prayers.

11.     All documents from any of Defendant's employees requesting clarification of praying within the Navy.

12.     All responses given to those requests in Number 11 above.

13.     A copy of all notes, forms, complaints, grievances concerning any employee of the defendant complaining of the withdrawal of a previously provided accommodation for religious-based needs.

14.     All documents which evidence defendant's policy against religious discrimination and harassment in the workplace since November 1, 1996.

15.     All documents concerning any investigation or finding that by Defendant in response to plaintiff's report of religious harassment, including:

4

a. All documents from investigations, including any report made,

b. All documents from any discipline dispensed as a result of plaintiff's complaint,

c. All documents showing the name, address, and title of any person disciplined as a result of plaintiff's complaint,

d. All documents concerning forms of response directed to plaintiff.

16.    All documents which constitute, refer, or relate to:

a.    Written policies, procedures and guidelines as they relate to computers, electronic documents and electronic media;

b.    Corporate policies concerning employee use of company computers and data;

c.    The computer systems used by you and during the relevant periods of time for this litigation;

d.    Your backup policies and procedures;

e.    You record retention and destruction policies and procedures; and

f.    Electronic communications systems, including, but not limited to, email and voice mail systems.

17.    Any and all expert witness reports and supporting documentation for any such report.

18.    Any and all communications with any expert.

19.    Any and all documents from any employee requesting a religious accommodation.

20.    A complete copy of plaintiff's personnel file.

21.    All religious accommodations granted in the past five years to any Chaplain.

22.    All personnel manuals or guidelines regarding conditions and procedures for employee discharge, discipline, promotions, raises, etc.

23.     Plaintiff's job description.

24.     The job description of Lt William Marks.

25.     All documents requested by or for Chaplain Klingenschmitt, including, but not

limited to, FOIA requests and requests made in administrative or court-martial proceedings.


                                    Respectfully submitted,


                                    _____
                                    William P. Farley
                                    Law Office of William P. Farley, P.C.
                                    1350 Connecticut Avenue, N.W.
                                    Suite 200
                                    Washington, D.C. 20036
                                    (202) 775-1550
                                    (202) 775-0008 (fax)
                                    farley@dccounselor.com
                                    Counsel for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing Plaintiff's First Request for the production of documents was served on all parties by delivering a copy thereof via email and U.S. Mail, First Class, postage prepaid, on this 16th day of February 2007 to:

Michael P. Abate
Trial Attorney
United States Department of Justice
Federal Programs Branch
PO Box 883
Washington, DC 20530
Tel: (202) 616-8209
Fax: (202) 616-8470
michael.abate@usdoj.gov

William P. Farley
Law Office of William P. Farley, P.C.
1350 Connecticut Avenue, N.W.
Suite 200
Washington, D.C. 20036
(202) 775-1550
(202) 775-0008 (fax)
farley@dccounselor.com
Counsel for Plaintiff

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CHAPLAIN GORDON JAMES KLINGENSCHMITT | ) ) ) ) |
| Plaintiff, | )    Civil No.: 06CV 1832 (HHK) |
| v. | ) ) |
| DONALD C. WINTER, in his Official Capacity as Secretary of the Navy, | ) ) ) ) |
| Defendant, | ) ) ) |

### PLAINTIFF'S CERTIFICATE REGARDING DISCOVERY

I HEREBY certify that on February 16, 2007, I served on all parties hereto Plaintiff's First Request for the Production of Documents to defendant and that I will retain the original of this document in my possession, without alteration, until the case in concluded in this Court, the time for noting an appeal has expired, and any appeal noted has been decided.

William P. Farley
Law Office of William P. Farley, P.C.
1350 Connecticut Avenue, N.W.
Suite 200
Washington, D.C. 20036
(202) 775-1550
(202) 775-0008 (fax)
farley@dccounselor.com
Counsel for Plaintiff

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| CHAPLAIN GORDON JAMES KLINGENSCHMITT | ) ) ) | |
| Plaintiff, | ) ) ) | Civil No.: 06CV 1832 (HHK) |
| v. | ) ) | |
| DONALD C. WINTER, in his Official Capacity as Secretary of the Navy, | ) ) ) ) | |
| Defendant, | ) ) ) | |

**PLAINTIFF'S FIRST REQUEST FOR ADMISSIONS TO DEFENDANT**

Plaintiff, by and through the undersigned counsel, on requests for admissions of facts and of genuineness of documents, plaintiff in the above entitled action, for the purpose of expediting this cause, hereby requests defendant to make the following admissions for the purpose of this action only and subject to all objections as to admissibility which may be interposed at the trial, for Admissions pursuant to Federal Rules of Civil Procedure Rule 36, upon defendant. You are requested to admit the truth of each of the matters set forth below. Each admission is for the purpose of this action only and is not an admission by the defendant for any other purpose, nor may it be used in any other proceeding.

The matter is admitted <u>unless</u> within 30 days after service of this request you serve upon plaintiffs a written and signed answer or objection to the matter. Any matter admitted is conclusively

established.

## DEFINITIONS AND INSTRUCTIONS

A.    The "Navy" means the Defendant.

B.    Each admission must be answered separately.

C.    Any denial or objection to an admission must set forth in detail the reasons why the

defendant cannot admit that the request for admission is true.

D.    **When good faith requires that the defendant qualify an answer or deny only a**

**part of a matter of which an admission is requested, the defendant shall specify**

**so much of the admission that is true and qualify or deny the remainder.**

E.    The defendant may not give lack of information or knowledge as a reason for failure

to admit or deny an admission unless defendant states that it has made reasonable

inquiry and that the information known or readily obtainable by defendant is

insufficient to enable the defendant to admit or deny the request for admission.

**PLEASE ADMIT THE FOLLOWING:**

1.    Chaplain Klingenschmitt is a Trinitarian Christian lieutenant in the United States

Navy with more than 15 years of active duty in the United States Military.

2.    The defendant is the United States Navy (Navy), a branch of the United States armed

forces responsible for conducting naval operations.

3.    The mission of the Navy is to maintain, train and equip combat-ready Naval forces

capable of winning wars, deterring aggression and maintaining freedom of the seas.

4.    Defendant instructed plaintiff to practice a "non-sectarian" civic religion.

5.    Defendant instructed plaintiff not to pray in uniform.

6.    Defendant instructed plaintiff not to say "Jesus" in some contexts.

7.    The Navy promotes a one non-sectarian, Unitarian, Pluralistic religion.

8.    The Navy instructed their chaplains not to pray to Jesus outside of the chapel.

9.    The Navy requires that all their Chaplains be sponsored by a recognized religious organization.

10.    Chaplain Klingenschmitt has been fully sponsored by a recognized religious organization during his time in the Navy.

11.    On October 4, 2006, the Navy informed Chaplain Klingenschmitt that they planned to terminate him from the Navy.

12.    The Navy gave as their reason that Chaplain Klingenschmitt does not have an Ecclesiastical Endorsement.

13.    Chaplain Klingenschmitt has an Ecclesiastical Endorsement from the Chaplaincy of Full Gospel Churches.

14.    The Navy has accepted the Ecclesiastical Endorsement of the Chaplaincy of Full Gospel Churches for hundreds of Navy chaplains.

15.    Having the Ecclesiastical Endorsement of the Chaplaincy of Full Gospel Churches makes Chaplain Klingenschmitt fully qualified to serve as a Navy Chaplain.

16.    Chaplain Klingenschmitt is not fully qualified to serve as a Navy Chaplain because his does not have an Ecclesiastical Endorsement.

17.    The Navy controls the content of their Chaplains religious speech.

18.    The Navy favors the "non-sectarian" civic religion over the Trinitarianism Christian religion.

19.    The Navy has advised chaplains that their prayers should be nonsectarian.

20.    The Navy has established an official or civic religion.

21.    The Navy directs and controls the content of prayers military members may say by requiring their Chaplains to pray in a Unitarianism fashion.

22.    The Navy promotes Unitarianism over all other religions.

23.    Unitarianism believe in the oneness of God and not the Christian doctrine of the Trinity (Father, Son (Jesus), and Holy Spirit in one God)

24.    Defendant has ordered Naval Chaplains not to pray in Jesus' name.

25.    A part of the Navy's business has been to compose official prayers for sailors and other American people to recite as a part of a religious program carried on by the Navy's official policy.

26.    The Navy permits their "non-sectarian" and Unitarian Chaplains to express themselves fully and does not place limits on how they pray.

27.    Unitarian Chaplains do not believe Jesus is God.

28.    Within Christianity, the doctrine of the Trinity states that God is a single Being who exists, simultaneously and eternally, as a perichoresis of three persons (personae, prosopa): Father (the Source, the Eternal Majesty); the Son (the eternal Logos or Word, incarnate as Jesus of Nazareth); and the Holy Spirit (the Paraclete or advocate).

29.    For Christians, one part of the triad is called Jesus.

30.    Trinitarianism Christians pray directly to the Father, through Jesus Christ, in the Holy

Spirit.

31.    Unitarians do not pray directly to the Father, through Jesus Christ, in the Holy Spirit.

32.    Chaplain Klingenschmitt does not subscribe to the religious tenets of the Unitarian.

33.    The Navy places limits on how their Christian Chaplains can publicly pray and forbids them from saying "in Jesus' name."

34.    Chaplain Klingenschmitt's programs as a Navy Chaplain have been the recipient of six Naval awards for community service.

35.    In September 2002, Defendant Captain Bertram Moore taught mandatory lectures at the Naval Chaplain School instructing Naval Chaplains to censor the content of their public prayers if offered outside of Sunday chapel.

36.    The Navy distributed a 1998 prayer memo signed by the former Chief of Navy Chaplains informing people that chaplains who pray publicly "in Jesus name" as insensitive or incompetent.

37.    Lectures consistent with the above 1998 prayer memo continue to this day within the Navy.

38.    On September 2, 2002, Chaplain Klingenschmitt volunteered for demotion in rank and pay cut to switch from Air Force Major O 4 (missile officer) to Navy Lieutenant O 3 (chaplain)..

39.    During July 2004, Defendant James Carr, the Commander of the USS ANZIO punished Chaplain Klingenschmitt for quoting "exclusive" Bible verses, including John 3:36, during an optionally-attended sermon, in Protestant chapel, at an event advertised as "Christian Memorial Service," to honor Christian faith of the deceased Sailor, a member of Klingenschmitt's flock.

40.    In July 2004, Defendant James Carr also denied Chaplain Klingenschmitt's proposal

to share "the evening prayer" with members of diverse faiths, and instead pressured Chaplain Klingenschmitt to censor the content of his public prayers.

41.     Enlisted members of the military are permitted to quote John 3:36.

42.     Other that Chaplains, officers in the Navy are permitted to quote John 3:36.

43.     Other than Chaplains, members of the Navy are permitted to pray in Jesus' name while on duty.

44.     Captain Carr refused to permit Chaplain Klingenschmitt to practice his religion and claimed that he (and others whom he declined to identify) were offended by Chaplain Klingenschmitt's religious beliefs expressed during the sermon that going through Jesus is the exclusive way to heaven.

45.     On February 18, 2005, Captain Carr gave a performance evaluation of Chaplain Klingenschmitt based in part on Klingenschmitt's religious beliefs.

46.     On March 11, 2005 Captain Carr recommended a Navy board not renew Chaplain Klingenschmitt's contract.

47.     Captain Carr stated he knew of comments of Chaplain Bertram Moore, who noted Chaplain Klingenschmitt's academic resistance to the chaplain school lectures that discourage praying in Jesus name.

48.     On June 18, 2005, Chaplain Klingenschmitt filed a formal grievance against Captain James Carr pursuant to Article 138, Uniform Code of Military Justice for religious discrimination and improper punishment based upon his exercise of his religion.

49.     On July 22, 2005, Chaplain Klingenschmitt filed a formal grievance pursuant to Navy Regulations Article 1150 against Chaplain Steve Gragg, who provided false statements about

Chaplain Klingenschmitt and conspired with Captain Carr to punish Chaplain Klingenschmitt for providing Christian sermons.

50.     On August 19 2005, Chaplain Klingenschmitt filed a formal grievance pursuant to Navy Regulations Article 1150 against Chaplain Bertram Moore.

51.     The Navy refuse to process that grievance.

52.     The Naval chaplain school lectures order the establishment of one "non-sectarian" faith for all Chaplains and all Sailors within the Navy.

53.     On August 23, 2005, the Chief of Navy Chaplains, Rear Admiral Lou Iasiello, declined to rescind his predecessor's 1998 prayer memorandum.

54.     Chaplain Iasiello told Chaplain Klingenschmitt that praying publicly in Jesus' name was improper because ending public prayers "in Jesus name" in all situations, without using discretion or regards to the venue or audience, tended to denigrate those with different forms of faith.

55.     Rear Admiral Lou Iasiello never sought to protect Chaplain Klingenschmitt's expression of his Christian faith from denigration when his Christian prayers are not ended "in Jesus name."

56.     On September 14, 2005, Chaplain Klingenschmitt filed a formal grievance pursuant to Navy Regulations, Article 1150, against the Chief of Chaplains Louis Iasiello for religious discrimination about the Navy's restriction of the religious content of prayers and pressuring chaplains to pray "non-sectarian" prayers.

57.     The Navy's restriction on the religious content of prayers is contrary to 10 USC 6031 which allows chaplains to conduct "public worship" according to each chaplain's own faith.

58.     The Navy delayed acting on Chaplain Klingenschmitt's complaint for more than one

year which permitted Chaplain Iasiello to retire without facing the charges.

59.    On December 16, 2005 and January 6, 2006, the commanding officer of Naval Station Norfolk Captain Lloyd Pyle forbid Chaplain Klingenschmitt to pray in uniform whenever the media may be present.

60.    There was no provision for prompt judicial review of the commanding officer of Naval Station Norfolk's removal of Chaplain Klingenschmitt's right to First Amendment speech.

61.    When Chaplain Klingenschmitt tried to appeal the unlawful nature of this removal of his rights to the President, members of his chain of command did not forward this appeal as was required.

62.    On January 7, 2006, Chaplain Klingenschmitt participated in a religious observance in front of the White House and said a short prayer while in uniform.

63.    The media covered that January 7, 2006 religious observance prayer.

64.    After the religious observance, Chaplain Klingenschmitt changed out of his uniform into civilian clothing by walking away from the area where the observance had been held and removing his uniform jacket and tie and replacing them with a clerical collar before making any statements about his personal views and without representing Navy views or policy in any way.

65.    On January 11, 2006, defendant Rear Admiral F. R. Ruehe ruled during an administrative procedure that Chaplain Klingenschmitt should not preach and pray as his faith dictated.

66.    On January 11, 2006, defendant Rear Admiral F. R. Ruehe ruled Captain Carr had properly punished Chaplain Klingenschmitt for his prayers and sermon content.

67.    On February 3 2006, defendant CAPT Loyd Pyle downgraded Chaplain

Klingenschmitt's evaluation because he appealed the 16 Dec 05 "overbroad" and "unlawful" order to the President.

68.      Chaplain Klingenschmitt was specifically told by Captain Pyle that his on-duty performance was fine and that he added great value to the command in performing his duties and that the negative comments only related to Chaplain Klingenschmitt's off-duty speeches and protests.

69.      Captain Pyle stated that Chaplain Klingenschmitt showed disrespect for the uniform by removing his uniform on January 7, 2006 prior to answering questions in his personal capacity.

70.      On February 9, 2006, the Air Force leadership told military chaplains they may not invoke the name of Jesus Christ while offering prayers at official government ceremonies.

71.      Congress made military chaplains an official part of the American armed forces in 1791.

72.      In 1802, President Thomas Jefferson signed Navy Regulations defining the duties of Navy Chaplains to "read" daily prayers at appointed hours.

73.      In 1806, Congress passed An Act for Establishing Rules and Articles for the government of the Armies of the United States.

74.      The Establishment of Religion clause of the First Amendment prohibits the Federal Government having laws which aid one religion or prefer one religion over another.

75.      The defendants placed restraints upon Chaplain Klingenschmitt's religious communications.

76.      Naval Regulations state: An officer in the Naval chaplains' corps may conduct public worship according to the manner and forms of the church of which he is a member.

77.      On February 21, 2006, the Navy instituted a regulation requiring chaplains to pray

using "non-sectarian" prayer content outside of "Divine Services."

78.    The regulation impermissibly interfered with Chaplain Klingenschmitt's First Amendment rights to practice his religion.

79.    On February 21, 2006, the Navy changed the 1998 prayer memo into a formal policy, SECNAVINST 1730.7C which required "non-sectarian" prayers and barred chaplains from praying in accordance with their religion except at "public worship," which the Navy narrowly defined as a term of art protected only during divine services at Sunday Chapel and not elsewhere.

80.    On 22 March 2006, Chaplain Klingenschmitt filed a formal whistleblower complaint with several Congressmen against defendants Donald C. Winter and Louis Iasiello, and against the SECNAVINST 1730.7C which re-defined "public worship" and required "non-sectarian" prayers.

81.    On 22 March 2006, just four hours after his lawyer learned that Chaplain Klingenschmitt's whistleblower complaint would be reported in the Washington Times, Vice Admiral John Harvey recommended Chaplain Klingenschmitt be involuntarily released from active duty because he had challenged Navy prayer policies by writing to his Congressman and the President, and talking to the newspapers.

82.    On March 30, 2006, Chaplain Klingenschmitt, while not on duty, wore his Navy uniform at a prayer and scripture reading event in front of the White House.

83.    At the March 30, 2006 religious event, Chaplain Klingenschmitt read passages from the New Testament of The Bible, Acts 4: 18-21.  He also led two Christian prayers, one of which was from the Episcopal Book of Common Prayer.

84.    At the March 30, 2006 religious event, Chaplain Klingenschmitt made no speeches or statements and declined to speak to the media or in any public forum while he was in uniform.

85.    At the March 30, 2006 religious event, Chaplain Klingenschmitt declined to make political speeches or answer media questions until he had later changed into civilian clothes.

86.    Navy spokesman William Marks repeatedly made false statements to the public media and defamed LT Klingenschmitt in the press, injuring his reputation and his Navy career.

87.    Lt. William Marks stated there never were restrictions against Lt. Klingenschmitt.

88.    Lt. Marks also said that Chaplain Klingenschmitt was reprimanded for the 2004 sermon because the sermon's content was inappropriate for a funeral, not because the Chaplain mentioned Jesus.

89.    Lt. Marks said there are almost 1,000 chaplains, and the Navy could not find one with the same problems in praying their religious prayers without mentioning Jesus.

90.    There were other Navy Chaplains that have complained that their First Amendment religious rights are being denied by the ban on mentioning Jesus.

91.    Navy officials also said Lt. Klingenschmitt has not been formally punished, and there are no plans to take him off active duty.

92.    Lt. Marks said that Lt. Gordon James Klingenschmitt, had been tilting at windmills all along. The Navy has no regulation against praying to Jesus and has always encouraged every chaplain to pray according to his own individual faith during worship services.

93.    On March 30, 2006, the Navy issued a statement to the press that military chaplains must be willing to function in a pluralistic society.

94.    On March 30, 2006, the Navy issued a statement to the press that it was "unclear whether Chaplain Klingenschmitt had violated regulations by appearing at the event in uniform."

95.    On March 30, 2006, the Navy issued a statement to the press that "Klingenschmitt

was free to pray there because it was not an official event and he was on leave."

96.     On March 31, 2006, the Executive Officer from the Office of the Chief of Navy Chaplains sent an email to Chaplain Holcomb, complaining that Chaplain Klingenschmitt had worn his uniform to pray "in Jesus name" in front of the White House.

97.     On March 31, 2006,  after receiving the above email, Captain Holcomb threatened to transfer Chaplain Klingenschmitt to Iraq.

98.     On April 3, 2006, Captain Holcomb stated that he believed Captain Pyle intended to convene a special court-martial to punish him for the events of 30 March 2006, for allegedly disobeying "lawful" orders by wearing his uniform at an event supporting partisan religious views, (because he read prayers outside of a "divine service" or "religious observance" which were narrowly re-defined by SECNAVINST 1730.7C).

99.     On May 17, 2006, a single charge and specification of a violation of Article 92 by disobeying Captain Pyle's order was preferred against Chaplain Klingenschmitt and this was referred to a special court-martial on May 18, 2006 by ADM Ruehe.

100.     On June 6, 2006, defendant Anita Blair ruled that Chaplain Klingenschmitt was properly punished by CAPT Carr (as advised by Chaplain Gragg) in July 2004 for quoting the Bible in the chapel, during an optionally-attended sermon at a "Christian Memorial Service" honoring the faith of a deceased Christian Sailor, a member of Klingenschmitt's flock.

101.     The Navy also said that Chaplain Klingenschmitt's complaint of religious harassment is "without merit" because the optionally attended Christian Memorial Service inside the chapel was "not public worship" (according to new SECNAVINST 1730.7 – since it was held on Saturday.)

102.     On July 11, 2006, Chaplain Klingenschmitt was informed that his request for

augmentation to the Regular Navy has been held in abeyance pending further review.

103.    The decision on Chaplain Klingenschmitt's augmentation request had been expected to be routine by all parties and to have been announced in April 2006.

104.    The Navy failed to provide an explanation of why the augmentation was not approved and/or being held in abeyance.

105.    On August 31, 2006, the Navy Court-Martial Judge ruled that Chaplain Klingenschmitt's prayer in Jesus' name on March 30, 2006 was improper and violated the Navy's policy against making political speeches in uniform.

106.    The Court-Martial Judge enforces SECNAVINST 1730.7C against Chaplain Klingenschmitt's uniformed prayers, stating that "public worship" in 10 USC 6031 is a term of art describing a combination of setting, teaching, and interpretation that constitutes a "divine service."

107.    The Navy claims to have found that Chaplain Klingenschmitt violated supposedly "lawful" orders (based on SECNAVINST 1730.7C) by "worshiping in public" in uniform.

108.    A Navy Court-Martial Judge ruled that "one who reads a biblical verse or who recites a prayer at The Speaker's Corner in Hyde Park is not engaged in 'public worship,' although he may be 'worshiping in public.'"

109.    On September 13, 2006, the Navy found Chaplain Klingenschmitt guilty of disobeying a "lawful" order, and his uniformed prayers in Jesus' name requires a misdemeanor reprimand and suspended fine of $3,000.

110.    When Chaplain Klingenschmitt asked if he was being punished because he was a whistleblower, Naval officer Captain Holcomb stated that he did not know about the whistleblower laws, did not care what they said and that he "was not intimidated by your [Chaplain

Klingenschmitt's] threats to file an IG complaint" because he had hired a lawyer and would "come after you."

111.    SECNAVINST 1730.7C has been rescinded.

112.    Chaplain Klingenschmitt was the only person ever prosecuted pursuant to SECNAVINST 1730.7C.

113.    In spite of the Commander and Chiefs signature, SECNAVINST 1730.7C is still being enforced against Chaplain Klingenschmitt.

114.    The Navy used the rescinded SECNAVINST 1730.7C as the basis for their forthcoming letter of reprimand to Chaplain Klingenschmitt.

115.    The Navy used the rescinded SECNAVINST 1730.7C as the basis to discharge Chaplain Klingenschmitt from the Navy.

116.    The Navy used the rescinded SECNAVINST 1730.7C to dismiss Chaplain Klingenschmitt from the Navy.

117.    On September 29, 2006, Chaplain Klingenschmitt received a new ecclesiastical endorsement.

118.    On September 29, 2006, Chaplain Klingenschmitt was endorsed by two separate recognized religious groups.

119.    OPNAVINST 1120.9 requires the Navy's Chief of Chaplains, Admiral Robert Burt, to recertify a chaplain's professional qualification upon receipt of a new ecclesiastical endorsement.

120.    The Navy refuses to recertify Chaplain Klingenschmitt's new ecclesiastical endorsement.

121.    The Navy is planning to separate Chaplain Klingenschmitt.

122.    Vice Admiral John Harvey has initiated proceedings to administratively separate Chaplain Klingenschmitt by claiming that he has no ecclesiastical endorsement.

123.    Chaplain Klingenschmitt has an ecclesiastical endorsement.

124.    The Navy is convened a "chaplains review board" to consider whether to accept Chaplain Klingenschmitt's endorsement.

125.    A chaplain review board has not routinely been convened for other chaplains who change endorsing agents.

126.    Plaintiff has a bona fide religious beliefs.

127.    Plaintiff informed Defendant that he.

128.    Plaintiff informed Defendant of his religious belief and the resulting conflict with employment responsibilities.

129.    Defendant subjected the Plaintiff to discriminatory treatment as a direct result of the employee's religious belief and/or practices after Plaintiff requested to pray in the name of Jesus.

130.    Defendant does not contest that Plaintiff has been awarded an ecclesiastical endorsement by a religious body.

131.    Plaintiff holds a sincere religious belief in the Christian faith.

132.    Defendant was properly informed of Plaintiff's religious beliefs and the conflict this belief created with employment responsibilities.

133.    Plaintiff conveyed information regarding his beliefs in writing.

134.    Plaintiff requested to pray to Jesus as an accommodation of his religion

135.    After Plaintiff informed Defendant of his religious beliefs and the conflict with his employment responsibilities, Defendant failed to make a reasonable accommodation.

136.    Defendant provided Plaintiff with adverse prayer instructions a direct result of the Plaintiff's religious belief.

137.    Defendant failed to provide a reasonable accommodation for Plaintiff's religious observance, after receiving adequate notice.

138.    All documents provided by Plaintiff are authentic.

139.    Secular Humanism is a religion.

140.    All statements in Plaintiff's Complaint are true.

Respectfully submitted,

_____

William P. Farley
Law Office of William P. Farley, P.C.
1350 Connecticut Avenue, N.W.
Suite 200
Washington, D.C. 20036
(202) 775-1550
(202) 775-0008 (fax)
farley@dccounselor.com
Counsel for Plaintiff

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **CHAPLAIN GORDON JAMES KLINGENSCHMITT** ) | |
| ) | |
| ) | |
| **Plaintiff,** ) | **Civil No.: 06CV 1832 (HHK)** |
| **v.** ) | |
| ) | |
| **DONALD C. WINTER, in his** ) | |
| **Official Capacity as Secretary of** ) | |
| **the Navy,** ) | |
| ) | |
| **Defendant,** ) | |
| ) | |

**PLAINTIFF'S CERTIFICATE REGARDING DISCOVERY**


        I HEREBY certify that on February 16, 2007, I served on all parties hereto Plaintiff's First

Request for Admissions and that I will retain the original of this document in my possession, without

alteration, until the case in concluded in this Court, the time for noting an appeal has expired, and

any appeal noted has been decided.

_____
William P. Farley
Law Office of William P. Farley, P.C.
1350 Connecticut Avenue, N.W.
Suite 200
Washington, D.C. 20036
(202) 775-1550
(202) 775-0008 (fax)
farley@dccounselor.com
Counsel for Plaintiff

## CERTIFICATE OF SERVICE

I certify that the foregoing Plaintiff First Request for Admissions was served on

Defendant on this 16th day of February, 2007 by delivering a copy thereof via email and first

class mail delivery, to:

Michael P. Abate
Trial Attorney
United States Department of Justice
Federal Programs Branch
PO Box 883
Washington, DC 20530
Tel: (202) 616-8209
Fax: (202) 616-8470
michael.abate@usdoj.gov

_____
William P. Farley
Law Office of William P. Farley, P.C.
1350 Connecticut Avenue, N.W.
Suite 200
Washington, D.C. 20036
(202) 775-1550
(202) 775-0008 (fax)
farley@dccounselor.com
Counsel for Plaintiff

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| CHAPLAIN GORDON JAMES KLINGENSCHMITT | ) ) ) ) | |
| Plaintiff, | ) ) | Civil No.: 06CV 1832 (HHK) |
| v. | ) ) | |
| DONALD C. WINTER, in his Official Capacity as Secretary of the Navy, | ) ) ) ) | |
| Defendant, | ) ) | |

**PLAINTIFF'S  FIRST SET OF INTERROGATORIES TO DEFENDANT**

Plaintiff by and through his undersigned counsel, pursuant to the Federal Civil Procedure Rule 33, hereby serves the following Interrogatories upon Defendant.  These interrogatories are to be answered under oath within (30) days of services hereof, with the defendant answering each Interrogatory to the extent of its knowledge.  Defendant is directed to identify the persons having knowledge of the facts inquired.

These Interrogatories are continuing in character so as to require you to file supplementary answers if you obtain further or different information before trial.  Where the name or identity of a person is requested, please state their full name, home address, and also business address, if known. Unless otherwise indicated, these Interrogatories refer to the time, place, and circumstances of the occurrence mentioned or complained of in the Complaint filed in this action.  Where knowledge or information in possession of a party is requested, such request includes knowledge of the party's

1

agents, representatives, and unless privileged, his attorneys. When an answer is made by a corporate defendant, state the name, address, and title of the person supplying the information and the source of the information. The pronoun "you" shall include the party, the party's agents, representatives, employees and/or servants and the party's attorneys, unless privileged.

Throughout these Interrogatories, whenever you are requested to "identify" a communication of any type, and such communication was <u>oral</u>, the following information should be furnished:

(a)     By whom it was made and to whom it was directed;

(b)     Its specific subject;

(c)     The date upon which it was made;

(d)     Who else was present when it was made; and

(e)     Whether it was recorded, described or summarized in any writing of any type; if so, identity each such writing in the manner indicated below.

Whenever you are requested to "identify" a communication, memorandum, or record of any type, and such communication was <u>written</u>, the following information is to be furnished:

(a)     The nature of the written communication, <u>e.g.</u>, letter, memorandum, telegram, drawing, note, post-it, e-mail etc.;

(b)     The specific subject of the communication;

(c)     By whom it was made and to whom it was directed;

(d)     The date upon which it was made; and

(e)     Who has possession of the original and any copies.

In lieu of identifying or describing particular documents, when such identification is requested, these documents may, at defendant's option, be attached to the responses to these

2

Interrogatories.

Whenever a person is to be "identified," you should furnish, except as otherwise noted:

(a)    Name and present or last known address; and

(b)    If a corporation, the place of incorporation.

For each Interrogatory or part thereof which defendant may refuse to answer on grounds of burdensomeness, state:

(a)    the number of files and/or documents needed to be searched;

(b)    the location of such files;

(c)    the number of employee hours required to conduct the search; and

(d)    the estimated cost of the search in employee hours and dollars.

If the documents which form a part of any Answer to these Interrogatories have been destroyed, state when these were destroyed, identify the person who destroyed the documents, and the person who directed that the documents be destroyed.  Also state the reasons the documents were destroyed.

If any answers to the interrogatories in any of the following requests are not answered under claim of privilege or work product, please provide  a statement of the ground or grounds on which such answer is considered to be privileged.

In construing these requests, the following rules are applicable:

(a)    The singular shall include the plural, and the plural shall include the singular;

(b)    The masculine, feminine or neuter pronouns shall include all other genders; and

(c)    Each request shall extend to all documents which are or have been in the possession
       or subject to the control of the Defendants, its officers, agents or employees during

3

the relevant time period.

In answering these Interrogatories, you must furnish all information that is known to you or to your agents. If any of these interrogatories cannot be answered in full, you must answer them to the fullest extent possible, specifying the reasons for your inability to answer the remainder and stating fully the information, knowledge, or belief you now have concerning the unanswered portions.

## **DEFINITIONS**

1.    "Communication" means an oral or written exchange of thought."Defendant" or "Defendants" refers to the defendants named in this lawsuit, as well as any other person or entity in their agency or employ.

2.    "Identify," "identification," or "identity" means:

a.    when used in reference to a natural person, the person's full name, date of birth, social security number, job title, dates of agency or employment (if applicable), the person's current residence address and business address or, if unknown, the last known business address or residence address; and the person's business and home telephone numbers;

b.    when used in reference to a document, the type of document (i.e., letter, memorandum, telegram, chart, etc.), a brief description of the nature of the information in the document, its author or originator, its date or dates, all addressees and recipients, and its present location or custodian. If any such document was, but is no longer, in Defendant's possession or subject to their control, also state the

4

approximate date it was lost, discarded, or destroyed, and the identity of each person

having knowledge of the contents thereof;

    c.      when used in reference to a business entity, the structure of the business (i.e.,

corporation, partnership, sole proprietorship), a brief description of the nature of the

business, and the business' address and telephone number; and

    d.      when used in reference to real property, the full address, the legal description

of the property, the type of structure(e.g., commercial, single family, residential,

apartments) and the number of units.

3.      "Documents" include records; books; papers; contracts; memoranda; invoices;

correspondence; notes; minutes of any meetings, including meetings with agents or

employees; instructions; guides; compilations of rules, regulations, or policies;

daybooks; calendars; photographs; telegrams; messages; drawings; charts; graphs;

other writings; recording tapes; recording discs; mechanical or electronic information

storage or recording elements; and any other "documents" as that word is defined in

Rule 34 of the Federal Rules of Civil Procedure.

4.      "Relate" or "relating to" is defined as showing, reflecting, referring to, constituting,

evidencing, or concerning in any way all or any portion of the subject matter of the

facts, contentions, or matter referenced in the interrogatory.

5.      "Person" means any natural person, group of natural persons, corporation,

partnership, government agency or board, association, proprietorship, organization,

or any other legal entity.

<u>INTERROGATORIES</u>

1.      Identify by name, current address, job title, description of job responsibilities, and telephone number, each and every person consulted in connection with the preparation of the answers to these Interrogatories and the purpose for which each person was consulted, together with clear identification of the portion(s) of the answers to each Interrogatory to which each person contributed.

        <u>ANSWER</u>:


2.      Identify by name, current address, job title, and telephone number each and every person with knowledge of the facts which are the subject of this lawsuit, such identification shall include a summary of the facts and information for each witness defendant expects to testify in this matter on behalf of defendant.

        <u>ANSWER</u>:


3.      Describe in detail, step by step, the procedures that have been routinely followed in the past ten years by the defendant in making decisions regarding the religious practices of their Chaplains, including, but not limited to, describing the defendant's policy for handling the content of their Chaplain's prayers.

        <u>ANSWER</u>:

4.      Please completely identify each and every person in Plaintiff's chain of command and the names of every employee reporting directly to each and every person in Plaintiff' chain of command for the past 5 years.

6

ANSWER:

5.     State with specificity each and every investigation or search for facts defendant undertook after being informed of incidents identified in Plaintiff's complaint.  Such specificity includes, but is not limited to, any report made concerning this matter.

ANSWER:

6.     Please describe each and every aspect of the defendant's affirmative action plan as it relates to the prevention of religious discrimination and the accommodation of religious preferences.

ANSWER:

7.     State with specificity and describe the findings and conclusions that were made as a result of the investigations and/or any meetings conducted regarding Plaintiff's claims that Defendant told him how to pray.

ANSWER:

8.     Please completely identify all witnesses you expect to call at trial, including the expected nature of their testimony.

ANSWER:

9.     Please completely identify each person you expect to call as an expert witness at the

trial and state as to each such expert:

      a.   Name, occupation and address;

      b.   The subject matter on which the person is expected to testify;

      c.   The subject of the facts and opinions to which the person is expected to testify;

      d.   The specific data on which the person bases his opinion; and

      e.   The qualifications that make the person an expert.

        ANSWER:


10.    Please identify each and every document requested in Plaintiff's discovery requests, or any Request for Production of Documents which has not been produced pursuant to this Request, or any subsequent Request.  Include in your answer all reason(s) why such document(s) was not produced, including, but not limited to, if the document has been destroyed and complete circumstances of when the document was last seen, including, but not limited to, the names of persons last in possession of the document.

        ANSWER:

11.    For each of the defendant's policies against religious harassment and discrimination in the workplace from 1996 to the present, please:

 a. Describe the way the defendant's supervisors and other employees were informed of the policy,

 b. Describe the manner in which the policy was enforced.

        ANSWER:

12.    Fully explain all requirements for a sitting chaplain to change his ecclesiastical endorser, including, but not limited to, all persons or entities involved in the process.

      <u>      ANSWER</u>:

13.     Regarding plaintiff's position with you, rate the satisfactoriness of plaintiff's job

performance from 2004 to the present, and explain completely the basis for that evaluation.

      <u>      ANSWER</u>:

 

Respectfully submitted,

_____

William P. Farley
Law Office of William P. Farley, P.C.
1350 Connecticut Avenue, N.W.
Suite 200
Washington, D.C. 20036
(202) 775-1550
(202) 775-0008 (fax)
farley@dccounselor.com
Counsel for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing Plaintiff's First Set of Interrogatories was served on defendant by delivering a copy thereof by email and U.S. Mail on this 16th day of February 2007 to their attorney at:

Michael P. Abate
Trial Attorney
United States Department of Justice
Federal Programs Branch
PO Box 883
Washington, DC 20530
Tel: (202) 616-8209
Fax: (202) 616-8470
michael.abate@usdoj.gov

_____
William P. Farley
Law Office of William P. Farley, P.C.
1350 Connecticut Avenue, N.W.
Suite 200
Washington, D.C. 20036
(202) 775-1550
(202) 775-0008 (fax)
farley@dccounselor.com
Counsel for Plaintiff

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **CHAPLAIN GORDON JAMES KLINGENSCHMITT** | ) | |
| | ) | |
| | ) | |
| | ) | |
| **Plaintiff,** | ) | **Civil No.: 06CV 1832 (HHK)** |
| **v.** | ) | |
| | ) | |
| **DONALD C. WINTER, in his** | ) | |
| **Official Capacity as Secretary of** | ) | |
| **the Navy,** | ) | |
| | ) | |
| **Defendant,** | ) | |

## PLAINTIFF'S CERTIFICATE REGARDING DISCOVERY

I HEREBY certify that on February 16, 2007, I served on all parties hereto Plaintiff's First

Set of Interrogatories to Defendant and that I will retain the original of this document in my

possession, without alteration, until the case in concluded in this Court, the time for noting an appeal

has expired, and any appeal noted has been decided.

William P. Farley
Law Office of William P. Farley, P.C.
1350 Connecticut Avenue, N.W.
Suite 200
Washington, D.C. 20036
(202) 775-1550
(202) 775-0008 (fax)
farley@dccounselor.com
Counsel for Plaintiff